(b) Adjustment for Dividends and Distributions. In the event the Corporation at any time or from time to time after the Issuance Date makes, or fixes a record date for the determination of holders of Common Stock entitled to receive, a dividend or other distribution payable in securities, cash or other assets of the Corporation (other than shares of Common Stock) or any of its subsidiaries, including in connection with a spin-off, then and in each such event, provision shall be made so that the Holders shall concurrently receives dividends or distributions equal in amount and in the same kind of property (whether cash, securities or other property) as such Holder would be antitled to receive if all of the outstanding Series A Preferred Stock were converted into Common Stock as of the record date of such dividend or distribution with respect to Common Stock. For purposes of this Section 4(b), the number of shares of Common Stock so receivable upon conversion by the Holder shall be deemed to be that number which the Holder would have received upon conversion of the Series A Preferred Stock if the Holder Conversion Date had been the day preceding the date upon which the Corporation announced the making of such dividend or other distribution.

(c) Adjustment for Reclassification, Exchange and Substitution. In the event that at any time or from time to time after the Issuance Date, the Common Stock issuable upon the conversion of the Series A Preferred Stock is changed into the same or a different number of shares of any class or classes of stock, whether by recapitalization, reclassification or otherwise (other than a subdivision or combination of shares or stock dividend or reorganization provided for elsewhere in this Section 4), then and in each such event each Holder shall thereafter have the right upon conversion to receive, the kind and amount of shares of stock and other securities, cash and property receivable upon such recapitalization, reclassification or other change, by holders of the number of shares of Common Stock which the Holder of shares of Series A Preferred Stock would have received had it converted such shares immediately prior to such recapitalization, reclassification or other change, at the Conversion Ratio then in effect (the kind, amount and price of such stock and other securities to be subject to adjustments as herein provided). Prior to the consummation of any recapitalization, reclassification or other change contemplated hereby, the Corporation will make appropriate provision (in form and substance satisfactory to the Holders of a majority of the Series A Preferred Stock then outstanding) to ensure that each of the Holders of the Series A Preferred Stock will thereafter have the right to acquire and receive in lieu of or in addition to (as the case may be) the shares of Common Stock otherwise acquirable and receivable upon the conversion of such Holder's Series A Preferred Stock, such shares of stock, securities or assets that would have been issued or payable in such recapitalization, reclassification or other change with respect to or in exchange for the number of shares of Common Stock which would have been acquirable and receivable upon the conversion of such Holder's Series A Preferred Stock had such recapitalization, reclassification or other change not taken place (without taking into account any limitations or restrictions on the timing or amount of conversions). In the event of such recapitalization, reclassification or other change, the formulae set forth herein for conversion and redemption shall be equitably adjusted to reflect such change in number of shares or, if shares of a new class of stock are issued, to reflect the market price of the class or classes of stock (applying the same factors used in determining the Conversion Price for shares of Common Stock) issued in

NY2-623164 v3                          4

EXHIBIT B
PAGE 60

connection with the above described events.

(d) Reorganization. If at any time or from time to time after the Issuance Date there is a capital reorganization of the Common Stock (other than a recapitalization, subdivision, combination, reclassification or exchange of shares provided for elsewhere in this Section 4) then, as a part of such reorganization, provisions shall be made so that the Holders shall thereafter be entitled to receive, subject to a delay in delivery to Holders pursuant to Section 8 below, upon conversion of its shares of Series A Preferred Stock the number of shares of stock or other securities or property to which a holder of the number of shares of Common Stock deliverable upon conversion would have been entitled to receive had the holder of shares of Series A Preferred Stock converted such shares immediately prior to such capital reorganization, at the Conversion Ratio then in effect. In any such case, appropriate adjustments shall be made in the application of the provisions of this Section 4 with respect to the rights of the Holders after such capital reorganization to the extent that the provisions of this Section 4 shall be applicable after that event and be as equivalent as may be practicable, including, by way of illustration and not limitation, by equitably adjusting the formulae set forth herein for conversion and redemption to reflect the market price of the securities or property (applying the same factors used in determining the Conversion Price for shares of Common Stock) issued in connection with the above described events.

