

International Swaps and Derivatives Association, Inc.

# SCHEDULE
# to the
# 2002 Master Agreement

dated as of June 2, 2006

| between | Cogent Capital Financial LLC ("Party A") | and | Innofone.com, Incorporated ("Party B") |
|---|---|---|---|
| | *established as a Limited Liability Company under the laws of Delaware* | | *established as a corporation under the laws of Nevada* |

**Part 1. Termination Provisions.**

(a)  **"*Specified Entity*"** means in relation to Party A for the purpose of:—

　　Section 5(a)(v),　　Affiliate..................................................................................................
　　Section 5(a)(vi),　　Affiliate..................................................................................................
　　Section 5(a)(vii),　　Affiliate..................................................................................................
　　Section 5(b)(v),　　Affiliate..................................................................................................

　　　　and in relation to Party B for the purpose of:—

　　Section 5(a)(v),　　Affiliate..................................................................................................
　　Section 5(a)(vi),　　Affiliate..................................................................................................
　　Section 5(a)(vii),　　Affiliate..................................................................................................
　　Section 5(b)(v),　　Affiliate..................................................................................................

(b)   *"Specified Transaction"* will have the meaning specified in Section 14 of this Agreement.

(c)   The *"Cross-Default"* provisions of Section 5(a)(vi) will apply to Party A
                                                                will apply to Party B

*"Specified Indebtedness"* will have the meaning specified in Section 14 of this Agreement.

*"Threshold Amount"* means $0.00 (zero dollars).

(d)   The *"Credit Event Upon Merger"* provisions of Section 5(b)(v) will not apply to Party A
                                                                            will not apply to Party B

(e)   The *"Automatic Early Termination"* provision of Section 6(a) will not apply to Party A
                                                                       will not apply to Party B

(f)   *"Termination Currency"* will have the meaning specified in Section 14 of this Agreement.

(g)   *Additional Termination Event* will apply. Any Additional Termination Event and the Affected Party or Parties with respect thereto shall be specified in a Confirmation executed by the Parties.

Part 2.   **Tax Representations.**

(a)   *Payer Representations.* For the purpose of Section 3(e) of this Agreement, Party A and Party B do not make any representations.

(b)   *Payee Representations.* For the purpose of Section 3(f) of this Agreement, Party A and Party B do not make any representations.

Part 3.   **Agreement to Deliver Documents.**

For the purpose of Sections 4(a)(i) and 4(a)(ii) of this Agreement, each party agrees to deliver the following documents, as applicable:—

(a)   Tax forms, documents or certificates to be delivered are: none

(b)   Other documents to be delivered are: Certified board resolutions authorizing (i) the 2002 ISDA Master Agreement by and between Party A and Party B, (ii) 1994 ISDA Credit Support Annex by and between Party A and Party B, dated June 2, 2006, (iii) equity swap evidenced by the Confirmation by and between Party A and Party B, dated June 2, 2006 and (iv) the Escrow Agreement, dated as of June 2, 2006, by and among Party A, Party B and Investors Bank & Trust Company. Opinion of counsel of Party B in the form and covering the matters specified in Exhibit A herein.

Part 4.   **Miscellaneous.**

(a)   *Addresses for Notices.* For the purpose of Section 12(a) of this Agreement:—

Address for notices or communications to Party A:—

Address: PO Box 1362, Draper, UT 84020

Attention: Greg Kofford

Facsimile No.: 801-576-0583   Telephone No.: 801-523-6063

E-mail: gkofford@cogent-capital.com

Electronic Messaging System Details: ......................................................................................

Specific Instructions: ..................................................................................................................................

Address for notices or communications to Party B:—

Address: 1431 Ocean Avenue, Suite 1500, Santa Monica, CA 90401

Attention: Alex Lightman, Chief Executive Office

Facsimile No.: 310-458-2844   Telephone No.: 310-393-4357

E-mail: alex@usipv6.com

Electronic Messaging System Details: ........................................................................................................

Specific Instructions: ..................................................................................................................................

(b) *Process Agent.* For the purpose of Section 13(c) of this Agreement:—

Party A appoints as its Process Agent: not applicable.

Party B appoints as its Process Agent: To be provided.

