UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
Cogent Capital Financial LLC and Cogent Capital
Investments LLC,                                    :

                Plaintiffs,                   :
                                                  **ECF CASE**
        - against -                           :
                                                 No. 07 Civ. 2701 (JSR)
Innofone.com, Incorporated,              :

                Defendant.                    :
------------------------------------------------------------------ x
Innofone.com, Incorporated,              :

                Plaintiff,                     :   **ECF CASE**
        - against -                           :   No. 07 Civ. 3966 (JSR)

Cogent Capital Financial LLC, Cogent Capital      :   DECLARATION OF ARTHUR S.
Investments LLC, Cogent Capital Group LLC,            MARCUS IN SUPPORT OF
Gregory L. Kofford, Mark W. Holden, and Investors :   PLAINTIFF INNOFONE.COM,
Bank & Trust Company,                                 INCORPORATED'S MOTION FOR
                                               :   SUMMARY JUDGMENT
                Defendants.
------------------------------------------------------------------ x

I, Arthur S. Marcus, declare as follows:

1.     I am a member of Gersten Savage LLP, counsel for Innofone.com, Incorporated ("Innofone"), and am a member of the Bar of the State of New York. I make this declaration in support of Innofone's motion for summary judgment on the Second, Third, and Fifth Claims for Relief in this matter, brought for rescission based on illegality, rescission based on mutual mistake, and declaratory relief based on impossibility and failure of consideration. I have personal knowledge of the facts stated herein, and if called as a witness could testify competently thereto.

2.     I have been an attorney since 1989, and joined Gersten Savage in 1991. In the seventeen years I have been admitted to practice law, I have concentrated primarily on securities

law. I am Chairman of the firm's securities practice, and my practice has an emphasis on structuring financing transactions. I represent both issuers and underwriters in public and private securities offerings. I advise small- and medium-sized companies on corporate finance, Securities and Exchange Commission ("SEC") disclosure matters, corporate governance, and private and public offerings, including equity offerings and convertible offerings. I have been involved in numerous special purpose acquisition company offerings, and have represented investors in those entities. I also maintain contacts with numerous broker-dealers, regulators and venture capital firms. I have also been a lecturer in Canada on the subject of going public in the United States and related topics, including the SEC's position on Rule 415.

3. I have been the lead counsel on numerous public offerings and registration statements including most recently, Delcath Systems, Inc., Cyber Defense Systems, Inc., Phoenix International Ventures, Inc., SBD International, Inc., M Wise, Inc., Perfisans Holdings, Inc., Xfone, Inc., Jackson Rivers Co., Itronics, Inc., Titan Energy Worldwide, Inc., China Healthcare Acquisition Corp., Cyber Defense Systems, Inc., Western Power & Equipment Corp., and Encompass Holdings, Inc.

4. By agreement dated as of June 2, 2006, between Innofone on the one hand, and Cogent Capital Investments, LLC and Cogent Capital Financial, LLC (collectively, the "Cogent Entities") on the other (the "Securities Purchase Agreement," attached as Exhibit C to the Declaration of Alex Lightman), Innofone sold 1.85 million shares of its common stock and 4.815 million shares of its Series A convertible preferred stock to Cogent Capital Investments for $50 million in U.S. Treasury Bonds. The Series A convertible were convertible to common stock on a 10:1 basis. The transaction also included an equity swap, whereby the shares the stock would

be swapped for the Treasury Bonds. These documents memorializing that swap were executed by Innofone and Cogent Capital Financial, and dated as of June 2, 2006.[1]

5. The transaction contemplated by the Securities Purchase Agreement, and the accompanying documents executed that same day by the parties (as well as Investors Bank & Trust Company, as escrow agent), were premised on the SEC agreeing to the registration of the Innofone common stock sold by Innofone to the Cogent Entities.

6. Gersten Savage was retained by Innofone to assist Innofone in, among other things, registering the common stock issued to the Cogent Entities and the shares of common stock issuable upon conversion of the Series A issued to the Cogent Entities. At the time I was retained, I had been Innofone's outside securities counsel on a number of transactions and in connection with a number of registrations. I was familiar therefore with its business.

7. On July 19, 2006, and in amendments dated August 28, October 24, and December 8, Innofone sought to register shares of its common stock sold to the Cogent Entities, as well as the common stock which the Cogent Entities could convert their preferred stock into. A copy of those registration statements are attached as Exhibits R, T, EE, and FF to the Lightman Declaration.

