UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

Cogent Capital Financial LLC and Cogent Capital
Investments LLC,                                          :

                        Plaintiffs,          :

              - against -            :

Innofone.com, Incorporated,                              :

                   Defendant.          :

------------------------------------------------------------x

Innofone.com, Incorporated,                              :

                   Plaintiff,          :

              - against -            :

Cogent Capital Financial LLC, Cogent Capital          :
Investments LLC, Cogent Capital Group LLC,
Gregory L. Kofford, Mark W. Holden, and Investors     :
Bank & Trust Company,
                            :

                  Defendants.          :

------------------------------------------------------------x

**ECF CASE**

No. 07 Civ. 2701 (JSR)

**ECF CASE**

No. 07 Civ. 3966 (JSR)

# MEMORANDUM OF LAW IN SUPPORT
# OF THE COGENT PARTIES' MOTION
# TO DISMISS INNOFONE'S COMPLAINT

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
(212) 468-8000

*Attorneys for Cogent Capital Financial
LLC, Cogent Capital Investments LLC,
Cogent Capital Group LLC, Gregory L.
Kofford and Mark W. Holden*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................1

SUMMARY OF ARGUMENT ............................................................................2

STATEMENT OF RELEVANT FACTS ...............................................................2

ARGUMENT .........................................................................................................4

I.    THE FIRST CLAIM FOR RELIEF (SECTION 10(b)
      AND RULE 10b-5) SHOULD BE DISMISSED ..........................................4

      A.    The First Claim for Relief Should Be Dismissed
            Because Innofone Cannot Establish Justifiable
            Reliance as a Matter of Law ..........................................................4

      B.    The Alleged Misstatements Are Immaterial .................................8

      C.    Innofone Fails to Allege Facts Supporting a Strong Inference of
            Fraudulent Intent and, Therefore, Fails to Plead Scienter Adequately ..........10

            1.    Innofone Fails to Allege Facts That Constitute
                  Strong Circumstantial Evidence of Conscious
                  Misbehavior or Recklessness by the Cogent Parties...................11

            2.    Innofone Fails to Show That the Cogent Parties
                  Had Motive and Opportunity to Defraud.....................................12

                  a.    The Complaint Fails to Plead Motive and
                        Opportunity With Respect to the Corporate
                        Cogent Parties or CCG...............................................12

                  b.    The Complaint Fails to Plead Motive and Opportunity
                        With Respect to Messrs. Kofford or Holden .................13

      D.    The First Claim for Relief Should Be Dismissed
            for Failure to Plead With Particularity....................................14

II.   THE SECOND CLAIM FOR RELIEF (ILLEGALITY-BASED
      RESCISSION) SHOULD BE DISMISSED ......................................15

III.  THE THIRD CLAIM FOR RELIEF (RESCISSION BASED ON
      FRAUD OR MISTAKE) AND FOURTH CLAIM FOR RELIEF
      (NEGLIGENT MISREPRESENTATION) SHOULD BE DISMISSED..........18

      A.    The Third and Fourth Claims for Relief Should Be
            Dismissed Because the Merger Clauses Preclude
            Innofone From Establishing Justifiable Reliance .................18

      B.    The Third and Fourth Claims for Relief Should
            Be Dismissed for Failure to Plead With Particularity............19

## TABLE OF AUTHORITIES
(continued)

**Page**

1.    The Complaint Fails to Identify the Alleged
      Misstatements With Particularity.................................................................19

2.    The Complaint Fails to Show That the
      Alleged Misstatements Were False...............................................................20

3.    The Complaint Fails to Show That the Cogent
      Parties Acted Recklessly or With Fraudulent Intent....................................20

C.    The Third Claim for Relief Should Be Dismissed as Against
      Messrs. Kofford and Holden, and the Cogent Capital Group LLC
      Because They Are Not Parties to the Transaction Agreements.............................21

D.    The Third Claim for Relief Should Be Dismissed Because
      Innofone Cannot Show the Parties Were Mistaken as to a Material
      Fact at the Time of Contracting ...........................................................................22

IV.   THE FIFTH CLAIM FOR RELIEF SHOULD BE DISMISSED BECAUSE
      "DECLARATORY RELIEF" IS NOT A SUBSTANTIVE CAUSE OF ACTION .........24

ny-753184

## TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

15 U.S.C. § 78u-4(b)(1) ..........................................................................................14

15 U.S.C. § 78u-4(b)(2) ..........................................................................................10

Fed. R. Civ. P. 9(b) ...........................................................................14, 19, 20, 21

Fed. R. Civ. P. 12(b)(6)............................................................................................1


**Regulations**

17 C.F.R. § 230.144(d)(1) .......................................................................................16

17 C.F.R. § 230.144(k) ................................................................................16, 17, 18


**Cases**

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995)...............................................................11, 12, 13, 19, 20

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999).................................................................................11

*AIG Global Secs. Lending Corp. v. Banc of Am. Secs. LLC*,
    254 F. Supp. 2d 373 (S.D.N.Y. 2003)................................................................19

*Culver & Theisen, Inc. v. Starr Realty Co. (NE) LLC*,
    307 A.D.2d 910, 763 N.Y.S.2d 84 (2d Dep't 2003)...............................17, 18, 23

*Dafofin Holdings S.A. v. Hotelworks.com, Inc.*,
    No. 00 Civ. 7861 (LAP) 2001 WL 940632 (S.D.N.Y. Aug. 17, 2001)................7

*de la Fuente v. DCI Telecomms. Inc.*,
    206 F.R.D. 369 (S.D.N.Y. 2002) .......................................................................16

*In re Digital Islands Sec. Litig.*,
    357 F.3d 322 (3d Cir. 2004)................................................................................12

*Dresner v. Utility.com, Inc.*,
    371 F. Supp. 2d 476 (S.D.N.Y. 2005)..................................................................7

-iii-

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Group., Inc.*,
   165 F. Supp. 2d 615 (S.D.N.Y. 2001),
   *aff'd* 343 F.3d 189 (2d Cir. 2003) ......................................................................23

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
   343 F.3d 189 (2d Cir. 2003).............................................................6, 7, 8, 18, 19

*Goodman v. Goodman*,
   272 A.D. 1006, 74 N.Y.S.2d 78 (1st Dep't 1947) ............................................22

*Halperin v. Ebanker USA.com, Inc.*,
   295 F.3d 352 (2d Cir. 2002)....................................................................8, 9, 10

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996)...................................................4, 5, 6, 7, 8, 18, 19

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
   157 F.3d 933 (2d Cir. 1998)..............................................................................24

