**Westlaw Download Summary Report for BILIK,SHIRI R 5840161**

| | |
|---|---|
| Date/Time of Request: | Tuesday, May 29, 2007 08:43:00 Central |
| Client Identifier: | 58694-0000004-11515: |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 497 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529
**(Cite as: Not Reported in F.Supp.2d)**

Dafofin Holdings S.A. v. Hotelworks.com, Inc.
S.D.N.Y.,2001.

United States District Court, S.D. New York.
DAFOFIN HOLDINGS S.A., Findim Investments, S.A. and Omabuild Corp., Plaintiffs,
v.
HOTELWORKS.COM, INC., formerly known as Hospitality Worldwide Services, Inc. and Douglas Parker, Defendants.
**No. 00 CIV. 7861(LAP).**

Aug. 17, 2001.

MEMORANDUM AND ORDER
PRESKA, District J.
*1 Plaintiffs Dafofin Holdings S.A. ("Dafofin"), Findim Investments, S.A. ("Findim") and Omabuild Corporation ("Omabuild") (collectively the "plaintiffs") bring this action alleging fraud in violation of Sections 12(a)(2) and 17(a) of the Securities Exchange Act of 1933, 15 U.S.C. § § 77l(2) and 77q(a), fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5, and fraud, breach of contract, and conversion under state law. Defendants Hotelworks.com, Inc., formerly known as Hospitality Worldwide Services, Inc. ("HWS"), and Douglas Parker ("Parker") (collectively the "defendants") move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). For the reasons set forth below, the motion is granted.

BACKGROUND

The following facts are taken from allegations in the complaint, which I must accept as true for purposes of the motion to dismiss. Dafofin, Findim and Omabuild are corporations organized under the laws of Luxembourg, Switzerland and New York respectively. (Compl.¶ 1). HWS is a corporation organized under the laws of New York. (*Id.* ¶ 2). Parker is HWS's President and Chief Executive Officer.

As of May 29, 1998, HWS owned 100% of the membership interest in HWS Holdings, LLC ("HWS Member"), HWS Member owned a 26.56% membership interest in HWS/IRP Manneheim Property, LLC ("HWS/IRP"), and the remaining 73.44% interest in HWS/IRP was owned by IRP Manneheim, LLC ("IRP"). HWS and IRP were parties to a March 30, 1998 Amended and Restated Limited Liability Company Operating Agreement of HWS/IRP (the "Operating Agreement"). HWS/IRP owned a full service hotel known as the Clarion/Quality Inn, Rosemont, Illinois (the "Hotel"). (*Id.* ¶¶ 6-8).

On May 29, 1998, Dafofin and HWS entered into an Assignment and Investment Agreement (the "Agreement").[FN1] (*Id.* ¶ 12). Under the terms of the Agreement, Dafofin was to invest $1,000,000 in HWS and "receive a preferential return on its Equity Investment," (*id.* ¶ 13), and HWS was to assign to Dafofin 31.9% of its "economic interest in connection with its membership interest in HWS Member," (*id.* ¶ 14).

> FN1. Although plaintiffs refer to the Agreement throughout the complaint, they have not attached a copy to the complaint. Defendants have attached a copy of the Agreement to the Declaration of Peter Yu, Jr., ("Yu Decl."). Because "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," *International Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)), I have considered the Agreement on defendants' motion to dismiss.

Following the Agreement and with HWS's consent, Dafofin assigned all of its "rights, preferential returns and economic interests" in the Agreement to Findim, and Findim assigned such "rights, preferential returns and economic interests" to Omabuild. (*Id.* ¶ 16). Plaintiffs have paid $1,000,000 to HWS, but have not received any distributions. (*Id.* ¶¶ 17-18). Plaintiffs filed their complaint on October 16, 2000 alleging fraud under federal securities laws and state law.

Dafofin claims that in deciding to invest in HWS, it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529
**(Cite as: Not Reported in F.Supp.2d)**

relied on the following false and misleading statements made by HWS:

• IRP, the majority member in HWS/IRP, the owner of the Hotel, knew that Dafofin was to take a minority interest in the hotel;

*2 • IRP favored Dafofin's proposed investment and was interested in pursuing an independent business relationship with Findim;

• Dafofin's investment in the Hotel would have a "preferred position relative to both HWS and IRP;"

• the Hotel was a " 'great' investment" and would make Dafofin " 'quick' money;"

• HWS would "buy Dafofin's investment for 'any reason;' " and

• Dafofin could "always sell its interest in HWS to IRP as an exit strategy."

