1003R1

**Time of Request:** Tuesday, May 29, 2007   09:40:05 EST
**Client ID/Project Name:** 58694-0000004-11515:
**Number of Lines:** 395
**Job Number:**    1822:29905766

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 2003 U.S. Dist. LEXIS 5913

**Send to:**   BILIK, SHIRI
          MORRISON & FOERSTER - TRANS
          1290 AVENUE OF THE AMERICAS
          NEW YORK, NY 10104-0101

LEXSEE 2003 U.S. DIST. LEXIS 5913

**EMILE B. MAALOUF, individually d/b/a CHICAGO INTERNATIONAL NETWORK, Plaintiff, - against - SALOMON SMITH BARNEY, INC., Defendant.**

02 Civ. 4770 (SAS)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 5913*

**April 9, 2003, Decided
April 10, 2003, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted by, in part *Maalouf v. Salomon Smith Barney, 2004 U.S. Dist. LEXIS 17873 (S.D.N.Y., Sept. 7, 2004)*

**DISPOSITION:** [*1] . Defendant's motion to dismiss was granted in part and denied in part.

**COUNSEL:** Plaintiff, Pro se, Marshall, Virginia.

For Defendant: Thomas J. Moloney, Esq., Boaz S. Morag, Esq., Cleary, Gottlieb, Steen & Hamilton, New York, New York.

**JUDGES:** Shira A. Scheindlin, U.S.D.J.

**OPINION BY:** Shira A. Scheindlin

**OPINION:**

### OPINION AND ORDER

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Emile B. Maalouf, doing business as Chicago International Network ("CIN") and appearing pro se, is suing Salomon Smith Barney, Inc. ("Smith Barney") for, *inter alia,* breach of contract. In addition to breach of contract, Maalouf brings the following claims: negligent misrepresentation; breach of fiduciary duty; tortious interference with prospective business transactions; unjust enrichment; breach of the covenant of good faith and fair dealing; and tortious interference with a business relationship. Smith Barney is moving to dismiss all claims other than the breach of contract claim. For the following reasons, defendant's motion is granted in part and denied in part.

### I. THE COMPLAINT

The following allegations, as pled in Maalouf's Second Amended Complaint ("Complaint") are assumed to be true for purposes of this motion. [*2]

#### A. Introduction

CIN was established to develop opportunities in emerging markets, especially those in the countries of the former Soviet Union. *See* Complaint PP 7-8. Recognizing that large amounts of capital would be needed to develop these markets, CIN approached Smith Barney with a proposition intended to improve the overseas position of Smith Barney's investment banking division. *See id.* PP 9, 11-12. In other words, CIN acted as an intermediary between Smith Barney and certain Russian companies. CIN would introduce Smith Barney to these companies and, in return, would receive fees in the form of cash and equity ownership once a deal was consummated. The rights and obligations of the parties were memorialized in the following two letter agreements.

#### B. May 1995 Agreement

On May 10, 1995, CIN and Smith Barney entered into a Non-Disclosure and Non-Circumvention Agreement (the "May 1995 Agreement") whereby CIN was to act as representative for three Russian companies, referred to as "Listed Parties" in the Addendum attached to the May 1995 Agreement. n1 *See* Addendum to May 1995 Agreement, Ex. A to Complaint. Pursuant to the May 1995 Agreement, CIN agreed to [*3] provide Smith Barney with certain "Confidential Information" relating to the Listed Parties who, according to CIN, were "seeking advice and assistance with regard to the potential sale of their securities in the United States and elsewhere." May 1995 Agreement at 1. The May 1995 Agreement provided that Smith Barney would not disclose the Confidential Information provided by CIN to any outside party. *See id.* at 2. In addition, Smith Barney

Case 1:07-cv-03966-JSR   Document 12-12   Filed 06/04/2007   Page 3 of 9

Page 2
2003 U.S. Dist. LEXIS 5913, *

agreed not to make any separate contract or deal, or enter into any transaction, with the Listed Parties or their affiliates without CIN's express written permission. *See id.* The May 1995 Agreement did not include any provisions relating to CIN's compensation; the only duties it imposed on Smith Barney were to maintain the confidentiality of information provided by CIN and to obtain CIN's written consent before dealing with the Listed Parties. Compensation was addressed in a subsequent agreement. n2

> n1 The three companies were Rosneft Joint-Stock Company ("Rosneft"), Almazy Yakutii Joint-Stock Company ("Yakutii") and Almazy Rossii-Sakha Joint-Stock Company ("Rossii-Sakha"). *See* Addendum to May 1995 Agreement.

