**Westlaw Download Summary Report for BILIK,SHIRI R 5840161**

| | |
|---|---|
| Date/Time of Request: | Tuesday, May 29, 2007 08:46:00 Central |
| Client Identifier: | 58694-0000004-11515: |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 841 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

**Westlaw**

Not Reported in F.Supp.2d                                                                                                   Page 1
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

Waxman v. Envipco Pick Up & Processing Services, Inc.
S.D.N.Y.,2003.

United States District Court,S.D. New York.
Henry A. WAXMAN, Plaintiff,
v.
ENVIPCO PICK UP & PROCESSING SERVICES, INC., Environmental Products Corporation, Envipco Holding, N.V., Bhajun Santchurn, and John Does 1-10. Defendants.
**No. 02 Civ. 10132(GEL).**

Oct. 28, 2003.

Principal of target corporation in a corporate purchase agreement sued the acquiring corporation and related corporate entities, asserting claims for violations of the federal securities laws, and for fraud and unjust enrichment under state law. On a defense motion to dismiss, the District Court, Lynch, J., held that: (1) principal failed to plead securities fraud with sufficient particularity, and (2) he failed to state a claim for unjust enrichment.

Motion granted.
West Headnotes
**[1] Securities Regulation 349B ⛷60.53**

349B Securities Regulation
　　349BI Federal Regulation
　　　　349BI(C) Trading and Markets
　　　　　　349BI(C)7 Fraud and Manipulation
　　　　　　　　349Bk60.50 Pleading
　　　　　　　　　　349Bk60.53 k. Misrepresentation.
Most Cited Cases
Principal of target corporation in a corporate purchase transaction failed to plead securities fraud with sufficient particularity as to his claim that the acquiring corporation's parent holding company and its controlling official made misrepresentations to the principal to induce him to enter into purchase and employment agreements; of six alleged misrepresentations, only one specified the time, place, speaker, and content of the alleged misrepresentations, and he alleged no facts that gave rise to an inference of scienter; many of his allegations did not even clearly allege that the purported misrepresentations were false, or known to be false, at the time they were made. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Securities Exchange Act of 1934, § 21D(b), as amended, 15 U.S.C.A. § 78u-4(b); 17 C.F.R. § 240.10b-5(b); Fed.R.Civ.P. 9(b).

**[2] Implied and Constructive Contracts 205H ⛷81**

205H Implied and Constructive Contracts
　　205HII Actions
　　　　205HII(B) Pleading
　　　　　　205Hk81 k. Declaration, Complaint, or Petition. Most Cited Cases
Principal of target corporation in a corporate purchase transaction failed to state a claim for unjust enrichment in a complaint which appeared to seek money that the defendants "previously agreed" to pay him, despite his claim that he could plead unjust enrichment in the alternative because the validity of purchase and employment agreements had not yet been established; he had not alleged facts that raised a bona fide dispute as to the existence of the purchase and employment agreements, however, and he had abandoned his claim of fraud in the inducement, the sole claim that would have entitled him to seek rescission.

Eugene Killian, Jr., Killian & Salisbury, P.C., Clark, NJ (Tracy E. Makow, Charles A. Stewart, Stewart Occhipinti & Makow, LLP, New York, NY, on the brief), for Plaintiff.
Jeffery W. Herrmann, Ross & Hardies, New York, N.Y. (Christine M. Fecko, on the brief), for Defendants Envipco Pick Up & Processing, Inc., Environmental Products Corporation, and Envipco Holding, N.V.

*OPINION AND ORDER*
LYNCH, J.
**\*1** Defendants Envipco Pick Up & Processing Services, Inc. ("EPPSI"), Environmental Products Corporation ("EPC"), and Envipco Holding, N.V. (collectively, "Envipco") move to dismiss four of the seven claims alleged in plaintiff Henry A. Waxman's amended complaint. Counts I and IV allege violations of the federal securities laws. Counts II and VII allege fraud and unjust enrichment, respectively, under state law. Envipco argues that these counts fail to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and as to the securities and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03966-JSR    Document 12-13    Filed 06/04/2007    Page 3 of 12

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

state-law fraud claims, fail to plead with the particularity required by Fed.R.Civ.P. 9(b) and 15 U.S.C. § 78u-4(b)(1)(B). Envipco's motion to dismiss will be granted.[FN1] The dismissal of Waxman's federal securities claims entails the dismissal of Count III, which seeks to hold defendant Bhajun Santchurn liable as a "controlling person" responsible for the alleged securities violations. See 15 U.S.C. § 78t(a).

> FN1. Counts II (state-law fraud claim for rescission) and IV (violation of § 12(2) of the Securities Act of 1933) are dismissed on Waxman's agreement. (P. Br.2.)

### BACKGROUND

The facts set forth below are drawn from the amended complaint and must be taken as true for purposes of this motion to dismiss. *See Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (1995). About twenty years ago, Waxman founded Metropolitan Mining Company, Inc. ("MetroMining"), a New York corporation engaged in reclaiming and recycling used beverage containers. (Compl.¶ 10.) Defendant Envipco Holding, a publicly-traded Dutch corporation (*id.* ¶ 4), wholly owns defendants EPPSI and EPC, Delaware corporations, [FN2] and defendant Santchurn holds controlling positions in all three corporations. (*Id.* ¶¶ 4-6.) Envipco's business is similar to that of MetroMining.[FN3] (D.Br.2.)

