UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

Cogent Capital Financial LLC and Cogent Capital
Investments LLC,                                           :

                              Plaintiffs,           :                   **ECF CASE**

             - against -                              :                   No. 07 Civ. 2701 (JSR)

Innofone.com, Incorporated,                              :

                        Defendant.            :

-------------------------------------------------------------- x

Innofone.com, Incorporated,                              :

                             Plaintiff,            :

             - against -                              :                   **ECF CASE**

Cogent Capital Financial LLC, Cogent Capital           :                   No. 07 Civ. 3966 (JSR)
Investments LLC, Cogent Capital Group LLC,
Gregory L. Kofford, Mark W. Holden, and Investors  :                   **PLAINTIFF INNOFONE.COM,**
Bank & Trust Company,                                                        **INCORPORATED'S**
                                                         :                   **MEMORANDUM OF LAW IN**
                        Defendants.          :                   **OPPOSITION TO THE COGENT**
                                                                             **PARTIES' MOTION TO DISMISS**

-------------------------------------------------------------- x

## INTRODUCTION

The Cogent Parties tell only half the story in their motion to dismiss. The whole story is significantly different. It shows why their motion to dismiss should be denied.

For example, the Cogent Parties (Cogent Capital Financial LLC, Cogent Capital Investments LLC, Cogent Capital Group LLC, Mark W. Holden, and Gregory L. Kofford) stress that Innofone.com, Incorporated ("Innofone") restated its financial statements. Cogent Mem. at 1, 3. What they do not disclose is that (a) the Securities and Exchange Commission ("SEC") requested the restatement because of the transaction at issue here ("Transaction") which the Cogent Parties designed; and (b) on January 18, 2007, having participated in the attempt to get Innofone's common stock registered, the Cogent Parties begged the SEC to allow registration to proceed, because if it did not do so, it would require the parties to "*unwind of the transaction.*" Declaration of Alex Lightman in Support of Innofone Mot. for Summ. J. ("Lightman Decl.") at ¶ 42, Ex. AA at 6 (emphasis added).

The Cogent Parties claim that although Innofone withdrew its registration statement in March, Rule 144 allows them to sell Innofone common stock without one, thus allowing Innofone access to some of the escrowed U.S. Treasury bonds. What they do not explain is that the Transaction explicitly was designed to fund Innofone for thirty months, at a rate of $750,000 to $1.75 million per month. *See* Compl. Ex. I, at Schedule A (contemplated monthly equity swaps). Innofone's shares are too thinly traded to use Rule 144 to achieve that result.

More broadly, the Cogent Parties cannot deny that as a result of the failure to register the 50 million shares of Innofone common stock, they never really paid for them. They never released the $50 million of U.S. Treasury bonds to Innofone because that was contingent on the SEC's approval of Innofone's registration statement, thus triggering the equity swap. The only thing actually transferred was millions of dollars in fees from Innofone to the Cogent Parties.

1

This motion thus is just another in a series of tactics designed to wage a war of attrition against Innofone. Although moving to dismiss may make sense in some cases, in this case, where Innofone has already moved for summary judgment, it is just an attempt to make Innofone bleed more money. The motion to dismiss should be denied.

## COUNTER-STATEMENT OF FACTS

The Complaint's allegations are set forth in detail in Innofone's motion for summary judgment, and for the sake of brevity are not repeated here. *See* Innofone Summ. J. Mem. at 1-7. This litigation involves a financing arrangement proposed and structured by the Cogent Parties: First, Innofone transferred the equivalent of 50 million shares of its common stock to two Cogent Parties for $50 million in U.S. Treasury bonds in a private placement. Simultaneously, the bonds and the stock were placed in escrow[1] at Investors Bank & Trust Co. to secure performance of the equity swap (shares for bonds) which would begin thirty days after the SEC had approved the registration statement for the common stock. The equity swap was to provide up to $50 million in financing for Innofone over a thirty month period. Cogent never actually released the bonds, nor ever transferred title of them to Innofone. Innofone paid a fee for the equity swap portion of the Transaction in the form of shares and cash amounting to $9.375 million in value. The *sine qua non* of the Transaction was obtaining an effective registration statement from the SEC. Compl. ¶¶ 3-4, 24-30, 34-42 & Exs. A (May 5 Letter) 1, B (Securities Purchase Agreement) § 1.1; D (Warrant); F (Escrow Agreement) § 1.

After nine months, three amendments to an initial SB-2 registration statement, and numerous comment letters and responses, the SEC refused to approve Innofone's registration of its securities. The Cogent Parties participated in the process of obtaining SEC approval. After it

---

[1] On June 14, 2007, counsel for Investors Bank & Trust Co. asked for permission to amend its answer to admit that the Cogent Parties never actually put the bonds in escrow.

became clear the SEC would not approve the Transaction as structured, the Cogent Parties refused Innofone's requests to restructure it. *Id.* ¶¶ 43-48. This action ensued.

**ARGUMENT**

## I.    THE FIRST CLAIM FOR RELIEF IS LEGALLY ADEQUATE.

The Complaint alleges that in May 2006, "while they were negotiating the terms of the equity swap underlying the Swap Agreement Documents, both Kofford and Holden, acting on behalf of the Cogent [Entities], as well as themselves," made certain material misrepresentations. Compl. ¶ 51; *see also id.* ¶ 30. They "represented to [Innofone President and CEO Alex] Lightman, among others, that the [SEC] had approved this type of financing before, and thus it would not be a problem to get the [SEC] to approve this transaction." *Id.* ¶ 30; *see also id.* ¶ 51. They "further represented to Lightman that the transaction structure they proposed was specifically designed to meet the requirements of the [SEC]." *Id.* ¶ 30; *see also id.* ¶ 51. They thus "stressed that they had inside information from the [SEC] on how to structure the deal so that it would be approved." *Id.* ¶ 51; *see also id.* ¶ 30. The Complaint explains, in detail, that these statements were knowingly false. In a later email, they conceded that they knew this all along. *Id.* ¶¶ 32, 53.

The Cogent Parties argue that the statements at issue are forward-looking and are immunized by the "bespeaks caution" doctrine. They claim that an integration clause and disclaimers save them. They argue that the allegations are not particularized and fail to plead facts supporting the intent to defraud.[2] They are wrong.

---

[2] In the motion to dismiss they filed in California, the Cogent Parties argued that their statements were immunized by the Safe Harbor for forward-looking statements. Cogent Cal. Mem. at 13-14. Innofone pointed out that the Safe Harbor does not apply because they are not issuers of securities or their designees. Innofone Cal. Opp'n to Mot. to Dismiss at 16-17, citing 15 U.S.C. § 78u-5(a). The Cogent Parties wisely abandoned this argument here.

3

A.    **The Bespeaks Caution Doctrine Is Inapplicable.**

The Cogent Parties argue that the Complaint concerns forward-looking statements, and

that Section 4.7 of the Securities Purchase Agreement bespoke caution as to these future events.

*See* Cogent Mem. at 8-10.  They are wrong on both counts.

1.    **The Statements At Issue Are Not Forward Looking**.

The bespeaks caution doctrine only applies to forward-looking statements – "the doctrine

does not apply to 'historical or present fact-knowledge within the grasp of the offeror.'"  *SEC v.*

*Meltzer*, 440 F. Supp. 2d 179, 191 (E.D.N.Y. 2006) (quoting *P. Stolz Family Partnership L.P. v.*

*Daum*, 355 F.3d 92, 97 (2d Cir. 2004)).  The bespeaks caution doctrine thus does not apply here

because the statements at issue are not forward looking.

