UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
Cogent Capital Financial LLC and Cogent Capital : 
Investments LLC,

                        Plaintiffs,       :

                 - against -       :

Innofone.com, Incorporated,       :

                   Defendant.      :
------------------------------------------------------------- x
Innofone.com, Incorporated,       :

                    Plaintiff,       :

                 - against -       :

Cogent Capital Financial LLC, Cogent Capital : 
Investments LLC, Cogent Capital Group LLC,
Gregory L. Kofford, Mark W. Holden, and Investors :
Bank & Trust Company,

                               :

                   Defendants.     :
------------------------------------------------------------- x

**ECF CASE**

No. 07 Civ. 2701 (JSR)

**ECF CASE**

No. 07 Civ. 3966 (JSR)


## THE COGENT PARTIES' MEMORANDUM OF LAW
## IN OPPOSITION TO INNOFONE'S
## MOTION FOR SUMMARY JUDGMENT


MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
(212) 468-8000

*Attorneys for Cogent Capital Financial
LLC, Cogent Capital Investments LLC,
Cogent Capital Group LLC, Gregory L.
Kofford and Mark W. Holden*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF ARGUMENT ................................................................................. 3

ARGUMENT ......................................................................................................... 4

I.   THE TRANSACTION SHOULD NOT BE RESCINDED FOR ILLEGALITY ................. 5
     A.   The SEC Did Not Declare The Transaction Illegal ................................. 5
     B.   Even Without An Effective Registration Statement, The Transaction Is
          Not Illegal ............................................................................................. 6
     C.   Rescission Is Not An Appropriate Remedy Where The Parties Allocated
          The Risks Of Nonperformance Among Themselves ................................. 9
     D.   None Of The Facts Cited By Innofone Support Rescission Based On
          Illegality ............................................................................................... 10

II.  THE TRANSACTION SHOULD NOT BE RESCINDED FOR MUTUAL
     MISTAKE ....................................................................................................... 12
     A.   No Party Labored Under Any Mistake Regarding The Transaction ......... 12
     B.   There Was No Mistake As To Any "Fact." ............................................. 14
     C.   Even Assuming *Arguendo* That There Had Been A Mutual Mistake
          Regarding Registration, The Transaction Is Not Defeated Because The
          Transaction Can Still Proceed Without An Effective Registration
          Statement ............................................................................................... 15

III. THE TRANSACTION SHOULD NOT BE RESCINDED FOR IMPOSSIBILITY ........... 16
     A.   Performance Of The Transaction Agreements Is Not Impossible. ........... 16
     B.   Rescission Is Not an Appropriate Remedy Where The Parties Allocated
          The Risks Of Nonperformance Among Themselves ................................. 18
     C.   Innofone Is Not Entitled To Rescission Because Its Own Actions
          Prevented The SEC From Declaring The Registration Statement Effective ............. 19

IV.  INNOFONE RECEIVED ALL CONSIDERATION DUE UNDER THE
     TRANSACTION AGREEMENTS ......................................................................... 20

V.   INNOFONE IS BARRED FROM THE EQUITABLE REMEDY OF
     RESCISSION BY THE DOCTRINE OF "UNCLEAN HANDS." ................................. 21

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

Page

## STATUTES AND REGULATIONS

17 C.F.R. § 230.144(d)(1). Rule 144(k) ................................................................ *passim*

Fed. R. Civ. P. 8 ........................................................................................................3

Fed. R. Civ. P. 56(c) ..................................................................................................4

## CASES

*Apfel v. Prudential-Bache Securities,*
    81 N.Y.2d 470, 616 N.E.2d 1095 (N.Y. 1993) ....................................................20

*Bank of New York v. Tri Polyta Fin.,*
    01 Civ. 9104, 2003 U.S. Dist. LEXIS 6981 (S.D.N.Y. Apr. 25, 2003) ...................18

*Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,*
    170 F.R.D. 111 (S.D.N.Y. 1997) ............................................................................3

*Cartier v. Dutton,*
    45 F.R.D. 278 (S.D.N.Y.  1965) .............................................................................21

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .................................................................................................5

*Continental Energy Corp. v. Cornell Capital Partners,*
    No. 04 Civ. 260, 2005 WL 3543972 (S.D.N.Y. Dec. 28, 2005) ......................16, 17

*Continental Wall Paper Co. v. Louis Voight & Sons Co.,*
    212 U.S. 227 (1909) ...............................................................................................11

*Coram Healthcare Corp. v. Cigna,*
    No. 00 Civ. 2677, 2002 U.S. Dist. LEXIS 23307 (S.D.N.Y. July 23, 2002) ...........3

*Culver & Theisen, Inc. v. Starr Realty Co. (NE) LLC,*
    307 A.D.2d 910, 763 N.Y.S.2d 84 (App. Div. 2d Dep't 2003) ...........................9, 10

*DiScipio v. Sullivan,*
    30 A.D.3d 660, 816 N.Y.S.2d 576 (App. Div. 3d Dep't 2006)...............................17

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Group, Inc.,*
    165 F. Supp. 2d 615 (S.D.N.Y. 2001).....................................................................14

*Fendrick v. Rose,*
    26 Misc. 2d 810 (Sup. Ct. N.Y. County 1960) ......................................................23

## TABLE OF AUTHORITIES

Page

*Fratelli Lozza (USA) Inc. v. Lozza (USA)*,
    789 F. Supp. 625 (S.D.N.Y. 1992) ...................................................................23

*Friedman v. Meyers*,
    482 F.2d 435 (2d Cir 1973)...........................................................................12

*Gutfreund v. DeMian*,
    227 A.D.2d 234, 642 N.Y.S.2d 294 (App. Div. 1st Dep't 1996) ...........................11

*Hartford Fire Ins. Co. v. Fed. Dept. Stores, Inc.*,
    723 F. Supp 976 (S.D.N.Y. 1989) ...................................................................14

*Health-Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir. 1990)................................................... 14-15, 17, 19

*Horwitz v. AGS Columbia Assoc.*,
    700 F. Supp. 712 (S.D.N.Y. 1989) ...................................................................12

*Howard v. Gleason Corp.*,
    901 F.2d 1154 (2d Cir. 1990)..............................................................................5

*In re Adler, Coleman Clearing Corp.*,
    263 B.R. 406 (S.D.N.Y. 2001)...........................................................................10