(e) Certain Events. If any event occurs of the type contemplated by the foregoing provisions of this Section 4 but not expressly provided for by such provisions, then the Corporation's Board of Directors will, subject to a delay in delivery to Holders pursuant to Section 8 below, make an appropriate adjustment in the Conversion Ratio so as to protect the rights of the holders of the Series A Preferred Stock; provided, however, that no such adjustment will decrease the Conversion Ratio as otherwise determined pursuant to this Section 4.

Section 5. Dividends.

(a) Except as otherwise provided in Section 5(b) below, the shares of Series A Preferred Stock shall not be entitled to any dividends in respect thereof unless and until the Board, in its discretion, so elects.

(b) The Corporation shall not declare or make any dividend or distribution with respect to Common Stock, unless each holder of Series A Preferred Stock concurrently receives dividends or distributions equal in amount and in the same kind of property (whether cash, securities or other property) as such holder would be entitled to receive if all of the outstanding Series A Preferred Stock were converted into Common Stock as of the record date of such dividend or distribution with respect to Common Stock.

(c) No cash dividends may be paid, or funds set apart for payment, on shares of any class of Junior Securities until all accrued dividends on the Series A Preferred Stock have been paid in full or declared and funds set apart for payment thereof in full. "Junior Securities" means the Common Stock and all other equity securities of the Corporation

NY2-623164 v3                              5

EXHIBIT B
PAGE 61

which are junior in rights and liquidation preference to the Series A Preferred Stock.

Section 6. *Redemption by the Corporation.*

(a) On the date that occurs two years after the Issuance Date (the "Optional Redemption Date"), the Corporation may redeem all (but not less than all) of the then outstanding shares of the Series A Preferred Stock by paying in cash the Series A Redemption Price (as defined below) to each Holder; provided that the Corporation has given notice of its intention to redeem the Series A Preferred Stock in accordance with Section 6(b) below.

(b) Notice of the Corporation's intention to redeem the Series A Preferred Stock under this Section 6 shall, as a condition thereto, be given at least 30 days prior to the Optional Redemption Date by facsimile, followed within twenty-four (24) hours by notice via overnight courier, to the Holders. Each such notice shall be irrevocable and shall state: (i) the Optional Redemption Date; (ii) the place or places where the stock certificates representing the Series A Preferred Stock are to be surrendered for payment of the redemption price, which may be the Corporation's principal offices; and (iii) the Series A Redemption Price and the calculation of such price (the "Redemption Notice"). On the Optional Redemption Date, the Corporation shall pay the applicable Series A Redemption Price. Notwithstanding anything to the contrary in the foregoing, after a Redemption Notice has been given pursuant to this subsection (b), each Holder shall retain the right to elect to convert its shares of Series A Preferred Stock, in whole or in part, into shares of Common Stock pursuant to Section 3 above, in lieu of such redemption by delivering the applicable Conversion Notice prior to the Optional Redemption Date.

(c) Each certificate representing shares of Series A Preferred Stock redeemed by the Corporation pursuant to this Section 6 shall, on the applicable redemption date be canceled and retired by the Corporation. Upon payment of the applicable redemption price, the shares of Series A Preferred Stock formerly represented thereby shall be deemed to be canceled and shall no longer be considered to be issued and outstanding for any purpose, including without limitation, for purposes of accumulating dividends thereon. Such Holder shall deliver, as promptly as is practicable, to the Corporation the certificate or certificates representing redeemed shares of Series A Preferred Stock via overnight courier, or notify the Corporation that such certificate(s) has been lost, stolen or destroyed, as set forth in Section 13 below.

(d) If the Corporation for any reason fails to redeem any of the shares of the Series A Preferred Stock as required pursuant to this Section 6 on or prior to the applicable redemption date, then, notwithstanding anything to the contrary contained herein and in addition to any other remedies herein provided to the Holders, the unpaid portion of the Series A Redemption Price shall accrue interest at the rate of 8.0% per annum, payable monthly in cash to the applicable Holder. So long as any such failure remains unremedied, the Holder of the Series A Preferred Stock shall have all of the rights it would otherwise have had in the absence of the Corporation's having given the

NY2-623164 v3                                6

Redemption Notice.