(c) *Offices.* The provisions of Section 10(a) will apply to this Agreement.

(d) *Multibranch Party.* For the purpose of Section 10(b) of this Agreement:—

Party A is not a Multibranch Party.

Party B is not a Multibranch Party

(e) *Calculation Agent.* The Calculation Agent is Party A.

(f) *Credit Support Document.* Details of any Credit Support Documents: (i) 1994 ISDA Credit Support Annex by and between Party A and Party B, dated June 2, 2006 and (ii) the Escrow Agreement, dated as of June 2, 2006, by and among Party A, Party B, Cogent Capital Investments LLC and Investors Bank & Trust Company.

(h) *Governing Law.* This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine).

(i).... *Netting of Payments.* "Multiple Transaction Payment Netting" will apply for the purpose of Section 2(c) of this Agreement to all Transactions.

(j) "*Affiliate*" will have the meaning specified in Section 14 of this Agreement.

(k) *Absence of Litigation.* For the purpose of Section 3(c):—

"*Specified Entity*" means in relation to Party A, any Affiliate.

"*Specified Entity*" means in relation to Party B, any Affiliate.

(l) *Accuracy of Specified Information.* The representation in Section 3(d) shall be deemed to be made to the best knowledge of the party making such representations.

`(m) *No Agency.* The provisions of Section 3(g) will apply to this Agreement.

(n) *Additional Representation* will apply. For the purpose of Section 3 of this Agreement, the following will constitute an Additional Representation:—

(i) *Relationship Between Parties.* Each party will be deemed to represent to the other party on the date on which it enters into a Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for that Transaction):—

    (1) *Non-Reliance.* It is acting for its own account, and it has made its own independent decisions to enter into that Transaction and as to whether that Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into that Transaction, it being understood that information and explanations related to the terms and conditions of a Transaction will not be considered investment advice or a recommendation to enter into that Transaction. No communication (written or oral) received from the other party will be deemed to be an assurance or guarantee as to the expected results of that Transaction.

    (2) *Assessment and Understanding.* It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of that Transaction. It is also capable of assuming, and assumes, the risks of that Transaction.

    (3) *Status of Parties.* The other party is not acting as a fiduciary for or an adviser to it in respect of that Transaction.

(ii) *Confidential Information.* Party B represents, warrants and agrees that, so long as any Transaction is outstanding, it will not provide to Party A or any of its affiliates any material nonpublic information regarding Party B or its subsidiaries.

(o) *Recording of Conversations.* Each party (i) consents to the recording of telephone conversations between the trading, marketing and other relevant personnel of the parties in connection with this Agreement or any potential Transaction, (ii) agrees to obtain any necessary consent of, and give any necessary notice of such recording to, its relevant personnel and (iii) agrees, to the extent permitted by applicable law, that recordings may be submitted in evidence in any Proceedings.

Cogent Capital Financial LLC

By: ...........*[signature]*...........
    Name: Gregory L. Kofford
    Title: Senior Principal
    Date: June 2, 2006

Innofone.com, Incorporated

By: ...........*[signature]*...........
    Name: Alex Lightman
    Title: Chief Executive Office
    Date: June 2, 2006

## EXHIBIT A
## OPINION REQUEST
## FOR COMPANY COUNSEL

1.  The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada. The Company is qualified to do business as a foreign corporation in good standing in all other jurisdictions in which it owns or leases real property. Each subsidiary of the Company has been duly organized or formed and is validly existing as a corporation, limited partnership, limited liability company or partnership, as the case may be, in good standing under the laws of its jurisdiction of organization or formation. Each subsidiary of the Company is qualified to do business as a foreign corporation, limited partnership, limited liability company or partnership, as the case may be, in good standing in all other jurisdictions in which it owns or leases real property. Each of the Company and its subsidiaries has all authority to own, lease, license and operate its properties and assets and to conduct its business as described in the Private Placement Memorandum.

2.  The Company's authorized and outstanding capital stock as of _____ __, 200_ is as set forth in the _____; there have been no changes in the outstanding capital stock of the Company since that date except to the extent that certain outstanding options and warrants set forth in the footnotes thereto may have been exercised. The authorized and outstanding capital stock of the Company conforms in all material respects as to legal matters to the description thereof incorporated by reference into the Private Placement Memorandum.