8. In a series of comment letters from and discussions with the SEC staff, the SEC made clear that this transaction was unlike any the agency had seen before. During the comment process, the SEC indicated that the structure of the transaction was being reviewed at the highest levels before it would allow the registration statement to become effective. The Cogent Entities'

---

[1] Those agreements are: (a) the International Swaps and Derivatives Association, Inc. 2002 Master Agreement (attached as Exhibit E to the Lightman Declaration); (b) the Schedule thereto (attached as Exhibit F to the Lightman Declaration); (c) the Equity Swap Confirmation (attached as Exhibit G to the Lightman Declaration); (d) the Credit Support Annex (attached as Exhibit H to the Lightman Declaration), as well as the subsequent Confirmations dated November 1, 2006, and entitled respectively Equity Swap Transaction and Interest Rate Swap Transaction (attached as Exhibits K and L, respectively, to the Lightman Declaration).

principals, Gregory Kofford and Mark Holden, as well as the Cogent Entities' counsel, David H. Kaufman and Anna T. Pinedo, both partners at Morrison & Foerster, were intimately involved in all of the discussions with the SEC, and provided significant comments on Innofone's written responses to the SEC's comment letters.

9. It quickly became apparent that the SEC had a number of concerns. The SEC was concerned that the transaction never actually closed and that risk never really passed to the Cogent Entities. In this regard, the SEC stressed that there were issues regarding the transaction's compliance with Rule 415, primarily as a result of the equity swap. As far as the SEC was concerned, the equity swap essentially eliminated all risk to the Cogent Entities and made it impossible to determine how much money Innofone would ultimately receive for the securities that Cogent received.

10. The SEC also was concerned that the transaction was not a secondary offering by an investor, but a primary offering by an underwriter. There were other concerns expressed by the SEC as well.

11. In a series of responses to the comment letters, Innofone and the Cogent Entities tried to address each of these concerns. The SEC comment letters, and the responses, are attached as Exhibits S-Z, AA, BB, and DD to the Lightman Declaration.

12. On January 11, 2007, there was a conference call regarding the current registration statement. Those participating on behalf of the SEC included Linda Van Doorn, Senior Assistant Chief Accountant, Elaine Wolff, Legal Branch Chief, and David H. Roberts, Staff Attorney. Those participating on behalf of Cogent Entities included Messrs. Holden, Kofford, and Kaufman and Ms. Pinedo. Those participating on behalf of Innofone included myself and Messrs. Lightman and Casale.

13.     During the January 11 telephone call, the SEC made clear that their view was that the transaction as structured could not proceed as a secondary offering, but instead needed to be a primary offering, with the Cogent Entities as underwriters. The SEC also made clear that even if the transaction could pass muster on the primary offering issue, there may be issues regarding the transaction's compliance with Rule 415, because of the amount of shares that were being registered.

14.     During the January 11 conversation, the SEC repeated its prior position that this transaction was a novel one, that they were concerned with the precedent it might set, and that as a result, it would need to be scrutinized very carefully before the SEC would agree to registration.

15.     Indeed, in a letter dated January 18, 2007 to the SEC, the Cogent Entities agreed that the offering could be deemed a primary offering, and that they would become statutory underwriters, in the hope that this would allow the registration to be approved. A copy of that letter is attached as Exhibit AA to the Lightman Declaration.

16.     Unfortunately, this was not enough to satisfy the SEC. In subsequent comment letters, it became clear that the SEC viewed the swap agreement documents as problematic. As shown in their January 24 and March 9, 2007 comment letters (Exhibits DD and BB, respectively, to the Lightman Declaration), the SEC simply was not going to permit the registration statement to become effective as long as the swap agreement documents and its related transactions were part of the securities purchase agreements. The SEC also continued to be concerned that the transaction did not comply with Rule 415.

17.     The March 9, 2007 comment letter led me to the conclusion that the SEC was never going to approve the deal as structured. Innofone did everything within its power to obtain

SEC approval for the registration statement. In fact, even the Cogent Entities took the unusual step of writing to the SEC directly in its January 18, 2007 letter, asking that the SEC not unwind the deal, agreeing to have the transaction viewed as a primary offering, and agreeing to be deemed underwriters. The SEC's March 9 letter demonstrated that the agency had even rejected what Cogent had to offer.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  New York, New York
         June 1, 2007

                                                    Arthur S. Marcus