*In re Joint E. and S. Dist. Asbestos Litig.*,
   14 F.3d 726 (2d Cir. 1993)................................................................................24

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).................................................................10, 11, 12

*Kirton v. Nw. Mut. Life Ins. Co.*,
   No. 00-Cv-7646 (JS)(AKT), 2006 WL 3051772 (E.D.N.Y. Oct. 24, 2006) ...................21

*In re Leslie Fay Cos., Inc. Sec. Litig.*,
   918 F. Supp. 749 (S.D.N.Y. 1996) ...................................................................22

*Maalouf v. Salomon Smith Barney, Inc.*,
   02 Civ. 4770 (SAS), 2003 U.S. Dist. LEXIS 5913 (S.D.N.Y. Apr. 9, 2003)...................19

*McLean v. Alexander*,
   599 F.2d 1190 (3d Cir. 1979)............................................................................11

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993)........................................................................14, 19

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..............................................................................11

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
   98 F.3d 2 (2d Cir. 1996)....................................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page**

*Olsen v. Pratt & Whitney Aircraft,*
    136 F.3d 273 (2d Cir. 1998)........................................................................20

*Podany v. Robertson Stephens, Inc.,*
    350 F. Supp. 2d 375 (S.D.N.Y. 2004).........................................................14

*Sanders v. John Nuveen & Co., Inc.,*
    554 F.2d 790 (7th Cir. 1977) ......................................................................11

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994)......................................................13, 14, 20, 21

*Waxman v. Envipco Pick Up & Processing Servs. Inc.,*
    No. 02 Civ. 10132 (GEL) 2003 WL 22439796 (S.D.N.Y. Oct. 28, 2003) .........7

*Wexner v. First Manhattan Co.,*
    902 F.2d 169 (2d Cir. 1990).......................................................................20


**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995).........................................................................12

22 N.Y. Jur. 2d, *Contracts* § 144 (Law. Co-op. 1996)..................................................15

Cogent Capital Financial LLC ("CCF"), Cogent Capital Investments LLC ("CCI"), Cogent Capital Group LLC ("CCG"), Gregory L. Kofford and Mark W. Holden (collectively, the "Cogent Parties"), respectfully submit this memorandum of law in support of their motion to dismiss Innofone.com, Incorporated's ("Innofone") Complaint, dated March 19, 2007 (the "Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Pursuant to a series of written agreements, CCF and CCI (the "Corporate Cogent Parties") agreed to provide $50 million in financing to Innofone.  In exchange, Innofone issued common and convertible preferred stock to the Corporate Cogent Parties, and was obligated to make certain payments to them.

As part of the transaction, Innofone sought to register with the Securities and Exchange Commission (the "SEC") the common stock issued to the Corporate Cogent Parties and the common stock issuable upon conversion of the preferred stock.  After filing a registration statement with the SEC, Innofone publicly disclosed that five of its prior financial statements would have to be restated, several of which were included as part of the registration statement. Thereafter, before ever filing restated financial statements, Innofone voluntarily withdrew its registration statement.  Innofone also breached the written agreements entered into with the Corporate Cogent Parties by, among other things, failing to make certain agreed-upon payments.

Perplexingly, Innofone now claims that the failure to anticipate that Innofone's financial statements would have to be restated and that Innofone would withdraw its own registration statement constitutes securities fraud and gives rise to common-law liability for fraud, negligent misrepresentation and rescission on the part of all the Cogent Parties, even those not party to the transaction at issue.

## SUMMARY OF ARGUMENT

The First Claim for Relief for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") and Rule 10b-5 promulgated thereunder should be dismissed because the relevant agreements preclude reasonable reliance, the alleged misstatements are immaterial, Innofone failed to plead scienter adequately, and the claim as a whole is not pleaded with sufficient particularity. The Second Claim for relief, which seeks rescission of the Transaction (hereinafter defined) on the ground of illegality, should be dismissed because the Transaction is not "illegal" as a matter of law. The Third and Fourth Claims for Relief, which seek rescission of the Transaction on the ground of fraud or mistake and damages for negligent misrepresentation, respectively, should be dismissed because the relevant agreements preclude reasonable reliance, and because the claims are not pleaded with sufficient particularity. The Fifth Claim for Relief should be dismissed because "declaratory relief" is not a substantive cause of action.

## STATEMENT OF RELEVANT FACTS

Innofone is a public company whose common stock is traded on the over-the-counter bulletin board under the ticker symbol IMEN.OB. (*Id.* ¶ 8.) Cogent is an investment firm that specializes in making direct investments of equity in small companies. (*Id.* ¶ 11.)

In or about April 2006, the Corporate Cogent Parties began discussing an investment in Innofone. (*Id.* ¶ 25.) These discussions continued through the spring of 2006 and culminated in a series of written agreements between Innofone and the Corporate Cogent Parties, dated June 2, 2006, as amended on November 1, 2006 (the "Transaction"), reflecting a $50 million investment by CCI in Innofone. (*Id.* ¶¶ 29-30, 34.) Pursuant to the Securities Purchase Agreement (the "Purchase Agreement"), CCI purchased unregistered shares of Innofone's common and

convertible preferred stock for $50 million in U.S. Treasury Notes (the "Bonds"). (*Id.* ¶ 34.) CCF also received fees in the form of Innofone common stock, warrants and cash. (*Id.* ¶ 37.)1

Concurrently with the closing of the Transaction, Innofone entered into an equity swap transaction with CCF (the "Equity Swap"). (*Id.* ¶ 39.) Pursuant to the terms of the Equity Swap, Innofone pledged the Bonds to secure performance of the Equity Swap and, thereafter, the proceeds of the Bonds would be released from the collateral account and dispersed over a 30-month period beginning 30 days after the SEC declares effective a registration statement covering the common stock issued to the Corporate Cogent Parties and the common stock issuable upon conversion of the preferred stock, or an exception from registration for such securities becomes available. Innofone filed a registration statement with the SEC on July 19, 2006 seeking to register such shares of common stock. (*Id.* ¶ 43; Declaration of Mitchell M. Wong, dated May 29, 2007 (hereinafter, "Wong Decl."), Ex. A.) Innofone filed amendments to the registration statement on August 28, 2006, October 24, 2006 and December 8, 2006. (*Id.* Exs. B-D.) (The initial Form SB-2, along with the amendments, will collectively be referred to hereinafter as the "Registration Statement").

On December 29, 2006 and January 11, 2007, while the Registration Statement was still waiting to be declared effective by the SEC, Innofone publicly disclosed that it would have to restate certain of its prior financial statements. (*Id.* Ex. E.) Several of these financial statements were included in the Registration Statement. (*Cf. id.* Exs. A-D.)