(*Id.* ¶ 10).

Plaintiffs further allege that HWS refused to provide Dafofin with the Operating Agreement before the parties entered into the Agreement. (*Id.* ¶ 11). Plaintiffs allegedly received a copy of the Operating Agreement on August 21, 2000. (Affidavit of Nicholas C. Biase ("Biase Aff.") ¶ 28).[FN2] According to the Operating Agreement, HWS is prohibited from selling, transferring or encumbering its interest in HWS Member, IRP is entitled to preferential distributions from HWS/IRP, and HWS has a financial interest in the Hotel beyond its interest as a member in HWS/IRP. (Compl.¶ 11).

> FN2. I note that in resolving this motion I have not considered the Affidavit of Nicholas C. Biase submitted with plaintiffs' opposition papers. Plaintiffs' affidavit contains a number of factual allegations not pled in the original complaint such as the financial history between the parties. This is a Rule 12(b)(6) motion, filed in lieu of an answer and prior to commencement of discovery. Under the circumstances, I have two options, either consider the affidavit and convert this motion into one for summary judgment or disregard the affidavit and treat this motion as a 12(b)(6) motion. *See Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). Here, I do not believe that conversion is appropriate, and no notice to that effect was given to the parties. At the time the motion was submitted, an answer had not been filed, and discovery had not commenced. *See Old Republic Ins. Co. v,. Hansa World Cargo Serv., Inc.,* 170 F.R.D. 361, 366 (S.D.N.Y.1997) (declining to convert motion because, *inter alia,* the parties had not undertaken discovery). Accordingly, I have not relied upon the Biase affidavit for additional factual material, and this motion remains a motion under Fed.R.Civ.P. 12(b)(6). *See Alba v. Ansonia Bd. of Educ.,* 999 F.Supp. 687, 691 n. 1 (D.Conn.1998). Nonetheless, in resolving defendants' motion to dismiss, I have relied on the affidavit to clarify allegations made in the complaint. *See Albany Ins. Co. v. Banco Mexicano, S.A.,* 98 Civ. 9531, 1999 WL 533792, at *3 (2d Cir. July 2, 1999) (holding that where reply papers did not "change grounds for motion to dismiss, but rather simply clarified the location of [documents]" and did not prejudice the opposing party, district court did not improperly rely on reply memorandum and corresponding affidavit on motion to dismiss.)

Since signing the Agreement, plaintiffs have learned that IRP did not know of Dafofin's proposed investment. (*Id.*). Plaintiffs have also learned that HWS Member, by its President and Chief Executive Officer, Douglas Parker, transferred its membership interest in HWS/IRP to IRP. (*Id.* ¶ 19). Plaintiffs have not received any distribution and allege that their equity interest is worthless. (*Id.*). Defendants argue that plaintiffs have failed to state a valid federal securities claim and that plaintiffs' state law claims should therefore be dismissed for lack of subject matter jurisdiction.

ANALYSIS

I. Standard Applicable to Motion to Dismiss for Failure to State a Claim

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations of the complaint and must draw all inferences in favor of the pleader. *See City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493 (1986); *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2 (1977) (referring to "well-pleaded allegations"); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). " '[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529
**(Cite as: Not Reported in F.Supp.2d)**

incorporated in it by reference." ' *International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). In order to avoid dismissal, plaintiffs must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed.1997)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994).

II. Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder

**\*3** Plaintiffs' first claim alleges a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs' claims under Section 10(b) of the 1934 Act and Rule 10b-5 are subject to the one-year/three-year limitations structure in Section 9(e) of that Act. 15 U.S.C. § 78i(e). [FN3] *See Siemens Solar Indus. v. Atlantic Richfield Co.,* 93 Civ. 1126, 1994 WL 86368, at \*1 (S.D.N.Y. Mar. 16, 1994) (detailing importance of statute of limitations). *See generally, Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364 (1991); *Ceres Partners v. GEL Assoc.,* 918 F.2d 349, 361 (2d Cir.1990). Defendants contend that plaintiffs failed to bring their Section 10(b) and Rule 10-b5 claims in a timely manner because plaintiffs were on inquiry notice of the fraud on May 29, 1998, the day the parties signed the Agreement, and waited over two years to file suit, well past the one year statute of limitations period.

> FN3. Section 9(e) of the 1934 Act provides in pertinent part:
> No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation. 15 U.S.C. § 78i(e).