[*4]

> n2 Maalouf annexed an "Agreement on the Implementation of a Capital Market Strategy," dated December 1, 1995, to his Complaint. *See* Ex. A1 to Complaint. Although this agreement contains provisions regarding the payment of compensation to CIN, it is not signed by either party and therefore not a contract.

**C. June 24, 1996 Agreement**

On June 24, 1996, the parties entered into a supplemental agreement (the "June 1996 Agreement") which sets forth specific terms and conditions governing CIN's arrangement with Smith Barney. *See* Ex. B to Complaint. The June 1996 Agreement describes the scope of services to be provided by CIN to Smith Barney as follows:

> The Company [CIN] agrees to provide consulting services to Smith Barney on an exclusive basis with regard to business opportunities, including the potential offering of securities in the United States (collectively, "Business Opportunities") for the Russian companies identified as "Listed Parties" in a letter agreement between the Company and Smith Barney, dated May 10, 1995.

June 1996 Agreement at 1.

With regard to compensation, [*5] the June 1996 Agreement provides for the payment of a $ 25,000 consulting fee, payable in two installments of $ 12,500 -- the first upon execution of the June 1996 Agreement and the second upon its expiration. This consultation fee was not intended to be CIN's only compensation as the 1996 Agreement states:

> The parties acknowledge that the compensation described in the preceding paragraph shall not constitute compensation for closing any transaction with one or more Listed Parties, and the parties agree to negotiate a reasonable compensation to be paid by Smith Barney to [CIN] in the event such a transaction is completed on terms customary for Smith Barney for similar services (unless otherwise agreed to in writing by both parties).

June 1996 Agreement at 2. The June 1996 Agreement further provides that CIN is to function as an independent contractor with regard to the above services, not as an employee or agent of Smith Barney. *See id.* In addition, the June 1996 Agreement "does not create a partnership or joint venture between [CIN] and Smith Barney." *Id.* Nor does the June 1996 Agreement constitute CIN's "'express written permission,' as detailed in the [*6] letter agreement dated May 10, 1995, between [CIN] and Smith Barney, to make a separate contract with or enter into a transaction with any of the Listed Parties, and that Smith Barney shall continue to require [CIN's] express written permission to consummate such a transaction with any of the Listed Parties or their affiliates." *Id.*

**D. The Alleged Breaches**

Maalouf alleges that Smith Barney and its affiliates made repetitive contacts, dealings and transactions with Listed Parties without the express written permission of CIN. *See* Complaint P 25. For example, Smith Barney allegedly breached the May 1995 Agreement by concluding a $ 62 million transaction with Rossii-Sakha in mid 1996. *See id.* P 26. Maalouf also alleges that Smith Barney dealt directly with Gazprom, an affiliate of Rosneft, without CIN's express permission. *See id.* PP 31, 33 and 40. Smith Barney allegedly consummated three Eurobond transactions in 2002 with Gazprom, two for $ 500 million and one for $ 200 million, without paying CIN any fees. *See id.* PP 45-47. For this and other conduct, plaintiff seeks, *inter alia,* damages in the amount of $ 30 million.