> FN2. Envipco Holding created EPPSI in 2001 to receive MetroMining's assets. (Compl.¶ 6.)
>
> FN3. While "EPC manufactures and leases Reverse Vending Machines ('RVMs') to retailers, who are subject to New York State['s] deposit law" (Compl.¶ 11), Waxman developed an alternative, the SortAfter service, which enables retailers to "do the deposit refund transaction manually and collect the [used beverage containers] in bags sorted only by container type." (*Id.* ¶ 15.)

On October 29, 2001, Waxman, for himself and MetroMining, and Santchurn, for EPPSI, executed an agreement for the sale of MetroMining's assets to EPPSI ("Purchase Agreement"). (*Id.* ¶ 17). The Purchase Agreement incorporated an employment agreement between Waxman and EPC ("Employment Agreement") (*id.* ¶¶ 17, 21) and required Waxman and MetroMining to sell MetroMining's assets to EPPSI in exchange for 550,000 depository receipts, which represent shares of Envipco Holding.[FN4] (*Id.* ¶¶ 17, 24.) Under the terms of the Employment Agreement, EPC agreed to hire Waxman as "Manager of New Business Development" for a 180-day period at an annual salary of $90,000. (Compl. ¶ 17, 22; Curtie Cert., Ex. D §§ 1.1, 2.1, 7.1.) In exchange for Waxman's execution of the Employment Agreement, which included a non-compete clause (*id.* § 9.1), EPC agreed to give him 50,000 depository receipts. (Compl.¶¶ 23-24.) Waxman agreed not to sell the depository receipts for a period of two years from the date of the Agreement. (*Id.* ¶ 24; Curtie Cert., Ex. D § 2.2.)

> FN4. According to Envipco, "[s]ince the stock of Envipco Holding trades abroad, only 'Depository Receipts' could be transferred to Waxman, a United States citizen, rather than the actual shares that trade on the stock exchange in Belgium." (D. Br. 3 n. 2.) Depository receipts "are certificates, tradable in the United States, which represent shares of foreign stock." *Schreiber Family Charitable Found. v. First Fin. Acceptance Co.,* 965 F.Supp. 397, 398 (E.D.N.Y.1997).

Waxman did not receive the depository receipts by the contractual deadline of January 29, 2002.[FN5] (Compl.¶ 26.) A principal reason for the delay was that under the relevant foreign laws, Envipco Holding could not transfer the receipts directly to Waxman. (*Id.* ¶ 45; *see also id.* ¶¶ 28, 30.) Waxman inquired about the depository receipts on numerous occasions. (*Id.* ¶ 27.) On March 25, 2002, he received a response from Neil Turpie, a director of Envipco Holding (*id.* ¶ 4), which attached an email from one of its Dutch attorneys. (*Id.* ¶ 29.) That email provided in relevant part:

> FN5. Section 2.2(a) of the Purchase Agreement provides that all 600,000 depository receipts shall be transferred "[a]t Closing (or as soon thereafter as practicable)." Section 2.2 of the Employment Agreement states that Waxman shall receive his 50,000 depository receipts "upon execution of this Agreement." The amended complaint states that "January 29,

Not Reported in F.Supp.2d                                                                                                           Page 3
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

2002, was the deadline for the delivery of the depository receipts due to MetroMining and to Waxman." (Compl.¶ 26.) That date, according to Waxman's brief, was the closing date. (P. Br.4.) While the date on which Waxman executed the Employment Agreement, October 29, 2001, is not the same as the date of the closing, January 29, 2002, the Court accepts for purposes of this motion the complaint's averment that the latter date represented the deadline for delivery of the depository receipts. MetroMining likewise did not receive its 550,000 depository receipts pursuant to the Purchase Agreement by January 29, 2002, but it is not, at least presently, a party to this action. Nor, so far as the complaint avers, has it assigned its rights Waxman. The Court therefore need not consider its rights and obligations in resolving this motion.

**\*2** Now that the agreement has been signed and the assets have been transferred, we assume the first possibility in our e-mail of September 19, 2001, is no longer an option. We suggest in line with the second possibility that an additional agreement be made between the parties in which the claims of Waxman and Metro[M]ining as referred to in Section 2.2(a) of the agreement are converted into claims in cash on Envipco PUPS. Then, Envipco Holding can issue new shares to Waxman and Metro[M]ining, which shares they can pay up by transferring their claims in cash to Envipco Holding.
(Turpie Cert., Ex. C. at 1; Compl. ¶ 30.) Waxman alleges that this "email demonstrates that Santchurn and the Envipco Parties knew prior to the execution of the Agreement that the transfer of the depository receipts could not occur as specified in the Agreement." (*Id.* ¶ 31.) As of March 18, 2003, the date of Waxman's amended complaint, he still had not received the receipts. (*Id.* ¶ 37.)

From the outset, Waxman found his job with EPC unsatisfactory. Santchurn and Envipco told him that he would be "employed in a 'key man' position with EPC, and would be in a position to develop new markets for [Envipco] and meaningfully contribute to the enhancement of his investment." (*Id.* ¶ 44(F).) In fact, Envipco "assigned him virtually no job responsibilities at all" (*id.* ¶ 35), barred him from certain EPPSI processing facilities (*id.* ¶ 32-34), and relegated him to a Connecticut office "to do collection work." (*Id.* ¶ 45(D).) In May 2002, he gave notice of his intent to resign, and upon learning this, Santchurn dismissed Waxman. (*Id.* ¶ 35.)