The first statement is that Kofford and Holden "represented to Lightman . . . that the

[SEC] had approved this type of financing before . . . ."  Compl. ¶ 30; *see also id.* ¶ 51.  This is a

statement of historical fact.  The second statement is that, based on this falsehood, Kofford and

Holden represented that "it would not be a problem to get the [SEC] to approve this transaction."

*Id.* ¶¶ 30, 51.  When combined with the first sentence, the second sentence's meaning is lodged

in the present.  Courts have "refused to extend safe harbor protection to statements that are

grammatically about the future but whose subject matter is firmly lodged in the present."  *S.*

*Ferry LP # 2 v. Killinger*, 399 F. Supp. 2d 1121, 1131 (W.D. Wash. 2005); *accord In re Salomon*

*Analyst Level 3 Litig.*, 350 F. Supp. 2d. 477, 494 (S.D.N.Y. 2004) (buy recommendation not

forward looking because it speaks about stock analyst's current opinion of the stock).  The

Cogent Parties' authority agrees.  *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (Cogent

Mem. at 11) (statements that inventory "in good shape" or "under control" are statements of

existing fact).

In the third statement, Kofford and Holden "further represented to Lightman that the

4

transaction structure they proposed was specifically designed to meet the requirements of the [SEC]." Compl. ¶ 30; *see also id.* ¶ 51. Whether the structure was so designed was knowable – and known to be false – at the time the statement was made. In the fourth statement, Kofford and Holden "stressed that they had inside information from the [SEC] on how to structure the deal so that it would be approved." *Id.* ¶ 51; *see also id* ¶ 30. Either they had such inside information, or they did not.

Instructive is *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003). There, the Court of Appeals held that statements about a settlement with the FAA were not forward-looking: "the settlement agreement's provisions will not have a material adverse affect on the Company's operations or financial results" and we "are not anticipating any major increase in maintenance costs or the cost of oversights going forward as a result of [the settlement]." *Id.* at 929. It stressed that each is: "a description of the present effects of [the fine and settlement's] imposition on the company." *Id.* at 937. Thus, as in *America West*, the statements here are ones of current fact.

### 2.    Section 4.7 of the Securities Purchase Agreement Does Not Bespeak Caution.

The Cogent Parties' "bespeaks caution" argument also fails because Section 4.7 of the Securities Purchase Agreement is not a "meaningful cautionary statement."[3]

In this provision, two Cogent entities acknowledge that the Innofone stock may never be registered, and thus some benefits they might receive from buying the stock may not materialize. Compl. Ex. B at § 4.7. The Complaint, however, alleges that *Innofone* was tricked into entering

---

[3] The Cogent Parties appear to shift ground from the motion they filed in California, and assert in passing that "it should be noted that no 'reasonable investor' would have believed that the Cogent Parties were gifted with the power to prognosticate unerringly the SEC's decision, or that the Cogent Parties wielded such influence over the SEC to guarantee that a registration statement would be declared effective." Cogent Mem. at 9. They fail to provide any support for this position, and in any event, their statements were not forward looking. *See supra* § I.A.1.

the swap agreement, where it was purchasing a right to sell the bonds. Compl. ¶¶ 30, 51. In other words, Section 4.7 warns the wrong parties about the wrong thing. It does not warn Innofone that if the stock is not registered, the swap agreement becomes a millstone for Innofone.

This conclusion is reinforced when Section 4.7 is viewed in the context of the entire Transaction. The Transaction was intended to provide Innofone with 30 months of financing and the Cogent Parties with different methods of sharing in Innofone's success, including stock, warrants, and fees. It was not intended to be a one-way transfer of money.

*Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352 (2d Cir. 2002), cited by the Cogent Parties, supports Innofone's position. The Cogent Parties argue that it "involve[s] facts indistinguishable from those here. ..." Cogent Mem. at 9. In *Halperin*, the Second Circuit held that offering statements circulated in connection with private placements bespoke caution about the issuer's plans to register its securities. The extensive warnings disclosed that the securities were not registered, that registration "cannot be assured," and "that eBanker's status under the Investment Company Act of 1940 will impact the decision to register." 295 F.3d at 360. The Second Circuit held that: "The cautionary language addresses the relevant risk directly . . . ." *Id.*

By contrast, one searches in vain for similar cautionary language in Section 4.7 of the Securities Purchase Agreement, warning *Innofone* of the risk of non-registration with regard to the equity swap. Similarly, *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2 (2d Cir. 1996) also supports Innofone's position. In *Olkey*, "plaintiff's claims are contradicted by the prospectuses on their face . . . ." *Id.* at 3. Nothing in Section 4.7 warns Innofone of anything.

### B.    The Agreements Do Not Negate Reliance.

The Cogent Parties argue that the First Claim for Relief is barred by a boilerplate disclaimer and a merger clause buried in the Transaction documentation. Cogent Mem. at 4-7.

6

According to them, "a plaintiff cannot justifiably rely upon extra-contractual representations that have been disavowed by a merger clause in the agreement." *Id.* at 4. They miss the point.

As a preliminary matter, this argument is significantly different than the one they presented in California. There, they argued that *three* integration or disclaimer clauses mandated dismissal: Section 9(a) of the ISDA Master Agreement (Compl. Ex. G § 9(a)); Section 1 of the restated Equity Swap Confirmation issued pursuant to that Master Agreement (Compl. Ex. I § 1); and Section 8.6 of the Securities Purchase Agreement (Compl. Ex. B § 8.6). Cogent Cal. Mem. at 8:21-9:6 & n.7. In reaction to Innofone's citation of *Caiola v. Citibank, N.A.*, 295 F.3d 312 (2d Cir. 2002), which interprets the ISDA Master Agreement in a manner contrary to their position, the Cogent Parties have omitted here any reference to that document, and try to pretend it does not exist. *Compare* Innofone Cal. Opp. at 19-20 (citing *Caiola*) *with* Cogent Mem. at 4-8.

This sleight of hand does not work. First, Section 1.2(c) of the Securities Purchase Agreement makes clear that the Transaction documents include the ISDA Master Agreement. Compl. Ex. B. § 1.2(c). The Cogent Parties cannot run away from this document just because it undermines their position. Second, *Caiola* also interprets language similar to that in the Equity Swap Confirmation. Try as they might, they cannot outrun controlling Second Circuit law.

In *Caiola*, the Second Circuit reviewed a predecessor to the ISDA Master Agreement and Confirmation at issue here, which contained virtually identical disclaimer language, and held that it did not bar a claim for securities fraud. *Compare* 295 F.3d at 317, 330 (disclaimer in *Caiola*) *with* Cogent Mem. at 5 (disclaimer in Confirmation). Instead, the Court of Appeals held that: "A disclaimer is generally enforceable only if it 'tracks the substance of the alleged misrepresentation[.]'" *Id.* at 330 (citation omitted). *Accord Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, No. 02 Civ. 1312 (LMM), 2002 WL 31426310, at *6 (S.D.N.Y.

7

Oct. 29, 2002) (ISDA Master Agreement language not a bar to fraudulent inducement claim).[4]

The Cogent Parties' argument also fails because it oversimplifies the law. Although this Court may consider contractual disclaimer and integration clauses when deciding the issue of reasonable reliance, they are not dispositive. The question is whether the specific warnings and disclaimers in the agreement exactly meet the specific claims of fraud. Thus, the other clauses relied on by the Cogent Parties fail to support their position because none warns Innofone that if the stock is not registered, the swap agreement becomes a hole out of which it can never climb.

The Cogent parties' view is so extreme, it suffers from another fundamental flaw. Section 29(a) of the Securities Exchange Act of 1934 provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void." 15 U.S.C. § 78cc(a). Thus, "to hold that a buyer is barred from relief under Rule 10b-5 solely by virtue of his contractual commitment not to rely would be fundamentally inconsistent with Section 29(a)." *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 182 (3rd Cir. 2003).