*In re Liquidation of N.Y. Agency*,
    90 N.Y.2d 410, 683 N.E.2d 756 (N.Y. 1997) ...................................................15

*ITC Ltd. V. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007)...........................................................................12

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982).........................................................................................11

*Kaiser-Frazer Corp. v. Otis & Co.*,
    195 F.2d 838 (2d Cir. 1952)...........................................................................10

*Kama Rippa Music, Inc. v. Schekeryk*,
    510 F.2d 837 (2d Cir. 1975)...........................................................................19

*Kel Kim Corp. v. Central Markets, Inc.*,
    70 N.Y.2d 900, 524 N.Y.S.2d 384 (N.Y. 1987) ..............................................16, 18

*McClellan v. Smith*,
    439 F.3d 137 (2d Cir. 2006)...........................................................................14

*McDarren v. Piels*,
    94 Civ. 0910, 1995 U.S. Dist. LEXIS 4649 (S.D.N.Y. 1995) .................................14

## TABLE OF AUTHORITIES

**Page**

*McMullen v. Hoffman*,
    174 U.S. 639 (1899)..................................................................................................11

*United States v. Collado*,
    348 F.3d 323 (2d Cir. 2003)....................................................................................5

*Village of Nyack v. Christian and Missionary Alliance*,
    143 Misc. 2d 414, 540 N.Y.S.2d 125 (Sup. Ct. N.Y. County 1988) .......................11

*Walters v. Fullwood*,
    675 F. Supp. 155 (S.D.N.Y. 1987) ................................................................... 10-11

## OTHER AUTHORITIES

*Restatement (Second) of Contracts* § 151 comment (a)...................................................14

N.Y. Jur. 2d, *Contracts* § 100 ........................................................................................24

N.Y. Jur. 2d, *Contracts* § 144 (1996) .............................................................................10

Cogent Capital Financial LLC ("CCF"), Cogent Capital Investments LLC ("CCI"),
Cogent Capital Group LLC ("CCG"), Gregory L. Kofford and Mark W. Holden (collectively, the
"Cogent Parties"), respectfully submit this memorandum of law in opposition to Innofone's
motion for summary judgment, dated June 4, 2007, on the Second and Third Claims for Relief in
its Complaint, dated March 19, 2007 (the "Complaint"), and a portion of the Fifth Claim for
Relief.

## PRELIMINARY STATEMENT

This dispute arises out of a financing transaction between Innofone, on the one hand, and
CCF and CCI (collectively, the "Corporate Cogent Parties"), on the other hand.  The transaction
consisted of two parts.  First, Innofone sold unregistered shares of common and convertible
preferred stock to CCI in exchange for $50 million in Treasury Notes (the "Bonds").  Then,
concurrently with the closing of the first part of the transaction, Innofone pledged the Bonds to
CCF and deposited them in a collateral account at Investors Bank & Trust Company ("IBT"),
subject to a lien in favor of CCF.  The proceeds of the Bonds would then be released from the
collateral account over a 30-month period to Innofone (and possibly a portion to CCF depending
on the price of Innofone's common stock at the time of each dispersal), beginning 30 days after
either the SEC declares effective a registration statement covering a certain portion of the
common stock issued in the transaction and the common stock issuable upon conversion of the
preferred stock, or an exception from registration for such securities becomes available.  Both of
these parts of the transaction closed as of June 2, 2006.

Shortly after the closing, Innofone filed with the Securities and Exchange Commission
(the "SEC") a registration statement seeking to register the common stock issued in the
transaction and the common stock issuable upon conversion of the preferred stock issued in the
transaction.  With the exception of the 5 million shares issued to Cogent as a fee, Innofone was

not contractually obligated to file a registration statement for these securities and the Corporate Cogent Parties did not have the right or the ability to compel such a filing. Innofone chose to do so anyway, presumably to hasten the time when the proceeds of the Bonds would begin to be dispersed. Otherwise, Innofone would have to wait for an exception from registration for such securities to become available, which could take a year or more.

After filing the registration statement and before it was declared effective by the SEC, Innofone publicly disclosed that five of its prior financial statements would have to be restated, several of which were included as part of the registration statement. Thereafter, before ever filing restated financial statements, Innofone withdrew the registration statement. Innofone also ceased making certain agreed-upon payments to the Corporate Cogent Parties. Innofone then filed suit (No. 07-Civ-3966) against all the Cogent Parties, some of which are not even parties to the transaction agreements, seeking, among other things, rescission as a means to escape its obligations under the agreements.

As detailed below, and in the Cogent Parties' pending motion to dismiss these very claims, not only is Innofone not entitled to summary judgment at this very early stage of the proceedings, but it is not entitled to judgment at any time because its claims against the Cogent Parties are meritless. Simply put, the transaction agreements and Innofone's SEC filings confirm that Innofone has received exactly what it bargained for in the transaction; and the fact that the SEC did not declare Innofone's registration statement effective as quickly as Innofone would have liked, does not give rise to a claim for rescission, especially where Innofone voluntarily withdrew the registration statement before it could even be declared effective by the SEC.

## SUMMARY OF ARGUMENT

Innofone's motion for summary judgment seeks affirmative relief under four theories: rescission-for-illegality, rescission-for-mistake, rescission-for-impossibility, and rescission-for-lack-of-consideration.[1]  The motion should be denied in its entirety for the following reasons:

First, Innofone's motion for summary judgment on the theory of rescission-for-illegality should be denied, for the reasons explained in Part I, *infra*, because the transaction is not illegal, regardless of whether the registration statement was declared effective or not before it was withdrawn by Innofone.  To be sure, the SEC has not declared the transaction illegal and Innofone has offered no evidence to the contrary, merely supposition and conjecture.

Second, Innofone's motion for summary judgment on the theory of rescission-for-mistake should be denied for the following three reasons explained in Part II, *infra*: (a) the parties did not labor under any common misperceptions concerning the need for the SEC to declare the registration statement effective and the likelihood of the SEC doing so; (b) any alleged mistakes were not mistakes of fact, but rather of prediction; and (c) in any event, the transaction can proceed pursuant to the transaction agreements without an effective registration statement.