(e) So long as any Series A Preferred Stock shall remain outstanding, neither the Corporation nor any subsidiary thereof shall redeem, purchase or otherwise acquire otherwise than upon conversion or exchange directly or indirectly any Junior Securities, nor shall the Corporation directly or indirectly pay or declare any dividend or make any distribution (other than a dividend or distribution described in Section 5) upon, nor shall any distribution be made in respect of, any Junior Securities, nor shall any monies be set aside for or applied to the purchase or redemption (through a sinking fund or otherwise) of any Junior Securities, unless consented to by the holders of a majority of the Series A Preferred Stock.

(f) As used herein, the "Series A Redemption Price" shall mean, at any time, an amount per share equal to the market price of the Common Stock at the time of redemption multiplied by the Conversion Ratio plus any unpaid amounts due thereon as provided in Section 6(d) above. The market price shall be the trailing ten (10) day average of the Common Stock as quoted on the OTC Bulletin Board or, if applicable, as listed on one of the following markets or exchanges: the Nasdaq SmallCap Market, the American Stock Exchange, the New York Stock Exchange or the Nasdaq National Market.

Section 7. *Rank; Liquidation.* The Series A Preferred Stock shall rank, with respect to the payment of dividends and the distribution of assets, senior to the Junior Securities. The Holders of Series A Preferred Stock, in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, shall be entitled to receive in cash out of the assets of the Corporation, whether from capital or from earnings available for distribution to its stockholders (the "Preferred Funds"), before any amount shall be paid to the holders of any Common Stock or any other Junior Securities, an amount per share of Series A Preferred Stock equal to the original purchase price per share plus accrued and unpaid dividends (the "Liquidation Value"); provided that if (i) the Preferred Funds are insufficient to pay the full amount due to the Holders, then each Holder shall receive a ratable percentage of the Preferred Funds in accordance with the respective amounts that would be payable in full to such holder as a liquidation preference and (ii) in such event, the As-Converted Liquidation Amount is greater than the Liquidation Value, then the holders of the Series A Preferred Stock shall be entitled to receive the As-Converted Liquidation Amount in lieu of the Liquidation Value. The "As-Converted Liquidation Amount" means the amount per share of Series A Preferred Stock that the Holders would receive as a pro rata share of the assets of the Corporation legally available for distribution determined on an as-converted to Common Stock basis based on the Conversion Ratio at the time in effect for the Series A Preferred Stock and number of other shares of Common Stock then outstanding.

Section 8. *Limitation on Beneficial Ownership.* Notwithstanding anything to the contrary contained in this Certificate of Designation, no Holder of Series A Preferred Stock shall have the right to receive, and the Corporation shall not issue to any Holder, any securities as a dividend or distribution, or upon conversion or redemption of the