3.  All of the outstanding shares of capital stock of the Company have been duly authorized and validly issued and are fully paid and nonassessable and were not issued in violation of or subject to any preemptive or similar rights. All of the issued and outstanding shares of capital stock of each subsidiary of the Company have been duly authorized and validly issued, and are fully paid and nonassessable and were not issued in violation of or subject to any preemptive or similar rights. The issued shares of capital stock of each of the Company's subsidiaries are owned of record, directly or indirectly, by the Company free and clear of any and all liens, charges, claims, security interests or encumbrances.

4.  The Shares have been duly authorized and, when issued and delivered to the Investors against payment therefor in accordance with the terms of the Purchase Agreements, will be validly issued, fully paid and nonassessable and free of any preemptive or similar rights.

5.  The form of the certificates for the Shares conforms to the requirements of Nevada Corporation Law.

6.  The Company has full corporate power and authority to enter into the Purchase Agreement, the ISDA Master Agreement, the Swap Confirmation, the Credit Support Annex, the Escrow Agreement, the Warrant and the Registration Rights Agreement, to execute and file the Certificate of Designations (collectively, the "Transaction Documents"), and to issue, sell and deliver the Shares to the Investor as provided in the Purchase Agreement, and the Transaction Documents have been duly authorized, executed and delivered by the Company and are the legal, valid and binding obligations of the Company, enforceable against the Company in accordance with their terms.

7.  The Company's execution, delivery and performance of the Transaction Documents do not and will not (i) violate the Certificate of Incorporation or Bylaws of the Company or any of its subsidiaries, (ii) violate, result in a breach of or constitute a default (alone or with notice or passage of time or both) any agreement, indenture, lease or other instrument to which the Company or any of its subsidiaries is a party or by which any of them or any of their respective properties or assets is bound or subject that is made an exhibit to the Company's Annual Report on Form 10-K for the [fiscal] year ended _____ __, 200_ (the "Form 10-K"), any Quarterly Report on Form 10-Q or any Current Report on Form 8-K filed by the Company subsequent to the filing of the Form 10-K or otherwise is known to us, (iii) result in the creation or imposition of any lien, charge, claim, security interest or encumbrance upon any property or assets of the Company or any of its subsidiaries under such agreements, indentures, leases and other instruments, or (iv) result in any violation of any existing federal, Delaware corporate

EXHIBIT H
PAGE 164

NY2-623169 v5

law, regulation or ruling applicable to the Company or any of its subsidiaries (assuming compliance with all applicable state securities and blue sky laws, the Securities Act of 1933, as amended (the "Securities Act"), and the Securities Exchange Act of 1934, as amended, or any judgment, injunction, order or decree known to us after reasonable inquiry to be applicable to the Company, any of its subsidiaries or any of their respective properties or assets.

       8.     No consent, approval, authorization or order of, or registration or filing with any federal or [insert applicable state] corporate governmental authority is required on the part of the Company for the performance by the Company of its obligations at the closing of the transactions contemplated by the Transaction Documents, except as may be required under the Securities Act or such as may be required under the state securities or blue sky laws governing the purchase and distribution of the Shares in connection with the purchase and sale of the Shares.

       9.     To our knowledge, there are no actions, suits, arbitrations, claims, governmental or other proceedings or investigations pending or threatened against the Company or any of its subsidiaries or any of their respective operations, businesses, properties or assets which challenge the validity of any actions taken or to be taken by the Company pursuant to the Transaction Documents or the transactions contemplated thereby.

      10.    To our knowledge, no holders of securities of the Company have rights, which have not been waived or complied with, to the registration of shares of Common Stock or other securities of the Company because of the filing of any registration statement contemplated by the Transaction Documents or any offering of shares thereunder.

      11.    The Company is not an "investment company" as such term is defined in the Investment Company Act of 1940, as amended.

      12.    Assuming the accuracy of the representations and warranties of the Purchaser and the Company made in the Purchase Agreement, and the compliance with the terms thereof, the offer and sale of the Shares is exempt from the registration requirements of the Act, subject to the timely filing by the Company of a Form D pursuant to Regulation D promulgated by the Securities and Exchange Commission under the Act.