On March 22, 2007, before filing restated financial statements, Innofone filed a request with the SEC to voluntarily withdraw the Registration Statement. (*Id.* Ex. F.) To date, Innofone has not filed amended financial statements.

---

1 Gregory L. Kofford, Mark W. Holden and CCG are not parties to the agreements with Innofone.

3

## ARGUMENT

I.     **The First Claim for Relief Under Section 10(b) and Rule 10b-5 Should Be Dismissed.**

      A.     **The First Claim for Relief Should Be Dismissed Because Innofone Cannot Establish Justifiable Reliance as a Matter of Law.**

Justifiable reliance is a necessary element for the securities claims asserted in the First Claim for Relief.  The Second Circuit has held that, as a matter of law, a plaintiff cannot justifiably rely upon extra-contractual representations that have been disavowed by a merger clause in the agreement.  Because terms in the relevant agreements here preclude justifiable reliance *as a matter of law*, the First Claim for Relief should be dismissed.

In *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996), the parties entered into a share purchase agreement that recited seventeen representations and warranties made by the defendant. *Id.* at 340.  The agreement further stated that the defendant "shall not be deemed to have made to [plaintiff] any representation or warranty other than as expressly made [in the agreement]." *Id.* at 342 (quoting agreement).  This disclaimer was further enforced by a merger clause stating that the agreement "contains the entire agreement between the parties hereto . . . and supersedes all prior arrangements or understandings." *Id.* at 343 (quoting agreement).

After the transaction soured, the plaintiff brought action against the defendant alleging, *inter alia*, violation of Section 10(b), New York common-law fraud, and New York common-law negligent misrepresentation. *See id.* at 339.  The plaintiff did not allege that the representations or warranties in the agreement were untrue. *See id.* at 345-47.  Rather, the plaintiff claimed that fraud and misrepresentation occurred *outside* the representations and warranties in the agreement. *See id.* at 345-47.

The defendant moved to dismiss on the ground that the disclaimer and merger clause precluded the plaintiff, as a matter of law, from justifiably relying on any representations made

4

outside the agreement. *See id.* at 343. The district court agreed and dismissed the Section 10(b)

and the common-law fraud and negligent misrepresentations claims. On appeal, the Second

Circuit affirmed, declaring:

> [P]arties who negotiate at arm's length for the sale and purchase of
> a company can define the transaction in a writing so as to preclude
> a claim of fraud based on representations not made, and explicitly
> disclaimed, in that writing.

*See id.* at 339. The facts here are indistinguishable from those in *Harsco.* Here, the Purchase

Agreement contains thirteen representations and warranties by the Cogent Corporate Parties.

(*See* Compl. Ex. B ¶¶ 4.1 - 4.13.) Like the agreement in *Harsco*, the Purchase Agreement also

specifically disclaims any representations and warranties outside the Purchase Agreement:

> 8.6. <u>Entire Agreement</u>. This Agreement contains the entire
> understanding of the parties with respect to the matters covered
> herein, supersedes all prior agreements and understandings with
> respect to the matters and executed by and among the Company
> and any of the Purchasers, and, <u>except as specifically set forth
> herein or therein, neither the Company nor the Purchasers make
> any representation, warranty, covenant or undertaking</u> with respect
> to the matters.

(*See id.* Ex. B ¶ 8.6 (underscored emphasis added).) Additionally, the parties signed

Confirmations of the Swap Transaction on June 2, 2006, and on Nov. 1, 2006, in which Innofone

specifically disavowed reliance:

> Cogent and INFN each represents that (i) it is not relying on the other
> party in connection with its decision to enter into this Swap
> Transaction, and neither party is acting as an advisor or fiduciary of
> the other party in connection with this Swap Transaction . . . ; (ii) it
> understands the risks of the Swap Transaction and any legal,
> regulatory, tax, accounting and economic consequences resulting
> therefrom; and (iii) it has determined based upon its own judgment . . .
> that entering into the Swap Transaction is appropriate for such party in
> light of its financial capabilities and objectives.

(*Id.* Ex. I ¶ 1.) Finally, as in *Harsco*, the Complaint does not allege that representations and

warranties in the Transaction agreements were untruthful. Just as the claims in *Harsco* based on

5

Section 10(b), common-law fraud, and common-law negligent misrepresentation were all dismissed, so, too, should the corresponding claims in this Complaint be dismissed.

The application of *Harsco* to this case is especially compelling in view of the reasoning expounded by the Second Circuit in *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d Cir. 2003). There, the plaintiff invested $2 million upon the defendants' solicitation. *See id.* at 193. During the solicitation, the defendants overstated their participation in the investment both orally and in a brochure. *See id.* at 192-93. These misstatements, however, were not included among the warranties in the purchase agreement. *See id.* at 193. Instead, as in the case here, the agreement contained a merger clause disclaiming any representations beyond the agreement. *See id.* at 193.

After the investment failed, the plaintiff brought action against the defendants alleging violations of Section 10(b) and New York common-law fraud. *See id.* at 195. Among other things, the plaintiff alleged that, in deciding whether to enter into the agreement, it relied upon the defendants' misstatements concerning the size of the defendants' investment. *See id.* at 194. The defendant argued that the merger clause foreclosed the plaintiff from relying on even the brochure.

The district court agreed and dismissed the Section 10(b) and fraud claims. *See id.* at 194. On appeal, the Second Circuit agreed, explaining that if the size of the defendants' investment truly were as important as the plaintiff alleged, then the plaintiff had an obligation to ensure that these representations were warranted in the agreement:

> [Plaintiff] should have protected itself by insisting that this representation be included in the stock purchase agreement. Given [the defendants'] extensive contractual representations about other matters, [the plaintiff]'s sophistication, and the size of the transaction, [the plaintiff]'s failure to do so precludes as a matter of law a finding of reasonable reliance upon defendants'

6

> misrepresentations about [the investment].
> . . . Nor is our conclusion undermined by the fact that the alleged
> misrepresentations were made both orally and in writing . . . .  To
> the contrary, the written reference to [the investment] in
> [defendant]'s brochure should have served as additional notice to
> [plaintiff] that this allegedly significant representation should be
> reflected in the contract.

*Id.* at 196.  Thus, in *Emergent*, the Second Circuit reiterated that, in the context of such large

transactions, a plaintiff cannot, as a matter of law, be regarded as having reasonably or justifiably

relied upon extra-contractual representations after the plaintiff has agreed to disclaim reliance

upon those very same representations.