The statutory periods for claims under Section 10(b) and Rule 10b-5 begin to run "when the claim accrued or upon discovery of facts constituting the alleged fraud." *Dodds v. Cigna Sec.,* 12 F.3d 346, 350 (2d Cir.1993). Discovery under this standard "includes constructive and inquiry notice as well as actual notice." *Id.; see also Menowitz v. Brown,* 991 F.2d 36, 41-42 (2d Cir.1993). A plaintiff "will be deemed to have discovered fraud for purposes of triggering the one-year statute of limitations when a reasonable investor of ordinary intelligence would have discovered the fraud." *Dodds,* 12 F.3d at 350 (internal citations omitted). A duty of inquiry arises where circumstances would suggest to a reasonable investor with conservative instincts the probability of fraud. *Dodds,* 12 F.3d at 352; *In re Integrated Res. Real Estate Sec. Ltd. Litig.,* 815 F.Supp. 620, 639 (S.D.N.Y.1993).

Inquiry notice is triggered by "financial, legal or other data available to plaintiff providing ... sufficient storm warnings to alert a reasonable person to the [probability] that there were either misleading statements or significant omissions involved in the sale of the [securities]." *Addeo v. Braver,* 956 F.Supp. 443, 449 (S.D.N.Y.1997) (quoting *Lenz v. Associated Inns & Rests. Co. of Am.,* 833 F.Supp. 362, 370 (S.D.N.Y.1997)) (change in original). Where the materials suggest that there are *any* material representations, plaintiffs have a duty to inquire into the reliability of defendant's representations. *See Addeo,* 956 F.Supp. at 450. "An investor [is] not [required] to have notice of the entire fraud being perpetrated to be on inquiry notice." *Dodds,* 12 F.3d at 352; *see Arneil,* 550 F.2d at 780 ("[T]he statutory period ... [does] not await appellant's leisurely discovery of the full details of the alleged scheme.") (quoting *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970) (change in original).

**\*4** In deciding to enter the Agreement with HWS, Dafofin alleges that it relied on defendants' misrepresentations that Dafofin would have a preferred position in the hotel relative to both HWS and IRP. (Compl. ¶ ¶ 10, 11; *see also* Biase Aff.) (explaining that Dafofin believed that it had a senior position vis-a-vis HWS and IRP)).[FN4] However, Paragraph 1.3 of the Agreement provides in pertinent part:

> FN4. Again, I note that although I have not have considered the Biase affidavit in resolving defendants' motion to dismiss, I have relied on the affidavit to clarify allegations made in the complaint. *See Albany Ins. Co. v. Banco Mexicano, S.A.,* 98 Civ. 9531, 1999 WL 533792, at \*3 (2d Cir.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 4
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529
**(Cite as: Not Reported in F.Supp.2d)**

July 2, 1999).

(a) DAFOFIN shall receive a preferential rate of return up to 12% on its Equity Investments from proceeds distributed from Owner to its Members (pari passu) *who are also receiving a preferential return* on their equity contributions.
(Agreement ¶ 1.3) (emphasis added). Although Paragraph 1.3(a) provides that Dafofin is entitled to a preferential rate of return, it also clearly states that other "Members ... are also receiving a preferential return." (*Id.*). According to this provision of the Agreement, there are at least two other parties, in addition to Dafofin, who are receiving a preferential return. Paragraph 1.3(a) clearly does not provide that Dafofin is in a superior position relative to these other "Members." The remainder of the Agreement is also silent as to which preferential rate, if any, is superior. Significantly, the Agreement does not define "Members," and it does not explicitly address Dafofin's position vis-a-vis HWS or IRP. Dafofin, however, was well aware that IRP was a "majority member" in the Hotel, (Compl.¶ 10), and that HWS held a 26.56% "membership interest" in HWS/IRP, the owner of the Hotel, (Agreement). Moreover, Plaintiffs do not allege that they believed that there was a third party with interest in the Hotel or that they knew the identity of the "other Members." Thus, the Agreement clearly provides that other parties besides Dafofin were granted a preferential return and that Dafofin did not hold a superior position vis-a-vis HWS, IRP or these other unidentified members.

Plaintiffs also claim that they relied on Defendants' false and misleading representation that HWS would buy Dafofin's investment for "any reason" and that Dafofin "could always sell its interest to IRP as an 'exit strategy.'" (Compl.¶ 10). The Agreement does not address Dafofin's ability to sell its interest to HWS or IRP. The only portion of the Agreement which deals with Dafofin's ability to transfer its interest is Paragraph 2.1 which requires Dafofin to obtain permission from HWS before transferring or assigning its interest.[FN5]

> FN5. The full text of Paragraph 2.1 reads as follows:
> Agreement Not Assignable. This Agreement and the rights hereunder shall not be assignable or transferrable by operation of law or otherwise by any party without the prior written consent of each party hereto, which consent may be withheld for any reason or no reason.