**II. MOTION TO DISMISS** [*7] **STANDARD**

"Given the Federal Rules' simplified standard for pleading, 'a court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts

Case 1:07-cv-03966-JSR   Document 12-12   Filed 06/04/2007   Page 4 of 9

Page 3
2003 U.S. Dist. LEXIS 5913, *

that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (emphasis added) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)). A complaint need not state the legal theory, facts, or elements underlying the claim, except in certain instances. *Compare Fed. R. Civ. P. 8 with Fed. R. Civ. P. 9*. n3 Pursuant to the simplified pleading standard of *Rule 8(a)*, a complaint need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" n4 *Swierkiewicz*, 534 U.S. at 512 (quoting *Rule 8(a)(2)*). A plaintiff need not, in other words, plead the elements of a claim. *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 323 (S.D.N.Y. 2003) ("*Rule 8(a)* does not require plaintiffs to plead the legal theory, facts or elements underlying their claim.").

> n3 The heightened pleading standard of *Rule 9(b)* requires that in claims of fraud or mistake "the circumstances constituting fraud or mistake shall be stated with particularity." *Fed. R. Civ. P. 9(b)*.

[*8]

> n4 Although New York substantive law governs the claims in issue here, federal procedural law is applied. *See generally Hanna v. Plumer*, 380 U.S. 460, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965) (explaining that procedural requirements in federal court are governed by federal, not state, procedural law). A federal court may not impose a heightened pleading standard -- under any circumstance -- unless that heightened standard is embodied in the Rules or enacted by Congress. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993).

When deciding a motion to dismiss pursuant to *Rule 12(b)(6)*, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Courts may not consider matters outside the pleadings but may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings. [*9] *See id. at 152-53*.

At the motion to dismiss stage, the issue "'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Phelps v. Kapnolas*, 308 F.3d 180, 184-85 (2d Cir. 2002) (per curiam) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)). Therefore, the task of the court in ruling on a *Rule 12(b)(6)* motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Pierce v. Marano*, No. 01 Civ. 3410, 2002 U.S. Dist. LEXIS 14870, 2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002) (quoting *Saunders v. Coughlin*, No. 92 Civ. 4289, 1994 U.S. Dist. LEXIS 3015, 1994 WL 98108, at *2 (S.D.N.Y. Mar. 15, 1994)).

### III. DISCUSSION

#### A. Negligent Misrepresentation

In his second cause of action, Maalouf claims that Smith Barney made negligent misrepresentations upon which CIN relied. Examples of such misrepresentations include statements by Smith Barney that it would [*10] engage in multi-billion dollar transactions with Listed Parties through CIN, *see* Complaint P 50, and that Smith Barney was able and ready to raise capital for Rosneft through debt financing on the international market, *see id.* P 51.

Smith Barney seeks to dismiss plaintiff's negligent misrepresentation claim as "'so broad and conclusory as to be meaningless.'" Memorandum of Law in Support of Defendant's Motion to Dismiss the Second Through Seventh Causes of Action in the Second Amended Complaint at 8 ("Def. Mem.") (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001)). Smith Barney also seeks dismissal of this claim on the ground that Maalouf failed to plead the required elements of a negligent misrepresentation claim. n5

> n5 These elements are as follows: (1) defendant had a duty, by virtue of a special relationship with plaintiff, to give plaintiff correct information; (2) defendant made a false representation that it should have known was incorrect; (3) defendant knew that plaintiff desired the information supplied in the representation for a serious purpose; (4) plaintiff intended to rely and act upon such information; and (5) plaintiff reasonably relied on such information to its detriment. *See Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

[*11]

Negligent misrepresentation is a type of fraud and, as such, is subject to *Rule 9(b)*'s heightened pleading standard. *See Simon v. Castello, 172 F.R.D. 103, 105 (S.D.N.Y. 1997)* ("The particularity requirements of *Rule 9(b)* have also been found to apply to claims for negligent misrepresentation."). Nonetheless, it does not necessarily follow that a plaintiff must plead all elements of a negligent misrepresentation claim with particularity. *Rule 9(b)* merely states that "the circumstances constituting fraud or mistake shall be stated with particularity." *Fed. R. Civ. P. 9(b)*. Accordingly, *Rule 9(b)*'s particularity requirement demands that the complaint contain specific factual allegations demonstrating that a statement was false or misleading when made. *See In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69-70 (2d Cir.)* ("The complaint must identify the statements plaintiff asserts were fraudulent and why, in plaintiff's view, they were fraudulent, specifying who made them, and where and when they were made."), *cert. denied sub nom., Scholastic Corp. v. Truncellito, 534 U.S. 1071, 151 L. Ed. 2d 590, 122 S. Ct. 678 (2001)*.