Sometime in October 2002, Waxman learned that Envipco intended to sell or subcontract MetroMining's business. (*Id.* ¶ 38.) He sought a temporary restraining order with New Jersey Superior Court, Bergen County, which was granted on October 29, 2002. (*Id.* ¶ 39.) But on December 18, 2002, that court dismissed Waxman's state action for lack of personal jurisdiction and therefore lifted the restraining order. (*Id.* ¶ 41.)

Waxman filed the present suit on December 20, 2002, invoking diversity jurisdiction, 28 U.S.C. § 1332, and alleging state-law claims for breach of contract and the duty of good faith and fair dealing, unjust enrichment, and fraud.[FN6] On January 22, 2003, by order to show cause, he sought to enjoin Envipco from selling or transferring MetroMining pending the disposition of his claim for rescission of the Purchase and Employment Agreements. Following oral argument on January 31, 2003, the Court found that Waxman had failed to establish the requisite likelihood of success on the merits and therefore declined to grant this injunction. (Tr. 16.) The parties agreed to hold the disputed depository receipts in escrow pending the outcome of this action. (*Id.* 20.)

> [FN6]. Waxman filed the amended complaint that is the subject of this motion, adding claims under the federal securities laws, in March 2003. All references and citations to the complaint refer to the amended complaint.

### DISCUSSION

I. *Standard on a Motion to Dismiss*

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in his favor. *Leeds v.. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Beyond the facts in the complaint, the Court may consider "any written instrument attached to it as an exhibit or any statements or documents

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 4
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir.1991)*; *Goldman v. Belden, 754 F.2d 1059, 1065-66 (2d Cir.1985.)* While the Federal Rules of Civil Procedure generally require only notice pleading, where, as here, plaintiff alleges fraud, "the circumstances constituting fraud ... shall be stated with particularity." *Fed.R.Civ.P. 9(b)*; *see Stern v. Gen. Elec. Co., 924 F.2d 472, 476 (2d Cir.1991)* ("[A]llegations of fraud must be supported by particular statements indicating the factual circumstances on which the theory of fraud is based.").[FN7]

> FN7. "*Rule 9(b)* is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." *DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)*.

II. *Federal Securities Fraud Claims*

A. *Section 10(b) Claims*

**\*3** The Securities Exchange Act protects investors by proscribing,

in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the Commission, makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *17 C.F.R. § 240.10b-5(b)*; *see SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 847-48 (2d Cir.1968)* (explaining that the SEC "promulgated [Rule 10b-5] pursuant to the grant of authority given the SEC by Congress in Section 10(b) of the Securities Exchange Act of 1934," by which Congress sought "to prevent inequitable and unfair practices and to insure fairness in securities transactions generally, whether conducted face-to-face, over the counter, or on exchanges").

B. *Applicable Heightened Pleading Requirements*

For federal securities fraud claims, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *Pub.L. No. 104-67, 109 Stat. 737*, reinforces the heightened pleading standards that apply to all claims of fraud or mistake under *Fed.R.Civ.P. 9(b)*. Under the PSLRA, complaints alleging securities fraud must, first, "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed," *15 U.S.C. § 78u-4(b)(1)(B)*; and second, "with respect to each act or omission alleged ..., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* *§ 78u-4(b)(2)*; *see Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir.2001)*. That state of mind is scienter, which means "intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)*; *see also Kalnit, 264 F.3d at 138* (same).

The Second Circuit has made clear, however, that the PSLRA " 'did not change the basic pleading standard for scienter in this circuit.' " *Id.*, quoting *Novak v. Kasaks, 216 F.3d 300, 310 (2d Cir.2000)*. Both before and after the PSLRA, the law required plaintiffs bringing claims under § 10(b) of the Securities Exchange Act of 1934, *15 U.S.C. § 78j(b)*, and Rule 10b-5, *17 C.F.R. § 240.10b-5*, to allege scienter with particularity. *Id.; compare Novak, 216 F.3d at 307* (emphasizing that securities fraud allegations must "give rise to a strong inference of fraudulent intent"), *with 15 U.S.C. § 78u-4(b)(2)* (codifying the PSLRA's requirement that securities fraud complaints "state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]").

**\*4** To summarize, to state a cognizable claim under § 10(b) of the Securities Exchange Act and Rule 10b-5, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, ... (4) explain why the statements were fraudulent," *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)*; *see also DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)* (fraud claims must "specify the time, place, speaker, and content of the alleged

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 5
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

misrepresentations"), and (5) allege facts giving rise to a strong inference of scienter. *Kalnit,* 264 F.3d at 138.

### C. *Analysis of Waxman's Section 10(b) Claims*

[1] Waxman alleges that Envipco Holding and Santchurn misrepresented six material facts in order to induce him to enter into the Purchase and Employment Agreements: (A) that Envipco Holding's shares were worth about $2.50 even though their market value was lower; (B) that it stood "ready, willing and able to transfer depository receipts immediately to Waxman"; (C) that it enjoyed a "sound and healthy financial condition"; (D) that it operated "on a sound and proper basis"; (E) that because of its financial health and sound business operations, there could be "no reasonable possibility that Waxman's investment would result in any financial losses"; and (F) that EPC would employ Waxman "in a 'key man' position" that would enable him to "contribute to the enhancement of his investment." (Compl.¶ 44.)