The Cogent Parties seek to do exactly what section 29 prohibits. Their own authority stresses that a generalized "'no other representations' clause might be toothless and run afoul of § 29(a)." *Harsco Corp. v. Segui*, 91 F.3d 337, 344 (2d Cir. 1996). Whether language violates section 29 is a matter for the trier of fact. *See AES*, 325 F.3d at 182 (defense-based non-reliance clause presents fact question); *In re DaimlerChrysler AG Sec. Litig.*, 294 F. Supp. 2d 616, 623 (D. Del. 2003) (same). Even then, the presence of contractual language is just one factor in determining whether Innofone's reliance was reasonable. *AES*, 325 F.3d at 181.

---

[4] *Accord Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 920-21 (6th Cir. 2007) (integration clause not per se bar to securities claim); *Gerrard v. A.J. Gerrard & Co.*, 285 F. Supp. 2d 1331, 1340-41 (S.D. Ga. 2003) (same for integration and nonreliance clauses); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 65 (D. Del. 2002) (same for integration clause).

The Cogent Parties argue that *Harsco* is just like this case because it involved "seventeen representations and warranties made by the defendant[,]" Cogent Mem. at 4, and this case involves thirteen. *Id.* at 5. Not quite. *Harsco* involved a 60-page agreement with a representations and warranties section that was "fourteen pages, single spaced, and consist[ed] of seventeen subsections, which in turn consist[ed] of numerous subparagraphs." 91 F.3d at 340. Here, the representations and warranties cited by the Cogent Parties cover four pages, and are primarily concerned with establishing that the purchasers can lawfully purchase Innofone stock pursuant to SEC regulations. Securities Purchase Agreement, Compl. Ex. B, at 13-16.

The Cogent Parties argue that the disclaimer in *Harsco* is just like the one in this action. Cogent Mem. at 4-5. Not so. The *Harsco* disclaimer is detailed, and in it, plaintiff "explicitly disclaimed" reliance on matters about which it later said it was misled. 91 F.3d at 339. Paragraph 8.6 of the Securities Purchase Agreement, and the disclaimer in the Equity Swap Confirmation, by contrast, contain no detail whatsoever. *See* Cogent Mem. at 5 (quoting disclaimer language upon which they rely).[5]

The Cogent Parties' reliance on *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d Cir. 2003) is equally unavailing. That case involved a private equity fund that failed to reduce to writing an oral representation regarding the value of a key asset. *Id.* at 195-96. The Cogent Parties try to argue that Innofone is a sophisticated consumer of complex financial products because it is an industry leader in its market segment. *See* Cogent Mem. at 7 n.2. This case involves a blunderbuss disclaimer, and a party that was in the business of running a company, not negotiating a transaction that tries to marry a PIPE

---

[5] The Cogent Parties imply that Innofone cannot introduce parol evidence here. Cogent Mem. at 4-6. Not so. "New York also permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration, or merger, clause." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (collecting authority).

transaction with an equity swap agreement.[6]  Indeed, in light of the SEC's refusal to allow

registration of the stock, it is fair to say that *no one* has been in this business.

### C.    Fraud Is Pled With Particularity.

The Cogent Parties argue that the First Cause of Action "offers only vague and selective

characterizations of purported misrepresentations from the Cogent Parties," and thus fails to

comply with the pleading standards of either Fed. R. Civ. P. 9(b) or 15 U.S.C. § 78u-4(b)(1)(B).

Cogent Mem. at 14.  Not so.

As an initial matter, the Cogent Parties argue for a standard of particularity that might

make sense in the context of a class action, but not here.  Taken to the extreme, their position

would require parties negotiating a face-to-face transaction to do so in the atmosphere of a

deposition, with a verbatim transcript being taken.  None of their authority supports this position.

Second, the Complaint explains who made the statements (Kofford and Holden), what

they said (statements regarding the structuring of the Transaction and its acceptability to the

SEC), when they said it (May 2006), and in what context (during the negotiations for the

Transaction).  It further explains that they admitted that they knew what they were saying was

false all along – an allegation that the Cogent Parties entirely ignore with regard to this Claim for

---

[6] In a footnote, the Cogent Parties cite three more cases.  Cogent Mem. at 7 n.3.  None
helps them because they involve specific cautionary language missing here, are dictum
concerning significantly simpler transactions, or do not discuss a relevant issue.  *Dresner v.
Utility.com, Inc.*, 371 F. Supp. 2d 476, 493 (S.D.N.Y. 2005) (specific "cautionary language in the
Information Statement that qualified any pre-Merger Agreement statements," together with other
factors, made reliance on those alleged statements unreasonable as a matter of law); *Waxman v.
Envipco Pick Up & Processing Services, Inc.*, No. 02 Civ. 10132 (GEL), 2003 WL 22439796, at
*10 (S.D.N.Y. Oct. 28, 2003) (dictum that founder and sole shareholder cannot state a claim for
securities fraud based on the vague representation by a buyer that he would be a "key man" in
the combined operation and would be able to develop new markets and foster his investment,
because those representations were not in his employment agreement); *Dafofin Holdings S.A. v.
Hotelworks.com, Inc.*, No. 00 Civ. 7861 (LAP), 2001 WL 940632, at *4-*5 (S.D.N.Y. Aug. 17,
2001) (statute of limitations).

SVI-47820v1

Relief. Compl. ¶¶ 30, 32, 53.[7] Nothing more is required. *E.g.*, *Internet Law Library, Inc. v. Southridge Capital Mgmt., Inc.*, 223 F. Supp. 2d 474, 481-83 (S.D.N.Y. 2002) (statements during negotiations for a toxic convertible financing "all through March and April of 2000" that "were conducted by phone, fax and email" in the states of Connecticut and Texas, met pleading burden because "a two-month period is sufficiently circumscribed" and negotiations over fax and email can be confirmed through later discovery); *Liberty Ridge LLC v. RealTech Sys. Corp.*, 173 F. Supp. 2d 129, 137 (S.D.N.Y. 2001) (investor pleads fraud by alleging that company told him that it would use money to expand business, but instead paid its creditors "within days of receipt of Plaintiffs' investment funds"); *In re Quintel Entertainment Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 290-91 (S.D.N.Y. 1999) ("ample support" for scienter where company spoke positively of reductions in chargebacks, after notification of increased chargebacks from vendors). Even the Cogent Parties' authority agrees. *de La Fuente v. DCI Telecommunications, Inc.*, 206 F.R.D. 369, 388 (S.D.N.Y. 2002) (Cogent Mem. at 15 n.5) (scienter allegations sufficient where complaint alleged corporation told investors it would distribute shares it had already sold).

The Cogent Parties' other authority (Cogent Mem. at 14-15) is readily distinguishable. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) and *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375 (S.D.N.Y. 2004) concern scienter and amendment of a complaint, not falsity. In *Shields*, moreover, plaintiff had received oral and written discovery. 25 F.3d at 1127. Innofone has not. In *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) the complaint had been amended several times, and still did not allege which of seven individual defendants had made the allegedly false promise to plaintiffs. *Id.* at 1175. In this case, the Complaint alleges that during the negotiations that took place in May 2006, Kofford

---

[7] The Cogent Parties seek to dismiss the Third and Fourth Claims for Relief on this ground, which for similar reasons should be denied. *See infra* § III.

and Holden made the statements on behalf of themselves and the Cogent entities to Lightman and others, regarding a series of specific issues. *E.g.*, Compl. ¶¶ 30, 51.

### D.    The Cogent Parties Ignore The Complaint's Scienter Allegations.

The Cogent Parties argue that the First Claim for Relief fails to plead that any of them engaged in conscious or reckless misbehavior, or had the motive and opportunity to commit fraud. Cogent Mem. at 10-12. Not so.