---

[1]  Innofone did not give sufficient notice under Fed.R.Civ.P. 8 on two of the grounds for which it seeks rescission—impossibility and want of consideration.  As this Court has noted, "it is inappropriate to raise new claims for the first time" in submissions for a court's consideration of a summary judgment motion.  *Coram Healthcare Corp. v. Cigna*, No. 00 Civ. 2677, 2002 U.S. Dist. LEXIS 23307 at *43 (S.D.N.Y. July 23, 2002) (citing *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997)).  The words "impossible" and "want of consideration" appear only once in its Complaint, in a vague, one-paragraph jeremiad under the Fifth Claim for Relief, which is merely captioned "Declaratory Relief Under 28 U.S.C. 2201."  Such offhanded references do not give meaningful notice of the legal claims asserted by Innofone.  Because the claims were so imperceptibly drawn, Cogent was unable to move to dismiss them.  To the extent that the Fifth Claim for Relief is one for impossibility and want of consideration, the Cogent Parties respectfully request that, in addition to denying the motion for summary judgment on this count, the Fifth Claim for Relief be dismissed.

Third, Innofone's motion for summary judgment on the theory of rescission-for-impossibility should be denied for the following three reasons explained in Part III, *infra*: (a) it is not impossible for the transaction to proceed, even after Innofone withdrew its registration statement; (b) even if it were impossible for the transaction to proceed, rescission is not an appropriate remedy here because the parties have contractually allocated between them the risk of the impossibility; and (c) Innofone's willful breach of the transaction agreements does not cause performance of the transaction agreements to be impossible.

Fourth, Innofone's motion for summary judgment on the theory of rescission-for-lack-of-consideration should be denied, for the reasons explained in Part IV, *infra*, because Innofone has received exactly what it bargained for in the transaction agreements. For example, Innofone itself represented to the SEC that "the terms of the proposed equity swap represent a significant net present value in favor of Innofone." (Lightman Decl. Ex. W, at 12.)

Lastly, Innofone is not entitled to a remedy of rescission on any of these four theories, for the reasons explained in Part V, *infra*, because it has unclean hands. Innofone induced the Corporate Cogent Parties into this transaction with an express warranty that its financial statements were accurate. Yet, after the closing, Innofone disclosed that it had to restate those very same financial statements, which it has still not yet done. Innofone should not be permitted to enlist the support of this Court to escape the consequences of its own misdeeds. Because the motion is based entirely on the equitable remedy of rescission, the doctrine of unclean hands bars Innofone from this relief.

## ARGUMENT

Summary judgment should only be granted where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This form of relief is appropriate only where, *after* discovery, the party opposing summary judgment has

not shown that evidence of an essential element of her case exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, summary judgment is inappropriate when there are genuine, unresolved issues related to a disputed material fact. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990). All inferences must be drawn in favor of the party opposing summary judgment, and all evidence must be construed in the light most favorable to it. *United States v. Collado*, 348 F.3d 323, 327 (2d Cir. 2003).

## I.    THE TRANSACTION SHOULD NOT BE RESCINDED FOR ILLEGALITY

### A.    The SEC Did Not Declare The Transaction Illegal

Innofone's assertion that "the SEC was simply not going to allow the registration statement to go forward" is untrue. (Innofone Br. at 13.) The registration process often takes many months and requires numerous communications between the SEC and the registrant before the shares are registered. (Kaufman Decl. ¶ 9.) This process can be prolonged where the transaction is novel or relatively complex, which was the case here. (Marcus Decl. ¶ 8 ("the SEC made clear that this transaction was unlike any the agency had seen before"); Marcus Decl. ¶ 14 "the SEC repeated its prior position that this transaction was a novel one").)

During this process, it is not unusual for the SEC to give comments on the registration statement submitted to it. Such comments, however, merely invite further dialogue and amendment; comments do not equate with the SEC requiring "the transaction to be unwound." (*Compare* Innofone Br. at 13 *with* Kaufman Decl. ¶ 11.) Innofone asks this Court to conclude that this statement meant the SEC believed that "Innofone could not register the shares underlying the Transaction." (Innofone Br. at 6.) The more likely conclusion is that the SEC wanted to understand how this novel deal worked—in other words, the SEC was doing its job. This is consistent with Mr. Marcus' own declaration (in paragraph 14), in which he states that as

of January 11, 2007 the SEC said the Transaction "would need to be scrutinized very carefully before the SEC would agree to registration." (Marcus Decl. ¶ 14.)[2]

Even if Innofone could prove that the SEC has definitively ruled out declaring the registration statement effective, Innofone has not proven and cannot prove that any such decision was based solely on the SEC's views about the Transaction.[3] As Innofone's own submissions show, the SEC raised questions about many aspects of the registration statement, not just the Transaction. In one comment letter, for example, the SEC asked Innofone to explain why it had not reported the replacement of its independent accountants, in violation of the requirements of Form 8-K, and requested that Innofone promptly update its financial statements as required by Regulation S-B. (Lightman Decl. Ex. S ¶¶ 3, 12). In fact, of the 22 questions raised by the SEC in its November 7, 2006 comment letter, only eight related to the Transaction, and of the twelve questions raised by the SEC in its March 9, 2007 comment letter, only five related to the Transaction.

**B.    Even Without An Effective Registration Statement, The Transaction Is Not Illegal.**

Even if the SEC had refused to declare the registration statement effective before it was withdrawn by Innofone, the Transaction would still not be illegal.

---

[2]   Innofone submits the declaration of its CEO, Alex Lightman, in support of its legal conclusion that the SEC would never allow registration. (Lightman Decl. ¶¶ 41, 44-45, 51). Mr. Lightman is not an attorney and his personal views on the legal significance of the SEC's communications carry no weight.

[3]   The Declaration of Arthur Marcus, Innofone's lawyer in the Transaction and during the SEC registration process, offers no support for the proposition that the SEC declared the Transaction illegal. Instead, Marcus notes that "it became clear . . . that the SEC viewed the swap agreement documents as problematic," or that certain SEC communications "led me to the conclusion that the SEC was never going to approve the deal as structured." (Marcus Decl. ¶¶ 16, 17.) Marcus's impressions of the SEC's sentiments regarding the Transaction are immaterial here. Moreover, they are issues of fact inappropriate for resolution as a matter of law on summary judgment.

First, nothing in the Transaction agreements obligates the Corporate Cogent Parties "to offer the securities for sale to the public." (Innofone Br. at 11.) Moreover, selling the securities to the public pursuant to an effective registration is not the only method by which the Corporate Cogent Parties can transfer the shares. In fact, the Transaction agreements, and even Innofone's own registration statement, specifically contemplate the possibility that the Corporate Cogent Parties might transfer the shares without a public sale or an effective registration statement.[4] The June 2, 2006 Swap Confirmation specifically references the possiblity of sales under Rule 144 promulgated under the Securities Act of 1933, as amended ("Rule 144"):[5]

> The "Resale Condition" shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933.