NY2-623164 v3                                    7

Series A Preferred Stock, to the extent that, upon giving effect to such issuance, the aggregate number of shares of Common Stock beneficially owned by such Holder and its affiliates would exceed 9.5% of the total outstanding shares of Common Stock following such issuance. Any such issuance shall be limited to an amount of shares as shall not exceed such percentage, and the issuance of the remaining shares shall be delayed (without compounding, increasing, creating or accelerating any obligation of the Corporation to the applicable Holder under this Certificate of Designation), and such shares shall not be considered outstanding, until (and only until) the conditions set forth at the end of this Section 8 are satisfied. For purposes of the foregoing, the aggregate number of shares of Common Stock beneficially owned by the Holder and its affiliates shall include the number of shares of Common Stock issuable upon conversion of the Series A Preferred Stock with respect to which the determination of such proviso is being made, but shall exclude the number of shares of Common Stock which would be issuable upon (i) conversion of the remaining, nonconverted shares of Series A Preferred Stock beneficially owned by the Holder and its affiliates and (ii) exercise or conversion of the unexercised or unconverted portion of any other securities of the Corporation (including, without limitation, any warrants or convertible preferred stock) subject to a limitation on conversion or exercise analogous to the limitation contained herein beneficially owned by the Holder and its affiliates. Except as set forth in the preceding sentence, for purposes of this Section 8, beneficial ownership shall be calculated in accordance with Section 13(d) of the Exchange Act, as amended. For purposes of this Section 8, in determining the number of outstanding shares of Common Stock, a Holder may rely on the number of outstanding shares of Common Stock as reflected in (1) the Corporation's most recent Form 10-Q or Form 10-K, as the case may be, (2) a more recent public announcement by the Corporation or (3) any other notice by the Corporation or its transfer agent setting forth the number of shares of Common Stock outstanding. Upon the written request of any Holder, the Corporation shall promptly, but in no event later than one (1) business day following the receipt of such request, confirm in writing to any such Holder the number of shares Common Stock then outstanding. In any case, the number of outstanding shares of Common Stock shall be determined after giving effect to the conversion or exercise of securities of the Corporation, including the Series A Preferred Stock, by such Holder and its affiliates since the date as of which such number of outstanding shares of Common Stock was reported. If at any time, a Holder is unable to receive shares of Common Stock as a result of this Section 8, then it shall be entitled to receive such Common Stock at such subsequent time as it notifies the Corporation in writing that its receipt of such Common Stock is permitted hereunder. By written notice to the Corporation, any Holder may waive the provisions of this Section 8 solely with respect to its own holdings, but any such waiver will not be effective until the 61st day after such notice is delivered to the Corporation.

Section 9. *Fractional Shares.* No fractional shares of Common Stock or scrip representing fractional shares of Common Stock shall be issuable hereunder and the Corporation shall pay cash in an amount equal to the value of the fractional share of Common Stock to which any holder would otherwise be entitled.

NY2-623164 v3                              8

EXHIBIT B
PAGE 64

Section 10. *Reservation of Stock.* The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock such number of shares of Common Stock as shall be necessary for the purpose of effecting the conversion of shares of Series A Preferred Stock and for the payment of any dividends in shares of registered Common Stock, which shares shall be free of preemptive rights, for the purpose of enabling the Corporation to satisfy any obligation to issue shares of its Common Stock, or other securities, upon conversion of all shares of Series A Preferred Stock pursuant hereto.

Section 11. *Taxes.* The Corporation shall pay any and all documentary, stamp or similar taxes attributable to the issuance and delivery of Common Stock or other securities upon conversion of the Series A Preferred Stock. However, the Corporation shall not be required to pay any tax which may be payable in respect to any transfer involved in the issue and delivery of shares of Common Stock upon conversion in a name other than that in which the shares of the Series A Preferred Stock so converted were registered, and no such issue or delivery shall be made unless and until the person requesting such issue or delivery has paid to the Corporation the amount of any such tax, or has established, to the satisfaction of the Corporation, that such tax has been paid. The Corporation shall not be required to pay any income tax upon the issuance of Common Stock in lieu of cash payment of dividends or redemption payments.

Section 12. *No Impairment.* The Corporation shall not intentionally take any action which would impair the rights and privileges of the Series A Preferred Stock set forth herein or the rights of the Holders thereof. The Corporation will not, by amendment of its certificate of incorporation or through any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Corporation, but will at all times in good faith assist in the carrying out of all the provisions herein and in the taking of all such action as may be necessary or appropriate in order to protect the Conversion Rights of the holders of the Series A Preferred Stock against impairment.

Section 13. *Replacement Certificate.* In the event that any Holder notifies the Corporation that a stock certificate evidencing shares of Series A Preferred Stock has been lost, stolen, destroyed or mutilated, the Corporation shall issue a replacement stock certificate evidencing the Series A Preferred Stock identical in tenor and date (or if such certificate is being issued for shares not covered in a redemption or conversion, in the applicable tenor and date) to the original stock certificate evidencing the Series A Preferred Stock, provided that the Holder executes and delivers to the Corporation an affidavit of lost stock certificate and an agreement reasonably satisfactory to the Corporation to indemnify the Corporation from any loss incurred by it in connection with such Series A Preferred Stock stock certificate; provided, however, the Corporation shall not be obligated to re-issue replacement stock certificates if the Holder contemporaneously requests the Corporation to convert or redeem the full number of shares evidenced by such lost, stolen, destroyed or mutilated certificate.