The reasoning offered in *Emergent* applies with conclusive force here.  Innofone entered

into a transaction for $50 million—a sum twenty-five times larger than the transaction in

*Emergent*.  Given that it was unreasonable for the *Emergent* plaintiff to have relied upon the

disclaimed extra-contractual representations, it cannot be any more justifiable for Innofone to

claim reliance upon disclaimed representations for a transaction twenty-five times larger than

that in *Emergent*.[2]

The reasonable and common-sense approach of *Harsco* and *Emergent* have led courts to

repeatedly dismiss similar claims brought under Section 10(b).[3]  The First Claim for Relief is

---

[2]  The fact that Innofone is a sophisticated business entity only enhances the case for dismissal of
this action.  Innofone is a public company and, by its own admission, is an "industry leader" in
a technology that affects the Department of Defense, the Office of Management and Budget,
as well as major technology companies such as Microsoft, Cisco, Juniper, Nokia and Hewlett-
Packard.  (*See* Compl. ¶¶ 8, 23-24.)

[3]  *E.g., Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 491-92 (S.D.N.Y. 2005) ("[T]he
merger clause . . . render[s] Plaintiff's reliance on statements made before the signing of the . .
. Agreement unreasonable as a matter of law."); *Waxman v. Envipco Pick Up & Processing
Servs. Inc.*, No. 02 Civ. 10132 (GEL) 2003 WL 22439796, at *10 (S.D.N.Y. Oct. 28, 2003)
("Where, as here, a valid contract exists and the plaintiff is a sophisticated businessman
represented by counsel, he cannot repair to oral representations to allege federal securities
fraud because the existence of the contract makes his reliance upon those representations
unreasonable."); *Dafofin Holdings S.A. v. Hotelworks.com, Inc.*, No. 00 Civ. 7861 (LAP) 2001

7

founded upon facts indistinguishable from those in *Harsco* and *Emergent*, among others, and, therefore, should be dismissed.

**B.    The Alleged Misstatements Are Immaterial.**

Innofone's securities fraud claim should also be dismissed because the alleged misstatements are immaterial as a matter of law under the "bespeaks caution" doctrine.  The "bespeaks caution" doctrine holds that certain alleged misrepresentations in securities transactions "are immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language." *Halperin v. Ebanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).  The doctrine inquires into "whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Id.*

The Complaint alleges that the Cogent Parties made five misrepresentations regarding SEC approval of the registration statement relating to the Transaction:

(1)    "that the Securities and Exchange Commission had approved this type of financing before, and thus it would not be a problem to get the Securities and Exchange Commission to approve this transaction," (Compl. ¶ 30);

(2)    "that the transaction structure they proposed was specifically designed to meet the requirements of the Securities and Exchange Commission," (*Id.* ¶ 30);

(3)    "that they had particular and specialized information on how to structure the deal so that it would be approved," (*Id.* ¶ 30);

(4)    that "the Cogent parties leaned heavily on their experience with complex financial products in general, and this type of transaction in particular, and their experience with the Securities and Exchange Commission," (*Id.* ¶ 46); and

---

WL 940632, at *4 (S.D.N.Y. Aug. 17, 2001) ("[T]he merger clause forecloses the possibility of any contrary or additional arrangement.").

(5)     that "they stressed that they had inside information from the Securities and
        Exchange Commission on how to structure the deal so that it would be approved,"
        (*Id.* ¶ 51).

Even assuming that the Cogent Parties made such misstatements, they are protected

under the "bespeaks caution" doctrine and, therefore, are not material as a matter of law. In the

first instance, it should be noted that no "reasonable investor" would have believed that the

Cogent Parties were gifted with the power to prognosticate unerringly the SEC's decision, or that

the Cogent Parties wielded such influence over the SEC to guarantee that a registration statement

would be declared effective.

Moreover, even if Innofone could be deemed reasonable in relying on the Cogent Parties'

alleged predictions, the Cogent Parties' alleged statements were accompanied by meaningful

cautionary statements. *Halperin*, which involved facts indistinguishable from those here, is

particularly instructive on this issue. In *Halperin*, the plaintiff alleged—as Innofone does here—

that it entered into a securities transaction "with the expectation that the stocks would later be

registered with the SEC." *Id.* at 359. When the stocks could not be registered, the plaintiff

brought action against the defendants.

The district court dismissed the claims under the "bespeaks caution" doctrine and the

Second Circuit affirmed, reasoning that because the offering memoranda contained "warnings

that registration cannot be assured. . . . [a] reasonable investor therefore is put on notice that, at

the very least, registration is not guaranteed and is in fact contingent on certain business

developments." *Id.* at 360. Specifically, the warning in *Halperin* contained the following

language:

> There is no public or other market for the units. The units are
> subject to restrictions on transfer. Therefore, investors must expect
> to retain ownership of the units and bear the economic risks of
> their investment for an indefinite period.

*Id.* at 360 (emphasis added). The cautionary language from *Halperin* (particularly the italicized

portion) is nearly identical to cautionary language in the Purchase Agreement:

> 4.7 <u>Restricted Securities</u>. Each of the Purchaser and CCF
> understands and acknowledges that the sale of the Shares has not
> been registered under the Act, or the securities laws of any state or
> any analogous securities laws of any applicable foreign jurisdiction
> (collectively, "Applicable Laws") and have been issued in reliance
> upon an exemption from the Act for non-public or limited
> offerings. *Each of the Purchaser and CCF understands that the
> Shares are 'restricted securities' and must be held indefinitely
> unless the sale or other transfer thereof is subsequently registered
> pursuant to any Applicable Laws or an exemption from such
> registration is available at that time, and each of the Purchaser
> and CCF agrees to comply with all Applicable Laws in connection
> with listing or qualification of the Shares thereunder.*

(Compl. Ex. B ¶ 4.7 (emphasis added).)

Just as the warnings in the *Halperin* memoranda were sufficiently explicit and specific to

negate reliance, the cautionary statements in the Purchase Agreement (which are even more

detailed than those in *Halperin*) negate reasonable reliance by Innofone on any alleged

statements by the Cogent Parties regarding the Registration Statement. As such, the cautionary

language warned Innofone of "exactly the risk the Plaintiff claim was not disclosed": that

Innofone's shares may not be registered by the SEC. *Olkey v. Hyperion 1999 Term Trust, Inc.*,

98 F.3d 2, 5 (2d Cir. 1996). Accordingly, the First Claim for Relief should be dismissed for

failure to plead any material misstatements.

### C.    Innofone Fails to Allege Facts Supporting a Strong Inference of Fraudulent Intent and, Therefore, Fails to Plead Scienter Adequately.