The Agreement also contains a merger clause stating that: "[t]his Agreement supersedes all prior oral or written agreements made between the parties relating to this subject matter. There are no other understandings or agreements between them." (Agreement ¶ 2.3). The merger clause makes clear that there are no other agreements between the parties. See *Harsco Corp. v. Sequi,* 91 F.3d 337, 343 (2d Cir.1996) (finding that where there was a merger clause in "a detailed writing developed via negotiations among sophisticated business entities," the agreement "defines the boundaries of the transaction"). Thus, any and all arrangements regarding Dafofin's preferential rate of return and its ability to sell its 31.9% interest are included in the Agreement. Because Paragraph 1.3(a) clearly provides that Dafofin's preferential rate of return is neither exclusive nor superior to IRP or HWS, and the merger clause forecloses the possibility of any contrary or additional arrangement, the Agreement contradicts any representation that Dafofin's investment in the Hotel would have a preferred position relative to both HWS and IRP. Similarly, the omission of any provision addressing Dafofin's ability to sell its interest to HWS or IRP coupled with the merger clause contradicts any representations that there was a particular arrangement under which Dafofin could sell its interest to HWS or IRP. Accordingly, the Agreement constitutes a "storm warning" that should have alerted the plaintiffs that there was a "[probability] that there were either misleading statements or significant omissions involved in the sale." *Addeo,* 956 F.Supp. at 449 (internal citations omitted) (change in original); *see Dodds,* 956 F.3d at 352 (finding conflict between conversation with investment advisor and prospectus constitutes "storm warning" sufficient to create inquiry notice). Although plaintiffs might not have discovered the full extent of defendants' alleged fraud until plaintiffs reviewed the Operating Agreement, the Agreement suggested a contradiction of defendants' earlier representations regarding Dafofin's preferred rate of return and its ability to sell its interest to HWS or IRP. Dafofin was thereby placed on notice that there was a probability that defendants made at least one misrepresentation.[FN6] Because plaintiffs need not have "notice of the entire fraud being perpetrated to be on inquiry notice," *Dodds,* 12 F.3d at 352, plaintiffs were placed on notice when they signed the Agreement on May 29, 1998, over two years before they filed suit. See *Addeo,* 956 F.Supp. at 449 (requiring plaintiff to read materials provided in connection with investments); *see also Dodds,* 956 F.3d at 350, ("[P]laintiff[s]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 5
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529
**(Cite as: Not Reported in F.Supp.2d)**

'cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put [them] on inquiry notice" ') (internal citations omitted).

> FN6. I also note that the remaining allegations of false and misleading statements do not appear to be actionable. Defendants' alleged assurance that the Hotel was a "great" investment for Dafofin which would make "quick" money are mere puffery. *See* Novak v. Kasaks, 216 F.3d 300, 315 (2d Cir.2000) (defining puffery to include "statements containing simple economic projections, [and] expressions of optimism"); Lasker v. New York State Elec. & Gas Corp., 85 F.3d 55, 59 (2d Cir.1996) (holding that statement in annual report that business strategies would lead to "continued prosperity" are puffery and therefore inactionable). Statements regarding IRP's interest in Finim and its purported knowledge of and enthusiasm for Dafofin's participation in the Hotel are non-material misrepresentations. *See generally* Ganino v. Citizens Utilities Co., 228 F.3d 154, 161-162 (2d Cir.2000) ("At the pleading stage, a plaintiff satisfies the materiality requirement of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions.... It is not sufficient to allege that the investor might have considered the misrepresentation or omission important. On the other hand, it is not necessary to assert that the investor would have acted differently if an accurate disclosure was made.... Therefore, ... material[ity] necessarily depends on all relevant circumstances of the particular case.") (internal citations omitted).

**\*5** Finally, Plaintiffs argue that defendants purposefully hindered plaintiffs' discovery of the alleged fraud thereby tolling the running of the statute of limitations. Under the doctrine of equitable tolling, "if the defendant actively prevented plaintiff from discovering the basis of the claim, then the statute of limitations will be tolled for the period of concealment." *Dodds,* 12 F.3d at 352. Plaintiffs argue that because HWS delayed delivery of the Operating Agreement, (Compl.¶ 11), until August 21, 2000, (Pl. Opp. Br. at 9), the triggering date for the statute of limitations should be tolled until August 21, 2000.