Here, plaintiff's [*12] generalized averments of negligent misrepresentations allegedly made by Smith Barney do not meet the particularity requirements of *Rule 9*. To do so, Maalouf would have to identify, at a minimum, the allegedly false representations made by Smith Barney, who at Smith Barney made them, where and when were they made, and why they are considered fraudulent. n6 For example, Maalouf claims that Smith Barney made representations "that it was able and ready to raise capital on the International market for the oil company Rosneft through debt financing guaranteed by [Rosneft's] oil reserves and assets ...." Complaint P 51. Such a vague and generic allegation does not satisfy *Rule 9(b)* because it does not put the defendant on sufficient notice of the claim, *i.e.*, the who, what, why, where and when. *See In re Scholastic Corp., 252 F.3d at 69-70*. Having failed to provide this level of detail, plaintiff's negligent misrepresentation claim is dismissed without prejudice.

---

n6 In the context of securities fraud case, the Second Circuit has interpreted *Rule 9(b)* as follows:

> To pass muster under *rule 9(b)*, the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. Although scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent.

*Ouaknine v. MacFarlane, 897 F.2d 75, 79-80 (2d Cir. 1990)* (citations omitted).

---

[*13]

### B. Breach of Fiduciary Duty

Maalouf's third claim against Smith Barney is for breach of fiduciary duty. Maalouf alleges that Smith Barney owed a duty to CIN not to conceal critical and detrimental facts regarding Smith Barney's direct dealings with Rossii-Sakha. *See* Complaint PP 66-67, 70. Specifically, plaintiff claims that "CIN was justified in believing that Smith Barney, Inc., would not act in a manner adverse to CIN's interest. Smith Barney, Inc., was in a dominant position as it possessed knowledge and expertise and Smith Barney's involvement could lead to a contract binding CIN." *Id.* P 65.

In order to pursue a breach of fiduciary duty claim, there must be a fiduciary relationship between the parties. *See Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986)* (describing the elements of a breach of fiduciary duty claim as: (1) a breach by a fiduciary in its obligations to another; (2) defendant's knowing participation in the breach, and (3) damages as a result of the breach). Requiring Maalouf to plead all of these elements would clearly contradict *Swierkiewicz*. However, dismissal is nonetheless appropriate where a plaintiff has not, [*14] and cannot as a matter of law, plead a fiduciary relationship.

Entering into a conventional business relationship generally does not create a fiduciary relationship. *See Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 289 (S.D.N.Y. 1995). See also In Re Kressner, 206 B.R. 303, 312 (Bankr. S.D.N.Y. 1997)* ("A substantial factor to be considered in determining the existence of a fiduciary relationship is the intent to create a trust relationship, rather than a contractual relationship."). As stated by the Sixth Circuit,

> To make out a claim that a fiduciary relationship existed, the party claiming the fiduciary relationship must first show the relationship existed before the transaction that is the subject of the action. Second, the party claiming a fiduciary relationship must show that reliance was not merely subjective. Third, the party claiming a fiduciary relationship must show that the nature of the relationship imposed a duty

Case 1:07-cv-03966-JSR    Document 12-12    Filed 06/04/2007    Page 6 of 9

Page 5
2003 U.S. Dist. LEXIS 5913, *

upon the fiduciary to act in the principal's interest, even if such action were to the detriment of the fiduciary.

*In re Sallee*, 286 F.3d 878, 892 (6th Cir.) (citations omitted), [*15] cert. denied, 537 U.S. 949, 154 L. Ed. 2d 294, 123 S. Ct. 415 (2002).