The complaint does not plead securities fraud with sufficient particularity. First, except for (A),[FN8] none of the enumerated allegations specify the "time, place, speaker, and content of the alleged misrepresentations." *DiVittorio,* 822 F.2d at 1247; *see also Mills,* 12 F.3d at 1175. Were that the sole defect in Waxman's securities fraud allegations, the Court might well afford Waxman leave to amend to cure these technicalities. *See* Fed.R.Civ.P. 15(a); *Forman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("It is ... contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere [pleading] technicalities."); *cf. Caputo v.. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir.2001) (holding that the district court abused its discretion in refusing to grant plaintiffs leave to replead where they "failed to plead fraud with the requisite particularity").[FN9] But leave to replead may be denied if repleading would be futile. *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 69 (2d Cir.2002); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995) (While "[l]eave to amend should be freely granted, especially where dismissal of the complaint was based on Rule 9(b)," a "good reason to deny leave to amend is when such leave would be futile."). Because Waxman alleges no facts that give rise to an inference, still less a strong one, of scienter, giving him leave to amend under the circumstances would be futile.

FN8. Paragraph 44(A) of the complaint states that Santchurn told Waxman "[t]hat the 'underlying value' of the shares of Envipco Holding was $2.50 a share, and was substantially in excess of Envipco's market value."

FN9. It would, however, be well within the Court's discretion pursuant to Fed.R.Civ.P. 15(a) to deny leave to replead where, as here, the complaint, with a few arguable exceptions, fails entirely to identify the speaker, time, place or specific content of the alleged misrepresentations. To give each defendant notice "of the nature of his alleged participation in the fraud," *DiVittorio,* 822 F.2d at 1247, is a paramount purpose of the strict pleading requirements applicable to securities fraud claims. That purpose is ill-served by a complaint that identifies alleged misrepresentations only as made by "Santchurn and Envipco Holding, by their conduct, statements, and omissions," (Compl.¶ 44), but nonetheless accuses of wrongdoing ten "John Doe" defendants, presumably officers or other representatives of Envipco who made some of the misrepresentations attributed by Waxman to "Envipco Holding." *See Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 584 (S.D.N.Y.1995) (holding that a securities fraud complaint "may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named ... is entitled to be appraised [sic] of the circumstances surrounding the fraudulent conduct with which he individually stands charged"). If ten "John Doe" defendants indeed made misrepresentations to Waxman in order to induce him to enter into the Purchase and Employment Agreements, and he relied on those misrepresentations, it strains credulity that Waxman can provide no further identifying information.

*5 The essential defect in Waxman's securities fraud allegations is that none of them "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), that is, with scienter. *See Kilnit,* 265 F.3d at 138. Scienter "refers to a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst,* 425 U.S. at

Not Reported in F.Supp.2d                                                                                                       Page 6
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

193 n. 12. While the law recognizes that a plaintiff seldom will be able to acquire direct evidence of a defendant's culpable mental state, he or she must plead " 'circumstances that provide at least a minimum factual basis for ... conclusory allegations of scienter.' " Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir.1994) (quoting Conn. Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987)); *see also* Mills, 12 F.3d at 1176 ("[A]lthough Rule 9(b) allows a pleader to aver intent generally, a 10b-5 complaint nevertheless must allege facts that raise a strong inference of fraudulent intent."). Scienter can be inferred from factual allegations that establish either (1) "motive and opportunity to commit fraud" or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994); *see also* Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir.1999); San Leandro Emergency Med. Plan v. Phillip Morris Cos., Inc., 75 F.3d 801, 813 (2d Cir.1996). Analysis of Waxman's complaint fails to give rise to a strong inference of scienter. In fact, many of its allegations do not even clearly allege that the purported misrepresentations were false, or known to be false, at the time they were made. The Court will analyze each allegation in turn.

First, Waxman alleges, Santchurn and Envipco told him "[t]hat the 'underlying value' of the shares of Envipco Holding was $2.50 a share, and was substantially in excess of Envipco's market value." (Compl.¶ 44(A).) In fact, according to Waxman, the shares were at that time worth "substantially less than $2.50 per share," and their value has since declined further. (*Id.* ¶ 45(A).) This allegation fails to state a claim because Santchurn's personal opinion about the underlying, as opposed to market, value of the shares is not a misrepresentation unless Santchurn knew it to be false. Except for the conclusory allegations that "there was no support whatsoever" (*id.*) for Santchurn's opinion and that "Santchurn and Envipco Holding knowingly concealed and withheld" certain unspecified "material facts" (Compl.¶ 46) about the true value of the shares, the complaint does not allege any concrete facts suggesting that Santchurn knowingly misstated his opinion. *See* Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir.1994) (bare allegations that defendants intentionally concealed or "were reckless in not knowing" certain financial facts held " 'so broad and conclusory as to be meaningless' ") (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 119-20 (2d Cir.1982)).

**\*6** Waxman reproduces an excerpt of Santchurn's deposition in an unrelated case, in which Santchurn appears to assert that the market undervalued Envipco Holding's shares. (P. Br.2-3.) Even were it appropriate for the Court to consider this evidence, *see* Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir.2000), the deposition excerpt does not support the allegation that Santchurn misrepresented his opinion. In it, Santchurn testifies that he believed the value of the shares to be higher than the market value, and he explains why. (P. Br.2-3.) Santchurn may well have been wrong. But nothing in the deposition gives rise to an inference that he misrepresented what *he* believed to be the true value of Envipco Holding's shares. *See* Leventhal v. Tow, 48 F.Supp.2d 104, 112-13 (D.Conn.1999) (complaint failed to plead scienter with sufficient particularity where plaintiffs alleged that defendants "(1) made overly positive statements about the company; and (2) failed to disclose ... the real value of the company's assets"); *see also* Shields, 25 F.3d at 1129 ("[Plaintiff] records statements by defendants predicting a prosperous future and holds them up against the backdrop of what actually transpired.... This technique is sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud."). On the contrary, the deposition excerpt tends to show that Santchurn consistently maintained the opinion he allegedly stated to Waxman. Waxman does not allege, either in his complaint or in his brief, any facts indicating that Santchurn's purported reasons for his opinion were inaccurate, let alone that he knew them to be false.