### 1.    The Complaint Pleads Facts Establishing Conscious Misbehavior.

The Cogent Parties' argument on conscious misbehavior fails because it ignores the paragraphs of the Complaint where Innofone alleges that they knew all along that what they were saying was false. The Complaint explains that while the Cogent Parties were assuring Innofone about their expertise, the structure of the transaction, and the registrability of the Innofone shares, they had absolutely no basis to believe that these statements were correct. Thus, "the [SEC] has not approved a transaction of the type proposed by the Cogent Parties, and the statements by the Cogent Parties to the contrary showed a high degree of recklessness which is the equivalent of intent." Compl. ¶¶ 32, 53. The SEC's rejection of the registration statement, as well as the Cogent Parties conduct, underscores their recklessness. Thus, "as the numerous rejections of Innofone's registration statement have made clear, the deal was not structured to meet the requirements of the [SEC]." *Id.* ¶¶ 32, 53. The Complaint alleges that "[t]he Cogent Parties' subsequent attempts to assist Innofone obtain registration make clear that they knew all along that the structure was anything but a sure bet before the [SEC]." *Id.* ¶¶ 32, 53

The Complaint further alleges that when finally confronted with the truth, "in a series of emails sent in December 2006, the Cogent Parties admitted that none of their other similar investments had ever successfully registered their shares with the Securities and Exchange Commission." *Id.* ¶¶ 32, 53; *accord Id.* ¶ 46 ("it was only later, in a series of emails sent in

12

December 2006, that the Cogent Parties admitted that none of their other similar investments had ever successfully registered their shares with the Securities and Exchange Commission").

This is more than sufficient to withstand a motion to dismiss. These admissions show that the Cogent Parties knew all along that the Transaction had never actually worked as advertised and never would.[8] This Claim for Relief is not about overly optimistic predictions – it concerns statements of present fact that were known to be false. *E.g., Novak*, 216 F.3d at 315 (statements regarding inventory known to be false at the time are "plainly false and misleading"); *see supra* § I.C (discussing *Internet Law Library*, 223 F. Supp. 2d at 481-83; *Liberty Ridge*, 173 F. Supp. 2d at 137; *Quintel*, 72 F. Supp. 2d at 290-91).

The Cogent Parties' authority, all of which is from outside this Circuit, is distinguishable. In each case, plaintiffs fail to plead facts showing that defendants knew the statements to be false. *In re Digital Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004) (mismanagement is not scienter); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) (conclusory allegation that executives "must have known" adverse facts insufficient); *McLean v. Alexander*, 599 F.2d 1190, 1199-1202 (3d Cir. 1979) (evidence at trial supported finding of negligence, not recklessness); *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 792 (7th Cir. 1977) ("mistaken but honest belief" not scienter). Notably, the Cogent Parties do not try to analogize the facts of these cases to this one. They thus essentially concede that their facts are not analogous.

### 2.    The Complaint Pleads Motive And Opportunity.

The Cogent Parties argue that motive and opportunity is not pleaded against them because there are no allegations that they received a specific benefit, and because Cogent Capital Group, Kofford, and Holden did not contract with Innofone. Cogent Mem. at 12-13. Not so.

---

[8] Indeed, the Cogent parties' failure to follow the Escrow Agreement and deposit the bonds in escrow reinforces this conclusion. *See supra* n.1.

SVI-47820v1

The Complaint alleges that Kofford and Holden are co-founders and senior principals of Cogent Capital Group, and that each "is involved in all phases of the firm's development and approves all capital commitments by the firm." Compl. ¶¶ 12-13. And as the documents attached to the Complaint make clear, Cogent Capital Group represented that it was making the investment in Innofone, and Innofone paid Cogent Capital Financial and Cogent Capital Investments, both of which are under Kofford and Holden's control, approximately $9.375 million in fees and stock for the Equity Swap. Compl. Exs. A (May 5 Letter) 1; B (Securities Purchase Agreement) § 1.1; D (Warrant); F (Escrow Agreement) § 1. This is more than sufficient to allege motive and opportunity. *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999) (allegations sufficed to show corporate motive and opportunity, particularly in light of Second Circuit's reluctance to "create a nearly impossible pleading standard when the 'intent' of a corporation is at issue"); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 404 (S.D.N.Y. 2005) (three of four principals of asset management LLC, just as in this case, had opportunity to commit fraud, and through self dealing, motive).

The Cogent Parties' authority (Cogent Mem. at 10-13) is readily distinguishable, because it involves generic allegations of motive. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (benefit alleged would inure to all directors); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (incentive pay insufficient); *Shields*, 25 F.3d at 1130 (prolonging benefits, protecting position and speaking company for insufficient).

## II.    THE SECOND CLAIM FOR RELIEF IS LEGALLY SUFFICIENT. [9]

The Second Claim for Relief is brought for rescission based on illegality. Compl. ¶¶ 56-62. The Complaint explains that the registration of Innofone's stock was a necessary and

---

[9] If this court grants Innofone's motion for summary judgment on the Second, Third, and Fifth Claims for Relief, it need not address this argument, §§ III.C, III.D, or IV, or the portions of § III that address the Third Claim for Relief.

explicitly contemplated part of the Transaction, which in turn was necessary for Innofone to

obtain the benefit of its bargain. *Id.* ¶ 57. After nine months of Innofone's repeated trying, the

SEC refused to permit registration, making a public offering of the stock illegal. *Id.* ¶ 58-59.[10]

Although this is a motion to dismiss, and not a motion for summary judgment, it is

important to remember that the evidence overwhelmingly supports the Complaint's allegations.

*See, e.g.*, Innofone Summary Judgment Mem. at 9-15; Innofone Statement of Undisputed Facts

¶¶ 8-12; Lightman Decl. Exs. S, U, Z-BB; Declaration of Arthur Marcus ¶¶ 12-17. When seen

from a broader perspective, the Cogent Parties' motion to dismiss comes too late.

The Cogent Parties argue that the Second Claim for Relief should be dismissed because

the Complaint fails to plead that the agreements call for "the parties 'to do an illegal act'. . . ."

Cogent Mem. at 15.[11] In California, they said something slightly different.[12] Here, they argue

that the transaction documents do not compel them to offer shares to the public in violation of

the securities laws because there are available exemptions to registration. They argue that the

transaction documents do not contain an illegal provision. They finally argue that the parties

understood that registration might never occur, and explicitly allocated the risk of that result to

---

[10] The Cogent Parties quibble with the Complaint's allegation that the SEC rejected its registration statement, calling it "demonstrably false." Cogent Mem. at 15 n.5. They are wrong. The SEC repeatedly refused to allow Innofone to register the common stock issued to the Cogent Parties. More broadly, the Cogent Parties' attempt to blame Innofone for the failure to register the stock fails for the simple reason that Innofone was not required to continue to perform a futile act in order to obtain the relief it seeks here. *E.g., Ohio v. Roberts*, 448 U.S. 56, 74 (1980) (as a general rule, "[t]he law does not require the doing of a futile act").

[11] The Cogent Parties' citation to 22 N.Y. Jur. 2d *Contracts* § 144 (1996) should instead be to section 195 of that article.

[12] In the motion to dismiss they filed in California, the Cogent Parties argued that the Second Claim for Relief should be dismissed because New York law requires that the contract be "made in violation of the law." Cogent Cal. Mem. at 18-19 (citing *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 532 (S.D.N.Y. 1996)). The Cogent Parties no longer cite Dornberger, perhaps because Judge Sand held that plaintiff there stated a claim to rescind insurance policies sold in clear violation of European insurance laws. *Id.* at 532-38.