(Lightman Decl. Ex. G, at 10.) A similar reference to Rule 144 appears in the November 1, 2006 Swap Confirmation:

> The "Resale Condition" shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by

---

[4] It is important to note that there is no requirement that Cogent sell shares for release of the proceeds from the collateral account and settlement of the swaps to begin—only that the shares be registered or available for resale under an exemption.

[5] Rule 144 expressly provides that "restricted securities" held for at least a year may be sold without registration under the Securities Act subject to specified conditions. 17 C.F.R. § 230.144(d)(1). Rule 144(k) further provides that these conditions terminate if the "restricted securities" have been held for at least two years and the seller is not, at the time, an affiliate of the issuer. *Id.* § 230.144(k). Rule 144(k) imposes no limits on quantity for non-affiliates.

> any share certificates bearing restrictive legends and not subject to
> any stop transfer order.

(Lightman Decl. Ex. K, at 5-6.)  Additionally, the "Plan of Distribution" contained in the

registration statement states that the Corporate Cogent Parties may sell the shares in "privately

negotiated transactions" and that it "may also sell shares under Rule 144 under the Securities Act

of 1933, if available, rather than under this prospectus."  (Kofford Decl. Ex. D, at 41.)  In fact,

even in its SEC filings from three weeks ago, Innofone acknowledged the potential for sale under

Rule 144:

> The Resale Condition shall be deemed satisfied as of any day with
> respect to the number of equity shares that, as of such day, are then
> subject to an effective resale registration statement under the
> Securities Act of 1933, as amended, with the holders of such
> shares being named therein as selling shareholders or fully eligible
> for resale under Rule 144 adopted under the Securities Act of
> 1933.

(Kofford Decl. Ex. L, at 13.)  Moreover, notwithstanding its assertions to the contrary, and

despite Innofone's clear and unequivocal statements in its SEC filings, Innofone's principals

themselves acknowledged the possibility that the Corporate Cogent Parties could sell their shares

under Rule 144, rather than an effective registration statement.  (Kofford Decl. Ex. F (email from

Lightman stating that Innofone will be able to access the treasury bonds "either a. when the

[registration statement] goes effective . . . or b. in worst case, when the 144 restrictions are lifted

in June 2007"); Kofford Decl. Ex. G (email from Casale requesting "a letter on Cogent letterhead

indicating that the mechanics of our deal on the treasuries is such that regardless of the

[registration statement] . . . we will commence the swap utilizing Rule 144 in June of 2007").)

Thus, the fact that the SEC did not declare Innofone's registration statement effective

before it was withdrawn by Innofone does not render the Transaction illegal.

**C.    Rescission Is Not An Appropriate Remedy Where The Parties Allocated The Risks Of Nonperformance Among Themselves**

Even assuming further that the SEC's alleged rejection somehow renders the Transaction illegal, New York law does not regard the *agreements* themselves to be illegal.  In *Culver & Theisen, Inc. v. Starr Realty Co. (NE) LLC*, plaintiff entered into an agreement to use defendant's property for billboard advertising.  307 A.D.2d 910, 763 N.Y.S.2d 84 (App. Div. 2d Dep't 2003).  The agreement provided that "the risk of failure to terminate on that basis [*i.e.*, not receiving the land-use permit] was intentionally placed on the plaintiff." *Id.* at 911, 763 N.Y.S.2d at 86.  After two years, the plaintiff discovered that it was, in fact, not legal to erect the advertisement on the property.  Plaintiff thereupon sought rescission for mistake and illegality. The trial court dismissed the claim for rescission, and the Appellate Division affirmed, holding that, because the parties had contractually allocated the risk of illegality, the lease agreement was not illegal. *Id.* ("[A contract] . . . is not necessarily illegal where the parties considered this possibility at the time of execution, and the lease contained a provision addressing it.").

The facts here are indistinguishable from those in *Culver*.  Just as the City's refusal to allow the plaintiff in *Culver* to place a sign on the premises prohibited performance of the lease, Innofone alleges here that the SEC's failure to register Innofone's shares as quickly as Innofone had hoped makes the Transaction "illegal—indeed criminal." (Innofone Br. at 13).  Also as in *Culver*, the contracting parties here considered the possibility of "illegality" at the time of execution.

For example, in the November 1, 2006 Swap Confirmation, the parties agreed that an "Additional Termination Event" shall occur if "the Resale Condition shall not have been satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010."

(Lightman Decl. Ex. E ¶ 5(b)(vi), Ex. F ¶ 1(g), Ex. G ¶¶ 2 & 5).[6] This expressly demonstrates that Innofone and the Corporate Cogent Parties entered the Transaction with full appreciation that registration might never occur and even that Rule 144 may not be available. Just as *Culver* dismissed plaintiff's claim for rescission, Innofone's claim should be denied here.

### D.    None Of The Cases Cited By Innofone Support Rescission Based On Illegality.

Since Innofone cannot show that any part of the Transaction is illegal, Innofone cannot make a claim for rescission on the grounds of illegality. In any event, to make such a claim, Innofone would have to show that the agreements call for the parties "to do an illegal act" or is "designed or intended to accomplish the furtherance or effectuation of an unlawful purpose." *See* 22 N.Y. JUR. 2d, *Contracts* § 144 (1996). Innofone does not make such a showing. Instead, at most, it alleges that, *if* the parties attempted to sell the shares without registration or an exemption from registration, the parties would be violating the law. Such a contingency is not contemplated by the plain text of the agreements, nor was it contemplated by the parties at the time of contracting.

This fact easily distinguishes the Transaction from the cases cited by Innofone. In *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 420 (S.D.N.Y. 2001), the rescinded contract was based on a fraudulently fabricated stock trade. In *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838, 840 (2d Cir. 1952), the rescinded contract was one founded upon a registration statement containing fraudulent information.

The Transaction here can also be distinguished from the cases cited by Innofone in which the act of contracting *in itself* constituted an illegal agreement. For example, in *Walters v.*

---

[6] Similarly, Paragraph 4.7 of the Purchase Agreement specifically states that registration might never occur and cautions the contracting parties that without registration, the stocks "must be held indefinitely." (Lightman Decl. Ex. C ¶ 4.7.)