NY2-623164 v3

9

Section 14. *Amendment.* The certificate of incorporation of the Corporation shall not be amended, including any amendment through consolidation, merger, combination or other transaction, in any manner which would materially alter or change the powers, preferences or special rights of the Series A Preferred Stock so as to affect them adversely without the affirmative vote of the holders of at least a majority of the outstanding shares of Series A Preferred Stock, voting together as a single class.

IN WITNESS WHEREOF, the Corporation has caused this Certificate of Designation to be duly executed by an officer thereunto duly authorized this 31st day of May, 2005.

INNOFONE.COM, INCORPORATED

By: _____

Name: Alex Lightman
Title: Chief Executive Officer

NY2-523164 v3

11

**EXHIBIT 1**

**CONVERSION NOTICE**

Reference is made to the Certificate of Designation of the Series A Preferred Stock (the "Certificate of Designation") of Innofone.com, Incorporated, a Nevada corporation (the "Corporation"). In accordance with and pursuant to the Certificate of Designation, the undersigned hereby elects to have the Corporation convert the number of shares of Series A Convertible Preferred Stock, par value $0.01 per share (the "Series A Preferred Stock"), of the Corporation, indicated below into shares of Common Stock, par value $0.001 per share (the "Common Stock"), of the Corporation, by tendering the stock certificate(s) representing the share(s) of Series A Preferred Stock specified below as of the date specified below.

Date of Conversion: _____

Number of Series A
Preferred Stock to be converted: _____

Stock certificate no(s). of Series A
Preferred Stock to be converted: _____

Please confirm the following information:

Conversion Ratio: _____

Shares of Common Stock: _____
_____

Please issue the Common Stock into which the Series A Preferred Stock are being converted and, if applicable, any check drawn on an account of the Corporation in the following name and to the following address:

Issue to: _____

Facsimile Number: _____

Authorization: _____

By: _____

Title: _____

NY2-623164 v3

**EXHIBIT B**
**PAGE 68**

## APPENDIX B

### FORM OF COMPANY COUNSEL OPINION

NY2-623258 v5

# GERSTEN SAVAGE LLP

600 LEXINGTON AVENUE
NEW YORK NY 10022-6018
T: 212-752-9700
F: 212-980-5192
INFO@GSKNY.COM
WWW.GSKNY.COM

June 2, 2006

Cogent Capital Financial LLC
1144 South 1780 East
Sandy, Utah 84092
Attn: Gregory L. Kofford, Senior Principal

      Re:    Innofone.com, Incorporated

Ladies and Gentlemen:

We have acted as counsel to Innofone.com, Incorporated, a Nevada corporation (the "Company"), in connection with the Equity Swap Transaction Term Sheet, the ISDA Master Agreement, the Swap Confirmation, the Credit Support Annex, a Securities Purchase Agreement, the Warrant, a Registration Rights Agreement and the Escrow Agreement, each dated as of June 2, 2006, between you and the Company (the "Agreements") and the transactions contemplated therein (the "Swap Transaction"). Capitalized terms used herein and not otherwise defined herein shall have the respective meanings assigned to such terms in the Agreements.

In so acting, we have examined (i) the Agreements, (ii) the Company's Articles of Incorporation, as in effect on the date hereof (the "Articles of Incorporation"), and (iii) the Company's Bylaws, as in effect on the date hereof (the "Bylaws"), (iv) the Company's Unanimous Written Consent approving the Swap Transaction and the Company's entering into the Agreement and we have examined and considered such corporate records, certificates and matters of law as we have deemed appropriate as a basis for our opinions set forth below.