Scienter is also a necessary element for the securities claim asserted in the First Claim for

Relief. Moreover, scienter must be pleaded with particular facts that support a "*strong*

inference*"* that each of the Cogent Parties acted with scienter, or fraudulent intent. *See* 15 U.S.C.

§ 78u-4(b)(2) (emphasis added); *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (holding that

10

the PSLRA codified the Second Circuit's requirement that Plaintiff attempting to state fraud claims must allege facts that "give rise to a strong inference of fraudulent intent.") (quoting *Novak v. Kasaks,* 216 F.3d 300, 307 (2d Cir. 2000). In other words, the Complaint must plead that each of the Cogent Parties *knew* the alleged statements were false or misleading when made and *intended* to make such false or misleading statements.

The Second Circuit has prescribed only two ways to establish the requisite strong inference of scienter—"either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" by them. *Kalnit,* 264 F.3d at 138-39 (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995)). The Complaint does neither, and therefore, the First Claim for Relief should be dismissed on this ground as well.

> 1.    **Innofone Fails to Allege Facts That Constitute Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness by the Cogent Parties.**

Recklessness involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 535 (3d Cir. 1999) (quoting *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir. 1979)). Stated another way, recklessness in the context of fraud allegations "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence." *Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790, 793 (7th Cir. 1977). To create the necessary inference of scienter, a plaintiff must identify actual and specific information, known to each of the defendants, that contradicted the challenged statements when made. *Id.*

11

Innofone attempts to plead scienter by merely alleging that "the [SEC] has not approved a transaction of the type proposed by the Cogent Parties, and the statements by the Cogent Parties to the contrary showed a high degree of recklessness which is the equivalent of intent." (Compl. ¶ 53.) Such generalized, conclusory allegations cannot be pleaded in the hope that particulars will be obtained through discovery. *See* H.R. Conf. Rep. No. 104-369, at 31 (1995) (the PSLRA seeks to prevent "the routine filing of lawsuits . . . with only faint hope that the discovery process might lead eventually to some plausible cause of action"). Rather, Innofone "must plead facts 'with particularity,' and these facts must give rise to a 'strong inference' of a knowing or reckless misstatement." *In re Digital Islands Sec. Litig.*, 357 F.3d 322, 329 (3d Cir. 2004) (citation omitted).

### 2. Innofone Fails to Show That the Cogent Parties Had Motive and Opportunity to Defraud.

#### a. The Complaint Fails to Plead Motive and Opportunity With Respect to the Corporate Cogent Parties or CCG.

These allegations also do not meet the requirements of the motive and opportunity standard articulated in *Kalnit*. To show motive, a complaint must identify a specific benefit received by the offending persons, and not to the corporation as a whole or its shareholders and officers. *E.g., Kalnit*, 264 F.3d at 142 (dismissing a claim for failure to plead a "specific benefit that would inure to the defendants that would not be either generalized to all corporate directors or beneficial to all shareholders, not just the defendant directors specifically."). Here, no such specific benefits are identified to explain why the Corporate Cogent Parties or CCG would defraud Innofone.[4]

---

[4] Even if pled in the Complaint, mere speculation that the Corporate Cogent Parties might earn more by fraud is not a sufficient exposition of motive for a Section 10(b) claim. *Acito v. IMCERA*, 47 F.3d 47, 54 (2d Cir. 1995).

### b. The Complaint Fails to Plead Motive and Opportunity With Respect to Messrs. Kofford or Holden.

The Complaint also fails to articulate what motive Messrs. Kofford and Holden had individually to make the alleged misrepresentations to Innofone. The two individuals are not party to any of the Transaction agreements referenced in the Complaint. (*See* Compl. Exs. B ¶ 1 (agreement signed in the name of corporate Cogent Parties alone), D ¶ 2 (same), E ¶ 1(same), F ¶ 1(same), G ¶ 1(same), I ¶ 1(same).) Nor does the Complaint show that either Mr. Kofford or Mr. Holden individually benefited from the consummation of the Transaction. The right to purchase the Innofone shares belonged only to the Corporate Cogent Parties. (*Id.* Ex. B ¶ 1.1). Likewise, none of the fees were paid to either of these individuals. (*Id.* Ex. A ¶ 3). Nor were there any allegations that either Mr. Kofford or Mr. Holden individually purchased or sold any Innofone stock.

The possibility that either Messrs. Kofford or Holden may have indirectly benefited from the Transaction through his interest in the Corporate Cogent Parties does not sufficiently show motive because anticipation of possible profit does not, as a matter of Second Circuit law, plead motive. *Acito*, 47 F.3d at 54 ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated.") (internal citation omitted). Nor does the fact that Messrs. Kofford and Holden held important roles within the Corporate Cogent Parties and negotiated on their behalf in this Transaction give rise to an inference that they had "the means [to defraud] and likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("If . . . opportunity [could be pleaded] by alleging the defendant's authority to speak for the company, the required showing of motive and opportunity would be no realistic check on aspersions of fraud.").

**D.    The First Claim for Relief Should Be Dismissed for Failure to Plead With Particularity.**

The First Claim for Relief is not pleaded with sufficient particularity to satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b) and should be dismissed.

The PSLRA imposes heightened pleading requirements for Section 10(b) and Rule 10b-5 complaints beyond even those required by Fed. R. Civ. P. 9(b). Specifically, under the PSLRA, a complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Where an allegation regarding the statement or omission is made on information and belief, a complaint must also "state with particularity all facts on which that belief is formed." *Id.* Here, the PSLRA requires Innofone to "specify each statement alleged to have been misleading." *Id.* Instead, the Complaint offers only vague and selective characterizations of purported misrepresentations from the Cogent Parties.

For example, the Complaint alleges that the Cogent Parties assured Innofone that they had experience in financing of "this type." Likewise, Innofone claims the Cogent Parties said that the Transaction was "specifically designed" to meet the SEC's requirements, and that it would, thus, be approved with "no problem." (Compl. ¶ 30.) Such gossamer accusations are precisely the types of allegations that herald the countless "fishing expeditions" the PSLRA sought to deter. *Podany v. Robertson Stephens, Inc.,* 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004).

The Complaint further fails to include any of the relevant details surrounding the alleged misstatements. A complaint must state (1) *what* fraudulent statements the plaintiff allegedly made, (2) *who* made these statements, and (3) *where* and *when* the statements were made. *Shields,* 25 F.3d at 1128 (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.

14

1993)).  The Complaint here contains no such details.  Rather, the Complaint attributes alleged

statements to "the Cogent Capital Defendants"—an amalgam of two individuals and three

companies.  (Compl. ¶ 30.)  Nor does the Complaint identify to whom the statements were made,

suggesting only that they were made "to [Innofone President Alex] Lightman, among others."