The Supreme Court addressed the applicability of the equitable tolling doctrine in *Lampf* where it stated:

> '[t]ime requirements in law suits ... are customarily subject to "equitable tolling." ' ... Notwithstanding this venerable principle, it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1-and-3-year structure [of the federal securities laws].
> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary.

501 U.S. at 363 (internal citations omitted). If a defendant actively conceals the fraud, it follows that plaintiffs will not discover the facts constituting the violation, and the statute of limitations will not begin to run. *See* Cohen v. Prudential-Bache Sec., 777 F.Supp. 276, 279 (S.D.N.Y.1991) ("[w]hereas equitable tolling generally applies in fraud cases, the doctrine does not apply to claims for securities fraud under section 10(b)"); Manning v. Maloney, 787 F.Supp. 433, 436 (M.D.Pa.1992) ( "[e]quitable tolling under the doctrine of fraudulent concealment does not apply to [Securities Exchange Act] actions"), *aff'd without opinion,* 980 F.2d 722 (3d Cir.). Thus, where a plaintiff is on inquiry notice, the statutory period is tolled only so long as plaintiff has "exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud." *Dodds,* 12 F.3d at 350 (citing *Arneil,* 550 F.2d at 781); *see* Tregenza v. Great Am. Communications Co., 823 F.Supp. 1409, 1415 (N.D.Ill.1993) ("[a] party cannot both have inquiry notice and merit equitable tolling"); *but see Seidman & Seidman,* 609 F.2d at 593 ("active concealment of fraudulent conduct tolls the statute of limitations in favor of the defrauded party until such time as he actually knew of the fraudulent conduct").

Plaintiffs failed to "exercise[ ] reasonable care and diligence in seeking to learn facts [that] would [have] disclose[d the] fraud." *Dodds,* 12 F.3d at 351-52. Defendants' mere refusal to provide plaintiffs with the Operating Agreement, (Compl.¶ 11), did not relieve plaintiffs of their duty to undertake reasonable inquiry into contradictions between the defendants' oral representations and the Agreement. *See In re Integrated Res. Real Estate Ltd. P'ship Sec. Litig.,* 850 F.Supp. 1105, 1132 (S.D.N.Y.1993) ("[N]either reassurances accompanying the relevant notice nor the continued failure to disclose the facts allegedly misrepresented in the first place relieves the plaintiff of his [ ] duty to undertake reasonable inquiry or tolls

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529
**(Cite as: Not Reported in F.Supp.2d)**

the statute of limitations.") (quoting *In re Integrated Res.,* 815 F.Supp. at 640). [FN7] Accordingly, plaintiffs' Section 10(b) and Rule 10b-5 claims are untimely and barred by the applicable one-year statute of limitations.

> FN7. Similarly, plaintiffs' arguments in their Memorandum (but not contained in the complaint) that plaintiffs repeatedly requested the HWS/IRP Operating Agreement, but did not receive the document until August 2000, (Pl. Opp. Br. at 9), are of no assistance to plaintiffs once they were on inquiry notice. Having been placed on inquiry notice when plaintiffs signed the Agreement on May 29, 1998, they were not justified in waiting for defendants to deliver the Operating Agreement.

### III. Section 12(a)(2) of the Securities Exchange Act of 1933

**\*6** Plaintiffs' second claim alleges a violation of Section 12(a)(2), formerly Section 12(2), of the Securities Act of 1933, 15 U.S.C. § 77l(2). (Compl.¶ ¶ 23-25). Plaintiffs have conceded that in the Second Circuit, Section 12(a)(2) claims are limited to misrepresentations that "(for the most part) appear in prospectuses (or similar disclosure documents) that are published as part of a public offering." (Pl. Opp. Br. at 11). Plaintiffs have requested that if the Court dismisses this claim, it do so without prejudice to allow plaintiffs an opportunity to replead this claim. (*Id.*). Plaintiffs allege that discovery may produce information to support a Section 12(a)(2) claim in accordance with the requirements of this Circuit. (*Id.*).