In attempting to plead a fiduciary relationship, Maalouf has alleged that Smith Barney "was in a dominant position as it possessed knowledge and expertise" and that a "relationship of trust and confidence between CIN and Smith Barney Inc" existed. Complaint PP 65-66. However, "the fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship." *In re Sallee*, 286 F.3d at 891. Moreover, "an arm's length business transaction, even those where one party has superior bargaining power[,] is not enough to give rise to a fiduciary relationship." *Sony Music Entm't Inc. v. Robison*, No. 01 Civ. 6415, 2002 U.S. Dist. LEXIS 3100, 2002 WL 272406, at *3 (S.D.N.Y. Feb. 25, 2002) (quotation marks and citation omitted). Given that Maalouf alleges that CIN and Smith Barney were parties to a garden variety business transaction, there can be no fiduciary relationship between the two parties. Nonetheless, if plaintiff can allege that Smith Barney was a fiduciary with respect to CIN, then his claim might be able to proceed. *See Sony Music*, 2002 U.S. Dist. LEXIS 3100, 2002 WL 272406, at *3 [*16]. Accordingly, plaintiff's breach of fiduciary duty claim is dismissed without prejudice.

### C. Tortious Interference with Prospective Business Transactions

Maalouf's fourth claim against Smith Barney is for tortious interference with prospective business transactions. According to Maalouf, Smith Barney was aware that CIN had "substantial opportunities and prospective advantage" with the Listed Parties. Complaint P 73. Maalouf claims that Smith Barney intentionally interfered with CIN's prospective business opportunities and, as a result, CIN's business was severely damaged as to past, present and future engagements and prospects. *See id.* PP 74, 76. Although it is not entirely clear from the Complaint as to how Smith Barney interfered, Maalouf alleges that CIN "incurred reasonably foreseeable losses as a result of the *omissions and statements* of Smith Barney Inc." *Id.* P 76 (emphasis added).

Smith Barney seeks to dismiss this claim because Maalouf "does not identify the nature of CIN's business opportunities with the Listed Parties, nor does he explain how Smith Barney interfered with those opportunities." Def. Mem. at 12. In addition, defendant argues that plaintiff [*17] has failed to allege that any purported interference was done either with malicious motive or through wrongful means. n7 Defendant's argument may have succeeded before *Swierkiewicz*. However, the Supreme Court has emphatically reiterated that the purpose of pleadings is merely to put the adverse party on notice of the claims against it. *See Swierkiewicz*, 534 U.S. at 512 (the "short and plain statement" required by *Rule 8(a)(2)* must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'") (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). A plaintiff need not plead his claim in exhaustive detail, nor must he plead the elements of a particular claim. *See id.* ("*Rule 8(a)*'s simplified pleading standard applies to all civil actions, with limited exceptions."). Here, the Complaint sufficiently puts Smith Barney on notice of plaintiff's claim for tortious interference with prospective business transactions. The specifics of that claim, as well as defendant's motives and methods, will be explored through discovery. Defendant's motion to dismiss this claim is therefore [*18] denied.

n7 Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) a business relationship between plaintiff and a third party; (2) defendant's knowledge of such relationship; (3) intent to interfere; (4) defendant acted with the sole purpose of harming plaintiff or used dishonest, unfair or improper means; and (5) the relationship is injured. *See Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000). According to Smith Barney, plaintiff's claim fails because he has completely failed to allege malicious motive or wrongful means as required by the fourth element.

### D. Unjust Enrichment

In his fifth claim against Smith Barney, Maalouf alleges that services rendered by CIN, as well as its disclosure of Confidential Information to Smith Barney, unjustly enriched Smith Barney to CIN's detriment. *See* Complaint P 78. Maalouf goes on to state that Smith Barney has not compensated CIN for its services or "for [*19] damages resulting from its breaches of the specific written Agreements." *Id.* P 79. Smith Barney seeks to dismiss this claim on the ground that a breach of contract claim and a claim for unjust enrichment are mutually exclusive. *See* Def. Mem. at 16.

Unjust enrichment is "an amorphous cause of action, but one which falls under the umbrella of quasi-contract, or contract implied-in-law." *Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp.