Even assuming *arguendo* that Santchurn, as a principal of Envipco Holding, should have known the inaccuracy of his representations about the genuine value of its shares, ¶ 44(A) fails to state a claim. The complaint contains no facts that give rise to a strong inference that Santchurn intended to deceive Waxman by this alleged misrepresentation. Contrary to Waxman's suggestion, the mere fact that the value of Envipco Holding shares declined *after* Waxman executed the Purchase and Employment Agreements does not, by itself, suggest anything about the value-"underlying" or market-of the shares on the date of those transactions. Waxman thus alleges only in conclusory terms that Santchurn's representations about the value of Envipco's shares were unsupported (*id.* ¶ 45) and that Santchurn concealed "substantially all of the facts" that would have disclosed the falsity of his representation. Waxman provides no details about what these facts were or why they give rise to a strong inference that Santchurn thereby intended to deceive or manipulate him.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

Waxman next alleges that Envipco Holding falsely represented that it "was ready, willing and able to transfer depository receipts immediately to Waxman in consideration for the sale of MetroMining." (*Id.* ¶ 44(B)). Again, he does not specify who made this misrepresentation, when or where, except to ascribe it generally to "Santchurn and Envipco Holding, by their conduct, statements, and omissions." (*Id.* ¶ 44.) Because the complaint for these purposes incorporates documents cited in it, Cortec Indus., 949 F.2d at 47, however, and construing the complaint in the light most favorable to Waxman, it is possible to infer that he means to allege that § 2.2 of the Purchase Agreement itself constitutes the relevant misrepresentation. That provisions says that Envipco Holding will transfer the depository receipts "[a]t Closing (or as soon as practicable thereafter)." But if this is Waxman's intended allegation, it does not state a claim for the simple reason that "as soon as practicable thereafter" cannot reasonably be equated with "immediately," and Waxman therefore fails adequately to allege the falsity of this representation. *See* Mills, 12 F.3d at 1175.

**\*7** On the other hand, if Waxman's intended allegation, as the complaint suggests elsewhere, is that "Santchurn and the Envipco Parties knew prior to the execution of the Agreement that the transfer of the depository receipts could not occur as specified in the Agreement" (*id.* ¶ 31; *see also id.* ¶ 45(B)), the emails upon which he relies to establish this fact fail to provide a basis from which the Court can infer scienter. The first, dated September 19, 2001, is from a Dutch lawyer for Envipco Holding. It explains certain requirements of Dutch law pertinent to the contemplated transfer of the depository receipts and two possible ways "to structure th[e] deal." (Turpie Cert., Ex. A at 1 .) It also states that "[t]he representation and warranty under 3.2(c) [providing that title shall pass directly to Waxman and MetroMining upon issuance of the depository receipts] is not in conformity with Dutch law." (*Id.* 2.) The second, dated March 26, 2002, likewise describes requirements of Dutch law necessary to consummate the transfer of the depository receipts. (Turpie Cert., Ex. B.) At most, these emails reveal that Envipco Holding negligently failed to investigate the legal technicalities of the transfer before signing the Purchase and Employment Agreements. They do not imply that anyone knew but deliberately withheld or concealed from Waxman knowledge that foreign legal barriers would prevent Envipco Holding from fulfilling its contractual obligations. To the contrary, to the extent these emails give rise to an inference about Envipco Holding's intent, they appear to show Envipco Holding and its attorneys engaged in good-faith efforts to structure the transfer of the depository receipts in an efficient manner consistent with Dutch law.

Envipco does not dispute that it failed to transfer the depository receipts to Waxman on the date of the closing. (D.Br.3.) That failure may constitute a breach of contract. But no facts give rise to a strong inference of fraudulent intent. In *Mills,* the Second Circuit said that "failure to carry out a promise made in connection with a securities transaction is normally a breach of contract. It does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform." 12 F.3d at 1176; *see also* In re Int'l Bus. Mach. Corp. Sec. Litig., 163 F.3d 102, 107 (2d Cir.1998); Dovitz v. Rare Medium Group, 2002 WL 1225540, at \*3 (S.D.N.Y. June 4, 2002) (collecting cases). Neither the emails cited by Waxman nor any of the facts averred in his complaint suggest that Envipco Holding "secretly intended not to perform or knew that [it] could not perform." The Court need not inquire into the feasibility of the transfer of depository receipts under Dutch law. At most, Waxman's complaint, together with the emails on which he so heavily relies, alleges that Envipco Holding negligently failed to ensure that its contracts with Waxman would comply with Dutch law. Allegations of negligence do not suffice to sustain a securities fraud allegation. Ernst & Ernst, 425 U.S. at 198-99. No facts alleged give rise to a strong inference of an intent to deceive, manipulate or defraud. Paragraph 44(B) therefore fails to state under § 10(b) of the Securities Exchange Act and Rule 10b-5. *See* 15 U.S.C. § 78u-4(b)(2); Kalnit, 264 F.3d at 138.