SVI-47820v1

Innofone.  Cogent Mem. at 15-18.  These arguments miss the point.

### A.     The Complaint Pleads Facts Establishing Illegality.

As Innofone explains more fully in its motion for summary judgment, the Supreme Court of the United States, the Second Circuit, and the New York Court of Appeals have held that contracts that violate the law cannot be enforced.  Innofone Summ. J. Mem. at 9-15 (collecting authority).  The SEC has repeatedly refused to register the stock which forms the basis for the Transaction, and without such a registration statement, the sale of such stock is illegal – indeed criminal.  *See* Innofone Summ. J. Mem. at 13 (discussing *U.S. v. Rubinson*, 543 F.2d 951 (2d Cir. 1976) (affirming conviction for selling unregistered securities in violation of 15 U.S.C. §§ 77e, x).

The Cogent Parties argue that the agreements themselves do not contain a provision which on its face is illegal.  *See* Cogent Mem. at 16.  This misses the point.  Instructive in this regard is *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838 (2d Cir. 1952).  In that case, the Second Circuit refused to enforce an underwriting agreement between an issuer and its underwriters because the issuer's registration statement and prospectus contained a false statement of fact.  195 F.2d at 843-44.  *Kaiser-Frazer* does not say that the underwriting agreement contained an illegal clause.  Instead, it held that the performance of an otherwise valid agreement would have resulted in an illegal act.  That was enough.

So too here.  Although entering into the Transaction may not have been illegal, the selling of Innofone common stock which underlay the Transaction in the amounts required was illegal without SEC approval.  Compl. ¶¶ 57-59.  The Complaint explains that the Swap Agreement Documents "explicitly contemplated that the shares issued by Innofone to Cogent Capital Financial would be registered with the [SEC], and that after that registration was declared effective, Innofone would be able to commence the draw-down period on the $50

16

million in bonds." *Id.* ¶ 57. It notes that "[w]ithout the ability to draw on the bonds, the very object of the Swap Agreement Documents has been defeated because there is simply no way for Innofone to obtain the benefit of its bargain." *Id.* The Complaint thus concludes that Innofone is entitled to rescission and restitution "because, as structured, contemplated and described by the Swap Agreement Documents, the transaction is illegal." *Id.* ¶ 60.

**B.    The Transaction Documents Do Not Allocate The Risk.**

The Cogent Parties argue that the parties contemplated this illegality at the time of contract formation. *See* Cogent Mem. at 17-18. In this regard, they cite Section 4.7 of the Securities Purchase Agreement (Compl. Ex. B § 4.7); Section 5(b)(vi) the ISDA Master Agreement (Compl. Ex. G § 5(b)(vi)); Section 1(g) of the ISDA Master Agreement Schedule (Compl. Ex. H § 1(g)); and Sections 2 and 5 of the June 2, 2006 Equity Swap Confirmation (which was later superseded by Confirmations dated November 1, 2006) (Compl. Ex. I §§ 2, 5).

They are wrong. None of these clauses warn Innofone that if the stock is not registered, the swap agreement turns into nothing but a sinkhole. Thus, the Cogent Parties' citation to *Culver & Thiesen, Inc. v. Starr Realty Co. (NE) LLC*, 763 N.Y.S.2d 84, 86 (App. Div. 2d Dep't 2003) is entirely distinguishable. Unlike the agreement in *Culver* which specifically addressed the possibility that the lease might violate zoning laws, and allocated the risk of that contingency, nothing in any of the transaction documents contemplated that Innofone would not be able to access the bonds because the SEC would not register its stock.[13]

**C.    The Cogent Parties' Rule 144 Argument Misses the Point.**

The Cogent Parties also argue that the Transaction can be salvaged because the stock can be sold to the public pursuant to SEC Rule 144. Cogent Mem. at 16-17, discussing 17 C.F.R.

---

[13] It also bears remembering that the Cogent Parties never actually ceded control over the Treasury bonds. *See* Declaration of Alexander Lightman ¶ 39, Ex. X ¶ 7.

SVI-47820v1

§ 230.144 (2007). They are mistaken.

All offers or sales of securities must be registered with the SEC pursuant to Section 5 of the Securities Act of 1933 ("Securities Act"). 15 U.S.C. § 77e. Sections 4(1) and 4(4) of the Securities Act provide exemptions for private placements of securities such that an investor may resell his securities without ever registering his shares. 15 U.S.C. § 77d(1), (4).

However, the Cogent Parties may only resell their shares under Rule 144 if they meet all of the following requirements: 1) there must be adequate current information concerning the issuer; and 2) a minimum of one year has elapsed between the date of the acquisition of the securities and the resale; and 3) the amount of sales a person can make during any three-month period is limited; and 4) all sales must be sold in brokers' transactions; and 5) except in certain instances, notice requirements must be met; and 6) there must be a bona fide intention to sell. *See* LOUIS LOSS & JOEL SELIGMAN, SECURITIES REGULATION § 3-D-2 (3d ed. 2005). These restrictions protect the market and protect the seller so that he is "deemed not to be engaged in a distribution and therefore [is] not [deemed] to be an underwriter." 17 C.F.R. § 230.144(2)(b).

Two of these requirements prove fatal to the Cogent Parties' position. First, the one year waiting period was fundamentally at odds with the purpose of the Transaction, which was to provide two-and-a-half years worth of funding within thirty days of registration. *See* Compl. ¶¶ 25, 72. To expect the parties to wait at least one year before financing could ever commence would have defeated Innofone's expectations and needs.[14]

Second, a resale under Rule 144 could never meet Innofone's financing needs. Rule 144

---

[14] The Cogent Parties also ignore the distinction between "affiliates" and "non-affiliates." Rule 144 defines an "affiliate of an issuer" as a "person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." 17 C.F.R. § 230.144(2)(a). *See* LOUIS LOSS & JOEL SELIGMAN, SECURITIES REGULATION § 3-D-2 (3d ed. 2005). If the Cogent Parties, by virtue of their ownership of a significant percentage of Innofone, were Innofone affiliates, they would have had to wait two years before they could sell the Innofone stock, further undermining the Transaction's purpose.

18

severely limits the number of shares a person may sell. No sale in any three month period can exceed the greater of one percent of either: (a) the shares of that class outstanding as shown by the most recent statement of the issuer or (b) the average weekly trading volume reported on all exchanges for the four weeks preceding the filing of the notice of sale. 17 C.F.R. § 230.144(2)(e). The seller may "dribble out" stock, but he cannot realize any massive gain on one sale. *See* LOSS AND SELIGMAN, *supra*, at § 2-A-5.

Thus Rule 144 sales could never have generated the $50 million the Cogent Parties agreed to make available to Innofone in exchange for 50 million shares of common stock. As of October 24, 2006, Innofone had 74,435,328 shares outstanding. Lightman Decl. Ex. EE, at 12. As of June 5, 2007, Innofone's average weekly trading volume for the past 52 weeks was about 51.13 million shares. If the Cogent Parties had sold one percent of these 74,435,328 shares (as the greater of the two figures) every three months, it would have sold 744,353 shares a quarter, 2,977,412 shares a year, and 7,443,533 shares over thirty months – nowhere near 50 million.

## III.    THE THIRD AND FOURTH CLAIMS FOR RELIEF ARE SUFFICIENT.

### A.    The Transaction Documents Do Not Negate These Claims.

Reprising their argument, and cherry-picking among the disclaimer and integration clauses, *see supra* § I.B., the Cogent Parties, relying on *Harsco* and *Emergent*, move to dismiss the Third and Fourth Claims for Relief, brought for rescission based on fraud or mistake, and negligent misrepresentation, respectively. Cogent Mem. at 18-19. The argument is wrong.