*Fullwood*, 675 F. Supp. 155 (S.D.N.Y. 1987), the agreement was rescinded because it had been backdated to mask illegality in the timing of the agreement. Similarly, *Gutfreund v. DeMian*, 227 A.D.2d 234, 234-35, 642 N.Y.S.2d 294, 295 (App. Div. 1st Dep't 1996), involved an illegal contract for compensation with an unregistered insurance salesman.

Innofone's boilerplate Supreme Court citations are inapposite for the same reason. In both *Kaiser* and *Continental Wall Paper*, the parties sought to rescind a contract that violated antitrust laws. *Cont'l Wall Paper Co., v. Louis Voight & Sons Co.*, 212 U.S. 227 (1909); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982). The parties in these cases broke the law as soon as they signed the contracts in dispute. The same is true of the contract contemplated in *McMullen v. Hoffman*, 174 U.S. 639, 649 (1899), in which "the crime l[ay] in the act of conspiracy and combination" to rig the bidding process for a water pipe. That is not the case with respect to this Transaction, because even Innofone does not contend that the contract itself was illegal.

Nor will the Court, by enforcing the Transaction, be required to lend legitimacy to an illegal act, as was the case in *Village of Nyack v. Christian and Missionary Alliance*, 143 Misc. 2d 414, 540 N.Y.S.2d 125 (Sup. Ct. N.Y. County 1988). In that case, the Village asked the court to compel defendant, a tax-exempt religious organization, to make payments it owed to the Village "in lieu of taxes." *Id.* at 417, 540 N.Y.S.2d at 127. The court refused to enforce the contract because doing so would violate the public policy exempting religious organizations from taxation. *Id.* at 422, 540 N.Y.S.2d at 130. By contrast, enforcing the Transaction agreements here would not put the Court in the untenable position of condoning a violation of law or policy, since nothing in the agreements compels the parties to commit an illegal act at the time they were made.

## II.    THE TRANSACTION SHOULD NOT BE RESCINDED FOR MUTUAL MISTAKE

Innofone contends that it is entitled to rescission based on mutual mistake because it and the Cogent Parties "were mutually mistaken regarding a critical element of the transaction: SEC approval of the shares underlying the Transaction." (Innofone Br. at 16.) This argument fails as a matter of fact and as a matter of law.

### A.    No Party Labored Under Any Mistake Regarding The Transaction

Innofone is not entitled to rescission based on mistake because there was no mistake concerning the need for and likelihood of the SEC declaring the registration statement effective. As the Second Circuit has explained, summary judgment is "particularly inappropriate" where "questions of motive, intent, and subjective feelings and reactions" are at issue. *Friedman v. Meyers*, 482 F.2d 435, 439 (2d Cir 1973); *see also ITC Ltd. V. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) ("[I]ntent is always a subjective matter of inference and thus rarely amenable to summary judgment.") (internal quotation marks omitted). *Horwitz v. AGS Columbia Assoc.*, 700 F. Supp. 712, 713 (S.D.N.Y. 1989) (denying summary judgment on rescission claim and explaining that "[c]ases involving fraud or mistake of fact necessarily turn on the parties' intent and generally cannot be disposed of without a trial.").

Here, there was no mutual mistake of fact. As indicated in their declarations, the Corporate Cogent Parties did not believe that the SEC was certain to declare the registration statement effective. (Kofford Decl. ¶ 7.) Nor did the Corporate Cogent Parties believe that an effective registration statement was the only means by which the transaction could proceed. (Kofford Decl. ¶ 7.) Innofone's evidence to the contrary is hardly conclusive. Although Innofone cites two emails from Cogent's principals, (Innofone Br. at 16-17), it fails to identify a single statement from anyone on behalf of the Corporate Cogent Parties (in those emails or elsewhere) expressing the belief that SEC approval was a foregone conclusion.

Moreover, despite grandiose assertions such as "the financing agreement was expressly conditioned on the registration of the underlying shares," (Innofone Br. at 4), none of the provisions Innofone cites contains any such "express" provision. To the contrary, the Transaction agreements, and even Innofone's own SEC filings, specifically contemplate the possibility that the Corporate Cogent Parties might transfer the shares without a public sale or an effective registration statement. *See* discussion *supra* Part I.B.

Contrary to Mr. Lightman's contention, Messrs. Kofford and Holden did not represent to Mr. Lightman or anyone else on behalf of Innofone that "the SEC had approved this type of financing before" or "that it would be a short time until the shares underlying the transaction could be registered with and approved by the SEC." (Lightman Decl. ¶ 11.) Rather, Mr. Kofford told Mr. Lightman that Aegis Assessments, Inc., a public company that had previously entered into a similar type of deal (i.e., with equity swaps) with Cogent Capital Corp. (a corporation with which Gregory Kofford works), had filed a registration statement with the SEC for shares owned by other investors (not Cogent Capital Corp.) and had its registration declared effective by the SEC without comment. Further, prior to the closing of the Transaction, Mr. Casale, Innofone's general counsel, specifically requested contact information for a senior executive at every public company with which the Cogent Parties and Cogent Capital Corp. had made an investment with a similar structure (i.e., using swaps) and it is Mr. Kofford's understanding that Mr. Casale contacted each of the three companies, including Aegis.

Further, and more significantly, emails from Lightman and Innofone's general counsel, Gerard Casale, Jr., demonstrate that Innofone's principals understood that the Transaction could potentially proceed under Rule 144 even if the SEC did not declare the registration statement effective. (Kofford Decl. Ex. F (email from Lightman stating that Innofone will be able to

access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in

worst case , when the 144 restrictions are lifted in June 2007"); Kofford Decl. Ex. G (email from

Casale requesting "a letter on Cogent letterhead indicating that the mechanics of our deal on the

treasuries is such that regardless of the [registration statement] . . . we will commence the swap

utilizing Rule 144 in June of 2007").)

These facts *alone* create a genuine issue of material fact as to the parties' expectations at

the time of contracting.[7]

### B.    There Was No Mistake As To Any "Fact"

A party seeking rescission based on mutual mistake must show that, at the time of

contracting, the parties were mistaken "as to a basic assumption on which the contract was

made." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615, 624

(S.D.N.Y. 2001), *aff'd*, 343 F.3d 189 (2d Cir. 2003).  Further, the mistake must relate to the facts

as they existed at the time of contracting.  A "party's prediction or judgment as to events to occur

in the future, even if erroneous, is not a 'mistake'" justifying rescission under New York law.