Based upon the foregoing and subject to the assumptions, limitations, qualifications and exceptions stated herein, we are of the opinion that as of the date hereof:

      1.    The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada. The Company is qualified to do business as a foreign corporation in good standing in all other jurisdictions in which it owns or leases real property. Each subsidiary of the Company has been duly organized or formed and is validly

AFFILIATED WITH WHITEMAN OSTERMAN & HANNA LLP | ONE COMMERCE PLAZA | ALBANY NY 12260 | T: 518-487-7600 F: 518-487-7777 | WWW.WOH.COM

**EXHIBIT B**
**PAGE 70**

# GERSTEN SAVAGE LLP

Cogent Capital Financial LLC
1144 South 1780 East
Sandy, Utah 84092
June 2, 2006

existing as a corporation, limited partnership, limited liability company or partnership, as the case may be, in good standing under the laws of its jurisdiction of organization or formation. Each subsidiary of the Company is qualified to do business as a foreign corporation, limited partnership, limited liability company or partnership, as the case may be, in good standing in all other jurisdictions in which it owns or leases real property. Each of the Company and its subsidiaries has all authority to own, lease, license and operate its properties and assets and to conduct its business as described in the Private Placement Memorandum.

2.    The Company's authorized and outstanding capital stock as of May 31, 2006 is as set forth in the Company's 10-Q for the quarter ended March 31, 2006; there have been no changes in the outstanding capital stock of the Company since that date except to the extent that the Company issued 750,000 warrants to NIR in May 2006 pursuant to their settlement agreement and that certain outstanding options and warrants set forth in the footnotes thereto may have been exercised. The authorized and outstanding capital stock of the Company conforms in all material respects as to legal matters to the description thereof in the Company's 10-K for the year ended December 31, 2005.

3.    All of the outstanding shares of capital stock of the Company have been duly authorized and validly issued and are fully paid and nonassessable and were not issued in violation of or subject to any preemptive or similar rights. All of the issued and outstanding shares of capital stock of each subsidiary of the Company have been duly authorized and validly issued, and are fully paid and nonassessable and were not issued in violation of or subject to any preemptive or similar rights. The issued shares of capital stock of each of the Company's subsidiaries are owned of record, directly or indirectly, by the Company free and clear of any and all liens, charges, claims, security interests or encumbrances.

4.    The Securities as defined in the Securities Purchase Agreement have been duly authorized and, when issued and delivered to you or your affiliate against payment therefor in accordance with the terms of the Securities Purchase Agreement, will be validly issued, fully paid and nonassessable and free of any preemptive or similar rights.

5.    The form of the certificates for the Securities conforms to the requirements of Nevada Corporation Law.

6.    The Company has full corporate power and authority to enter into the Agreements, to execute and file the Certificate of Designations (collectively, with the Agreements, the "Transaction Documents"), and to issue, sell and deliver the Securities to you and your affiliate as provided in the Purchase Agreement, and the Transaction Documents have been duly authorized, executed and delivered by the Company and are the legal, valid and binding obligations of the Company, enforceable against the Company in accordance with their terms.

EXHIBIT B
PAGE 71

# GERSTEN SAVAGE LLP

Cogent Capital Financial LLC
1144 South 1780 East
Sandy, Utah 84092
June 2, 2006

7.      The Company's execution, delivery and performance of the Transaction Documents do not and will not (i) violate the Articles of Incorporation or Bylaws of the Company or any of its subsidiaries, (ii) violate, result in a breach of or constitute a default (alone or with notice or passage of time or both) any agreement, indenture, lease or other instrument to which the Company or any of its subsidiaries is a party or by which any of them or any of their respective properties or assets is bound or subject that is made an exhibit to the Company's Annual Report on Form 10-K for the year ended December 31, 2005 (the "Form 10-K") any Quarterly Report on Form 10-Q or any Current Report on Form 8-K filed by the Company subsequent to the filing of the Form 10-K or otherwise is known to us, (iii) result in the creation or imposition of any lien, charge, claim, security interest or encumbrance upon any property or assets of the Company or any of its subsidiaries under such agreements, indentures, leases and other instruments, or (iv) result in any violation of any existing federal, Nevada corporate law, regulation or ruling applicable to the Company or any of its subsidiaries (assuming compliance with all applicable state securities and blue sky laws, the Securities Act of 1933, as amended (the "Securities Act"), and the Securities Exchange Act of 1934, as amended, or any judgment, injunction, order or decree known to us after reasonable inquiry to be applicable to the Company, any of its subsidiaries or any of their respective properties or assets.