(*Id.*)  Finally, Innofone does not indicate the timing or context in which these statements were

made, stating only that they were made *sometime* in May 2006.  (*Id.*)

## II.    The Second Claim for Relief (Illegality-Based Rescission) Should Be Dismissed.

Innofone's Second Claim for Relief seeks rescission of the Equity Swap on the alleged

grounds of illegality.  To make out a claim for rescission on the grounds of illegality, a plaintiff

must show that the agreement calls for the parties "to do an illegal act" or is "designed or

intended to accomplish the furtherance or effectuation of an unlawful purpose."  *See* 22 N.Y.

JUR. 2d, *Contracts* § 144 (Law. Co-op. 1996).  The Complaint does not allege that the parties

intended to "accomplish the furtherance or effectuation of an unlawful purpose."  Rather, the

Complaint suggests that the Equity Swap calls for the parties to perform an illegal act.

The Complaint first recounts that the SEC refused to declare effective Innofone's

Registration Statement.  (*See* Compl. ¶ 58.)  The Complaint then declares that "it would be

illegal for the Cogent Parties to offer the securities for sale to the public without an effective

registration statement."  (*Id.* ¶ 59.)  The next paragraph in the Complaint then suddenly

concludes that "Innofone is therefore entitled to rescind."  (*Id.* ¶ 60.)  These allegations are

insufficient to maintain a claim for rescission for three reasons.[5]

---

[5]    Innofone's allegation that the SEC rejected the Registration Statement is demonstrably false.
It was Innofone that *withdrew* the Registration Statement.  Innofone's withdrawal came on the
heels of its announcement that it would have to restate six sets of financial reports filed with
the SEC within the relevant time period—financial reports that Innofone had warranted under
the terms of the Transaction agreements to be accurate.  (Compl. Ex. B ¶ 3.3.)

First, nothing in the Transaction agreements obligates the Corporate Cogent Parties "to offer the securities for sale to the public." (*Id.* ¶ 59.) In fact, the "Plan of Distribution" contained in the withdrawn registration statement specifically states that the Corporate Cogent Parties, may sell the shares in "privately negotiated transactions" and also states that they "may also sell shares under Rule 144 under the Securities Act of 1933, if available, rather than under this prospectus." Wong Decl. Ex. D, at 41. Thus, the fact that the Corporate Cogent Parties may not be able to "offer the securities for sale to the public" does not render the Transaction agreements illegal.

Second, the fact that Innofone's shares have not been registered also does not render the Equity Swap illegal as a matter of law. The Complaint does not identify any statute or regulation that the Equity Swap violates. Rather, the Complaint speculates that "[i]n effect, the actions of the Securities and Exchange Commission must be interpreted as amounting to a finding that the transaction violates Securities and Exchange Commission rules." (Compl. ¶ 58.) This, too, is untrue as a matter of law.

As noted above, the withdrawn Registration Statement is not the only method by which the Cogent Parties may transfer the shares. For example, Rule 144 promulgated under the Securities Act of 1933, as amended, expressly provides that "restricted securities" held for at least a year may be sold without registration under the Securities Act subject to specified conditions. 17 C.F.R. § 230.144(d)(1). Rule 144(k) further provides that the foregoing

---

Although it is generally true that, on a motion to dismiss, the allegations of the complaint are to be accepted as true, courts are not obligated to turn a blind eye to relevant facts that are not in dispute. Innofone's publicly available filing with the SEC withdrawing its registration statement is such a fact. "[P]ublicly-filed documents may be considered [on a motion to dismiss], and customarily are in securities fraud cases." *de la Fuente v. DCI Telecomms. Inc.*, 206 F.R.D. 369, 375 (S.D.N.Y. 2002) (considering, *inter alia*, defendant's SEC filings in granting a motion to dismiss). Even assuming Innofone's allegations to be true, however, the allegations still do not form a valid basis for rescission as a matter of law.

conditions terminate if the "restricted securities" have been held for at least two years and the seller is not, at the time, an affiliate of the issuer. *Id.* § 230.144(k). Indeed, the definition of "Registrable Securities" in the Registration Rights Agreement entered into in connection with the Transaction provides that such securities shall cease to be "Registrable Securities" when they become "sellable under Rule 144(k)." (Compl. Ex. E.) Thus, even if the SEC had refused to approve Innofone's Registration Statement, the Transaction would not have been illegal.

Finally, even assuming *arguendo* that the SEC had rejected the Registration Statement, and further that this alleged rejection somehow rendered continued *performance* of the Transaction to be illegal, New York law does not regard the *agreements* themselves to be illegal. In *Culver & Theisen, Inc. v. Starr Realty Co. (NE) LLC*, the plaintiff entered into a lease agreement to use the defendant's property for billboard advertising. 307 A.D.2d 910, 763 N.Y.S.2d 84 (2d Dep't 2003). The defendant represented to the plaintiff that such advertising on the property would be legal. The lease agreement further provided that "the risk of failure to terminate on that basis [*i.e.*, not receiving the land-use permit] was intentionally placed on the plaintiff." *Id.* at 911, 763 N.Y.S.2d at 86. After paying 29 months' rent, the plaintiff discovered that it was, in fact, not legal to erect the advertisement on the property, and the New York City Department of Buildings would not issue a permit for the billboard. The plaintiff thereupon sought rescission on grounds of both mistake and illegality.

The Supreme Court dismissed the claim for rescission, and the Appellate Division affirmed, holding that, because the parties had contractually allocated the risk of illegality, the lease agreement was not illegal. *Id.* ("[A] lease which provides for the use of premises which is prohibited by a zoning law is not necessarily illegal where the parties considered this possibility at the time of execution, and the lease contained a provision addressing it.").

17

The facts here are indistinguishable from those in *Culver*. As the plaintiff did in *Culver*, the Complaint alleges that Innofone was induced to enter into the Transaction based on the Cogent Parties' representations. Just as the Department of Buildings' refusal to allow the plaintiff in *Culver* to make lawful use of the premises prohibited performance of the lease, Innofone alleges here that the SEC's refusal to declare effective Innofone's Registration Statement prohibits performance of the Transaction.