Under Section 12(a)(2),[FN8] purchasers of securities may bring a claim against sellers who make material misstatements or omissions "by means of a prospectus." *Gustafson v. Alloyd Co.,* 513 U.S. 561, 563 (1995). Section 12(a)(2) liability attaches to violations of registration and disclosure obligations of an initial public offering, but not to secondary private offerings, which are not burdened by such disclosure and registration obligations. *Id.* at 577. Purchasers in private market offerings do not have standing to bring actions under Section 12(a)(2). *See Saslaw v. Al Askari,* 95 Civ. 7641, 1997 WL 221208, at \*6 (S.D.N.Y. Apr. 25, 1997) (citing cases). *See also id.* at \*5 (detailing purpose of Securities Act of 1933). Courts within this circuit have consistently interpreted *Gustafson* to exclude purchasers in private or secondary market offerings from bringing actions under Section 12(a)(2). *See e.g., Baxter v. A.R. Baron & Co., Inc.,* 1995 Fed. Sec. L. Rep. P 98,923, 94 Civ. 3913, 1995 WL 600720 (S.D.N.Y. Oct. 12, 1995)); *Glamorgan Coal Corp. v. Ratner's Group PLC,* 93 Civ. 7581, 1995 WL 406167, at \* 2 (S.D.N.Y. July 10, 1995) ("Every court since *Gustafson,* including this district, has held in light of *Gustafson,* that § 12(2) applies only to initial public offerings.") (citing *In re U.S.A. Classic Sec. Litig.,* 93 Civ. 6667, 1995 WL 363841, at \*3 (S.D.N.Y. June 14, 1995); *Pollack v. Laidlaw Holdings, Inc.,* 90 Civ. 5788, 1995 WL 261518, at \* 14 (S.D.N.Y. May 3, 1995); *Komanoff v. Mabon, Nugent & Co.,* 884 F.Supp. 848, 857 (S.D.N.Y.1995)).

> FN8. Section 12(a) provides as follows:
> Any person who-...
> (2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable ... to the person purchasing such security from him....
> 15 U.S.C. § 77l.

It is clear that there is no way in which Plaintiffs' Section 12(a)(2) claim can possibly conform to the requirements of *Gustafson.* Dafofin's million dollar investment in HWS was made pursuant to a private transaction between the parties. (Compl.¶ ¶ 12, 13, 17.) No amount of discovery can transform this private agreement into a public offering. Because Plaintiffs cannot present a viable claim, their Section 12(a)(2) claim is dismissed with prejudice.

### IV. Section 17(a) of the Securities Act of 1933

Plaintiffs' third claim alleges a violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). (Compl.¶ ¶ 26-28). Plaintiffs, however, have conceded that the Second Circuit does not recognize a private right of action under Section 17(a). (Pl. Opp. Br. at 10). Plaintiffs have requested that if the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 7
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529
**(Cite as: Not Reported in F.Supp.2d)**

Court dismisses this claim, it do so without prejudice to allow plaintiffs an opportunity to replead this claim in the event that the Supreme Court reverses the Second Circuit's position on Section 17(a) claims while this case is pending. (*Id.* at 10-11).

***7** The Second Circuit has clearly held that "there is no private right of action under Section 17(a)." *Finkel v. Stratton Corp.,* 962 F.2d 169, 175 (2d Cir.1992). The position of the Second Circuit is based, in large part, on Supreme Court decisions. *See id.* at 175 (stating that recent Supreme Court cases have "fatally undercut" Second Circuit's previous position recognizing private right of action under Section 17(a)). Although the Supreme Court has recently declined to express a view "as to whether a private right of action exists under Section 17(a)," *Bateman Eichler, Hill Richard, Inc. v. Berner,* 472 U.S. 299, 304 n. 9 (1985), *Finkel* is clear precedent in the Second Circuit. Accordingly, Plaintiffs' third claim is dismissed with prejudice.

### V. Jurisdiction of State Law Claims

Finally, Plaintiffs assert state law claims of fraud, breach of contract, and conversion. Defendants argue that if Plaintiffs' federal claims are dismissed the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.[FN9] As set forth above, Plaintiffs' federal securities law claims are dismissed, and there is no federal question to be adjudicated. "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). Where "federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726. Accordingly, I decline to exercise supplemental jurisdiction,[FN10] and Plaintiffs' state law claims are dismissed without prejudice.

> FN9. Because defendant HWS and at least one of the plaintiffs, Omabuild, are both New York Corporations, (Compl.¶ ¶ 1-2), there is no diversity jurisdiction.

> FN10. Because I decline to exercise supplemental jurisdiction, I need not consider whether plaintiffs' conversion claim duplicates their breach of contract claim.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.

S.D.N.Y.,2001.
Dafofin Holdings S.A. v. Hotelworks.com, Inc.
Not Reported in F.Supp.2d, 2001 WL 940632 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,529

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.