Case 1:07-cv-03966-JSR    Document 12-12    Filed 06/04/2007    Page 7 of 9

Page 6
2003 U.S. Dist. LEXIS 5913, *

2d 331, 338 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999). Unjust enrichment is premised on the notion that where principles of contract law are inadequate to compensate an unjustly deprived party, a court should resort to principles of equity. *See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)* (noting that under New York law, the "essence" of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another") (quotation marks and citations omitted). Accordingly, under New York law, the existence of a valid contract generally preempts a quasi-contract claim for unjust enrichment. *See Ohio Players, Inc. v. Polygram Records, Inc., No. 99 Civ. 33, 2000 U.S. Dist. LEXIS 15710, 2000 WL 1616999,* [*20] *at *4 (S.D.N.Y. Oct. 25, 2000)* ("Under New York law, unjust enrichment is a quasicontractual claim that ordinarily can be maintained only in the absence of a valid, enforceable contract.").

"Here, Maalouf does not allege that the CIN Agreements are either unenforceable or that the dispute between CIN and Smith Barney falls outside the scope of those agreements." Def. Mem. at 17. In defense of the action, however, Smith Barney intends to argue that the transactions in dispute: (1) did not involve Smith Barney; (2) occurred after the CIN-Smith Barney Agreements terminated; and/or (3) were with Russian companies not covered under the Agreements. *See id. 2000 U.S. Dist. LEXIS 15710, [WL] at *2*. It is the second defense that could conceivably re-characterize plaintiff's breach of contract claim into a claim for unjust enrichment. If the services rendered by CIN to Smith Barney are found to be outside the scope of the Agreements, Maalouf's breach of contract claim would necessarily fail. But Maalouf may still have a claim for unjust enrichment in the absence of a governing contract. The fact that Maalouf may only *recover* on one claim, either contract or quasi-contract, certainly does not preclude him from *pleading* [*21] unjust enrichment in the alternative. n8 *See Fed. R. Civ. P. 8(e)(2); see also MDCM Holdings, Inc. v. Credit Suisse First Boston Corp., 216 F. Supp. 2d 251, 261 (S.D.N.Y. 2002)*. Accordingly, Smith Barney's motion to dismiss Maalouf's claim for unjust enrichment is denied.

> N8 To plead a claim of unjust enrichment, a plaintiff must merely allege: "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001)*. Maalouf has met this minimal burden. *See* Complaint PP 77-83.

**E. Breach of Covenant of Good Faith and Fair Dealing**

Maalouf's sixth claim against Smith Barney is for breach of the covenant of good faith and fair dealing. In short, Maalouf argues that Smith Barney's alleged unauthorized communications and direct transactions with [*22] the Listed Parties constituted breaches of the duty of good faith and fair dealing implicit in the Agreements. *See* Complaint PP 84-90. Smith Barney seeks to dismiss this claim as duplicative of plaintiff's breach of contract claim. *See* Def. Mem. at 18.

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance ... This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995)* (quotation marks and citations omitted). *See also Renner v. Chase Manhattan Bank, No. 98 Civ. 926, 2000 U.S. Dist. LEXIS 8552, 2000 WL 781081, at *19 (S.D.N.Y. June 14, 2000)* ("The covenant of good faith arises out of and is inherent in a contract."). Because Maalouf could conceivably recover under a quasi-contract theory, as discussed with respect to his claim of unjust enrichment, his claim for breach of the covenant of good faith and fair dealing cannot be dismissed at this time.

**F. Tortious Interference with a Business Relationship** [*23]

Maalouf's final claim alleges that Smith Barney unlawfully interfered with "existing written agreements for joint ventures, representation and business development" with the Listed Parties and that Smith Barney's "tortious interference with CIN's business relationships caused a detriment to CIN and its contractucal relations with Listed Parties." Complaint PP 92, 94. According to Maalouf, "had Smith Barney Inc. honored the terms of the Agreements with CIN[,] CIN would have been compensated for its years of work, and would have realized its planned joint ventures and stock ownership with Listed Parties." *Id.* P 96.