**\*8** Paragraphs 44(C) and (D) of the complaint allege that Santchurn and Envipco Holding misrepresented Envipco Holding's "financial condition" and the soundness and propriety of its "business operations," respectively. Paragraph 44(E) alleges that Santchurn and Envipco Holding misrepresented to Waxman that "there was no reasonable possibility that [his] investment would result in any financial losses, and that the only reasonable possibility was that [he] would realize profits amounting to many times his investment." These allegations fail to state a claim because they constitute only inactionable "puffery," which "cannot have misled a reasonable investor." San Leandro, 75 F.3d at 811; *see also* Lasker v. N.Y.S. Elec. & Gas Corp., 85 F.3d 55, 59 (2d Cir.1996) (*per curiam* ) (affirming the district court's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03966-JSR     Document 12-13     Filed 06/04/2007     Page 9 of 12

Not Reported in F.Supp.2d                                                                                                          Page 8
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

dismissal of securities fraud allegations based on similarly general, optimistic projections about the financial health and prospects of the defendant corporation because such "statements consist of precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable"); Shields, 25 F.3d at 1129 (emphasizing that to hold up "statements by defendants predicting a prosperous future ... against the backdrop of what actually transpired" does not furnish "the kind of circumstantial evidence that would indicate conscious fraudulent behavior or recklessness").

Waxman argues that the misrepresentations alleged in ¶ ¶ 44(C) through (E), suffice to state a claim because, in fact, "Santchurn made specific representations to Waxman regarding the soundness of the Envipco entities that induced [him] to sell the company he spent twenty years to develop." (P. Br.18.) But there is nothing specific about these allegations. All that Waxman in fact claims is that Santchurn broadly claimed that the company was well managed and in good financial condition. Waxman had every opportunity either to investigate the actual management practices and financial soundness of Envipco, or at least to make inquiries that would elicit more specific representations about particular matters. But the complaint makes no reference to any concrete misrepresentations of fact by Santchurn or by anyone else. Despite the various alleged acts of corporate malfeasance and misfeasance that Waxman subsequently enumerates to substantiate his general claim that "[t]he Envipco Parties were in fact being operated in a shoddy, inefficient and grossly negligent manner" (Compl.¶ 45(C)), Waxman never alleges that any of these allegedly inept practices contradicted any specific statement that had been made to him. [FN10]

> FN10. One arguable exception is found in ¶ 45(C)(1), in which Waxman alleges that he received (without specifying when or from whom) "assurances ... that the core of MetroMining's employees would be retained" but that most of them were improperly terminated, resulting in costly NLRB proceedings. But nothing in this allegation suggests that Santchurn or Envipco misrepresented Envipco Holding's financial health or the status of its business operations, still less that either did so with an intent to deceive or defraud Waxman. Paragraph 45(C)(1) states a prediction, or at most a promise, of what Envipco Holding would do in the future. It is not a statement about Envipco Holding's financial health or the soundness or propriety of its business operations. An allegation of a broken promise states a claim, if at all, for breach of contract; absent scienter, it is not actionable under § 10(b). See Mills, 12 F.3d at 1176. That Envipco broke the promise, if it did, does not without more indicate (and Waxman does not even allege) that it had no intention of fulfilling the promise when it was made, and the fact that Envipco made a business mistake, if it did, in firing workers after the transaction says nothing about whether the company was being conducted "on a sound and proper basis" (Compl.¶ 44(D)) when the representations were allegedly made.

Nor does Waxman's list of alleged poor business practices (see Compl. ¶ ¶ 45(C)(1)-(13)) suggest the falsity of these generalized assertions. For the most part, these allegations fall into two categories: (1) abstract allegations about the business procedures or management of Envipco, for example, that "no procedures were in place to ensure compliance with legal requirements" (id. ¶ 45(C)(1)) and that Envipco "had an inadequate or limited understanding of ... the recycling business in the New York metropolitan market" (id. ¶ 45(C)(5)); and (2) concrete allegations about events that happened after Waxman entered into the Purchase and Employment Agreements, for example, that "when Goutam Persaud left Envipco in 2002, he went to Waste Management and began to 'siphon' clients." (Id. 45(C)(3).) [FN11]

> FN11. The only allegation that appears to refer to misstatements about the company's financial condition, as opposed to its operating practices, is the allegation in ¶ 45(C)(2) that "Santchurn recalled a 'certified audit' of Envipco Holding prepared in early 2002, stating that it contained a 'minor,' unspecified error." But the allegedly erroneous audit occurred after the transaction and so could not have induced Waxman to sell MetroMining's assets for Envipco Holding securities. The fact that the audit was recalled and "has never been reissued" (Compl.¶ 45(C)(2)) does not give rise to an inference that Envipco Holding misrepresented its finances, particularly as Waxman does not allege that Santchurn's statement that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

error was "minor" was false.

**\*9** As a general principle, allegations of corporate mismanagement do not state a violation of § 10(b). See Acito, 47 F.3d at 53; Decker v. Massey-Ferguson, 681 F.2d 111, 115 (2d Cir.1982) ("[S]ection 10(b) was not designed to regulate corporate mismanagement nor to prohibit conduct which does not involve manipulation or deception."). To the extent that the complaint can be taken to allege that Santchurn or Envipco Holding knew of, but deliberately concealed, Envipco's poor financial condition and business practices, such as the lack of or inadequate procedures "to ensure compliance with legal requirements," to "develop[ ] restrictive employment agreements," to keep proper books, and "to prevent the loss of important business" (Compl.¶ ¶ 45(C)(1)-(4), (6)), it also suffers from at least two fatal flaws.