The argument fails for the same reasons it failed before. *See supra* § I.B. Second, in New York, "a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement." *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC.*, No. 01 Civ. 6600 (RLC), 2005 WL 3370542, at *4 (S.D.N.Y. Dec. 12, 2005) (collecting authority).

19

**B.    The Third And Fourth Claims For Relief Comply With Rule 9(b).**

      **1.    The Third And Fourth Claims For Relief Adequately Plead Falsity.**

The Cogent Parties argue that the Third and Fourth Claims for Relief fail to comply with

Federal Rule of Civil Procedure 9(b) in that they fail to plead facts supporting a false statement

of fact with sufficient particularity. Cogent Mem. at 19-20. Not so.

      As a preliminary matter, this reprises their argument with regard to the First Claim for

Relief. It is inapposite for the same reasons. *See supra* §§ I.A-C. Their authority (Cogent Mem.

at 19-20) is readily distinguishable. Some concerns conclusory forward-looking statements.

*E.g., Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998) (job security); *Wexner

v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990) (ability to sell large block of shares

without disturbing market); *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS),

2003 U.S. Dist. LEXIS 5913, at *12 (S.D.N.Y. Apr. 10, 2003) (future business opportunities).

One concerns over a dozen financial institutions trying to rely on vague representations

regarding the servicing of and default rates on asset-backed securities. *AIG Global Sec. Lending

Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 382-88 (S.D.N.Y. 2003) (Cogent Mem. at

19). This case does not concern forward-looking statements, or an institutional investor.[15]

      **2.    The Third And Fourth Claims For Relief Adequately Plead Scienter.**

The Cogent Parties argue that the Third and Fourth Claims for Relief fail to plead the

intent to defraud. In this regard, they finally try to confront the Complaint's allegation that they

knew all along that their representations were false. They argue, in a carefully written sentence,

that "the *Corporate Cogent Parties* would not have even participated in the Transaction if they

'knew all along' that the Transaction had no chance of being approved." Cogent Mem. at 20

---

[15] *Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) (Cogent Mem. at 19) and
*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129-30 (2d Cir. 1994) concern scienter, not
falsity. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) is distinguished in § I.D.

SVI-47820v1

(emphasis added). They also claim that the "Complaint does not show how the Cogent Parties 'knew all along' that the SEC would not declare effective the Registration Statement." *Id.* at 21. Their arguments miss the point on a number of levels.

First, and most fundamentally, the Cogent Parties ignore the relevant paragraphs of the Complaint – the ones alleging that the Cogent Parties knew all along that what they were saying was false. *See supra* § I.D (discussing Compl. ¶¶ 32, 53). Second, they mischaracterize their alleged misstatements, which are discussed at length in § I.B. Third, by making an argument on behalf of the Cogent corporate entities, they appear to concede that Kofford and Holden knew all along that the Transaction had no chance of succeeding.

### C.    The Third Claim For Relief States A Valid Claim Against Kofford, Holden, And Cogent Capital Group LLC.

The Cogent Parties argue that Kofford, Holden, and Cogent Capital Group LLC should be dismissed from the Third Claim for Relief, brought for rescission, because they are not parties to the transaction agreements. Cogent Mem. at 21-22. Not so.

New York provides that a person is "deemed to be a necessary party 'if complete relief is to be accorded between the persons who are parties to the action or [those] who might be inequitably affected by a judgment.'" *Baker v. Town of Roxbury*, 632 N.Y.S.2d 854, 856 (App. Div. 3d Dep't 1995) (internal citations omitted); *see* N.Y. C.P.L.R. § 1001(a). The general rule is that in an action to rescind or cancel a contract, "all the designated beneficiaries as well as the trustees are necessary parties." *McKnight v. Bank of N.Y. & Trust Co.*, 254 N.Y. 417, 421 (1930) (beneficiary necessary party to action to cancel deed of trust). Therefore, whether Kofford, Holden and Cogent Capital Group were parties to the Transaction is irrelevant.[16] Cogent's

---

[16] The Cogent Parties cite *Kirton v. Nw. Mut. Life Ins. Co.*, No. 00-CV-7646 (JS) (AKT), 2006 WL 3051772, at *7 (E.D.N.Y. Oct. 24, 2006), for the proposition that rescission is a "judicial remedy in which parties to an agreement are returned to the positions they occupied

21

authority is irrelevant because there, the moving party was not a beneficiary of the agreement at issue. *See Goodman v. Goodman*, 74 N.Y.S.2d 78, 79 (App. Div. 1st Dep't 1947).

Innofone named Kofford, Holden and Cogent Capital Group because they are necessary parties. The Cogent entities are small, and Kofford and Holden are their only principals. *See* Compl. ¶¶ 9-13. Their interests would be "adversely affected" by rescission. *See Baker*, 632 N.Y.S.2d at 856 (owner of the subject property is a necessary party who must be joined). Moreover, the Transaction documents make clear that the Transaction is "an investment by Cogent Capital Group, LLC in Innofone." Compl. Ex. A. (May 5 Letter, signed by Kofford and Holden) at 1. *See McKnight*, 254 N.Y. at 421.

**D.     The Third Claim For Relief States A Claim For Rescission Based On Mutual Mistake.**

The Cogent Parties argue that Innofone's Third Claim for Relief fails to plead facts showing that there was a mutual mistake of fact. *See* Cogent Mem. at 22-24. They argue that "[t]he alleged failure of the contracting parties to accurately predict SEC approval is not a failure that goes to 'the basic assumption on which the contract was made.'" *Id.* at 23. They reprise their argument about the effect of the disclaimer and merger clauses. *Id.* They are wrong.

A contract fails for mutual mistake where: the mistaken belief is 1) mutual; and 2) substantial and material as to defeat the contract; and 3) existed at the time the contract was entered into. *County of Orange v. Grier*, 817 N.Y.S.2d 146, 147 (App. Div. 2d Dep't 2006).

---

(continued...)

prior to the agreement." Cogent Mem. at 21. The very next line stresses: "The law is clear that such a remedy is equitable in nature." 2006 WL 3051772, at *7. In an action at equity, the court may fashion relief or joinder of interested parties. *See Clark v. Kirby*, 243 N.Y. 295, 299 (1926); *see also Int'l Paper Co. v. Hudson River Water Power Co.*, 86 N.Y.S. 736 (App. Div. 1904) (court may join interested parties in equitable action). Further, in deciding whether a party is necessary, the court should be guided by principles of "equity and good conscience." Fed. R. Civ. P. 19(b).

22

The Cogent Parties' own complaint concedes that registration of the Innofone shares was an underlying condition of the Transaction.  Cogent Compl. ¶ 21; *accord* Innofone Compl. ¶¶ 27-30, 35, 41, 42, 64, & Ex. E (Registration Rights Agreement); Innofone Motion for Summary Judgment Undisputed Facts 17 and 18.  Holden's June 13, 2006 email noted that "[t]he receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (. . .beginning 30 days after *a registration of the shares we purchased is effective*)."  Innofone Motion for Summary Judgment, Lightman Decl., Ex. N.

The fact that the registration was fundamental to the overall success of the Transaction emphasizes the materiality of this mistaken belief.  Instructive in this regard is *Gould v. Board of Education*, 616 N.E.2d 142 (N.Y. 1993).  In *Gould*, a mistake regarding the petitioner's probationary status concerned a "critical aspect" of her employment and "pervade[d] the entire transaction."  *Id.* at 146.  Here, from the very beginning, the parties had a mistaken view that Innofone's stock could be registered.  Compl. ¶¶ 26-28.  This concerned a critical aspect of the Transaction -- Innofone's ability to access the Cogent Parties' Treasury bonds.