*Hartford Fire Ins. Co. v. Fed. Dept. Stores, Inc.,* 723 F. Supp 976, 994 (S.D.N.Y. 1989)

(applying New York law and quoting *Restatement (Second) of Contracts* § 151 comment (a)).

Innofone's central rescission-by-mistake argument is that there was a mistaken belief by

all parties "that the shares . . . would have an effective resale registration statement[.]"  (Innofone

Br. at 15.)  Whether or not the SEC would declare the registration statement effective is a

---

[7]  Summary judgment is particularly inappropriate because the Cogent Parties have not had the opportunity to cross-examine Lightman and Marcus regarding their version of the relevant events or to challenge their credibility.  As the Second Circuit has made clear, "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006); *see also McDarren v. Piels,* 94 Civ. 0910, 1995 U.S. Dist. LEXIS 4649 at *19 (S.D.N.Y. 1995) (denying summary judgment on claim of rescission based on mistake and explaining that summary judgment is "particularly inappropriate . . . where the motive, intent, and knowledge of a moving party is at issue.")

prediction about the future, not a fact that existed at the time of the contract.  *In re Liquidation of N.Y. Agency,* 90 N.Y.2d 410, 424, 683 N.E.2d 756, 764 (N.Y. 1997) (no mistake where parties failed to anticipate government seizure of assets); *Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990) (no mistake where contracting parties failed to predict substantial drop in stock price).

Further, as discussed above, the reason that the SEC did not declare the registration statement effective is that Innofone withdrew it from SEC consideration.  (*See* Kofford Decl. Ex. K.)  Nor can Innofone show that the parties' alleged belief that registration was necessary for the Transaction was a basic element of the agreements between the parties.  Indeed, the parties expressly contracted for the possibility that registration might not occur.  *See* discussion *infra* Part III.B.  Innofone fails to identify any clause in any of the Transaction agreements that requires SEC registration of Innofone's shares.  It strains belief that such a "basic assumption on which the contract was made" would have been omitted from the carefully tailored warranties in the Transaction agreements.

### C.    Even Assuming *Arguendo* That There Had Been A Mutual Mistake Regarding Registration, The Transaction Is Not Defeated Because The Transaction Can Still Proceed Without An Effective Registration Statement.

Innofone's claim for rescission based on mutual mistake also fails for a third reason. Even if both parties were mistaken regarding registration, any such mistake does not defeat the Transaction.  As discussed above, the Transaction can proceed even without an effective registration statement.

## III.   THE TRANSACTION SHOULD NOT BE RESCINDED FOR IMPOSSIBILITY

Innofone also contends that it is entitled to rescission for impossibility.  This argument fails for a number of reasons.

### A.   Performance Of The Transaction Agreements Is Not Impossible

Innofone's impossibility argument fails because Innofone's performance of its obligations under the Transaction agreements is not "objectively impossible," as required under New York law.  *Kel Kim Corp. v. Central Markets, Inc.,* 70 N.Y.2d 900, 902, 524 N.Y.S.2d 384, 385 (N.Y. 1987).

First, it would not be impossible for Innofone to obtain SEC approval.  In *Continental Energy Corp. v. Cornell Capital Partners*, No. 04 Civ. 260, 2005 WL 3543972 (S.D.N.Y. Dec. 28, 2005), the parties entered into an equity finance agreement by which the defendant agreed to purchase shares of plaintiff's stock, upon plaintiff's demand, following registration of the sale with the SEC.  Thereafter, plaintiff filed suit seeking a declaratory judgment that the agreement was void for impossibility.  It asserted that the transaction violated SEC regulations and there was thus "no way a registration statement would be approved by the SEC."  *Id.* at *2-3.  The court granted defendant's motion for summary judgment dismissing plaintiff's impossibility claim.  It held that plaintiff had offered no evidence that the transaction violated SEC regulations or that the SEC had a practice of rejecting similar transactions.  *Id.* at *3-4.

Here, Innofone—like the plaintiff in *Continental Energy*—has failed to demonstrate that the SEC would never approve a registration statement in connection with the Transaction.[8]  The only evidence it has submitted on this point is the declaration of its former attorney, Arthur

---

[8]  Innofone attempts to distinguish *Continental Energy* on the ground that the plaintiff in that case did not file a registration statement with the SEC.  (Innofone Br. at 21.)  This argument is meritless.  Although Innofone filed a registration statement, it voluntarily withdrew it from SEC consideration.

Marcus. Contrary to Innofone's assertions, however, Mr. Marcus's declaration does not "make[] crystal clear that the SEC's decision not to register the shares made Innofone's performance impossible." (Innofone Br. at 22). The Marcus Declaration does not state that the SEC categorically rejected the Transaction or has a practice of rejecting similar transactions. Mr. Marcus states only that the SEC had concerns about the Transaction and that these concerns "led [him] to the conclusion that the SEC was never going to approve the deal as structured." (Marcus Decl. at ¶¶ 16-17.) While this may have been Mr. Marcus's subjective opinion, it certainly does not prove that SEC approval was objectively impossible. *Cont'l Energy,* 2005 WL 3543972 at *3 ("[I]t is not enough that [a party] *believed* that performance was impossible; for the impossibility doctrine to apply, performance must actually *be* impossible.") (emphasis in original). To the contrary, it might still be possible if Innofone were to restate its financial statements and re-file its registration statement with the SEC. (Kaufman Decl. at ¶ 15.)

Further, as explained above, the Transaction is still viable even without an effective registration statement. The fact that this may not be the desired route for Innofone because it may take longer for the proceeds of the Bonds to begin to be released from the collateral account, is simply not sufficient under New York law to warrant rescission. *Health-Chem,* 915 F.2d at 810 (performance was not impossible where subsequent events merely made "performance of the contract more onerous"); *DiScipio v. Sullivan,* 30 A.D.3d 660, 661, 816 N.Y.S.2d 576, 578 (App. Div. 3d Dep't 2006) (performance will not be excused for impossibility where "performance is occasioned only by financial difficulty or economic hardship").

**B.    Rescission Is Not An Appropriate Remedy Where The Parties Allocated The Risks Of Nonperformance Among Themselves**

Even assuming *arguendo* that performance was impossible, rescission is not an appropriate remedy here because the parties, knowing of the risks of nonregistration, allocated the risks among themselves in the Transaction agreements.