8.      No consent, approval, authorization or order of, or registration or filing with any federal or Nevada corporate governmental authority is required on the part of the Company for the performance by the Company of its obligations at the closing of the transactions contemplated by the Transaction Documents, except as may be required under the Securities Act or such as may be required under the state securities or blue sky laws governing the purchase and distribution of the Shares in connection with the purchase and sale of the Shares.

9.      To our knowledge, there are no actions, suits, arbitrations, claims, governmental or other proceedings or investigations pending or threatened against the Company or any of its subsidiaries or any of their respective operations, businesses, properties or assets which challenge the validity of any actions taken or to be taken by the Company pursuant to the Transaction Documents or the transactions contemplated thereby.

10.     To our knowledge, no holders of securities of the Company have rights, which have not been waived or complied with, to the registration of shares of Common Stock or other securities of the Company because of the filing of any registration statement contemplated by the Transaction Documents or any offering of shares thereunder.

11.     The Company is not an "investment company" as such term is defined in the Investment Company Act of 1940, as amended.

12.     Assuming the accuracy of the representations and warranties of the Purchaser and the Company made in the Purchase Agreement, and the compliance with the terms thereof, the offer and sale of the Shares is exempt from the registration requirements of the Act,

EXHIBIT B
PAGE 72

# GERSTEN SAVAGE LLP

Cogent Capital Financial LLC
1144 South 1780 East
Sandy, Utah 84092
June 2, 2006

subject to the timely filing by the Company of a Form D pursuant to Regulation D promulgated by the Securities and Exchange Commission under the Act.

These opinions are limited to the matters expressly stated herein and are rendered solely for your benefit and may not be quoted or relied upon for any other purpose or by an other person.

The opinions expressed herein are subject to the following assumptions, limitations, qualifications and exceptions:

We have assumed the genuineness of all signatures, the authenticity of all Agreements submitted to us as originals, the conformity with originals of all Agreements submitted to us as copies, the authenticity of certificates of public officials and the due authorization, execution and delivery of all Agreements (except the due authorization, execution and delivery by the Company of the Agreements).

We have assumed that each of the parties to the Agreements other than the Company (the "Other Parties") has the legal right, capacity and power to enter into, enforce and perform all of its obligations under the Agreements. Furthermore, we have assumed the due authorization by each of the Other Parties of all requisite action and the due execution and delivery of the Agreements by each of the Other Parties, and that the Agreements are valid and binding upon each of the Other Parties and are enforceable against each Other Party in accordance with their terms.

As used in this opinion, the expression "to our knowledge" refers to the current actual knowledge of the attorneys of this firm who have worked on matters for the Company solely in connection with the Agreements and the transactions contemplated thereby, and without any independent investigation of any underlying facts or situations.

Our examination of law relevant to the matters covered by this opinion is limited to the Nevada Business Corporation Act, the State of New York and the federal law of the United States, and we express no opinion as to the effect on the matters covered by this opinion of the laws of any other jurisdiction. In furnishing the opinion regarding the valid existence and good standing of the Company, we have relied solely upon a good standing certificate issued by the Secretary of State of Nevada on May 31, 2006. We do not purport to be experts in, or to express any opinion herein concerning, the law of any jurisdiction other than the laws of the State of New York, the corporate laws of the State of Nevada and the laws of the United States of America. To the extent that any relevant documents are governed by laws other than those of the State of New York, the corporate laws of the State of Nevada or the laws of the United States of America, we have rendered our opinion with respect solely to the laws of the State of New York and the corporate laws of the State of Nevada and/or the laws of the United States of America, as applicable.

EXHIBIT B
PAGE 73

# GERSTEN SAVAGE LLP

Cogent Capital Financial LLC
1144 South 1780 East
Sandy, Utah 84092
June 2, 2006


       This opinion is given as of the date hereof and we assume no obligation, to update or supplement this opinion to reflect any facts or circumstances which may hereafter come to our attention or any changes in laws which may hereafter occur.

       Sincerely,


       GERSTEN SAVAGE LLP

## APPENDIX C

### DISCLOSURE SCHEDULES

## NONE

NY2-623258 v5