Also as in *Culver*, the contracting parties here "considered th[e] possibility [of illegality] at the time of execution, and the lease contained a provision addressing it." *Id.* Paragraph 4.7 of the Purchase Agreement specifically states that registration might never occur and cautions the contracting parties of the consequences of non-registration, stating that the unregistered shares "must be held indefinitely." (Compl. Ex. B ¶ 4.7.) Similarly, the ISDA provides for an "Additional Termination Event" if, by December 2, 2010, all Equity Shares are not either subject to an effective registration statement or fully eligible for resale under Rule 144(k). (*Id.* Ex. G ¶ 5(b)(vi), Ex. H ¶ 1(g), Ex. I ¶¶ 2 & 5). Thus, Innofone and the Corporate Cogent Parties entered the Transaction with a full appreciation of the chance that registration might never occur. Just as *Culver* dismissed the plaintiff's claim for rescission, the Second Claim of Relief here likewise should be dismissed.

**III.    The Third Claim for Relief (Rescission Based on Fraud or Mistake) and Fourth Claim for Relief (Negligent Misrepresentation) Should Be Dismissed.**

**A.    The Third and Fourth Claims for Relief Should Be Dismissed Because the Merger Clauses Preclude Innofone From Establishing Justifiable Reliance.**

In both *Harsco* and *Emergent*, *see* Part I.A., *supra*, the Second Circuit held that a disclaimer and merger clause in an agreement precludes a plaintiff from maintaining a New York common-law action for fraud for alleged misstatements made outside the agreement. *See*

18

*Harsco*, 91 F.3d 337; *Emergent*, 343 F.3d 189.  For the reasons articulated in Part I.A., *supra*, the

Third and Fourth Claims for Relief should, therefore, be dismissed.

> **B.    The Third and Fourth Claims for Relief Should Be Dismissed for Failure to Plead With Particularity.**

Innofone's Third and Fourth Claims for Relief are, respectively, for fraud and negligent

misrepresentation.  Fed. R. Civ. P. 9(b) governs the pleading of a common-law negligent

misrepresentation claim brought in federal court.  *See Maalouf v. Salomon Smith Barney, Inc.*, 02

Civ. 4770 (SAS), 2003 U.S. Dist. LEXIS 5913, at *11 (S.D.N.Y. Apr. 9, 2003); *AIG Global*

*Secs. Lending Corp. v. Banc of Am. Secs. LLC*, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003).  To

satisfy Rule 9(b), a complaint must: "1) specify the statements that the plaintiff contends were

fraudulent, 2) identify the speaker, 3) state where and when the statements were made, and 4)

explain why the statements were fraudulent."  *Acito*, 47 F.3d at 51 (citing *Mills*, 12 F.3d at

1175).  Additionally, a plaintiff must allege facts that give rise to a strong inference of fraudulent

intent.  *Id.* at 52.  The Complaint fails to do any of this.

> **1.    The Complaint Fails to Identify the Alleged Misstatements With Particularity.**

As discussed above, the Complaint never cites the particular false statements alleged to

have been made by the Cogent Parties.  Instead, the Complaint offers merely a paraphrased gist

of what the Cogent Parties allegedly said during the negotiations:

> The Cogent Parties . . . represented to Innofone throughout the process of negotiating the transaction, and even thereafter, that they had engaged in similar transactions, and that it was a viable financing transaction which would have no problems obtaining approval from the Securities and Exchange Commission.

(Compl. ¶ 46.)

This description does not identify the specific statement made; it does not identify the

speaker making the statement or the location and time it was made.  To meet the requirements of

Fed. R. Civ. P. 9(b), a complaint must plead the specifics of the statements made, not just their "mere gist." *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998). The Complaint here does not do so, and the Third and Fourth Claims for Relief should be dismissed.

### 2. The Complaint Fails to Show That the Alleged Misstatements Were False.

The Complaint concludes that the Cogent Parties' alleged statements were false because events did not unfold as anticipated. A defendant cannot be liable for inaccurate prognostications—only for actually fraudulent statements. *Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990). The fact that the Cogent Parties may have been confident that the SEC would declare effective a registration statement in connection with the Transaction does not make their optimism actionable. *Shields*, 25 F.3d at 1129-30.

### 3. The Complaint Fails to Show That the Cogent Parties Acted Recklessly or With Fraudulent Intent.

To meet the scienter pleading requirements of Fed. R. Civ. P. 9(b), a complaint must either show that the defendant had the motive and the opportunity to defraud or allege sufficient facts to constitute strong circumstantial evidence of motive. *Acito*, 47 F.3d at 52. The Complaint here has done neither.

Palpably absent from the Complaint is any suggestion of the Cogent Parties' possible motivation to defraud Innofone. The truism that the Cogent Parties want profit is not a sufficient allegation of fraudulent motive under Rule 9(b). *Id.* at 54. To the contrary, the Cogent Parties' desire to profit from the Transaction would logically suggest that the Corporate Cogent Parties would not have even participated in the Transaction if they "knew all along" that the Transaction had no chance of being approved.

20

The Complaint does not show how the Cogent Parties "knew all along" that the SEC would not declare effective the Registration Statement.  Instead, the Complaint is littered with purely hypothetical allegations:

> Alternatively, *if* the Cogent Capital Defendants had no basis to believe that the transaction itself was viable, *or* that such a transaction had been previously approved, *or* the registration of the Innofone securities would or could occur in a timely manner, if at all, then they fraudulently induced Innofone to enter into the [transaction].

(Compl. ¶ 67 (emphasis added).)  The Complaint thus consists of a series of conclusory statements that parrot the language of Fed. R. Civ. P. 9(b).  This speculation climaxes with a declaration that the Cogent Parties "repeatedly, carelessly, and with reckless disregard for the truth informed Innofone the transaction was previously approved . . ." and that the Cogent Parties ". . . knew they had no basis to make these representations."  (*Id.* ¶ 73.)

Scienter may not be pleaded through such empty pronouncements.  For instance, in *Shields*, the Second Circuit held that allegations that "defendants knew or were reckless in not knowing" were insufficient for purposes of pleading scienter under Fed. R. Civ. P. 9(b).  25 F.3d at 1129.  The court explained that the statements were "so broad and conclusory as to be meaningless."  *Id.* (citation omitted.)  The allegations in the Complaint are no different.  The Third and Fourth Claims for Relief, which are based on such inadequate allegations, should be dismissed.

### C.    The Third Claim for Relief Should Be Dismissed as Against Messrs. Kofford and Holden, and the Cogent Capital Group LLC Because They Are Not Parties to the Transaction Agreements.

Under New York law, rescission is judicial remedy in which parties to an agreement are returned to the positions they occupied prior to the agreement.  *See, e.g., Kirton v. Nw. Mut. Life Ins. Co.*, No. 00-Cv-7646 (JS)(AKT), 2006 WL 3051772, at *7 (E.D.N.Y. Oct. 24, 2006)

21

(Rescission is "a remedy that effectively treats the [Agreement] as if it had never existed and returns the parties to the positions they occupied before they purported to enter that contract.").