Smith Barney first argues that Maalouf's allegations based on CIN's purported *future* relations with the Listed Parties are virtually identical to those underlying his tortious interference with prospective business transactions claim. Defendant argues that the instant claim should be dismissed for the same reasons. *See* Def. Mem. at 14. These arguments have already been addressed. Secondly, Smith Barney argues that Maalouf has failed to state a claim for tortious interference with *existing* business relations as he has failed to assert that Smith Barney in-

duced [*24] any of the Listed Parties to breach any contractual duties owed CIN. n9 *See id.* at 15. Defendant also argues that Maalouf has failed to sufficiently plead Smith Barney's intent to interfere with contracts between CIN and the Listed Parties. *See id.* at 16.

> n9 The elements of a claim for tortious interference with existing business relationships under New York law are as follows: (1) the existence of a valid contract; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the breach of that contract; and (4) damages. *See Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp. 209, 224 (S.D.N.Y. 1997)*.

A plaintiff does not need to describe a defendant's motivation at the pleading stage. The question of intent is highly fact-based and often involves sifting through circumstantial evidence. Such evidence generally becomes available through the course of discovery. *See Swierkiewicz, 534 U.S. at 512* ("Before discovery has unearthed relevant facts and [*25] evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case."). However, a plaintiff claiming tortious interference with a business relationship must at least identify the existing third party contract he claims was breached as a result of defendant's conduct. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., No. 96 Civ. 1103, 1996 U.S. Dist. LEXIS 18653, 1996 WL 724734, at *3 (S.D.N.Y. Dec. 17, 1996)* (stating that courts have dismissed claims for tortious interference with contractual relations for failing to identify specific contracts that were breached by a defendant's actions). The instant claim is therefore dismissed without prejudice.

## IV. LEAVE TO AMEND

When a cause of action is dismissed because of pleading deficiencies, the usual remedy is to permit a plaintiff to amend his complaint. *See Fed. R. Civ. P. 15(a)* ("Leave [to amend] shall be freely given when justice so requires."); *see also Foman v. Davis, 371 U.S. 178, 183, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)* (stating that refusal to grant leave to amend without reason is an abuse of discretion and inconsistent with the spirit of the Federal Rules). [*26] Leave to amend is especially appropriate here given plaintiff's pro se status.

Accordingly, plaintiff is hereby given one final opportunity to amend his complaint to properly plead his claims of negligent misrepresentation, n10 breach of fiduciary duty, and tortious interference with a business relationship. Any such amended complaint must be served within thirty (30) days of receipt of this Opinion.

> n10 The policy of granting free leave to amend is especially appropriate in the context of claims dismissed under *Rule 9(b)* because the law favors resolving disputes on their merits. *See Acito v. IMCERA Group, Inc., 47 F.3d 47, 54-55 (2d Cir. 1995)*; *Luce v. Edelstein, 802 F.2d 49, 56-57 (2d Cir. 1986)*.

## V. CONCLUSION

For the reasons stated above, defendant's motion is granted in part and denied in part. In sum, Maalouf's claims for negligent misrepresentation, breach of fiduciary duty, and tortious interference with a business relationship are dismissed without prejudice [*27] with possible leave to re-plead. Plaintiff's claims of tortious interference with prospective business transactions, unjust enrichment, and breach of the covenant of good faith and fair dealing remain. A status conference is scheduled for Monday April 14, 2003, at 1:00 p.m. The Clerk of the Court is directed to close this motion.

SO ORDERED:

Shira A. Scheindlin

U.S.D.J.

Dated: April 9, 2003

1003R1

\*\*\*\*\*\*\*\*\*\* Print Completed \*\*\*\*\*\*\*\*\*\*

Time of Request: Tuesday, May 29, 2007   09:40:05 EST

Print Number:    1822:29905766
Number of Lines: 395
Number of Pages:

Send To:  BILIK, SHIRI
          MORRISON & FOERSTER - TRANS
          1290 AVENUE OF THE AMERICAS
          NEW YORK, NY 10104-0101