First, Waxman refers to procedures only at the most abstract level. Envipco, he claims, had "inadequate," "sloppy," or simply "no" procedures in place to carry out a host of important business functions. He does not allege with particularity the nature of those procedures or that anyone misrepresented their existence. These allegations are articulated at a level of generality "so broad and conclusory as to be meaningless." Decker, 681 F.2d at 119-20. Even if Santchurn or another principal of Envipco told Waxman that Envipco operated according to "adequate" procedures, that would not constitute the kind of material representation upon which a reasonable investor would rely-or can be legally entitled to rely. See San Leandro, 75 F.3d at 811; Shields, 25 F.3d at 1129. In this regard Waxman's complaint exemplifies the rationale for disallowing securities fraud claims based on "puffery" or alleged corporate mismanagement. No reasonable investor relies on a corporation's representation that, in the words of Waxman's complaint, it is operated "on a sound and proper basis." (Compl.¶ 44(D).) Equally, when a corporation tells an investor that its business is likely to be profitable, the investor cannot later point to evidence of losses or adverse events in the life of the business to allege fraud. See Shields, 25 F.3d at 1129 ("We have rejected the legitimacy of 'alleging fraud by hindsight.' ") (quoting Denny v. Barber, 576 F.2d 465, 470 (2d Cir.1978)). To allege that Santchurn and Envipco misrepresented that Envipco was being operated "on a sound and proper basis" (id. ¶ 44(D)) is therefore vacuous and fails to state a claim for securities fraud.

Second, even if Waxman did provide details about the procedures to which he refers, this would suffice only to allege what procedures *he* believes to be necessary or proper for the sound operation of a business like that of Envipco. It would not be an allegation about what Santchurn or another principal of Envipco knew, but deliberately concealed, from Waxman. Doubtless few corporate officers think that their businesses lack adequate procedures or operate in "a shoddy, inefficient and grossly negligent manner." (Compl.¶ 45(C).) It is therefore hardly surprisingly that no facts alleged by Waxman give rise to a strong inference that Santchurn and Envipco Holding *themselves* thought Envipco to be operated in a "grossly negligent manner," but concealed this corporate dereliction in an effort to induce Waxman to sell MetroMining's assets.

**\*10** To the extent the complaint provides details, they concern events that took place after the sale was accomplished, which Waxman regards as evidence of corporate mismanagement. Even if allegations of corporate mismanagement stated a claim, *see* Acito, 47 F.3d at 53, none of these events suggest that anyone made knowingly or recklessly false representations to Waxman. What "actually transpired" after the transactions at issue in this case would give rise to an inference of scienter only if the defendants made "specific representations" to Waxman that they knew, or should have known, to be false in order to induce him to purchase the depository receipts. Shields, 25 F.3d at 1129. The allegations in paragraph 44, subparagraphs (C), (D), and (E), in sum, either do not give rise to that inference, consist of no more than inactionable claims based on alleged "puffery," or both.

Finally, in paragraph 44(F), Waxman alleges that "Santchurn and Envipco Holding, by their conduct, statements and omissions" misrepresented that
Waxman, who would become the single largest independent shareholder of Envipco Holding, would also be employed in a 'key man' position with EPC, and would be in a position to develop new markets for the Envipco Parties and meaningfully contribute to the enhancement of his investment.

(Compl.¶ 44(F).) In fact, according to Waxman, "[t]he Envipco parties and Santchurn had no intention of allowing Waxman to use his expertise to develop new markets and business." (*Id.* ¶ 45(D).) As indicia of their intent, Waxman alleges that Envipco immediately sent him to an "office in Connecticut to do collection work," failed to provide him with a job description, and after he stopped working for Envipco,[FN12] eliminated his position entirely. (*Id.*)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 10
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

> FN12. Waxman alleges that his employment with EPC "was terminated." (Compl.¶ 45(D).) But he explains earlier in the complaint that he tendered his resignation, giving EPC thirty-days notice, in May 2002 because Santchurn had not given him a "proper job description" or satisfactory "job responsibilities." (*Id.* ¶ 35.)

This allegation, too, fails to state a claim for securities fraud. First, here again, Waxman does not identify who told him, when or where, that he would employed in a "key man" position that would enable him to develop new markets and foster his investment. *DiVittorio,* 822 F.2d at 1247; *see also Mills,* 12 F.3d at 1175. Second, because the Employment Agreement contains a merger clause (Turpie Cert., Ex. D. § 14.1), Waxman's reliance upon alleged oral representations contrary to or not found in that Agreement cannot be deemed reasonable. *See Harsco Corp. v. Segui,* 91 F.3d 337, 342 (2d Cir.1996) (emphasizing "[t]he general rule that reasonable reliance must be proved as an element of a securities fraud claim" and collecting cases). Where, as here, a valid contract exists and the plaintiff is a sophisticated businessman represented by counsel, he cannot repair to oral representations to allege federal securities fraud because the existence of the contract makes his reliance upon those representations unreasonable. *See Emergent Capital Inv. Mgmt. v. Stonepath Group,* 165 F.Supp.2d 615, 622-23 (S.D.N.Y.2001); *Chavin v. McKelvey,* 25 F.Supp.2d 231, 235-37 (S.D.N.Y.1998); *Consol. Edison, Inc. v. N.E. Util.,* 249 F.Supp.2d 387, 402 (S.D.N.Y.2003).[FN13] Finally, even were it appropriate to consider the oral representations in this context, no facts alleged elsewhere in the complaint give rise to an inference that those alleged representations were made with scienter. If Envipco promised Waxman that he would be employed in a "key man" position that would enable him to develop new markets and foster his investment, but then relegated him to "collection work" (Compl.¶ 45(D)), he may assert a claim for breach of contract. But that promise does not "constitute fraud unless, when [it] was made, the defendant secretly intended not to perform or knew that he could not perform." *Mills,* 12 F.3d at 1176; *see also Dovitz,* 2002 WL 1225540, at *3.