The Cogent Parties' authority (Cogent Mem. at 22-23) is distinguishable because none involves a representation regarding as fundamental a part of the transaction:  whether the financing offered would proceed or not.  *Emergent Capital Investment Mgmt., LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615, 624 (S.D.N.Y. 2001) (failure to disclose increase in number of shares offered), *aff'd in part, rev'd in part*, 343 F.3d 189 (2d Cir. 2003); *In re Leslie Fay Cos. Ins. Sec. Litig.*, 918 F. Supp. 749, 771 (S.D.N.Y. 1996) (auditor cannot rescind insiders' sales of

23

stock to third parties because insider lied to auditor, thereby inflating the price).[17]

## IV.    THE FIFTH CLAIM FOR RELIEF IS LEGALLY SUFFICIENT

The Cogent Parties move to dismiss the Fifth Claim for Relief, which seeks a declaration that the Swap Agreement Documents are of no force and effect, and that the parties return the consideration they received. Compl. ¶¶ 78-84. The Cogent Parties argue in this regard that it is "merely a procedural device by which a party can invoke a court's jurisdiction to vindicate a substantive right." Cogent Mem. at 24. The argument misses the point.

As an initial matter, the Cogent Parties argue that the Fifth Claim for Relief is based on impossibility. Not so. It pleads a much more detailed basis for declaratory relief, including impossibility, failure of consideration, and illegality. Compl. ¶¶ 79, 84.

The Cogent Parties' argument with regard to the law is equally flawed. This Circuit has made clear that a declaration of non-liability is proper under the Declaratory Judgment Act. "Non-liability is the negative of the claim or cause of action with respect to which the declaration is sought. … So long as the claim can be made, its negative can be asserted." *Luckenbach S.S. Co. v. U.S.*, 312 F.2d 545, 549 (2d Cir. 1963). The Fifth Cause of Action thus is legally sufficient because the Complaint alleges facts demonstrating that the Cogent Parties "could have brought a coercive action in federal court to recover the benefits they believe are due them." *Conn. Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F. Supp. 193, 197 (S.D.N.Y. 1993). Indeed, that is exactly what they did here, albeit *after* Innofone filed this action.

The Cogent Parties' authority is in accord. It holds that the Declaratory Judgment Act does not create substantive rights. Instead, "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint E. & S. Dist.*

---

[17] As for the disclaimer argument, it too fails. *See supra* § I.B. The Cogent Parties' authority on this issue is distinguishable, because it includes an express and focused disclaimer. *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F. 3d 933, 940 (2d Cir. 1998).

SVI-47820v1

*Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (Cogent Mem. at 24).  The first four Claims for

Relief enumerate such substantive claims.

**V.      THIS COURT SHOULD GRANT INNOFONE LEAVE TO AMEND ANY CLAIMS FOR RELIEF THAT ARE NOT ADEQUATELY PLEADED**

In the event the Court decides that Innofone has not pleaded its claims sufficiently, it

should grant leave to amend.  *See Luce v. Edelstein*, 802 F.2d 49, 56-57 (2d Cir. 1986)

("[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend"

and dismissal without leave to amend is abuse of discretion).  The Cogent Parties' own authority

routinely grants parties leave to amend.  *E.g., AIG Global*, 254 F. Supp. 2d at 389.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Cogent Parties' motion to dismiss should be denied.

Dated:  San Francisco, California
         June 18, 2007

Of Counsel:                                                   JONES DAY

Gidon M. Caine (GC 9923)
JONES DAY
1755 Embarcadero Road                         By:      /s/_____
Palo Alto, California  94303                              Roderick A. McLeod (RM 4936)
Telephone:  (650) 739-3939
Facsimile:  (650) 739-3900                              JONES DAY
                                                                   555 California Avenue
Joanna Rosen                                              Suite 2600
JONES DAY                                                 San Francisco, California  94104
555 California Avenue                                    Telephone:  (415) 626-3939
Suite 2600                                                   Facsimile:  (415) 875-5700
San Francisco, California  94104
Telephone:  (415) 626-3939                          Attorneys for Plaintiff
Facsimile:  (415) 875-5700                            Innofone.com, Incorporated

SVI-47820v1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

COUNTER-STATEMENT OF FACTS.....................................................................2

ARGUMENT.............................................................................................................3

I.     THE FIRST CLAIM FOR RELIEF IS LEGALLY ADEQUATE....................................3

       A.     The Bespeaks Caution Doctrine Is Inapplicable.......................................4

              1.     The Statements At Issue Are Not Forward Looking ...................4

              2.     Section 4.7 of the Securities Purchase Agreement Does Not
                     Bespeak Caution ........................................................................5

       B.     The Agreements Do Not Negate Reliance ...............................................6

       C.     Fraud Is Pled With Particularity ...........................................................10

       D.     The Cogent Parties Ignore The Complaint's Scienter Allegations.......12

              1.     The Complaint Pleads Facts Establishing Conscious Misbehavior..........12

              2.     The Complaint Pleads Motive And Opportunity......................13

II.    THE SECOND CLAIM FOR RELIEF IS LEGALLY SUFFICIENT...........................14

       A.     The Complaint Pleads Facts Establishing Illegality ..............................16

       B.     The Transaction Documents Do Not Allocate The Risk.......................17

       C.     The Cogent Parties' Rule 144 Argument Misses the Point...................17

III.   THE THIRD AND FOURTH CLAIMS FOR RELIEF ARE SUFFICIENT .................19

       A.     The Transaction Documents Do Not Negate These Claims...................19

       B.     The Third And Fourth Claims For Relief Comply With Rule 9(b)........20

              1.     The Third And Fourth Claims For Relief Adequately Plead Falsity........20

              2.     The Third And Fourth Claims For Relief Adequately Plead
                     Scienter ....................................................................................20

       C.     The Third Claim For Relief States A Valid Claim Against Kofford,
              Holden, And Cogent Capital Group LLC...............................................21

       D.     The Third Claim For Relief States A Claim For Rescission Based On
              Mutual Mistake.......................................................................................22

IV.    THE FIFTH CLAIM FOR RELIEF IS LEGALLY SUFFICIENT ...............................24

V.     THIS COURT SHOULD GRANT INNOFONE LEAVE TO AMEND ANY
       CLAIMS FOR RELIEF THAT ARE NOT ADEQUATELY PLEADED.......................25

CONCLUSION ......................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### Cases

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ..................................................................................14, 20

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) ......................................................................................13

*AES Corp. v. Dow Chem. Co.*,
  325 F.3d 174 (3rd Cir. 2003) ......................................................................................8

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
  254 F. Supp. 2d 373 (S.D.N.Y. 2003) ..................................................................20, 25

*Baker v. Town of Roxbury*,
  632 N.Y.S.2d 854 (App. Div. 3d Dep't 1995)......................................................21, 22

*Brown v. Earthboard Sports USA, Inc.*,
  481 F.3d 901 (6th Cir. 2007) ......................................................................................8

*Caiola v. Citibank, N.A.*,
  295 F.3d 312 (2d Cir. 2002) ......................................................................................7

*Clark v. Kirby*,
  243 N.Y. 295 (1926)..................................................................................................22

*Conn. Gen. Life Ins. Co. of N.Y. v. Cole*,
  821 F. Supp. 193 (S.D.N.Y. 1993) ..............................................................................24

*County of Orange v. Grier*,
  817 N.Y.S.2d 146 (App. Div. 2d Dep't 2006).............................................................22

*Culver & Thiesen, Inc. v. Starr Realty Co. (NE) LLC*,
  763 N.Y.S.2d 84 (App. Div. 2d Dep't 2003)..............................................................17