The New York Court of Appeals has made clear that impossibility will excuse a party's performance only where it is "produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim,* 70 N.Y.2d at 902, 524 N.Y.S.2d at 385. The "[impossibility] doctrine [only] comes into play where . . . the contract does not expressly allocate the risk of the event's occurrence to either party." *Bank of New York v. Tri Polyta Fin.,* 01 Civ. 9104, 2003 U.S. Dist. LEXIS 6981, at 13 (S.D.N.Y. Apr. 25, 2003). Thus, where a contract provides for a party to bear responsibility for impossibility of performance, the remedy for impossibility is merely enforcement of the agreed-upon remedy.

Here, in the November 1, 2006 Swap Confirmation, the parties specifically agreed that an "Additional Termination Event" shall occur if "the Resale Condition shall not have been satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010." (Lightman Decl. Ex. E ¶ 5(b)(vi), Ex. F ¶ 1(g), Ex. G ¶¶ 2 & 5). Similarly, Paragraph 4.7 of the Purchase Agreement contemplates that registration might never occur and cautions the contracting parties that without registration, the stocks "must be held indefinitely." (Lightman Decl. Ex. C ¶ 4.7.)

The deliberateness with which the parties entered into Section 4.7 is particularly evident from the fact that demand registration right in the Registration Rights Agreement only applies to the shares of Innofone common stock received by CCF as a fee for entering into the Transaction.

There is no corresponding demand registration right with respect to the common stock issued in the transaction and the common stock issuable upon conversion of the preferred stock.

### C.    Innofone Is Not Entitled To Rescission Because Its Own Actions Prevented The SEC From Declaring The Registration Statement Effective

Finally, Innofone's claim for rescission based on impossibility fails for a third, independent reason.  As the Second Circuit has repeatedly explained, a party pleading impossibility must demonstrate "that it took virtually every action within its powers to perform its duties under the contract." *Health-Chem*, 915 F.2d at 810; *see also Kama Rippa Music, Inc. v. Schekeryk*, 510 F.2d 837, 842-43 (2d Cir. 1975) (performance is not excused where it is only impossible because of the actions of the party pleading impossibility).

Here, Innofone did not take every action within its power to secure SEC approval of the registration statement—far from it.  In fact, it is Innofone's own actions that prevented the SEC from declaring the registration statement effective: Innofone announced that its previously filed financial statements were inaccurate, and then failed to submit restated financials, virtually ensuring that the SEC would not approve its registration statement.  And, as if that were not enough, Innofone itself *voluntarily withdrew* the registration statement from SEC consideration. Innofone cannot now escape the consequences of its own actions by asserting that performance is impossible.[9]

---

[9]  The initial registration statement, which Innofone filed with the SEC on July 19, 2006 without affording Cogent or their counsel an opportunity to review, contained several significant inaccuracies. We believe these inaccuracies were caused, at least in part, by the questions raised by the SEC in its comment letters to the registration statement. In addition, the SEC questioned many aspects of the registration statement, not just the Transaction. (Lightman Decl. Ex. S ¶¶ 3, 12.)

IV.  **INNOFONE RECEIVED ALL CONSIDERATION DUE UNDER THE TRANSACTION AGREEMENTS**

Innofone argues that the transaction agreements do not reflect a fair exchange of consideration because Innofone "cannot enjoy . . . access to the bonds" and has "not receiv[ed] a penny from the deal." (Innofone Br. at 24.)  This argument is based on an incorrect construction of the Transaction agreements.

Nothing in the Transaction agreements entitles Innofone to receive funds at this time or at any time in particular.  Rather, according to the terms of the Transaction, the proceeds of the Bonds would be dispersed over a 30-month period beginning 30 days after either the SEC declares effective a registration statement covering a certain portion of the common stock issued in the transaction and the common stock issuable upon conversion of the preferred stock, or an exception from registration for such securities becomes available.  That was the deal.

Moreover, even assuming *arguendo* that Innofone "cannot enjoy . . . access to the bonds" and has "not receiv[ed] a penny from the deal," this does not give rise to a valid claim for rescission.  It is an axiom of New York law that "parties to a contract are free to make their bargain, even if the consideration is grossly unequal or of dubious value."  *Apfel v. Prudential-Bache Securities*, 81 N.Y.2d 470, 475, 616 N.E.2d 1095, 1097 (N.Y. 1993) (refusing to rescind sale of an "idea for issuing and selling municipal bonds").  Thus, the value received by Innofone is irrelevant to the question of whether it received consideration—the only relevant test is merely whether there had been consideration of any sort.

Indeed, Innofone's own registration statement contradicts its protestations that it received not even "a penny from the deal."

> [T]he terms of the proposed equity swap represent a significant net present value in favor of Innofone, for which Cogent was compensated through the initial entrance amount for the swap . . . .

The value of the swap at that point in time was calculated to be approximately $9,375,000.

(Lightman Decl. Exh. W, at 12.)  Similarly, Innofone's most recent Form 10-QSB, for the quarterly period ended March 31, 2007 (which was filed with the SEC three weeks ago, on May 21, 2007) shows the Bonds listed as an asset on the consolidated balance sheet.  Moreover, that very same filing also reveals that Innofone was able to secure a $1 million loan shortly after the closing of the Transaction, which Innofone would likely not have been able to secure otherwise. (Kofford Decl. Ex. L, at 11; Counterstatement ¶¶ 22(f)(i)-(ii).)

The flaws in Innofone's lack-of-consideration argument are even more glaring in view of the fact that Innofone's present inability to access the funds is a direct consequence of its own decision to withdraw its registration statement from SEC consideration.  As discussed above, the SEC now cannot declare the registration statement effective, and without such a declaration, dispersal of the proceeds of the Bonds must await an exemption for the resale of the securities sought to be registered in the registration statement.

## V.    INNOFONE IS BARRED FROM THE EQUITABLE REMEDY OF RESCISSION BY THE DOCTRINE OF "UNCLEAN HANDS"

All of the grounds on which Innofone seeks summary judgment seek the remedy of rescission.  Rescission, however, is an *equitable* remedy that cannot be granted to one who comes before the court with unclean hands.  *Cartier v. Dutton*, 45 F.R.D. 278, 280 (S.D.N.Y. 1965) (The unclean hands doctrine "may be invoked in an equitable action for rescission involving alleged fraud in the sale of stock.").