It follows, therefore, that one who is not party to an agreement cannot be subject to a claim for rescission. *See, e.g., Goodman v. Goodman*, 272 A.D. 1006, 1006, 74 N.Y.S.2d 78, 79 (1st Dep't 1947) ("The defendant . . . is not a proper or necessary party to an action for rescission of the separation agreement. He is not a party to such agreement, nor named as escrowee of the deposit thereunder. It is not asserted that he claims any lien or interest in the moneys. The complaint should be dismissed in its entirety as to him.").

In this case, neither Mr. Kofford, Mr. Holden nor CCG are parties to any of the agreements referenced in the Complaint. Yet, in the Third Claim for Relief, Innofone has asserted a claim for rescission against them. For the reasons expressed in *Goodman, supra*, the Third Claim for Relief should be dismissed as against Messrs. Kofford and Holden and against CCG.

### D.    The Third Claim for Relief Should Be Dismissed Because Innofone Cannot Show the Parties Were Mistaken as to a Material Fact at the Time of Contracting

Innofone alleges that "all of the parties . . . mistakenly believed in the inherent viability of the transaction and that the Securities and Exchange Commission would allow registration . . . quickly." (Compl. ¶ 66.) This allegation is insufficient to establish mutual mistake for several reasons.

To prevail on a claim for rescission, it is not sufficient merely to show that a party may have misunderstood the terms or effect of the agreement. *In re Leslie Fay Cos., Inc. Sec. Litig.*, 918 F. Supp. 749, 779 (S.D.N.Y. 1996) (denying rescission where the parties had misunderstood the value of the shares). Rather, a party that seeks rescission must show that, at the time the contract was made, the parties were mistaken "as to a basic assumption on which the contract

22

was made." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Group., Inc.*, 165 F. Supp. 2d 615, 624 (S.D.N.Y. 2001), *aff'd* 343 F.3d 189 (2d Cir. 2003).

The alleged failure of the contracting parties to accurately predict SEC approval is not a failure that goes to a "basic assumption on which the contract was made." *Id.* This point is undeniably illustrated by *Culver* (*see* discussion *supra* Part II), where the Appellate Division affirmed dismissal of a case bearing nearly identical facts. In *Culver*, the parties failed to anticipate that the New York City Department of Buildings would refuse to grant a permit allowing a billboard advertisement to be erected on leased land. The lessee sought rescission of the lease agreement, claiming that the parties' failure to anticipate denial of the permit constituted mutual mistake.

The Appellate Division rejected this argument, holding that "[s]ince the [lessee] had the opportunity to ascertain whether or not it could erect the display, it cannot argue that the lease should be rescinded to avoid the consequences of its own negligence." *Culver,* 307 A.D.2d at 911, 763 N.Y.S.2d at 85. Innofone's position is no different—the fact that it may have "mistakenly believed in the inherent viability of the transaction and that the Securities and Exchange Commission would allow registration . . . quickly" gives no more grounds for rescission than the erroneous beliefs in *Culver*. (*Id.* ¶ 66.)

The multiple disclaimers and merger clauses throughout the relevant agreements provide further bases for rejecting the claim of rescission-for-mistake. The merger clauses in the relevant agreements that disclaim representations made outside the complaint preclude reliance on matters not expressly warranted by the agreements:

> Given the fact that . . . the contract . . . expressly disavowed any legal effect for representations made [outside the contract], they could not have constituted 'basic assumptions' as to which contract-avoiding mistakes could have been made.

23

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998); *see also* discussion *infra* Part I.  The Complaint identifies no clause in any of the Transaction agreements that requires SEC registration of Innofone's shares.  It strains belief that such a "basic assumption on which the contract was made" would have been omitted from the carefully tailored warranties in the Transaction agreements.  The absence of such a term from the Transaction agreements, as a matter of law, therefore, precludes their invocation as the object of a mutual mistake.

**IV.    The Fifth Claim for Relief Should Be Dismissed Because "Declaratory Relief" Is Not a Substantive Cause of Action.**

The Fifth Claim for Relief seeks "Declaratory Relief Pursuant to 28 U.S.C. § 2201."  A declaratory action is merely a procedural device by which a party can invoke a court's jurisdiction to vindicate a substantive right.  A declaratory action is not a substantive basis for relief.  *In re Joint E. and S. Dist. Asbestos Litig.*, 14 F.3d 726, 728 (2d Cir. 1993) ("The Declaratory Judgment Act does not . . . provide an independent cause of action.  Its operation is procedural only—to provide a form of relief previously unavailable.").

The Fifth Claim for Relief names no substantive theory for relief beyond the bare demand for declaratory relief.  (Compl. ¶¶ 78-84.)  Nor do the paragraphs under the Fifth Claim for Relief allege any new facts beyond those already recited in the first four Claims for Relief; the gravamen of the Fifth Claim for Relief remains that "based on the Securities and Exchange Commission's [allegedly] repeated refusals to approve the registration of the shares at issue, it is impossible for the parties to complete the transaction as contemplated."  (Compl. ¶ 79.)  Accordingly, for the reasons articulated with respect to the other four Claims for Relief, the Fifth Claim for Relief should be dismissed as a matter of law as well.

24

**CONCLUSION**

For the foregoing reasons, the Cogent Parties respectfully request that this Court enter an

order:

(1)     dismissing the Complaint in its entirety; and

(2)     granting any further relief as the Court may deem just and proper.


Dated:  May 29, 2007

MORRISON & FOERSTER LLP
Joel C. Haims (JH-9829)
Mitchell M. Wong (MW-8795)
Emily S. Richman (ER-2277)
1290 Avenue of the Americas
New York, New York  10104
(212) 468-8000

*Attorneys for Cogent Capital Financial
LLC, Cogent Capital Investments LLC,
Cogent Capital Group LLC, Gregory L.
Kofford and Mark W. Holden*

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2007, I caused to be served a true and correct copy of the following documents by e-mail and ECF filing on Roderick McLeod, Esq., of Jones Day, counsel for Innofone.com, Inc.; and Paula Bagger, Esq., of Cooke Clancy & Gruenthal LLP, counsel for Investors Bank & Trust Company:

    (1)    Notice of the Cogent Parties' Motion to Dismiss the Complaint;

    (2)    Memorandum of Law in Support of the Cogent Parties' Motion to Dismiss the Complaint; and

    (3)    Declaration of Mitchell M. Wong.


Dated:    New York, New York
           June 4, 2007

                              Mitchell M. Wong (MW-8795)