> FN13. The Employment Agreement states that EPC is a Delaware corporation with its offices in Connecticut (Turpie Cert., Ex. D, pmbl.), that Waxman "shall be employed as Manager of New Business Development" for EPC (*id.* § 1.1), that he shall receive a salary of $90,000 per annum (*id.* § 2.1), and that his term of employment shall be 180 days (*id.* § 7.1). Except for Envipco's failure to transfer the 50,000 depository receipts (*see id.* § 2.2), Waxman does not allege that the defendants violated the Employment Agreement and can hardly allege that its terms constituted misrepresentations. It is unclear, for example, how the allegation that Envipco sent him "to an office in Connecticut" (Compl.¶ 45(D)) discloses any intention not to carry out the Employment Agreement. That is where EPC's offices are located.

**\*11** Because none of the factual allegations in the complaint suffice to plead securities fraud with the required particularity, or to give rise to a strong inference of scienter, the complaint fails to state a claim under § 10(b) of the Securities Exchange Act and Rule 10b-5. *See DiVittorio,* 822 F.2d at 1247; *Kalnit,* 264 F.3d at 138; *see also* 15 U.S.C. § 78u-4(b).

D. *Section 20(a) Claims*

Section 20(a) of the Securities Exchange Act makes liable any person "who, directly or indirectly, controls any person liable" for a predicate securities-law violation. 15 U.S.C. § 78t(a). A plaintiff therefore cannot state a claim under § 20(b) in the absence of a predicate securities-law violation by the "primary" culprit. *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 401 (S.D.N.Y.1988). While Envipco does not request dismissal of Waxman's § 20(b) claim against Santchurn as the "controlling person," (Compl.¶ 61), the Court may *sua sponte* dismiss a frivolous claim. *See Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000) (*per curiam* ). A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Nietzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Absent a predicate securities-law violation, Waxman's § 20(b) claim against Santchurn lacks a factual basis. The claim must therefore be dismissed.

III. *Unjust Enrichment*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03966-JSR    Document 12-13    Filed 06/04/2007    Page 12 of 12

Not Reported in F.Supp.2d                                                                                                Page 11
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612
**(Cite as: Not Reported in F.Supp.2d)**

[2] Envipco also moves to dismiss Waxman's unjust enrichment claim. (D.Br.20-21.) The complaint alleges that the "[d]efendants refuse to pay plaintiff the compensation they previously agreed upon for the asset sold to them and for the services rendered by [p]laintiff and from which [d]efendants received the benefits." (Compl.¶ 71.) This allegation, on its face, appears to seek money that the defendants "previously agreed" to pay Waxman. To that extent it states a claim for breach of contract, not unjust enrichment. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 328, 388 (1987) ( "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."); *see also Bradkin v. Leverton,* 26 N.Y.2d 192, 196, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970) ("[A] quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved.").

Waxman argues, however, that because the validity of the Purchase and Employment Agreements has not yet been established, he may plead unjust enrichment in the alternative. (P. Br.23-24.) *See* Fed.R.Civ.P. 8(e)(2) (pleading in the alternative); *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996) (noting that under New York law, where "there is a genuine dispute as to the existence of a contract, the plaintiff need not make a pretrial election between" contractual and quasi-contractual theories of recovery); *accord Old Salem Dev. Group v. Town of Fishkill,* 301 A.D.2d 639, 754 N.Y.S.2d 333, 334 (2d Dep't 2003) ("[W]here there is a bona fide dispute as to the existence of a contract or the application of a contract to the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract."); *Curtis Props. Corp. v. Greif Cos.,* 236 A.D.2d 237, 653 N.Y.S.2d 569, 571 (1st Dep't 1997) (same).

*12 Waxman has not alleged facts that raise a "bona fide dispute as to the existence of" the Purchase and Employment Agreements, however, and he has abandoned his claim of fraud in the inducement, the sole claim that would have entitled him to seek rescission. (*See* P. Br. 2.) Even if he had not, the complaint fails to plead a claim of fraud in the inducement with particularity, *see* Fed.R.Civ.P. 9(b); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F.Supp.2d 198, 220 n. 8 (S.D.N.Y.2002) (pleading requirements for fraud claims a matter of procedure, not substantive law, and therefore governed by the Federal Rules of Civil Procedure), and for substantially the reasons that condemn Waxman's securities fraud claims, any allegation of fraud in the inducement would fail to state a claim. Waxman's unjust enrichment claim is therefore also dismissed.

*CONCLUSION*

For the reasons stated, the Court dismisses Counts I (violation of § 10(b) of the Securities Exchange Act and Rule 10b-5), II (state-law fraud), III (liability of Santchurn as a "controlling person" within the meaning of § 20(a) of the Securities Exchange Act), IV (violation of § 12(2) of the Securities Act of 1933), and VII (unjust enrichment) of Waxman's amended complaint. Defendants shall answer the remaining allegations, Counts V (breach of contract) and VI (breach of the duty of good faith and fair dealing), by November 14, 2003.

SO ORDERED.

S.D.N.Y.,2003.
Waxman v. Envipco Pick Up & Processing Services, Inc.
Not Reported in F.Supp.2d, 2003 WL 22439796 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,612

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.