*Dafofin Holdings S.A. v. Hotelworks.com, Inc.*,
  No. 00 Civ. 7861 (LAP), 2001 WL 940632 (S.D.N.Y. Aug. 17, 2001)....................10

*In re DaimlerChrysler AG Sec. Litig.*,
  294 F. Supp. 2d 616 (D. Del. 2003) ..........................................................................8

*de La Fuente v. DCI Telecommunications, Inc.*,
  206 F.R.D. 369 (S.D.N.Y. 2002) ..............................................................................11

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Digital Island Sec. Litig.*,
   357 F.3d 322 (3d Cir. 2004) ................................................................................13

*Dornberger v. Metro. Life Ins. Co.*,
   961 F. Supp. 506 (S.D.N.Y. 1996) .....................................................................15

*Dresner v. Utility.com, Inc.*,
   371 F. Supp. 2d 476 (S.D.N.Y. 2005) ................................................................10

*Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.*,
   165 F. Supp. 2d 615 (S.D.N.Y. 2001), *aff'd in part, rev'd in part*,
   343 F.3d 189 (2d Cir. 2003) ........................................................................9, 19, 23

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   No. 02 Civ. 1312 (LMM), 2002 WL 31426310 (S.D.N.Y. Oct. 29, 2002)................7

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
   376 F. Supp. 2d 385 (S.D.N.Y. 2005) ................................................................14

*Gerrard v. A.J. Gerrard & Co.*,
   285 F. Supp. 2d 1331 (S.D. Ga. 2003) ................................................................8

*Goodman v. Goodman*,
   74 N.Y.S.2d 78 (App. Div. 1st Dep't 1947) .......................................................22

*Gould v. Board of Education*,
   616 N.E.2d 142 (N.Y. 1993) ...............................................................................23

*Halperin v. eBanker USA.com, Inc.*,
   295 F.3d 352 (2d Cir. 2002) .................................................................................6

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996) ........................................................................8, 9, 19

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
   157 F. 3d 933 (2d Cir. 1998) ...............................................................................24

*Int'l Paper Co. v. Hudson River Water Power Co.*,
   86 N.Y.S. 736 (App. Div. 1904) .........................................................................22

*Internet Law Library, Inc. v. Southridge Capital Mgmt., Inc.*,
   223 F. Supp. 2d 474 (S.D.N.Y. 2002) ...........................................................11, 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC.,*
    No. 01 Civ. 6600 (RLC), 2005 WL 3370542 (S.D.N.Y. Dec. 12, 2005) ................................. 19

*In re Joint E. & S. Dist. Asbestos Litig.,*
    14 F.3d 726 (2d Cir. 1993) ................................................................................................... 24

*Kaiser-Frazer Corp. v. Otis & Co.,*
    195 F.2d 838 (2d Cir. 1952) ................................................................................................. 16

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001) ................................................................................................. 14

*Kirton v. Nw. Mut. Life Ins. Co.,*
    No. 00-CV-7646 (JS) (AKT), 2006 WL 3051772 (E.D.N.Y. Oct. 24, 2006) ..................... 21, 22

*In re Leslie Fay Cos. Ins. Sec. Litig.,*
    918 F. Supp. 749 (S.D.N.Y. 1996) ....................................................................................... 23

*Liberty Ridge LLC v. RealTech Sys. Corp.,*
    173 F. Supp. 2d 129 (S.D.N.Y. 2001) ............................................................................. 11, 13

*Luce v. Edelstein,*
    802 F.2d 49 (2d Cir. 1986) ................................................................................................... 25

*Luckenbach S.S. Co. v. U.S.,*
    312 F.2d 545 (2d Cir. 1963) ................................................................................................. 24

*Maalouf v. Salomon Smith Barney, Inc.,*
    No. 02 Civ. 4770 (SAS), 2003 U.S. Dist. LEXIS 5913 (S.D.N.Y. Apr. 10, 2003) .................. 20

*McKnight v. Bank of N.Y. & Trust Co.,*
    254 N.Y. 417 (1930) ....................................................................................................... 21, 22

*McLean v. Alexander,*
    599 F.2d 1190 (3d Cir. 1979) ............................................................................................... 13

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993) ............................................................................................. 11, 20

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,*
    320 F.3d 920 (9th Cir. 2003) .................................................................................................. 5

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ...................................................................................4, 13

*Ohio v. Roberts,*
    448 U.S. 56 (1980) ...............................................................................................15

*Olkey v. Hyperion 1999 Term Trust, Inc.,*
    98 F.3d 2 (2d Cir. 1996) .........................................................................................6

*Olsen v. Pratt & Whitney Aircraft,*
    136 F.3d 273 (2d Cir. 1998) ...................................................................................20

*P. Stolz Family Partnership L.P. v. Daum,*
    355 F.3d 92 (2d Cir. 2004) .......................................................................................4

*Podany v. Robertson Stephens, Inc.,*
    350 F. Supp. 2d 375 (S.D.N.Y. 2004) ....................................................................11

*Press v. Chem. Inv. Servs. Corp.,*
    166 F.3d 529 (2d Cir. 1999) ...................................................................................14

*In re Quintel Entertainment Inc. Sec. Litig.,*
    72 F. Supp. 2d 283 (S.D.N.Y. 1999) ...............................................................11, 13

*S. Ferry LP # 2 v. Killinger,*
    399 F. Supp. 2d 1121 (W.D. Wash. 2005) ...............................................................4

*In re Salomon Analyst Level 3 Litig.,*
    350 F. Supp. 2d. 477 (S.D.N.Y. 2004) ....................................................................4

*Sanders v. John Nuveen & Co.,*
    554 F.2d 790 (7th Cir. 1977) ..................................................................................13

*SEC v. Meltzer,*
    440 F. Supp. 2d 179 (E.D.N.Y. 2006) ......................................................................4

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994) ........................................................................11, 14, 20

*Tracinda Corp. v. DaimlerChrysler AG,*
    197 F. Supp. 2d 42 (D. Del. 2002) ............................................................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

*U.S. v. Rubinson*,
  543 F.2d 951 (2d Cir. 1976) ................................................................16

*Wall v. CSX Transp., Inc.*,
  471 F.3d 410 (2d Cir. 2006) ................................................................9

*Waxman v. Envipco Pick Up & Processing Services, Inc.*,
  No. 02 Civ. 10132 (GEL), 2003 WL 22439796 (S.D.N.Y. Oct. 28, 2003) ..............10

*Wexner v. First Manhattan Co.*,
  902 F.2d 169 (2d Cir. 1990) ................................................................20

### Statutes

15 U.S.C. § 77d ................................................................18

15 U.S.C. § 77e ................................................................16, 18

15 U.S.C. § 77x ................................................................16

15 U.S.C. § 78cc(a) ................................................................8

15 U.S.C. § 78u-4(b)(1)(B) ................................................................10

15 U.S.C. § 78u-5(a) ................................................................3

17 C.F.R. § 230.144 ................................................................17

17 C.F.R. § 230.144(2)(a) ................................................................18

17 C.F.R. § 230.144(2)(b) ................................................................18

17 C.F.R. § 230.144(2)(e) ................................................................19

Fed. R. Civ. P. 9(b) ................................................................10, 20

Fed. R. Civ. P. 19(b) ................................................................22

N.Y. C.P.L.R. § 1001(a) ................................................................21

## TABLE OF AUTHORITIES
(continued)

**Page**

### Other Authorities

22 N.Y. Jur. 2d *Contracts* § 144 (1996) ........................................................................15

Louis Loss & Joel Seligman, Securities Regulation § 2-A-5 (3d ed. 2005) .......................19

Louis Loss & Joel Seligman, Securities Regulation § 3-D-2 (3d ed. 2005) .......................18