It is telling that Innofone's motion papers fail to mention the fact that Innofone both breached the Transaction agreements and made misrepresentations to induce the Corporate Cogent Parties to enter into the Transaction.  Specifically, in Section 3.3 of the Securities

Purchase Agreement, Innofone warranted to CCI and CCF that its financial statements fairly

presented its financial position:

> 3.3  The financial statements of the Company (including all notes and schedules thereto) included or incorporated by reference in the Company's filings under the Exchange Act (the "Exchange Act Filings") present fairly the financial position of the Company and its consolidated subsidiaries at the dates indicated and the statement of operations, stockholders' equity and cash flows of the Company and its consolidated subsidiaries for the periods specified; and the financial statements and related schedules and notes thereto, and the unaudited financial information included or incorporated by reference in the Exchange Act Filings have been prepared in conformity with generally accepted accounting principles, consistently applied throughout the periods involved. The summary and selected financial data included in the Exchange Act Filings present fairly the information shown therein as at the respective dates and for the respective periods specified and have been presented on a basis consistent with the consolidated financial statements set forth in the Exchange Act Filings and other financial information.

(Lightman Decl. Ex. C ¶ 3.3.)  Yet, a few short months later, on December 29, 2006, and January

11, 2007, Innofone disclosed that it will have to restate certain of its prior financial statements.

(Kofford Decl. Exs. I & J.)  Included in the financial statements that need to be restated are

Innofone's financial statements for the quarter ended March 31, 2006 that were included in the

initial Form SB-2 Registration Statement, filed on July 19, 2006 and in Amendment No. 1

thereto, filed on August 28, 2006, and Innofone's financial statements for the year ended June

30, 2006 that were included in Amendments No. 2 and 3 to the Form SB-2 Registration

Statement, filed on October 24, 2006 and December 8, 2006, respectively.

In addition, Innofone has refused to make payments due and owing to Cogent pursuant to

the Equity Swap Confirmation, as restated as of November 1, 2006, and the Interest Rate Swap

Confirmation, restated as of November 1, 2006.  (*See respectively* Lightman Decl. Exs. K & L.)

As of June 1, 2007, Innofone owes Cogent $553,831.03 pursuant to the Interest Rate Swap

Confirmation; (ii) $831,250 of the cash fee; and (iii) interest on the cash fee in the amount of $57,692.54. (Kofford Decl. ¶ 15.) Additional sums are due monthly under the Interest Rate Swap Confirmation. (Kofford Decl. ¶ 16.) Innofone further breached the Transaction by failing to register 5 million shares of common stock issued as a fee to Cogent. (Kofford Decl. ¶ 17.) Innofone's refusal to make these payments amount to an event of default under Paragraph 5(a)(i) of the ISDA Agreement. (Lightman Decl. Ex. E ¶ 5(a)(i).)

After breaching the express warranties that guaranteed the soundness of its financial statements and induced the Corporate Cogent Parties to enter into the Transaction, and then refusing to make payments required under the Transaction, Innofone now calls upon this Court to rescind the Transaction so as to avoid the consequences of its breaches. This is precisely what the doctrine of unclean hands forbids.

In *Fratelli Lozza (USA) Inc. v. Lozza (USA)*, for example, the plaintiff sought to rescind a trademark license agreement after the plaintiff itself breached the license the agreement by selling eyewear that had not been marked in accordance with the license. 789 F. Supp. 625, 636 (S.D.N.Y. 1992). The court held that the "breaches by the plaintiff . . . undermine its ability to obtain equitable relief in this court, given the equitable premise that one who seeks equity may not invoke such relief if it has unclean hands." *Id.* at 637.

The doctrine of unclean hands provides a complete defense to rescission where a plaintiff enters into an agreement by misrepresentations, and later attempts to seek rescission of the agreement. For example, in *Fendrick v. Rose*, the plaintiff purchased corporate stock from the defendant, representing that she would assume control over the corporation. 26 Misc. 2d 810 (Sup. Ct. N.Y. County 1960). In actuality, the plaintiff held the company in name only while her husband—who could not otherwise have a hand in the company's affairs—effectively controlled

the conduct of the company. The plaintiff subsequently sought to rescind the sale, alleging fraud. On the plaintiff's motion to dismiss the affirmative defense of unclean hands, the court refused the motion, thereby acknowledging that even such minor subterfuge constitutes unclean hands as a matter of law.

Here, Innofone has not merely made misrepresentations or breached the relevant agreements—it has done both. Rescission is not available to a plaintiff whose own actions created the difficulties of which it complains in the first place. 55 N.Y. JUR. 2d *Contracts* §100 ("This maxim is deeply rooted in the principles of equity [that] no one should be permitted to found any claim upon that person's own inequity.") (collecting cases).

For the reasons above, and because Innofone's entire summary judgment motion seeks rescission, this Court should deny the motion in its entirety as a matter of law under the "unclean hands" doctrine.

## CONCLUSION

For the foregoing reasons, the Cogent Parties respectfully request that this Court enter an order:

(1)    denying Innofone's motion for summary judgment in its entirety; and

(2)    granting any further relief as the Court may deem just and proper.

Dated:  June 18, 2007
New York, New York

MORRISON & FOERSTER LLP
Joel C. Haims (JH-9829)
Mitchell M. Wong (MW-8795)
Emily S. Richman (ER-2277)
1290 Avenue of the Americas
New York, New York  10104
(212) 468-8000

*Attorneys for Cogent Capital Financial
LLC, Cogent Capital Investments LLC,
Cogent Capital Group LLC, Gregory L.
Kofford and Mark W. Holden*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2007, I caused to be served a true and correct copy of the following documents by e-mail and ECF filing on Roderick McLeod, Esq., of Jones Day, counsel for Innofone.com, Inc.; and Paula Bagger, Esq., of Cooke Clancy & Gruenthal LLP, counsel for Investors Bank & Trust Company:

(1)    The Cogent Parties' Memorandum of Law in Opposition to Innofone's Motion for Summary Judgment;

(2)    The Cogent Parties' Rule 56.1 Countertatement of Material Facts Pursuant to Local Rule 56.1 in Opposition to Innofone's Motion for Summary Judgment;

(3)    Declaration of David Kaufman; and

(4)    Declaration of Gregory L. Kofford.


Dated:    New York, New York
          June 18, 2007

                                        Mitchell M. Wong (MW-8795)

ny-757123