UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- :
                                                                :
Capital Financial LLC and Cogent Capital Investments            :
LLC,                                                            :
                                                                :
                                   Plaintiffs,                  :        **ECF CASE**
                                                                :
                     - against -                                :        No. 07 Civ. 2701 (JSR)
                                                                :
Innofone.com, Incorporated,                                     :
                                                                :
                                   Defendant.                   :
----------------------------------------------------------------x
                                                                :
Innofone.com, Incorporated,                                     :
                                                                :
                                   Plaintiff,                   :
                                                                :
                     - against -                                :        **ECF CASE**
                                                                :
Cogent Capital Financial LLC, Cogent Capital                    :        No. 07 Civ. 3966 (JSR)
Investments LLC, Cogent Capital Group LLC, Gregory L.           :
Kofford, Mark W. Holden, and Investors                          :
Bank & Trust Company,                                           :
                                                                :
                                   Defendants.                  :
----------------------------------------------------------------x


**THE COGENT PARTIES' COUNTERSTATEMENT OF MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1(b) IN OPPOSITION TO
INNOFONE'S MOTION FOR SUMMARY JUDGMENT**


MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
(212) 468-8000

*Attorneys for Cogent Capital Financial LLC,
Cogent Capital Investments LLC, Cogent
Capital Group LLC, Gregory L. Kofford and
Mark W. Holden*

Pursuant to Rule 56.1(b) of the Local Civil Rules of the U.S. Southern and Eastern Districts of New York, Cogent Capital Financial LLC ("CCF"), Cogent Capital Investments LLC ("CCI"), Cogent Capital Group LLC ("CCG"), Gregory L. Kofford and Mark W. Holden (collectively, the "Cogent Parties"), respectfully submit this Statement of Material Facts responding to each numbered paragraph in Innofone's Rule 56.1(a) statement and setting forth additional material facts as to which it is contended that there exists a genuine issue to be tried.

## COUNTERSTATEMENT OF MATERIAL FACTS

| INNOFONE'S STATEMENTS | COGENT'S COUNTERSTATEMENTS |
| --- | --- |
| <div align="center">**SECOND CLAIM FOR RELIEF**<br><br>**Rescission Based Upon Illegality**</div> | |
| 1.  On May 5, 2006, Alex Lightman sent Gregory L. Kofford and Mark W. Holden an executed letter in which Innofone and Cogent Capital Group LLC agreed to move forward with a proposed investment of between $15 and $50 million and Cogent Capital Group received $25,000 for due diligence fees and $3,000 for an escrow fee.<br><br>Innofone's Citations:<br><br>*Lightman Decl. ¶ 8.*<br><br>*May 5 Letter Agreement, attached as Exhibit B to the Lightman Decl.* | 1(a)     The Cogent Parties do not dispute the general accuracy of this statement.<br><br>1(b)     The Cogent Parties further and respectfully submit that the letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002. |

2.  By agreement dated as of June 2, 2006, Innofone, Cogent Capital Financial LLC, and Cogent Capital Investments LLC, entered into a financing arrangement which involved the purchase of shares and a simultaneous Equity Swap transaction by which Cogent Capital Investments bought 1.85 million shares of Innofone common stock and 4.815 million shares of Innofone's Series A convertible preferred stock for $50 million in U.S. Treasury Bonds, and Innofone paid a fee for the Equity Swap to Cogent Capital Financial comprised of 5 million shares of Innofone common stock, a warrant to purchase another 5 million shares of common stock, and $1.375 million (hereafter "Transaction").

 Innofone's Citations:

*Lightman Decl. ¶¶ 15-18.*

*Securities Purchase Agreement, Section 1.1, attached as Ex. C to Lightman Decl.*

*June 2, 2006 Equity Swap Transaction Confirmation, at 4-5, attached as Ex. G to Lightman Decl.*

2(a)    The Equity Swap did not take place "simultaneous[ly]" with the purchase of shares. Rather, the Equity Swap took place concurrently with, but after, the purchase of shares.  *See* Lightman Decl. Ex. Y, at Response to Comment 18 ("We entered into two transactions involving Cogent Capital and their affiliates.  The first transaction was the purchase of $50,000,000 of U.S. Treasury Bonds in consideration of 1,850,000 shares of common stock and 4,815,000 shares of Series A Convertible Preferred Stock ('Preferred Stock') . . . .  The second transaction was the consummation of an equity swap agreement which is fixed at $1.333333 per share with respect to a notional stock amount of 37,500,000 shares of common stock.").

2(b)    The Cogent Parties further and respectfully submit that the agreement speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

2(c)    Except as provided above, the Cogent Parties do not dispute the general accuracy of this statement as a description of the Securities Purchase Agreement (Lightman Decl. Ex. C).

3.  The following contract documents comprise the Transaction documents:

    i.   Securities Purchase Agreement
    ii.   Escrow Agreement
    iii.  Master Agreement
    iv.  Schedule to the Master Agreement
    v.   June 2, 2006 Equity Swap Transaction Confirmation
    vi.  Credit Support Annex
    vii.  Registration Rights Agreement
    viii. Warrant
    ix.  November 1, 2006 Equity Swap Transaction Confirmation
    x.   Nov. 1, 2006 Interest Rate Swap Transaction

The Cogent Parties do not dispute the general accuracy of this statement.

_Innofone's Citations:_

_Lightman Decl. ¶ 20._

_Securities Purchase Agreement, attached as Ex. C to Lightman Decl._

_Escrow Agreement, attached as Ex. D to Lightman Decl._

_Master Agreement, attached as Ex. E to Lightman Decl._

_Schedule to the Master Agreement, attached as Ex. F to Lightman Decl._

_June 2, 2006 Equity Swap Transaction Confirmation, attached as Ex. G to Lightman Decl._

_Credit Support Annex, attached as Ex. H to Lightman Decl._

_Registration Rights Agreement, attached as Ex. I to Lightman Decl._

_Warrant, attached as Ex. J to Lightman Decl._
_Nov. 1, 2006 Equity Swap Transaction_

_Confirmation, attached as Ex. K to Lightman Decl._

_Nov. 1, 2006 Interest Rate Swap Transaction, attached as Ex. L to Lightman Decl._

4.  Innofone deposited with Investors Bank & Trust Company (the "escrow agent") the common and preferred shares underlying the Transaction.

 Innofone's Citations:

*Lightman Decl. ¶ 22.*

*Escrow Agreement, ¶1(b), attached as Ex. D to Lightman Decl.*

4(a)    The Cogent Parties do not dispute the general accuracy of this statement, but note that the statement does not completely describe the account's current status.

4(b)    The statement is incomplete because, pursuant to Paragraphs 2(b), 2(c), & 2(d) of the Escrow Agreement (Lightman Decl. Ex. D), the escrow agent transferred the 5 million common shares and Warrant from escrow into account no. 4739698, and the 4.815 million preferred and 1.85 million common shares from escrow into account no. 4739699.  *See also* Kofford Decl. ¶ 6.

---

5.  Cogent Capital Investments deposited with the escrow agent the $50 million in U.S. Treasury bonds.

 Innofone's Citations:

*Lightman Decl. ¶ 21.*

*Escrow Agreement, ¶1(a), attached as Ex. D to Lightman Decl.*

5(a)    The Cogent Parties do not dispute the general accuracy of this statement, but note that the statement does not completely describe the account's current status.

5(b)    The statement is incomplete because, pursuant to Paragraph 2(a) of the Escrow Agreement (Lightman Decl. Ex. D), the escrow agent transferred the Bonds from escrow into account no. 4739766 (the "Collateral Account"). *See also* Kofford Decl. ¶ 6.

---

6.  Settlements under the Equity Swap (i.e. the exchange of Innofone stock for the Cogent bonds) could not commence until after a resale registration statement pursuant to Securities and Exchange Commission ("SEC") Rules and Regulations had become effective for at least 10 million Innofone shares and an effective registration statement maintained for the full amount of the shares.

 Innofone's Citations:

*Lightman Decl. ¶ 17.*

*Warrant, § 3(d), attached as Ex. J to Lightman Decl.*

*Schedule to the Master Agreement, § 8, attached as Ex. F to Lightman Decl.*

*June 13, 2006 Holden email ("The receipt of any*

6(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the mechanics of the equity swap.  *See* Counterstatements *infra* 6(d) & 6(e)(i) – (iv) .

6(b)    The Cogent Parties further dispute the accuracy of this statement on the ground that the equity swap does not exchange Innofone stock for the Cogent bonds.  *See* Counterstatements *infra* 6(f)(i) – (iii).

6(c)    The Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under FED.R.EVID. 1002.

6(d)    An effective registration is not the only way in which settlements under the Equity Swap could commence.

4

*additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*October 24, 2006 Innofone Response Letter to SEC, at Response 1 ("[S]ettlements under the Equity Swap do not commence until after the resale registration statement becomes effective."), attached as Ex. W to Lightman Decl.*

*Nov. 1, 2006 Equity Swap Transaction Confirmation, at 6 ("The 'Trigger Date' shall mean the first date as of which the Resale condition has been satisfied with respect to at least 10,000,000 Shares"), attached as Ex. K to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21 ("Among the conditions is a requirement that Innofone maintain an effective registration statement…." ), attached as Ex. O to Lightman Decl.*

6(e)(i)      The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144  promulgated under the Securities Act of 1933, as amended ("Rule 144").

6(e)(ii)      The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify upon at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

6(e)(iii)      The November 1, 2006 Swap Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30 consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

6(e)(iv)      The November 1, 2006 Swap Confirmation  defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order."  Lightman Decl. Ex. K, at 5-6

(emphasis added).

6(e)(v)     Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

6(e)(vi)     Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

6(e)(vii)     Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144.  Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

6(e)(viii)     **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale

registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

6(e)(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

6(f)(i)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing. *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

6(f)(ii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006). *See* Kofford Decl. Ex. O, at 66/86.

6(f)(iii)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase

|  | agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds." *See* Kofford Decl. Ex. O, at 16 (emphasis added). |

7.  The Equity Swap provided that the exchange of Innofone stock for the bonds would occur over a 30 month period.

  Innofone's Citations:

*June 2, 2006 Equity Swap Transaction Confirmation, at 6-10, 15, attached as Ex. G to Lightman Decl.*

*November 1, 2006 Equity Swap Transaction Confirmation, at 2, 11-12, attached as Ex. K to Lightman Decl.*
 *Lightman Decl. ¶ 17.*

7(a)(i)    The Cogent Parties dispute the accuracy of this statement on the ground that the equity swap does not exchange Innofone stock for the Cogent bonds.  *See* Counterstatements *infra* 7(c)(i) – (iii).

7(a)(ii)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

7(a)(iii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

7(a)(vi)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds."  *See* Kofford Decl. Ex. O, at 16 (emphasis added).

7(b)    However, the Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under FED.R.EVID. 1002.

7(c)(i)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

7(c)(ii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

7(c)(iii)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds."  *See* Kofford Decl. Ex. O, at 16 (emphasis added).

---

8.  On July 19, 2006 Innofone filed an SB-2 registration statement with the SEC for the purpose of registering 48,150,000 shares of common stock underlying the Transaction.

Innofone's Citations:

*July 19, 2006 SB-2 Registration Statement, at 3, attached as Ex. R to Lightman Decl.*

8(a)(i)    The Cogent Parties lack sufficient knowledge and information upon which to form a belief as to Innofone's complete "purpose" in filing the SB-2 registration statement.

8(a)(ii)    Innofone's SB-2 registration statement also sought the issuance of 3.6 million shares of common stock to its CEO, Alex Lightman.  Lightman Decl. Ex. R, at 4/102.

8(a)(iii)    Innofone's SB-2 registration statement also sought the issuance of 200,000 shares of common stock to its General Counsel & Vice President of Business and Legal Affairs, Gerard Casale.  Lightman Decl. Ex. R, at 4/102

---

9.  Innofone amended its SB-2 three times (on August 28, 2006, October 24, 2006 and December 8, 2006) in response to continuing SEC questions about the validity of the Transaction.

Innofone's Citations:

*Lightman Decl. ¶¶ 34 - 44.*

*Aug. 11, 2006 SEC Letter, attached as Ex. S to Lightman Decl.*

*Aug. 28, 2006 First-Amended SB-2, attached as Ex. T to Lightman Decl.*

*Sept. 14, 2006 SEC Letter, attached as Ex. U to*

9(a)    The SEC merely had questions regarding the transaction.  The SEC did not question the "validity of the Transaction."  *See* Lightman Decl. Ex. S, U, X & DD.

9(b)    The Cogent Parties further and respectfully submit that the letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

9(c)    Innofone's amended SB-2/A dated August 28, 2006 discussed issues relating to matters other than "the validity of the Transaction."  Lightman Decl. Ex. T.

9(d)    Innofone's amended SB-2/A dated

---

9

*Lightman Decl.*

*Sept. 27, 2006 Innofone Response Letter to SEC, attached as Ex. V to Lightman Decl.*

*Oct. 24, 2006 Innofone Response Letter to SEC, attached as Ex. W to Lightman Decl.*

*Nov. 7, 2006 SEC Letter, attached as Ex. X to Lightman Decl.*

*Dec. 8, 2006 Innofone Response Letter to SEC, attached as Ex. Y to Lightman Decl.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

October 24, 2006 discussed issues relating to matters other than "the validity of the Transaction." Lightman Decl. Ex. EE.

9(e)    Innofone's amended SB-2/A dated December 8, 2006 discussed issues relating to matters other than "the validity of the Transaction." Lightman Decl. Ex. FF.

9(f)(i)    On December 29, 2006, and January 11, 2007, while the registration statement was still awaiting SEC approval, Innofone disclosed that it will have to restate certain of its prior financial statements, including its financial statements for the quarter ended March 31, 2006 and the year ended June 30, 2006. Kofford Decl. Ex. J (Innofone Form 8-K, filed January 11, 2007); Kofford Decl. Ex. I (Innofone Form 8-K, filed December 29, 2006).

9(f)(ii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Mar. 31, 2007** (the very same filing), could not be relied upon. Kofford Decl. Ex. L, at 16.

9(f)(iii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Dec. 31, 2006**, could not be relied upon. Kofford Decl. Ex. L, at 16.

9(f)(iv)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Sept. 30, 2006**, could not be relied upon. Kofford Decl. Ex. L, at 16.

9(f)(v)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-KSB/A filing with the SEC for the year ending **June 30, 2006**, could not be relied upon. Kofford Decl. Ex. L, at 16.

9(f)(vi)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB

filing for the quarter ending **Mar. 31, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

9(f)(vii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **December 31, 2005**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

9(f)(viii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **September 30, 2005**, could not be relied upon. Kofford Decl. Ex. L, at 16.

9(f)(ix)    Innofone has not restated any of the withdrawn financial statements.  Kaufman Decl. ¶ 7(c).

---

10.  On December 28, 2006, the SEC advised Innofone that it could not register the resale of the shares of common stock issued to Cogent.

 Innofone's Citations:

*Lightman Decl. ¶ 41.*

*December 28, 2006 SEC Letter, ¶1 ("Therefore, we do not agree with your conclusion that the private placement is complete in light of the fact that the total consideration you will receive for the private placement will not be determined until the equity swap has been completed. As a result **you may not register the resale of the shares of common stock** issued in the private placement to Cogent until that private placement has been completed. Please revise your registration statement accordingly.") (Emphasis added), attached as Ex. Z to Lightman Decl.*

10(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement is taken out of context.

10(b)    The SEC has never stated that it would never declare effective any registration statement submitted by Innofone.  Kaufman Decl. ¶ 11.

10(c)    Paragraph 1 was not the only question raised by the SEC with respect to Innofone's registration statement.  *See* Lightman Decl. Exh. Z ¶¶ 2-12.

10(d)    The Cogent Parties further and respectfully submit that the SEC letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

---

11.  SEC Regulations prohibit the sale of securities to the public without an effective registration statement.

 Innofone's Citations:

*15 U.S.C. § 77e and the regulations promulgated*

11(a)    Innofone's construction of SEC regulations is a conclusion of law, and not a recitation of fact.

11(b)    To the extent that the Court accepts Innofone's construction of the SEC regulations on this Rule 56.1 Statement, the Cogent Parties

*thereunder.*

*Rule 415(a)(1)(i), codified at 17 C.F.R. 230.415(a)(1)(i).*

*Revision of Rule 144, Rule 145 and Form 144, Securities Act Release No. 33-7391, at 35 (Feb. 20, 1997).*

*15 U.S.C. § 77(x) and the regulations promulgated thereunder.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

dispute the accuracy of this statement on the ground that it is incomplete, for example:

(i)    Rule 144, promulgated under the Securities Act of 1933 ("Rule 144"), permits the sale of shares issued without a registration statement.

(ii)    Rule 144(d)(1) states, "A minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities."

(iii)    Rule 144(k) states:

"*Termination of certain restrictions on sales of restricted securities by persons other than affiliates.* The requirements of paragraphs (c), (e), (f) and (h) of this section shall not apply to restricted securities sold for the account of a person who is not an affiliate of the issuer at the time of the sale and has not been an affiliate during the preceding three months, provided a period of at least two years has elapsed since the later of the date the securities were acquired from the issuer or from an affiliate of the issuer. The two-year period shall be calculated as described in paragraph (d) of this section."

(iv)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006. Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

(v)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144. Lightman Decl. Ex. G at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as

selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

(vi)    Paragraph 2 of the November 1, 2006 Equity Swap Confirmation expressly references Rule 144. Lightman Decl. Ex. K at 5-6 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order.") (emphasis added).

(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144. Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added). Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

(viii)    **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144. Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of

1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice-President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

11(c)    Paragraph 5(i) of the November 1, 2006 Equity Swap Confirmation expressly provides for the transaction to be terminated if "the Resale Condition shall not be satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010." Lightman Decl. Ex. K ¶ 5(i). The November 1, 2006 Equity Swap Confirmation defines the satisfaction of "Resale Condition" with respect to the number of Equity Shares to mean that "as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933.**" Lightman Decl. K, at 5 (emphasis added). The June 2, 2006 Equity

|  | Swap Confirmation includes nearly identical language. Lightman Decl. Ex. G at 10 & 13. |
|---|---|
| 12. After the SEC's most recent rejection on March 9, 2007 of Innofone's proposed SB-2 registration, Innofone sought rescission without delay.<br><br>Innofone's Citations:<br><br>*March 9, 2007 SEC Letter, ¶¶5-9, attached as Ex. BB to Lightman Decl.*<br><br>*Innofone Complaint, ¶48, attached as Ex. CC to Lightman Decl.*<br><br>*Lightman Decl. ¶¶ 46 - 47.* | 12(a)    The Cogent Parties lack knowledge and information to form an informed belief as to whether Innofone sought rescission "without delay."<br><br>12(b)    Moreover, the issue of whether Innofone sought rescission "without delay" is a legal conclusion and not a recitation of fact.<br><br>12(c)    Subject to the above, the Cogent Parties do not dispute that Innofone filed the Complaint at bar in the U.S. District Court for the Central District of California on March 19, 2007. Lightman Decl. Ex. CC. |

### THIRD CLAIM FOR RELIEF
### Rescission Based Upon Mutual Mistake

| 13. On May 5, 2006, Alex Lightman sent Gregory L. Kofford and Mark W. Holden an executed letter in which Innofone and Cogent Capital Group LLC agreed to move forward with a proposed investment of between $15 and $50 million and Cogent Capital Group received $25,000 for due diligence fees and $3,000 for an escrow fee. **[This fact is identical to UF 1.]**<br><br>Innofone's Citations:<br><br>*Lightman Decl. ¶ 8.*<br><br>*May 5 Letter Agreement, attached as Ex. B to Lightman Decl.* | 13(a)    The Cogent Parties do not dispute the general accuracy of this statement.<br><br>13(b)    The Cogent Parties further and respectfully submit that the letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002. |

14.  By agreement dated as of June 2, 2006, Innofone, Cogent Capital Financial LLC, and Cogent Capital Investments LLC, entered into a financing arrangement which involved the purchase of shares and a simultaneous Equity Swap transaction by which Cogent Capital Investments bought 1.85 million shares of Innofone common stock and 4.815 million shares of Innofone's Series A convertible preferred stock for $50 million in U.S. Treasury Bonds, and Innofone paid a fee for the Equity Swap to Cogent Capital Financial comprised of 5 million shares of Innofone common stock, a warrant to purchase another 5 million shares of common stock, and $1.375 million (hereafter "Transaction").
**[This fact is identical to UF 2.]**

 Innofone's Citations:

*Lightman Decl. ¶¶ 15-18.*

*Securities Purchase Agreement, Section 1.1, attached as Ex. C to Lightman Decl.*
 *June 2, 2006 Equity Swap Transaction Confirmation, at 4-5, attached as Ex. G to Lightman Decl.*

14(a)    The Equity Swap did not take place "simultaneous[ly]" with the purchase of shares. Rather, the Equity Swap took place concurrently with, but after, the purchase of shares.  *See* Lightman Decl. Ex. Y, at Response to Comment 18 ("We entered into two transactions involving Cogent Capital and their affiliates.  The first transaction was the purchase of $50,000,000 of U.S. Treasury Bonds in consideration of 1,850,000 shares of common stock and 4,815,000 shares of Series A Convertible Preferred Stock ('Preferred Stock') . . . .  The second transaction was the consummation of an equity swap agreement which is fixed at $1.333333 per share with respect to a notional stock amount of 37,500,000 shares of common stock.").

14(b)    The Cogent Parties further and respectfully submit that the agreement speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

14(c)    Except as provided above, the Cogent Parties do not dispute the general accuracy of this statement as a description of the Securities Purchase Agreement (Lightman Decl. Ex. C).

15. The following contract documents comprise the Transaction documents:

    i.   Securities Purchase Agreement
    ii.   Escrow Agreement
    iii.   Master Agreement
    iv.   Schedule to the Master Agreement
    v.   June 2, 2006 Equity Swap Transaction Confirmation
    vi.   Credit Support Annex
    vii.   Registration Rights Agreement
    viii.   Warrant
    ix.   November 1, 2006 Equity Swap Transaction Confirmation
    x.   Nov. 1, 2006 Interest Rate Swap Transaction

**[This fact is identical to UF 3.]**

 Innofone's Citations:

*Lightman Decl. ¶ 20.*

*Securities Purchase Agreement, attached as Ex. C to Lightman Decl.*

*Escrow Agreement, attached as Ex. D to Lightman Decl.*
*Master Agreement, attached as Ex. E to Lightman Decl.*
*Schedule to the Master Agreement, attached as Ex. F to Lightman Decl.*
*June 2, 2006 Equity Swap Transaction Confirmation, attached as Ex. G to Lightman Decl.*
*Credit Support Annex, attached as Ex. H to Lightman Decl.*
*Registration Rights Agreement, attached as Ex. I to Lightman Decl.*
*Warrant, attached as Ex. J to Lightman Decl.*
*Nov. 1, 2006 Equity Swap Transaction Confirmation, attached as Ex. K to Lightman Decl.*
*Nov. 1, 2006 Interest Rate Swap Transaction, attached as Ex. L to Lightman Decl.*

The Cogent Parties do not dispute the general accuracy of this statement.

16.  Innofone, Cogent Capital Financial, LLC and Cogent Capital Investments, LLC entered into the Transaction with the understanding that the shares underlying the Transaction would have an effective resale registration.

Innofone's Citations:

*May 2, 2006 Kofford email ("These indicative prices also assume that the company will be in a position to move from the bulletin board to Amex prior to or concurrent with the effectiveness of the registration of the shares underlying our investment."), attached as Ex. A to Lightman Decl.*

*June 1, 2006 Lightman email ("After closing our highest priorities will be to get the SB-2 registering your shares approved."), attached as Ex. M to Lightman Decl.*

*June 13, 2006 Holden email ("The receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*Aug. 24, 2006 Kaufman email, attached as Ex. P to Lightman Decl.*

*Aug. 25, 2006 Kaufman email, attached as Ex. Q to Lightman Decl.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21, attached as Ex. O to the Lightman Decl.*

*Lightman Decl. ¶¶ 11, 14, 23 - 28.*

16(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the parties' understanding regarding the possibility that Innofone might not be able to secure an effective registration statement.

(i)    In an e-mail dated December 20, 2006, Innofone CEO Alex Lightman expressly contemplated that Innofone may have to access the proceeds of the Bonds without an effective registration statement.  Kofford Decl. Ex. F (Innofone will be able to access the Bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

(ii)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly permits the resale condition to be satisfied under Rule 144 without an effective registration statement. Lightman Decl. Ex. G at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

(iii)    Paragraph 2 of the November 1, 2006 Equity Swap Confirmation expressly permits the resale condition to be satisfied under Rule 144 without an effective registration statement.  Lightman Decl. Ex. K at 5-6 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable

form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order.") (emphasis added).

(iv)    Innofone's Form SB-2, effected July 19, 2006, expressly provides that the resale condition can be satisfied under Rule 144 without an effective registration statement. Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added). Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

(v)    **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144. Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006))

(same).

       (vi)     On November 29, 2006, Gerard N. Casale, Jr., Innofone's head of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

16(b)    Paragraph 5(i) of the November 1, 2006 Equity Swap Confirmation expressly provides for the transaction to be terminated if "the Resale Condition shall not be satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010." Lightman Decl. Ex. K ¶ 5(i). The November 1, 2006 Equity Swap Confirmation defines the satisfaction of "Resale Condition" with respect to the number of Equity Shares to mean that "as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933.**" Lightman Decl. Ex. K, at 5. The June 2, 2006 Equity Swap Confirmation includes nearly identical language. Lightman Decl. Ex. G at 10 & 13.

17.  Settlements under the Equity Swap (i.e. the exchange of Innofone stock for the Cogent bonds) could not commence until after a resale registration statement pursuant to Securities and Exchange Commission ("SEC") Rules and Regulations had become effective for at least 10 million Innofone shares and an effective registration statement maintained for the full amount of the shares.
**[This fact is identical to UF 6.]**

Innofone's Citations:

*Lightman Decl. ¶ 17.*

*Warrant, § 3(d), attached as Ex. J to Lightman Decl.*

*Schedule to the Master Agreement, § 8, attached as Ex. F to Lightman Decl.*

*June 13, 2006 Holden email ("The receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*October 24, 2006 Innofone Response Letter to SEC, at Response 1 ("[S]ettlements under the Equity Swap do not commence until after the resale registration statement becomes effective."), attached as Ex. W to Lightman Decl.*

*Nov. 1, 2006 Equity Swap Transaction Confirmation, at 6 ("The 'Trigger Date' shall mean the first date as of which the Resale condition has been satisfied with respect to at least 10,000,000 Shares"), attached as Ex. K to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21 ("Among the conditions is a requirement that Innofone maintain an effective registration statement...." ), attached as Ex. O to Lightman Decl.*

17(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the mechanics of the equity swap.  *See* Counterstatements *infra* 6(d) & 6(e)(i) – (iv).

17(b)    The Cogent Parties further dispute the accuracy of this statement on the ground that the equity swap does not exchange Innofone stock for the Cogent bonds.  *See* Counterstatements *infra* 17(f)(i) – (iii).

17(c)    The Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under Fed.R.Evid. 1002.

17(d)    An effective registration is not the only way in which settlements under the Equity Swap could commence.

17(e)(i)    The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144 promulgated under the Securities Act of 1933, as amended ("Rule 144").

17(e)(ii)    The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify upon at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

17(e)(iii)    The November 1, 2006 Swap Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30

21

consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

17(e)(iv)    The November 1, 2006 Swap Confirmation  defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order."  Lightman Decl. Ex. K, at 5-6 (emphasis added).

17(e)(v)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

17(e)(vi)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

17(e)(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the

Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added). Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

17(e)(viii)   **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144. Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

17(e)(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such

that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

17(f)(i)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

17(f)(ii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

17(f)(iii)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds."  *See* Kofford Decl. Ex. O, at 16 (emphasis added).

18.  Effective registration of the underlying shares is a condition of the Transaction.

 Innofone's Citations:

*Lightman Decl. ¶¶ 24 - 28.*

*June 13, 2006 Holden email ("The receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21 ("Among the conditions is a requirement that Innofone maintain an effective registration*

18(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the mechanics of the transaction as set forth in the transaction documents.

18(b)    The Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under FED.R.EVID. 1002.

18(c)    An effective registration is not the only way in which settlements under the Equity Swap could commence.

18(d)(i)    The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144  promulgated under the Securities Act of

*statement…." ), attached as Ex. O to Lightman Decl.*

1933, as amended ("Rule 144").

18(d)(ii)     The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify upon at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

18(d)(iii)     The November 1, 2006 Swap Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30 consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

18(d)(iv)     The November 1, 2006 Swap Confirmation  defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order."  Lightman Decl. Ex. K, at 5-6 (emphasis added).

18(d)(v)     Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury

bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

18(d)(vi)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144. Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

18(d)(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144. Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added). Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

18(d)(viii)    **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144. Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M,

at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

18(d)(ix)     On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

18(e)(i)      The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

18(e)(ii)     After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

18(e)(iii)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds."  *See* Kofford Decl. Ex. O, at 16 (emphasis added).

18(f)    In an e-mail dated December 20, 2006, Innofone CEO Alex Lightman expressly contemplated that Innofone may have to access the proceeds of the Bonds without an effective registration statement.  Kofford Decl. Ex. F (Innofone will be able to access the Bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

19.  Innofone, Cogent Capital Financial LLC and Cogent Capital Investments LLC believed that the SEC would approve Innofone common stock sold to Cogent Capital Financial LLC and Cogent Capital Investments LLC pursuant to the Transaction.

<u>Innofone's Citations</u>:

*May 2, 2006 Kofford email ("[O]ur typical investment provides for a partial valuation of the equity swap and release of collateral as soon as 90 days from effectiveness of registration."), attached as Ex. A to Lightman Decl.*

*Lightman Decl. ¶ 11, 14, 23 - 28.*

19(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the parties' understanding regarding the possibility that Innofone might not be able to secure an effective registration statement.

(i)    In an e-mail dated December 20, 2006, Innofone CEO Alex Lightman expressly contemplated that Innofone may have to access the proceeds of the Bonds without an effective registration statement.  Kofford Decl. Ex. F (Innofone will be able to access the Bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

(ii)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly permits the resale condition to be satisfied under Rule 144 without an effective registration statement. Lightman Decl. Ex. G at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

(iii)    Paragraph 2 of the November 1, 2006 Equity Swap Confirmation expressly permits the resale condition to be satisfied under Rule 144 without an effective registration statement.  Lightman Decl. Ex. K at 5-6 ("The

'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order.") (emphasis added).

(iv)    Innofone's Form SB-2, effected July 19, 2006, expressly provides that the resale condition can be satisfied under Rule 144 without an effective registration statement.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

(v)    **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the

SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

(vi)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's head of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap.  Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

19(b)    Paragraph 5(i) of the November 1, 2006 Equity Swap Confirmation expressly provides for the transaction to be terminated if "the Resale Condition shall not be satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010."  Lightman Decl. Ex. K ¶ 5(i).  The November 1, 2006 Equity Swap Confirmation defines the satisfaction of "Resale Condition" with respect to the number of Equity Shares to mean that "as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933.**"  Lightman Decl. Ex. K, at 5.  The June 2, 2006 Equity Swap Confirmation includes nearly identical language. Lightman Decl. Ex. G at 10 & 13.

20.  The parties were mistaken that the SEC would approve registration of the shares.

Innofone's Citations:

*Lightman Decl. ¶ 48.*

*Aug. 11, 2006 SEC Letter, attached as Ex. S to Lightman Decl.*

*Aug. 28, 2006 First-Amended SB-2, attached as Ex. T to Lightman Decl.*

*Sept. 14, 2006 SEC Letter, attached as Ex. U to Lightman Decl.*

*Sept. 27, 2006 Innofone Response Letter to SEC, attached as Ex. V to Lightman Decl.*

*Oct. 24, 2006 Innofone Response Letter to SEC, attached as Ex. W to Lightman Decl.*

*Nov. 7, 2006 SEC Letter, attached as Ex. X to Lightman Decl.*

*Dec. 8, 2006 Innofone Response Letter to SEC, attached as Ex. Y to Lightman Decl.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

20(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the parties' understanding regarding the possibility that Innofone might not be able to secure an effective registration statement.

(i)    In an e-mail dated December 20, 2006, Innofone CEO Alex Lightman expressly contemplated that Innofone may have to access the proceeds of the Bonds without an effective registration statement.  Kofford Decl. Ex. F (Innofone will be able to access the Bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

(ii)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly permits the resale condition to be satisfied under Rule 144 without an effective registration statement.  Lightman Decl. Ex. G at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

(iii)    Paragraph 2 of the November 1, 2006 Equity Swap Confirmation expressly permits the resale condition to be satisfied under Rule 144 without an effective registration statement.  Lightman Decl. Ex. K at 5-6 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares

shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order.") (emphasis added).

(iv)    Innofone's Form SB-2, effected July 19, 2006, expressly provides that the resale condition can be satisfied under Rule 144 without an effective registration statement.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

(v)    **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the

year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

(vi)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's head of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap.  Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

20(b)    Paragraph 5(i) of the November 1, 2006 Equity Swap Confirmation expressly provides for the transaction to be terminated if "the Resale Condition shall not be satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010."  Lightman Decl. Ex. K ¶ 5(i).  The November 1, 2006 Equity Swap Confirmation defines the satisfaction of "Resale Condition" with respect to the number of Equity Shares to mean that "as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933.**"  Lightman Decl. Ex. K, at 5.  The June 2, 2006 Equity Swap Confirmation includes nearly identical language. Lightman Decl. Ex. G at 10 & 13.

---

21.  On December 28, 2006, the SEC advised Innofone that it could not register the resale of the shares of common stock issued to Cogent. **[This fact is identical to UF 10.]**

Innofone's Citations:

*Lightman Decl. ¶ 41.*

*December 28, 2006 SEC Letter, ¶1 ("Therefore, we do not agree with your conclusion that the private placement is complete in light of the fact that the total consideration you will receive for the private placement will not be*

21(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement is taken out of context.

21 (b)    The SEC has never stated that it would never declare effective any registration statement submitted by Innofone.  Kaufman Decl. ¶ 11.

21 (c)    Paragraph 1 was not the only question raised by the SEC with respect to Innofone's registration statement.  *See* Lightman Decl. Exh. Z ¶¶ 2-12.

21 (d)    The Cogent Parties further and

*determined until the equity swap has been completed. As a result **you may not register the resale of the shares of common stock** issued in the private placement to Cogent until that private placement has been completed. Please revise your registration statement accordingly.") (Emphasis added), attached as Ex. Z to Lightman Decl.*

respectfully submit that the SEC letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

---

22. Innofone has not received any benefit from the Transaction.

Innofone's Citations:

*Lightman Decl. ¶ 49.*

22(a)    The Cogent Parties dispute the accuracy of this statement in its entirety.

22(b)    In its September 27, 2006 letter to the SEC, Innofone acknowledged that the Transaction represented a significant net present value in favor of Innofone: "[I]n our evaluation of the consideration we paid to [Cogent] upon entering into the Equity Swap, we took account of the fact that [Cogent] had agreed to significant obligations under a long-term transaction that references a relatively illiquid and volatile equity security and under which [Cogent] bears an unlimited upside exposure, while our downside exposure is finite. **The amount paid to Cogent reflects the net option values imbedded in the Equity Swap**, which themselves reflect option valuation methodologies that take account of various factors, including the transaction term, share illiquidity and volatility, and relative price exposures." Lightman Decl. Ex. V, at Response 11 (emphasis added).

22(c)    In its October 24, 2006 letter to the SEC, Innofone wrote, "Once the notional share amount and the initial reference price was established, the value of the equity swap was calculated. The outcome of an equity swap for Innofone is the equivalent of Innofone having sold a net cash settled put and Innofone having purchased a net cash settled call.  As described below in more detail, **the terms of the proposed equity swap represented a significant net present value in favor of Innofone**, for which Cogent was compensated through the initial entrance amount for the swap." Lightman Decl. Ex. W, at 12 (emphasis added).

22(d)    In its October 24, 2006 letter to the SEC, Innofone valued the swap at approximately $9,375,000: "The value of the swap at that point of time was calculated to be approximately

$9,375,000." Lightman Decl. Ex. W, at 12.

22(e)    Innofone listed the Bonds as an asset in its quarterly financial statements filed with the SEC, including the 10-QSB filed as recently as May 21, 2007. *See* Kofford Decl. Ex. L (Innofone's Form 10-QSB filing for the quarter ending March 31, 2007 (filed May 21, 2007).

22(f)(i)    The equity swap enabled Innofone to obtain a $1 million loan from a third-party.

22(f)(ii)    In its Form 10-QSB filing for the quarter ending March 31, 2007 (filing May 21, 2007), Innofone reported "In July 2006, the Company issued two promissory notes to 55 South Investments totaling $1,000,000, with interest at 12% per annum. The Maturity Date shall be the earlier of: (a) **one (1) year from the commencement of that certain Equity Swap transaction**, as discussed in Note 7, whereby 30 days have expired thereafter the date in which the Company is granted effectiveness by the Securities and Exchange Commission on a registration statement filed pursuant to certain agreements made in connection with an equity swap made by and between the Company and Cogent Capital Group, LLC and its affiliates as of June 2, 2006; or (b) December 1, 2007, whichever is earlier." *See* Kofford Decl. Ex. L, at 11 (emphasis added) (definitions for abbreviated terms omitted).

22(g)(i)    In Innofone's Form SB-2 filing dated July 19, 2006, Innofone expressly contemplated the possibility that it might receive no economic benefit from the transaction.

22(g)(ii)    In Innofone's Form SB-2 filing dated July 19, 2006, Innofone stated in all capital letters, "WE MAY RECEIVE NO ECONOMIC BENEFIT FROM THE SWAP TRANSACTION WITH COGENT CAPITAL CORP. [sic] AND THE INSTITUTIONAL INVESTORS WHICH INCREASED OUR ISSUED AND OUTSTANDING COMMON STOCK BY APPROXIMATELY 43.8%." Lightman Decl. Ex. R, at 9.

23. The Transaction continues to be a detriment to Innofone since Innofone is required to pay monthly interest on the bonds.

Innofone's Citations:

*Lightman Decl. ¶ 50.*

23(a)    The Cogent Parties dispute the accuracy of this statement in its entirety.

23(b)    In its September 27, 2006 letter to the SEC, Innofone acknowledged that the Transaction represented a significant net present value in favor of Innofone: "[I]n our evaluation of the consideration we paid to [Cogent] upon entering into the Equity Swap, we took account of the fact that [Cogent] had agreed to significant obligations under a long-term transaction that references a relatively illiquid and volatile equity security and under which [Cogent] bears an unlimited upside exposure, while our downside exposure is finite. **The amount paid to Cogent reflects the net option values imbedded in the Equity Swap**, which themselves reflect option valuation methodologies that take account of various factors, including the transaction term, share illiquidity and volatility, and relative price exposures." Lightman Decl. Ex. V, at Response 11 (emphasis added).

23(c)    In its October 24, 2006 letter to the SEC, Innofone wrote, "Once the notional share amount and the initial reference price was established, the value of the equity swap was calculated. The outcome of an equity swap for Innofone is the equivalent of Innofone having sold a net cash settled put and Innofone having purchased a net cash settled call. As described below in more detail, **the terms of the proposed equity swap represented a significant net present value in favor of Innofone**, for which Cogent was compensated through the initial entrance amount for the swap." Lightman Decl. Ex. W, at 12 (emphasis added).

23(d)    In its October 24, 2006 letter to the SEC, Innofone valued the swap at approximately $9,375,000: "The value of the swap at that point of time was calculated to be approximately $9,375,000." Lightman Decl. Ex. W, at 12.

23(e)    Innofone listed the Bonds as an asset in its quarterly financial statements filed with the SEC, including the 10-QSB filed as recently as May 21, 2007. *See* Kofford Decl. Ex. L (Innofone's Form 10-QSB filing for the quarter

ending March 31, 2007 (filed May 21, 2007).

23(f)(i)    The equity swap enabled Innofone to obtain a $1 million loan from a third-party.

23(f)(ii)    In its Form 10-QSB filing for the quarter ending March 31, 2007 (filing May 21, 2007), Innofone reported "In July 2006, the Company issued two promissory notes to 55 South Investments totaling $1,000,000, with interest at 12% per annum. The Maturity Date shall be the earlier of: (a) **one (1) year from the commencement of that certain Equity Swap transaction**, as discussed in Note 7, whereby 30 days have expired thereafter the date in which the Company is granted effectiveness by the Securities and Exchange Commission on a registration statement filed pursuant to certain agreements made in connection with an equity swap made by and between the Company and Cogent Capital Group, LLC and its affiliates as of June 2, 2006; or (b) December 1, 2007, whichever is earlier." *See* Kofford Decl. Ex. L, at 11 (emphasis added) (definitions for abbreviated terms omitted).

23(g)(i)    In Innofone's Form SB-2 filing dated July 19, 2006, Innofone expressly contemplated the possibility that it might receive no economic benefit from the transaction.

23(g)(ii)    In Innofone's Form SB-2 filing dated July 19, 2006, Innofone stated in all capital letters, "WE MAY RECEIVE NO ECONOMIC BENEFIT FROM THE SWAP TRANSACTION WITH COGENT CAPITAL CORP. [sic] AND THE INSTITUTIONAL INVESTORS WHICH INCREASED OUR ISSUED AND OUTSTANDING COMMON STOCK BY APPROXIMATELY 43.8%." Lightman Decl. Ex. R, at 9.

---

| | |
|---|---|
| 24.  After the SEC's most recent rejection on March 9, 2007 of Innofone's proposed SB-2 registration, Innofone sought rescission without delay.<br>**[This fact is identical to UF 12.]**<br><br>Innofone's Citations: | 24(a)    The Cogent Parties lack knowledge and information to form an informed belief as to whether Innofone sought rescission "without delay."<br><br>24(b)    Moreover, the issue of whether Innofone sought rescission "without delay" is a legal conclusion and not a recitation of fact. |

*March 9, 2007 SEC Letter, ¶¶5-9, attached as Ex. BB to Lightman Decl.*

*Innofone Complaint, ¶48, attached as Ex. CC to Lightman Decl.*

*Lightman Decl. ¶¶ 46 - 47.*

24(c)    Subject to the above, the Cogent Parties do not dispute that Innofone filed the Complaint at bar in the U.S. District Court for the Central District of California on March 19, 2007. Lightman Decl. Ex. CC.

## FIFTH CLAIM FOR RELIEF
### Declaratory Relief Based Upon Impossibility

25.  On May 5, 2006, Alex Lightman sent Gregory L. Kofford and Mark W. Holden an executed letter in which Innofone and Cogent Capital Group LLC agreed to move forward with a proposed investment of between $15 and $50 million and Cogent Capital Group received $25,000 for due diligence fees and $3,000 for an escrow fee. **[This fact is identical to UF 1.]**

Innofone's Citations:

*Lightman Decl. ¶ 8.*

*May 5 Letter Agreement, attached as Ex. B to Lightman Decl.*

25(a)    The Cogent Parties do not dispute the general accuracy of this statement.

25(b)    The Cogent Parties further and respectfully submit that the letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

26.  By agreement dated as of June 2, 2006, Innofone, Cogent Capital Financial LLC, and Cogent Capital Investments LLC, entered into a financing arrangement which involved the purchase of shares and a simultaneous Equity Swap transaction by which Cogent Capital Investments bought 1.85 million shares of Innofone common stock and 4.815 million shares of Innofone's Series A convertible preferred stock for $50 million in U.S. Treasury Bonds, and Innofone paid a fee for the Equity Swap to Cogent Capital Financial comprised of 5 million shares of Innofone common stock, a warrant to purchase another 5 million shares of common stock, and $1.375 million (hereafter "Transaction"). **[This fact is identical to UF 2.]**

Innofone's Citations:

*Lightman Decl. ¶¶ 15-18.*

26(a)    The Equity Swap did not take place "simultaneous[ly]" with the purchase of shares. Rather, the Equity Swap took place concurrently with, but after, the purchase of shares. *See* Lightman Decl. Ex. Y, at Response to Comment 18 ("We entered into two transactions involving Cogent Capital and their affiliates.  The first transaction was the purchase of $50,000,000 of U.S. Treasury Bonds in consideration of 1,850,000 shares of common stock and 4,815,000 shares of Series A Convertible Preferred Stock ('Preferred Stock') . . . .  The second transaction was the consummation of an equity swap agreement which is fixed at $1.333333 per share with respect to a notional stock amount of 37,500,000 shares of common stock.").

26(b)    The Cogent Parties further and respectfully submit that the agreement speaks for itself and is the best and most complete evidence

| | |
|---|---|
| *Securities Purchase Agreement, Section 1.1, attached as Ex. C to Lightman Decl.* | of its own contents under FED.R.EVID. 1002. |
| *June 2, 2006 Equity Swap Transaction Confirmation, at 4-5, attached as Ex. G to Lightman Decl.* | 26(c)    Except as provided above, the Cogent Parties do not dispute the general accuracy of this statement as a description of the Securities Purchase Agreement (Lightman Decl. Ex. C). |

27.  The following contract documents comprise the Transaction documents:

    i.   Securities Purchase Agreement,
    ii.   Escrow Agreement
    iii.  Master Agreement
    iv.  Schedule to the Master Agreement
    v.   June 2, 2006 Equity Swap Transaction Confirmation
    vi.  Credit Support Annex
    vii. Registration Rights Agreement
    viii.Warrant
    ix.  November 1, 2006 Equity Swap Transaction Confirmation
    x.   November 1, 2006 Interest Rate Swap Transaction

**[This fact is identical to UF 3.]**

<u>Innofone's Citations</u>:

*Lightman Decl. ¶ 20.*

*Securities Purchase Agreement, attached as Ex. C to Lightman Decl.*

*Escrow Agreement, attached as Ex. D to Lightman Decl.*

*Master Agreement, attached as Ex. E to Lightman Decl.*

*Schedule to the Master Agreement, attached as Ex. F to Lightman Decl.*

*June 2, 2006 Equity Swap Transaction Confirmation, attached as Ex. G to Lightman Decl.*

*Credit Support Annex, attached as Ex. H to Lightman Decl.*

*Registration Rights Agreement, attached as Ex. I to Lightman Decl.*

*Warrant, attached as Ex. J to Lightman Decl.*

The Cogent Parties do not dispute the general accuracy of this statement.

*Nov. 1, 2006 Equity Swap Transaction Confirmation, attached as Ex. K to Lightman Decl.*

*Nov. 1, 2006 Interest Rate Swap Transaction, attached as Ex. L to Lightman Decl.*

28.  Innofone deposited with Investors Bank & Trust Company (the "escrow agent") the common and preferred shares underlying the Transaction. **[This fact is identical to UF 4.]** <u>Innofone's Citations:</u> *Lightman Decl. ¶ 22.*

*Escrow Agreement, ¶1(b), attached as Ex. D to Lightman Decl.*

28(a)    The Cogent Parties do not dispute the general accuracy of this statement, but note that the statement does not completely describe the account's current status.

28(b)    The statement is incomplete because, pursuant to Paragraphs 2(b), 2(c), & 2(d) of the Escrow Agreement (Lightman Decl. Ex. D), the escrow agent transferred the 5 million common shares and Warrant from escrow into account no. 4739698, and the 4.815 million preferred and 1.85 million common shares from escrow into account no. 4739699.  *See also* Kofford Decl. ¶ 6.

29.  Cogent Capital Investments deposited with the escrow agent the $50 million in U.S. Treasury bonds. **[This fact is identical to UF 5.]** <u>Innofone's Citations:</u> *Lightman Decl. ¶ 21.*

*Escrow Agreement, ¶1(a), attached as Ex. D to Lightman Decl.*

29(a)    The Cogent Parties do not dispute the general accuracy of this statement, but note that the statement does not completely describe the account's current status.

29(b)    The statement is incomplete because, pursuant to Paragraph 2(a) of the Escrow Agreement (Lightman Decl. Ex. D), the escrow agent transferred the Bonds from escrow into account no. 4739766 (the "Collateral Account"). *See also* Kofford Decl. ¶ 6.

30.  Settlements under the Equity Swap (i.e. the exchange of Innofone stock for the Cogent  bonds) could not commence until after a resale registration statement pursuant to Securities and Exchange Commission ("SEC") Rules and Regulations had become effective for at least 10 million Innofone  shares and an effective registration statement maintained for the full amount of the shares. **[This fact is identical to UF 6.]**

<u>Innofone's Citations:</u>

*Lightman Decl. ¶17.*

*Warrant, § 3(d), attached as Ex. J to Lightman*

30(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the mechanics of the equity swap.  *See* Counterstatements *infra* 30(d) & 30(e)(i) – (iv) .

30(b)    The Cogent Parties further dispute the accuracy of this statement on the ground that the equity swap does not exchange Innofone stock for the Cogent bonds.  *See* Counterstatements *infra* 30(f)(i) – (iii).

30(c)    The Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own

*Decl.*

*Schedule to the Master Agreement, § 8, attached as Ex. F to Lightman Decl.*

*June 13, 2006 Holden email ("The receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*October 24, 2006 Innofone Response Letter to SEC, at Response 1 ("[S]ettlements under the Equity Swap do not commence until after the resale registration statement becomes effective."), attached as Ex. W to Lightman Decl.*

*Nov. 1, 2006 Equity Swap Transaction Confirmation, at 6 ("The 'Trigger Date' shall mean the first date as of which the Resale condition has been satisfied with respect to at least 10,000,000 Shares"), attached as Ex. K to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21 ("Among the conditions is a requirement that Innofone maintain an effective registration statement...." ), attached as Ex. O to Lightman Decl.*

contents under Fed.R.Evid. 1002.

30(d)    An effective registration is not the only way in which settlements under the Equity Swap could commence.

30(e)(i)    The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144 promulgated under the Securities Act of 1933, as amended ("Rule 144").

30(e)(ii)    The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

30(e)(iii)    The November 1, 2006 Swap Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30 consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

30(e)(iv)    The November 1, 2006 Swap Confirmation defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such

preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order."  Lightman Decl. Ex. K, at 5-6 (emphasis added).

30(e)(v)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

30(e)(vi)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

30(e)(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144.  Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

30(e)(viii)   **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with

the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

30(e)(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

30(f)(i)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

30(f)(ii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

30(f)(iii)       In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds." *See* Kofford Decl. Ex. O, at 16 (emphasis added).

31.  The Equity Swap provided that the exchange of Innofone stock for the bonds would occur over a 30 month period.
**[This fact is identical to UF 7.]**

Innofone's Citations:

*June 2, 2006 Equity Swap Transaction Confirmation, at 6-10, 15, attached as Ex. G to Lightman Decl.*

*November 1, 2006 Equity Swap Transaction Confirmation, at 2, 11-12, attached as Ex. K to Lightman Decl.*

*Lightman Decl. ¶ 17.*

31(a)(i)    The Cogent Parties dispute the accuracy of this statement on the ground that the equity swap does not exchange Innofone stock for the Cogent bonds.  *See* Counterstatements *infra* 31(c)(i) – (iii).

31(a)(ii)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

31(a)(iii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

31(a)(vi)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds."  *See* Kofford Decl. Ex. O, at 16 (emphasis added).

31(b)    However, the Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under Fed.R.Evid. 1002.

31(c)(i)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

31(c)(ii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

31(c)(iii)    In its Form 10-KSB/A filing with the

|  | SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds." *See* Kofford Decl. Ex. O, at 16 (emphasis added). |
|---|---|
| 32.  On July 19, 2006 Innofone filed an SB-2 registration statement with the SEC for the purpose of registering 48,150,000 shares of common stock underlying the Transaction. **[This fact is identical to UF 8.]**<br><br>Innofone's Citations:<br><br>*July 19, 2006 SB-2 Registration Statement, at 3, attached as Ex. R to Lightman Decl.* | 32(a)(i)      The Cogent Parties lack sufficient knowledge and information upon which to form a belief as to Innofone's complete "purpose" in filing the SB-2 registration statement.<br><br>32(a)(ii)     Innofone's SB-2 registration statement also sought the issuance of 3.6 million shares of common stock to its CEO, Alex Lightman.  Lightman Decl. Ex. R, at 4/102.<br><br>32(a)(iii)    Innofone's SB-2 registration statement also sought the issuance of 200,000 shares of common stock to its General Counsel & Vice President of Business and Legal Affairs, Gerard Casale.  Lightman Decl. Ex. R, at 4/102 |
| 33.  Innofone amended its SB-2 three times (on August 28, 2006, October 24, 2006 and December 8, 2006) in response to continuing SEC questions about the validity of the Transaction. **[This fact is identical to UF 9.]**<br><br>Innofone's Citations:<br><br>*Lightman Decl. ¶¶ 34 - 44.*<br><br>*Aug. 11, 2006 SEC Letter, attached as Ex. S to Lightman Decl.*<br><br>*Aug. 28, 2006 First-Amended SB-2, attached as Ex. T to Lightman Decl.*<br><br>*Sept. 14, 2006 SEC Letter, attached as Ex. U to Lightman Decl.*<br><br>*Sept. 27, 2006 Innofone Response Letter to SEC, attached as Ex. V to Lightman Decl.*<br><br>*Oct. 24, 2006 Innofone Response Letter to SEC,* | 33(a)     The SEC merely had questions regarding the transaction.  The SEC did not question the "validity of the Transaction."  *See* Lightman Decl. Ex. S, U, X & DD.<br><br>33(b)     The Cogent Parties further and respectfully submit that the letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.<br><br>33(c)     Innofone's amended SB-2/A dated August 28, 2006 discussed issues relating to matters other than "the validity of the Transaction."  Lightman Decl. Ex. T.<br><br>33(d)     Innofone's amended SB-2/A dated October 24, 2006 discussed issues relating to matters other than "the validity of the Transaction."  Lightman Decl. Ex. EE.<br><br>33(e)     Innofone's amended SB-2/A dated December 8, 2006 discussed issues relating to matters other than "the validity of the |

*attached as Ex. W to Lightman Decl.*

*Nov. 7, 2006 SEC Letter, attached as Ex. X to Lightman Decl.*

*Dec. 8, 2006 Innofone Response Letter to SEC, attached as Ex. Y to Lightman Decl.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

Transaction."  Lightman Decl. Ex. FF.

33(f)(i)    On December 29, 2006, and January 11, 2007, while the registration statement was still awaiting SEC approval, Innofone disclosed that it will have to restate certain of its prior financial statements, including its financial statements for the quarter ended March 31, 2006 and the year ended June 30, 2006.  Kofford Decl. Ex. J (Innofone Form 8-K, filed January 11, 2007); Kofford Decl. Ex. I (Innofone Form 8-K, filed December 29, 2006).

33(f)(ii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Mar. 31, 2007** (the very same filing), could not be relied upon.  Kofford Decl. Ex. L, at 16.

33(f)(iii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Dec. 31, 2006,**could not be relied upon.  Kofford Decl. Ex. L, at 16.

33(f)(iv)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Sept. 30, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

33(f)(v)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-KSB/A filing with the SEC for the year ending **June 30, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

33(f)(vi)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **Mar. 31, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

33(f)(vii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **December 31, 2005**,

could not be relied upon.  Kofford Decl. Ex. L, at 16.

33(f)(viii)   In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **September 30, 2005**, could not be relied upon. Kofford Decl. Ex. L, at 16.

33(f)(ix)     Innofone has not restated any of the withdrawn financial statements.  Kaufman Decl. ¶ 7(c).

34. Effective registration of the underlying shares is a condition of the Transaction.
**[This fact is identical to UF 18.]**

Innofone's Citations:

*Lightman Decl. ¶¶ 24 - 28.*

*June 13, 2006 Holden email ("The receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21 ("Among the conditions is a requirement that Innofone maintain an effective registration statement…."), attached as Ex. O to Lightman Decl.*

34(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the mechanics of the transaction as set forth in the transaction documents.

34(b)    The Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under FED.R.EVID. 1002.

34(c)    An effective registration is not the only way in which settlements under the Equity Swap could commence.

34(d)(i)    The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144  promulgated under the Securities Act of 1933, as amended ("Rule 144").

34(d)(ii)    The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify upon at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

34(d)(iii)    The November 1, 2006 Swap Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30 consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

34(d)(iv)    The November 1, 2006 Swap

Confirmation defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order." Lightman Decl. Ex. K, at 5-6 (emphasis added).

34(d)(v)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006. Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

34(d)(vi)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144. Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

34(d)(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144. Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added). Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell

Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

34(d)(viii)   **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144. Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

34(d)(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

34(e)(i)     The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing. *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

34(e)(ii)     After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006). *See* Kofford Decl. Ex. O, at 66/86.

34(e)(iii)     In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds." *See* Kofford Decl. Ex. O, at 16 (emphasis added).

34(f)     In an e-mail dated December 20, 2006, Innofone CEO Alex Lightman expressly contemplated that Innofone may have to access the proceeds of the Bonds without an effective registration statement. Kofford Decl. Ex. F (Innofone will be able to access the Bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

---

35. SEC Regulations prohibit the sale of securities to the public without an effective registration statement.
**[This fact is identical to UF 11.]**

Innofone's Citations:

*15 U.S.C. 77e and the regulations promulgated thereunder.*

*Rule 415(a)(1)(i), codified at 17 C.F.R. 230.415(a)(1)(i).*

*Revision of Rule 144, Rule 145 and Form 144, Securities Act Release No. 33-7391, at 35 (Feb.*

35(a)     Innofone's construction of SEC regulations is a conclusion of law, and not a recitation of fact.

35(b)     To the extent that the Court accepts Innofone's construction of the SEC regulations on this Rule 56.1 Statement, the Cogent Parties dispute the accuracy of this statement on the ground that it is incomplete, for example:

(i)     Rule 144, promulgated under the Securities Act of 1933 ("Rule 144"), permits the sale of shares issued without a registration statement.

*20, 1997).*

*15 U.S.C. 77(x) and the regulations promulgated thereunder.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

(ii)    Rule 144(d)(1) states, "A minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities."

(iii)    Rule 144(k) states:

"*Termination of certain restrictions on sales of restricted securities by persons other than affiliates*. The requirements of paragraphs (c), (e), (f) and (h) of this section shall not apply to restricted securities sold for the account of a person who is not an affiliate of the issuer at the time of the sale and has not been an affiliate during the preceding three months, provided a period of at least two years has elapsed since the later of the date the securities were acquired from the issuer or from an affiliate of the issuer. The two-year period shall be calculated as described in paragraph (d) of this section."

(iv)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

(v)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. G at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

(vi)    Paragraph 2 of the November 1, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. K at 5-6 ("The 'Resale Condition' shall be deemed

satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order.") (emphasis added).

(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144.  Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

(viii)    **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at

13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice-President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

35(c)    Paragraph 5(i) of the November 1, 2006 Equity Swap Confirmation expressly provides for the transaction to be terminated if "the Resale Condition shall not be satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010."  Lightman Decl. Ex. K ¶ 5(i).  The November 1, 2006 Equity Swap Confirmation defines the satisfaction of "Resale Condition" with respect to the number of Equity Shares to mean that "as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933.**"  Lightman Decl. K, at 5 (emphasis added).  The June 2, 2006 Equity Swap Confirmation includes nearly identical language.  Lightman Decl. Ex. G at 10 & 13.

36. The SEC refused to approve the registration each of the four separate occasions Innofone sought approval.

Innofone's Citations:

*Lightman Decl. ¶¶ 29, 33, 34, 36, 39, 41, 44 - 46.*

*Aug. 11, 2006 SEC Letter, attached as Ex. S to Lightman Decl.*

*Sept. 14, 2006 SEC Letter, attached as Ex. U to Lightman Decl.*

*Nov. 7, 2006 SEC Letter, attached as Ex. X to Lightman Decl.*

*December 28, 2006 SEC Letter, attached as Ex. Z to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

*March 9, 2007 SEC Letter, attached as Ex. BB to Lightman Decl.*

The SEC has never "refused to approve" the registration. Rather, it raised questions with the registration statement. The SEC does not "approve" or "reject" registration statements or the transactions underlying them. Kaufman Decl. ¶¶ 10-11

---

37. On December 28, 2006, the SEC advised Innofone that it could not register the resale of the common stock issued to Cogent. **[This fact is identical to UF 10.]**

Innofone's Citations:

*Lightman Decl. ¶ 41.*

*December 28, 2006 SEC Letter, ¶1 ("Therefore, we do not agree with your conclusion that the private placement is complete in light of the fact that the total consideration you will receive for the private placement will not be determined until the equity swap has been completed. As a result **you may not register the resale of the shares of common stock** issued in the private placement to Cogent until that private placement has been completed. Please revise your registration statement accordingly.") (Emphasis added), attached as Ex. Z to Lightman Decl.*

37(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement is taken out of context.

37(b)    The SEC has never stated that it would never declare effective any registration statement submitted by Innofone. Kaufman Decl. ¶ 11.

37(c)    Paragraph 1 was not the only question raised by the SEC with respect to Innofone's registration statement. *See* Lightman Decl. Exh. Z ¶¶ 2-12.

37(d)    The Cogent Parties further and respectfully submit that the SEC letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

38.  After the SEC's most recent rejection on March 9, 2007 of Innofone's proposed SB- 2 registration, Innofone sought rescission without delay.
**[This fact is identical to UF 12.]**

Innofone's Citations:

*March 9, 2007 SEC Letter, ¶¶5-9, attached as Ex. BB to Lightman Decl.*

*Innofone Complaint, ¶48, attached as Ex. CC to Lightman Decl.*

*Lightman Decl. ¶¶ 46 - 47.*

38(a)    The Cogent Parties lack knowledge and information to form an informed belief as to whether Innofone sought rescission "without delay."

38(b)    Moreover, the issue of whether Innofone sought rescission "without delay" is a legal conclusion and not a recitation of fact.

38(c)    Subject to the above, the Cogent Parties do not dispute that Innofone filed the Complaint at bar in the U.S. District Court for the Central District of California on March 19, 2007. Lightman Decl. Ex. CC.

## FIFTH CLAIM FOR RELIEF
### Declaratory Relief Based Upon Failure of Consideration.

39.  On May 5, 2006, Alex Lightman sent Gregory L. Kofford and Mark W. Holden an executed letter in which Innofone and Cogent Capital Group LLC agreed to move forward with a proposed investment of between $15 and $50 million and Cogent Capital Group received $25,000 for due diligence fees and $3,000 for an escrow fee.
**[This fact is identical to UF 1.]**

Innofone's Citations:

*Lightman Decl. ¶ 8.*

*May 5 Letter Agreement, attached as Ex. B to Lightman Decl.*

39(a)    The Cogent Parties do not dispute the general accuracy of this statement.

39(b)    The Cogent Parties further and respectfully submit that the letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

40.  By agreement dated as of June 2, 2006, Innofone, Cogent Capital Financial LLC, and Cogent Capital Investments LLC, entered into a financing arrangement which involved the purchase of shares and a simultaneous Equity Swap transaction by which Cogent Capital Investments bought 1.85 million shares of Innofone common stock and 4.815 million shares of Innofone's Series A convertible preferred stock for $50 million in U.S. Treasury Bonds, and Innofone paid a fee for the Equity Swap to Cogent

40(a)    The Equity Swap did not take place "simultaneous[ly]" with the purchase of shares. Rather, the Equity Swap took place concurrently with, but after, the purchase of shares.  *See* Lightman Decl. Ex. Y, at Response to Comment 18 ("We entered into two transactions involving Cogent Capital and their affiliates.  The first transaction was the purchase of $50,000,000 of U.S. Treasury Bonds in consideration of 1,850,000 shares of common stock and 4,815,000 shares of Series A Convertible Preferred Stock

Capital Financial comprised of 5 million shares of Innofone common stock, a warrant to purchase another 5 million shares of common stock, and $1.375 million (hereafter "Transaction"). **[This fact is identical to UF 2.]**

Innofone's Citations:

*Lightman Decl. ¶¶ 15-18.*

*Securities Purchase Agreement, Section 1.1, attached as Ex. C to Lightman Decl.*

*June 2, 2006 Equity Swap Transaction Confirmation, at 4-5, attached as Ex. G to Lightman Decl.*

('Preferred Stock') . . . .  The second transaction was the consummation of an equity swap agreement which is fixed at $1.333333 per share with respect to a notional stock amount of 37,500,000 shares of common stock.").

40(b)    The Cogent Parties further and respectfully submit that the agreement speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

40(c)    Except as provided above, the Cogent Parties do not dispute the general accuracy of this statement as a description of the Securities Purchase Agreement (Lightman Decl. Ex. C).

41.  The following contract documents comprise the Transaction documents:

    i.   Securities Purchase Agreement
    ii.  Escrow Agreement
    iii. Master Agreement
    iv. Schedule to the Master Agreement
    v.  June 2, 2006 Equity Swap Transaction Confirmation
    vi. Credit Support Annex
    vii. Registration Rights Agreement
    viii. Warrant
    ix. November 1, 2006 Equity Swap Transaction Confirmation
    x.  November 1, 2006 Interest Rate Swap Transaction

**[This fact is identical to UF 3.]**

Innofone's Citations:

*Lightman Decl. ¶ 20.*

*Securities Purchase Agreement, attached as Ex. C to Lightman Decl.*

*Escrow Agreement, attached as Ex. D to Lightman Decl.*

*Master Agreement, attached as Ex. E to Lightman Decl.*

*Schedule to the Master Agreement, attached as Ex. F to Lightman Decl.*

*June 2, 2006 Equity Swap Transaction Confirmation, attached as Ex. G to Lightman Decl.*

*Credit Support Annex, attached as Ex. H to Lightman Decl.*

*Registration Rights Agreement, attached as Ex. I to Lightman Decl.*

*Warrant, attached as Ex. J to Lightman Decl.*

*Nov. 1, 2006 Equity Swap Transaction Confirmation, attached as Ex. K to Lightman Decl.*

*Nov. 1, 2006 Interest Rate Swap Transaction, attached as Ex. L to Lightman Decl.*

The Cogent Parties do not dispute the general accuracy of this statement.

42.  Innofone deposited with Investors Bank & Trust Company (the "escrow agent") the common and preferred shares underlying the Transaction. **[This fact is identical to UF 4.]**

Innofone's Citations:

*Lightman Decl. ¶ 22.*

*Escrow Agreement, ¶1(b), attached as Ex. D to Lightman Decl.*

42(a)    The Cogent Parties do not dispute the general accuracy of this statement, but note that the statement does not completely describe the account's current status.

42(b)    The statement is incomplete because, pursuant to Paragraphs 2(b), 2(c), & 2(d) of the Escrow Agreement (Lightman Decl. Ex. D), the escrow agent transferred the 5 million common shares and Warrant from escrow into account no. 4739698, and the 4.815 million preferred and 1.85 million common shares from escrow into account no. 4739699.  *See also* Kofford Decl. ¶ 6.

43.  Cogent Capital Investments deposited with the escrow agent the $50 million in U.S. Treasury bonds. **[This fact is identical to UF 5.]**

Innofone's Citations:

*Lightman Decl. ¶ 21.*

*Escrow Agreement, ¶1(a), attached as Ex. D to Lightman Decl.*

43(a)    The Cogent Parties do not dispute the general accuracy of this statement, but note that the statement does not completely describe the account's current status.

43(b)    The statement is incomplete because, pursuant to Paragraph 2(a) of the Escrow Agreement (Lightman Decl. Ex. D), the escrow agent transferred the Bonds from escrow into account no. 4739766 (the "Collateral Account"). *See also* Kofford Decl. ¶ 6.

44.  Settlements under the Equity Swap (i.e. the exchange of Innofone stock for the Cogent  bonds) could not commence until after a resale registration statement pursuant to Securities and Exchange Commission ("SEC") Rules and Regulations had become effective for at least 10 million Innofone shares and an effective registration statement maintained for the full amount of the shares. **[This fact is identical to UF 6.]**

Innofone's Citations:

*Lightman Decl. ¶17.*

*Warrant, § 3(d),attached as Ex. J to Lightman Decl.*

*Schedule to the Master Agreement, § 8, attached as Ex. F to Lightman Decl.*

44(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the mechanics of the equity swap.  *See* Counterstatements *infra* 44(d) & 44(e)(i) – (iv) .

44(b)    The Cogent Parties further dispute the accuracy of this statement on the ground that the equity swap does not exchange Innofone stock for the Cogent bonds.  *See* Counterstatements *infra* 44(f)(i) – (iii).

44(c)    The Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under FED.R.EVID. 1002.

44(d)    An effective registration is not the only way in which settlements under the Equity Swap could commence.

*June 13, 2006 Holden email ("The receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*October 24, 2006 Innofone Response Letter to SEC, at Response 1 ("[S]ettlements under the Equity Swap do not commence until after the resale registration statement becomes effective."), attached as Ex. W to Lightman Decl.*

*Nov. 1, 2006 Equity Swap Transaction Confirmation, at 6 ("The 'Trigger Date' shall mean the first date as of which the Resale condition has been satisfied with respect to at least 10,000,000 Shares"), attached as Ex. K to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21 ("Among the conditions is a requirement that Innofone maintain an effective registration statement…." ), attached as Ex. O to Lightman Decl.*

44(e)(i)    The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144  promulgated under the Securities Act of 1933, as amended ("Rule 144").

44(e)(ii)    The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify upon at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

44(e)(iii)    The November 1, 2006 Swap Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30 consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

44(e)(iv)    The November 1, 2006 Swap Confirmation  defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order."  Lightman Decl. Ex. K, at 5-6

(emphasis added).

44(e)(v)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

44(e)(vi)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

44(e)(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144.  Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

44(e)(viii)   **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale

registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

44(e)(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

44(f)(i)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing. *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

44(f)(ii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006). *See* Kofford Decl. Ex. O, at 66/86.

44(f)(iii)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase

agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds." *See* Kofford Decl. Ex. O, at 16 (emphasis added).

45. The Equity Swap provided that the exchange of Innofone stock for the bonds would occur over a 30 month period.
**[This fact is identical to UF 7.]**

Innofone's Citations:

*June 2, 2006 Equity Swap Transaction Confirmation, at 6-10, 15, attached as Ex. G to Lightman Decl.*

*November 1, 2006 Equity Swap Transaction Confirmation, at 2, 11-12, attached as Ex. K to Lightman Decl.*

*Lightman Decl. ¶ 17.*

45(a)(i)    The Cogent Parties dispute the accuracy of this statement on the ground that the equity swap does not exchange Innofone stock for the Cogent bonds. *See* Counterstatements *infra* 45(c)(i) – (iii).

45(a)(ii)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing. *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

45(a)(iii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006). *See* Kofford Decl. Ex. O, at 66/86.

45(a)(vi)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds." *See* Kofford Decl. Ex. O, at 16 (emphasis added).

45(b)    However, the Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under FED.R.EVID. 1002.

45(c)(i)    The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing. *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

45(c)(ii)    After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

45(c)(iii)    In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds."  *See* Kofford Decl. Ex. O, at 16 (emphasis added).

---

46.  Effective registration of the underlying shares is a condition of the Transaction.

**[This fact is identical to UF 18.]**

<u>Innofone's Citations:</u>
*June 13, 2006 Holden email ("The receipt of any additional funds via the equity swap (and also access to the $50 mm in T-bonds from the private placement) takes place through a defined schedule over 30 months (as Gerard noted, beginning 30 days after a registration of the shares we purchased is effective) which schedule has been designed with timing intended to coordinate with INFN's cash requirements."), attached as Ex. N to Lightman Decl.*

*April 5, 2007 Cogent Complaint (SDNY), ¶21 ("Among the conditions is a requirement that Innofone maintain an effective registration statement...."), attached as Ex. O to Lightman Decl.*

46(a)    The Cogent Parties dispute the accuracy of this statement on the ground that the statement does not completely describe the mechanics of the transaction as set forth in the transaction documents.

46(b)    The Cogent Parties further and respectfully submit that the transaction documents speak for themselves and are the best and most complete evidence of their own contents under FED.R.EVID. 1002.

46(c)    An effective registration is not the only way in which settlements under the Equity Swap could commence.

46(d)(i)    The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144  promulgated under the Securities Act of 1933, as amended ("Rule 144").

46(d)(ii)    The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify upon at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

46(d)(iii)    The November 1, 2006 Swap

Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30 consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

46(d)(iv)    The November 1, 2006 Swap Confirmation  defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order."  Lightman Decl. Ex. K, at 5-6 (emphasis added).

46(d)(v)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

46(d)(vi)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the

Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

46(d)(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144.  Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

46(d)(viii)   **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the

year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

46(d)(ix)     On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

46(e)(i)     The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

46(e)(ii)     After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

46(e)(iii)     In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase agreement, we sold in a private placement to Cogent Capital Investments LLC [shares of Innofone stock] for an aggregate purchase price of $50,000,000, which **was paid** in the form of U.S. Treasury Bonds."  *See* Kofford Decl. Ex. O, at 16 (emphasis added).

46(f)     In an e-mail dated December 20, 2006, Innofone CEO Alex Lightman expressly contemplated that Innofone may have to access the proceeds of the Bonds without an effective registration statement.  Kofford Decl. Ex. F (Innofone will be able to access the Bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

47.  SEC Regulations prohibit the sale of securities to the public without an effective registration statement.
**[This fact is identical to UF 11.]**

Innofone's Citations:

*15 U.S.C.  77e and the regulations promulgated thereunder.*

*Rule 415(a)(1)(i), codified at 17 C.F.R. 230.415(a)(1)(i).*

*Revision of Rule 144, Rule 145 and Form 144, Securities Act Release No. 33-7391, at 35 (Feb. 20, 1997).*

*15 U.S.C. 77(x) and the regulations promulgated thereunder.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

47(a)    Innofone's construction of SEC regulations is a conclusion of law, and not a recitation of fact.

47(b)    To the extent that the Court accepts Innofone's construction of the SEC regulations on this Rule 56.1 Statement, the Cogent Parties dispute the accuracy of this statement on the ground that it is incomplete, for example:

(i)    Rule 144, promulgated under the Securities Act of 1933 ("Rule 144"), permits the sale of shares issued without a registration statement.

(ii)    Rule 144(d)(1) states, "A minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities."

(iii)    Rule 144(k) states:

"*Termination of certain restrictions on sales of restricted securities by persons other than affiliates*. The requirements of paragraphs (c), (e), (f) and (h) of this section shall not apply to restricted securities sold for the account of a person who is not an affiliate of the issuer at the time of the sale and has not been an affiliate during the preceding three months, provided a period of at least two years has elapsed since the later of the date the securities were acquired from the issuer or from an affiliate of the issuer. The two-year period shall be calculated as described in paragraph (d) of this section."

(iv)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

(v)    Paragraph 2 of the June 2, 2006

Equity Swap Confirmation expressly references Rule 144. Lightman Decl. Ex. G at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

(vi)     Paragraph 2 of the November 1, 2006 Equity Swap Confirmation expressly references Rule 144. Lightman Decl. Ex. K at 5-6 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order.") (emphasis added).

(vii)     Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144. Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added). Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144. Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

(viii)     **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell

Innofone shares under Rule 144. Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

   (ix)   On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice-President of Business & Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

47(c)   Paragraph 5(i) of the November 1, 2006 Equity Swap Confirmation expressly provides for the transaction to be terminated if "the Resale Condition shall not be satisfied with respect to the Equity Shares for Swap 30 by no later than December 2, 2010." Lightman Decl. Ex. K ¶ 5(i). The November 1, 2006 Equity Swap Confirmation defines the satisfaction of "Resale Condition" with respect to the number of Equity Shares to mean that "as of such day, are then, and

|  | have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933.**" Lightman Decl. K, at 5 (emphasis added).  The June 2, 2006 Equity Swap Confirmation includes nearly identical language.  Lightman Decl. Ex. G at 10 & 13. |
|---|---|
| 48.  On July 19, 2006 Innofone filed an SB-2 registration statement with the SEC for the purpose of registering 48,150,000 shares of common stock underlying the Transaction.  **[This fact is identical to UF 8.]**<br><br>Innofone's Citations:<br><br>*July 19, 2006 SB-2 Registration Statement, at 3, attached as Ex. R to Lightman Decl.5* | 48(a)(i)      The Cogent Parties lack sufficient knowledge and information upon which to form a belief as to Innofone's complete "purpose" in filing the SB-2 registration statement.<br><br>48(a)(ii)      Innofone's SB-2 registration statement also sought the issuance of 3.6 million shares of common stock to its CEO, Alex Lightman.  Lightman Decl. Ex. R, at 4/102.<br><br>48(a)(iii)      Innofone's SB-2 registration statement also sought the issuance of 200,000 shares of common stock to its General Counsel & Vice President of Business and Legal Affairs, Gerard Casale.  Lightman Decl. Ex. R, at 4/102 |

49. Innofone amended its SB-2 three times (on August 28, 2006, October 24, 2006 and December 8, 2006) in response to continuing SEC questions about the validity of the Transaction.
**[This fact is identical to UF 9.]**

Innofone's Citations:
*Lightman Decl. ¶¶ 34 - 44.*

*Aug. 11, 2006 SEC Letter, attached as Ex. S to Lightman Decl.*

*Aug. 28, 2006 First-Amended SB-2, attached as Ex. T to Lightman Decl.*

*Sept. 14, 2006 SEC Letter, attached as Ex. U to Lightman Decl.*

*Sept. 27, 2006 Innofone Response Letter to SEC, attached as Ex. V to Lightman Decl.*

*Oct. 24, 2006 Innofone Response Letter to SEC, attached as Ex. W to Lightman Decl.*

*Nov. 7, 2006 SEC Letter, attached as Ex. X to Lightman Decl.*

*Dec. 8, 2006 Innofone Response Letter to SEC, attached as Ex. Y to Lightman Decl.*

*January 18, 2007 Cogent Response Letter to SEC, attached as Ex. AA to Lightman Decl.*

*January 24, 2007 SEC Letter, attached as Ex. DD to Lightman Decl.*

49(a)    The SEC merely had questions regarding the transaction.  The SEC did not question the "validity of the Transaction."  *See* Lightman Decl. Ex. S, U, X & DD.

49(b)    The Cogent Parties further and respectfully submit that the letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

49(c)    Innofone's amended SB-2/A dated August 28, 2006 discussed issues relating to matters other than "the validity of the Transaction."  Lightman Decl. Ex. T.

49(d)    Innofone's amended SB-2/A dated October 24, 2006 discussed issues relating to matters other than "the validity of the Transaction."  Lightman Decl. Ex. EE.

49(e)    Innofone's amended SB-2/A dated December 8, 2006 discussed issues relating to matters other than "the validity of the Transaction."  Lightman Decl. Ex. FF.

49(f)(i)    On December 29, 2006, and January 11, 2007, while the registration statement was still awaiting SEC approval, Innofone disclosed that it will have to restate certain of its prior financial statements, including its financial statements for the quarter ended March 31, 2006 and the year ended June 30, 2006.  Kofford Decl. Ex. J (Innofone Form 8-K, filed January 11, 2007); Kofford Decl. Ex. I (Innofone Form 8-K, filed December 29, 2006).

49(f)(ii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Mar. 31, 2007** (the very same filing), could not be relied upon.  Kofford Decl. Ex. L, at 16.

49(f)(iii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Dec. 31, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

49(f)(iv)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Sept. 30, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

49(f)(v)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-KSB/A filing with the SEC for the year ending **June 30, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

49(f)(vi)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **Mar. 31, 2006**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

49(f)(vii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **December 31, 2005**, could not be relied upon.  Kofford Decl. Ex. L, at 16.

49(f)(viii)    In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **September 30, 2005**, could not be relied upon. Kofford Decl. Ex. L, at 16.

49(f)(ix)    Innofone has not restated any of the withdrawn financial statements.  Kaufman Decl. ¶ 7(c).

50.  On December 28, 2006, the SEC advised Innofone that it could not register the resale of the shares of common stock issued to Cogent. **[This fact is identical to UF 10.]**

Innofone's Citations:
*Lightman Decl. ¶ 41.*

*December 28, 2006 SEC Letter, ¶1 ("Therefore, we do not agree with your conclusion that the private placement is complete in light of the fact that the total consideration you will receive for the private placement will not be determined until the equity swap has been completed. As a result **you may not register the resale of the shares of common stock** issued in the private placement to Cogent until that private placement has been completed. Please revise your registration statement accordingly.") (Emphasis added), attached as Ex. Z to Lightman Decl.*

50(a)     The Cogent Parties dispute the accuracy of this statement on the ground that the statement is taken out of context.

50(b)     The SEC has never stated that it would never declare effective any registration statement submitted by Innofone.  Kaufman Decl. ¶ 11.

50(c)     Paragraph 1 was not the only question raised by the SEC with respect to Innofone's registration statement.  *See* Lightman Decl. Exh. Z ¶¶ 2-12.

50(d)     The Cogent Parties further and respectfully submit that the SEC letter speaks for itself and is the best and most complete evidence of its own contents under FED.R.EVID. 1002.

---

51.  Innofone is unable to access the U.S. Treasury Bonds because the SEC refuses to approve the registration of the Innofone common stock that was issued pursuant to the Transaction.
Innofone's Citations:
*Lightman Decl. ¶¶ 49 - 50.*

51(a)     The Cogent Parties dispute the accuracy of this statement on the ground that an effective registration is not the only way in which settlements under the Equity Swap could commence.

51(b)(i)     The November 1, 2006 Swap Confirmation (Lightman Decl. Ex. K) also permits settlement under the Equity Swap upon the shares being eligible for resale under Rule 144 promulgated under the Securities Act of 1933, as amended ("Rule 144").

51(b)(ii)     The November 1, 2006 Swap Confirmation defines "settlement date" as follows: "The 'Settlement Date' for any Swap shall be the earliest of: (i) December 2, 2010, (ii) **the Applicable Settlement Date** or (iii) such other date as Cogent may specify upon at least 10 days' prior notice to the Counterparty." Lightman Decl. Ex. K, at 2 (emphasis added).

51(b)(iii)     The November 1, 2006 Swap Confirmation defines "applicable settlement date" as follows: "The 'Applicable Settlement Date' for a Swap Transaction shall be deemed to occur on the date specified as such on Schedule 1 hereto, provided that **the Applicable Settlement**

**Date for a Swap Transaction shall not be deemed to have occurred unless the Calculation Agent has determined that the Resale Condition (as defined below) has been satisfied** with respect to the entire Applicable Share Amount (as defined below) on or for the 30 consecutive day period preceding the date specified in Schedule 1 hereto." Lightman Decl. Ex. K, at 2 (emphasis added).

51(b)(iv)    The November 1, 2006 Swap Confirmation  defines "resale condition" as follows: "The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then, and have for the preceding 30 days, subject to an effective resale registration statement under the Securities Act of 1933, as amended, with Cogent and/or its affiliates being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144 adopted under the Securities Act of 1933**; provided that as of such day and for such preceding period, the Shares shall have been in electronic, freely transferable form, not evidenced by any share certificates bearing restrictive legends and not subject to any stop transfer order."  Lightman Decl. Ex. K, at 5-6 (emphasis added).

51(b)(v)    Innofone CEO Alex Lightman expressly referenced Rule 144 in his e-mail of December 20, 2006.  Kofford Decl. Ex. F (Innofone will be able to access the treasury bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

51(b)(vi)    Paragraph 2 of the June 2, 2006 Equity Swap Confirmation expressly references Rule 144.  Lightman Decl. Ex. G, at 10 ("The 'Resale Condition' shall be deemed satisfied as of any day with respect to the number of Equity Shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under paragraph (k) of Rule 144** adopted under the Securities Act of 1933.") (emphasis added).

51(b)(vii)    Innofone's Form SB-2, filed July 19, 2006, expressly references Cogent's ability to resell Innofone shares under Rule 144.  Lightman Decl. Ex. R at 34 ("The selling securityholders may also sell shares **under Rule 144** under the Securities Act of 1933, if available, rather than under this prospectus.") (emphasis added).  Each of the three amendments to the registration submitted by Innofone also contain this exact language regarding Cogent's ability to resell Innofone's shares under Rule 144.  Lightman Decl. Ex. T, at 31 (First-Amended SB-2, filed Aug. 28, 2006); Lightman Decl. Ex. EE, at 41 (Second-Amended SB-2, filed Oct. 24, 2006); Lightman Decl. Ex. FF, at 41 (Third-Amended SB-2, filed Dec. 8, 2006).

51(b)(viii)    **Five** of Innofone's publicly filed financial statements include identical language expressly referencing Cogent's ability to resell Innofone shares under Rule 144.  Kofford Decl. Ex. L, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Mar. 31, 2007 (filed May, 21, 2007)) ("The Resale Condition shall be deemed satisfied as of any day with respect to the number of equity shares that, as of such day, are then subject to an effective resale registration statement under the Securities Act of 1933, as amended, with the holders of such shares being named therein as selling shareholders **or fully eligible for resale under Rule 144 adopted under the Securities Act of 1933**.") (emphasis added); Kofford Decl. Ex. M, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Dec. 31, 2006 (filed Feb. 14, 2007)) (same); Kofford Decl. Ex. N, at 13 (Innofone Form 10-QSB filing with the SEC for the quarter ending Sept. 30, 2006 (filed Nov. 7, 2006 and subsequently withdrawn)) (same); Kofford Decl. Ex. O, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed Oct. 3, 2006)) (same); Kofford Decl. Ex. P, at note 7 to Consolidated Financial Statement (Innofone Form 10-KSB filing for the year ending June 30, 2006 (filed Sept. 29, 2006)) (same).

51(b)(ix)    On November 29, 2006, Gerard N. Casale, Jr., Innofone's Vice President of Business

& Legal Affairs, sent Messrs. Holden and Kofford an e-mail referencing the availability of Rule 144 with respect to the equity swap. Kofford Decl. Ex. G (requesting "a simple letter on Cogent letterhead indicating that the mechanics of our deal on the treasuries is such that **regardless of the SB-2 and assuming INFN is not in default that we will commence the swap utilizing Rule 144 in June of 2007**") (emphasis added).

51(c)(i)      The Cogent Bonds had already been exchanged for Innofone shares at the time of the closing.  *See* Lightman Decl. Ex. C ¶ 2.1(a) ("The purchase and sale of the Securities upon the terms and conditions hereof will take place at a closing (the 'Closing') . . . .").

51(c)(ii)      After the closing, Innofone recorded the Bonds in its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006).  *See* Kofford Decl. Ex. O, at 66/86.

51(c)(iii)      In its Form 10-KSB/A filing with the SEC for the year ending June 30, 2006 (filed October 3, 2006), Innofone stated "On June 2, 2006, pursuant to a securities purchase

51(d)    In an e-mail dated December 20, 2006, Innofone CEO Alex Lightman expressly contemplated that Innofone may have to access the proceeds of the Bonds without an effective registration statement.  Kofford Decl. Ex. F (Innofone will be able to access the Bonds "either a. when the [registration statement] goes effective . . . or b. in worst case, **when the 144 restrictions are lifted in June 2007**") (emphasis added).

| | |
|---|---|
| 52.  Innofone has not received any benefit from the Transaction.<br>**[This fact is identical to UF 22.]**<br><br>Innofone's Citations:<br><br>*Lightman Decl. ¶ 49.* | 52(a)    The Cogent Parties dispute the accuracy of this statement in its entirety.<br><br>52(b)    In its September 27, 2006 letter to the SEC, Innofone acknowledged that the Transaction represented a significant net present value in favor of Innofone: "[I]n our evaluation of the consideration we paid to [Cogent] upon entering into the Equity Swap, we took account of the fact that [Cogent] had agreed to significant |

obligations under a long-term transaction that references a relatively illiquid and volatile equity security and under which [Cogent] bears an unlimited upside exposure, while our downside exposure is finite. **The amount paid to Cogent reflects the net option values imbedded in the Equity Swap**, which themselves reflect option valuation methodologies that take account of various factors, including the transaction term, share illiquidity and volatility, and relative price exposures." Lightman Decl. Ex. V, at Response 11 (emphasis added).

52(c)    In its October 24, 2006 letter to the SEC, Innofone wrote, "Once the notional share amount and the initial reference price was established, the value of the equity swap was calculated. The outcome of an equity swap for Innofone is the equivalent of Innofone having sold a net cash settled put and Innofone having purchased a net cash settled call.  As described below in more detail, **the terms of the proposed equity swap represented a significant net present value in favor of Innofone**, for which Cogent was compensated through the initial entrance amount for the swap." Lightman Decl. Ex. W, at 12 (emphasis added).

52(d)    In its October 24, 2006 letter to the SEC, Innofone valued the swap at approximately $9,375,000: "The value of the swap at that point of time was calculated to be approximately $9,375,000." Lightman Decl. Ex. W, at 12.

52(e)    Innofone listed the Bonds as an asset in its quarterly financial statements filed with the SEC, including the 10-QSB filed as recently as May 21, 2007. *See* Kofford Decl. Ex. L (Innofone's Form 10-QSB filing for the quarter ending March 31, 2007 (filed May 21, 2007).

52(f)(i)    The equity swap enabled Innofone to obtain a $1 million loan from a third-party.

52(f)(ii)    In its Form 10-QSB filing for the quarter ending March 31, 2007 (filing May 21, 2007), Innofone reported "In July 2006, the Company issued two promissory notes to 55 South Investments totaling $1,000,000, with interest at 12% per annum. The Maturity Date shall be the earlier of: (a) **one (1) year from the**

**commencement of that certain Equity Swap transaction**, as discussed in Note 7, whereby 30 days have expired thereafter the date in which the Company is granted effectiveness by the Securities and Exchange Commission on a registration statement filed pursuant to certain agreements made in connection with an equity swap made by and between the Company and Cogent Capital Group, LLC and its affiliates as of June 2, 2006; or (b) December 1, 2007, whichever is earlier." *See* Kofford Decl. Ex. L, at 11 (emphasis added) (definitions for abbreviated terms omitted).

52(g)(i)     In Innofone's Form SB-2 filing dated July 19, 2006, Innofone expressly contemplated the possibility that it might receive no economic benefit from the transaction.

52(g)(ii)     In Innofone's Form SB-2 filing dated July 19, 2006, Innofone stated in all capital letters, "WE MAY RECEIVE NO ECONOMIC BENEFIT FROM THE SWAP TRANSACTION WITH COGENT CAPITAL CORP. [sic] AND THE INSTITUTIONAL INVESTORS WHICH INCREASED OUR ISSUED AND OUTSTANDING COMMON STOCK BY APPROXIMATELY 43.8%." Lightman Decl. Ex. R, at 9.

| | |
|---|---|
| 53. The Transaction continues to be a detriment to Innofone since Innofone is required to pay monthly interest on the bonds.<br>**[This fact is identical to UF 23.]**<br><br>Innofone's Citations:<br><br>*Lightman Decl. ¶ 50.* | 53(a)     The Cogent Parties dispute the accuracy of this statement in its entirety.<br><br>53(b)     In its September 27, 2006 letter to the SEC, Innofone acknowledged that the Transaction represented a significant net present value in favor of Innofone: "[I]n our evaluation of the consideration we paid to [Cogent] upon entering into the Equity Swap, we took account of the fact that [Cogent] had agreed to significant obligations under a long-term transaction that references a relatively illiquid and volatile equity security and under which [Cogent] bears an unlimited upside exposure, while our downside exposure is finite. **The amount paid to Cogent reflects the net option values imbedded in the Equity Swap**, which themselves reflect option valuation methodologies that take account of various factors, including the transaction term, share illiquidity and volatility, and relative price |

exposures." Lightman Decl. Ex. V, at Response 11 (emphasis added).

53(c)    In its October 24, 2006 letter to the SEC, Innofone wrote, "Once the notional share amount and the initial reference price was established, the value of the equity swap was calculated. The outcome of an equity swap for Innofone is the equivalent of Innofone having sold a net cash settled put and Innofone having purchased a net cash settled call.  As described below in more detail, **the terms of the proposed equity swap represented a significant net present value in favor of Innofone**, for which Cogent was compensated through the initial entrance amount for the swap." Lightman Decl. Ex. W, at 12 (emphasis added).

53(d)    In its October 24, 2006 letter to the SEC, Innofone valued the swap at approximately $9,375,000: "The value of the swap at that point of time was calculated to be approximately $9,375,000." Lightman Decl. Ex. W, at 12.

53(e)    Innofone listed the Bonds as an asset in its quarterly financial statements filed with the SEC, including the 10-QSB filed as recently as May 21, 2007.  *See* Kofford Decl. Ex. L (Innofone's Form 10-QSB filing for the quarter ending March 31, 2007 (filed May 21, 2007).

53(f)(i)    The equity swap enabled Innofone to obtain a $1 million loan from a third-party.

53(f)(ii)    In its Form 10-QSB filing for the quarter ending March 31, 2007 (filing May 21, 2007), Innofone reported "In July 2006, the Company issued two promissory notes to 55 South Investments totaling $1,000,000, with interest at 12% per annum. The Maturity Date shall be the earlier of: (a) **one (1) year from the commencement of that certain Equity Swap transaction**, as discussed in Note 7, whereby 30 days have expired thereafter the date in which the Company is granted effectiveness by the Securities and Exchange Commission on a registration statement filed pursuant to certain agreements made in connection with an equity swap made by and between the Company and Cogent Capital Group, LLC and its affiliates as of June 2, 2006; or (b) December 1, 2007,

whichever is earlier." *See* Kofford Decl. Ex. L, at 11 (emphasis added) (definitions for abbreviated terms omitted).

53(g)(i)     In Innofone's Form SB-2 filing dated July 19, 2006, Innofone expressly contemplated the possibility that it might receive no economic benefit from the transaction.

53(g)(ii)     In Innofone's Form SB-2 filing dated July 19, 2006, Innofone stated in all capital letters, "WE MAY RECEIVE NO ECONOMIC BENEFIT FROM THE SWAP TRANSACTION WITH COGENT CAPITAL CORP. [sic] AND THE INSTITUTIONAL INVESTORS WHICH INCREASED OUR ISSUED AND OUTSTANDING COMMON STOCK BY APPROXIMATELY 43.8%." Lightman Decl. Ex. R, at 9.

---

54.  After the SEC's most recent rejection on March 9, 2007 of Innofone's proposed SB-2 registration, Innofone sought rescission without delay.
**[This fact is identical to UF 12.]**

Innofone's Citations:

*March 9, 2007 SEC Letter, ¶¶5-9, attached as Ex. BB to Lightman Decl.*

*Innofone Complaint, ¶48, attached as Ex. CC to Lightman Decl.*
*Lightman Decl. ¶¶ 46 - 47.*

54(a)     The Cogent Parties lack knowledge and information to form an informed belief as to whether Innofone sought rescission "without delay."

54(b)     Moreover, the issue of whether Innofone sought rescission "without delay" is a legal conclusion and not a recitation of fact.

54(c)     Subject to the above, the Cogent Parties do not dispute that Innofone filed the Complaint at bar in the U.S. District Court for the Central District of California on March 19, 2007. Lightman Decl. Ex. CC.

**COGENT'S ADDITIONAL STATEMENTS OF MATERIAL FACTS**

| COGENT'S ADDITIONAL STATEMENTS | INNOFONE'S COUNTERSTATEMENTS |
|---|---|
| C1.  Innofone's financial statements for the quarter ended March 31, 2006 and the year ended June 30, 2006 were included in its registration and the amendments thereto.<br><br>*Lightman Decl. Ex. R (SB-2 Registration Statement, filed July 19, 2006).*<br><br>*Lightman Decl. Ex. T (First-Amended SB-2, filed Aug. 28, 2006).*<br><br>*Lightman Decl. Ex. EE (Second-Amended SB-2, October 24, 2006).*<br><br>*Lightman Decl. Ex. FF (Third-Amended SB-2, Dec. 8, 2006).* | |
| C2.  On December 29, 2006, and January 11, 2007, while the registration statement was still awaiting SEC approval, Innofone disclosed that it will have to restate certain of its prior financial statements, including its financial statements for the quarter ended March 31, 2006 and the year ended June 30, 2006, which were included in its registration and the amendments thereto.<br><br>*Kofford Decl. Ex. J (Innofone Form 8-K, filed January 11, 2007); Kofford Decl. Ex. I (Innofone Form 8-K, filed December 29, 2006).* | |
| C3.  In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Mar. 31, 2007** (the very same filing), could not be relied upon.<br><br>*Kofford Decl. Ex. L, at 16.* | |

C4.  In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Dec. 31, 2006**, could not be relied upon.

*Kofford Decl. Ex. L, at 16.*

C5.  In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing with the SEC for the quarter ending **Sept. 30, 2006**, could not be relied upon.

*Kofford Decl. Ex. L, at 16.*

C6.  In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-KSB/A filing with the SEC for the year ending **June 30, 2006**, could not be relied upon.

*Kofford Decl. Ex. L, at 16.*

C7.  In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **Mar. 31, 2006**, could not be relied upon.

*Kofford Decl. Ex. L, at 16.*

C8.  In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **December 31, 2005**, could not be relied upon.

*Kofford Decl. Ex. L, at 16.*

C9.  In its Form 10-QSB filing for the quarter ending Mar. 31, 2007 (filed May 21, 2007), Innofone declared that its Form 10-QSB filing for the quarter ending **September 30, 2005**, could not be relied upon.

*Kofford Decl. Ex. L, at 16.*

C10.  Innofone has not restated any of the withdrawn financial statements.

*Kaufman Decl. ¶ 7(c).*

C11.  In the Securities Purchase Agreement dated June 2, 2006, Innofone warranted that its financial statements "present fairly the financial position of the Company and its consolidated subsidiaries at the dates indicated."

*Lightman Decl. Ex. C, at ¶ 3.3 (Securities Purchase Agreement).*

C12.  Innofone's financial statements did not present fairly its financial position.

*Kofford Decl. Ex. J (Innofone Form 8-K, filed January 11, 2007).*

*Kofford Decl. Ex. I (Innofone Form 8-K, filed December 29, 2006).*

C13.  On March 22, 2007, while the SEC was still evaluating Innofone's registration statement Innofone withdrew that registration statement from SEC consideration.

*Kofford Decl. Ex. K (Innofone's Form RW, dated March 22, 2007 (requesting "the withdrawal of [Innofone's] registration statement")).*

C14.  The Equity Swap Confirmation and the Interest Rate Swap Confirmation required Innofone to make certain periodic payments to the Cogent Corporate Parties.

*Lightman Decl. Ex. G (June 2, 2006 Equity Swap Confirmation).*

*Lightman Decl. Ex. L (November 1, 2006 Interest Rate Swap Confirmation).*

C15.  Innofone has refused to make payments due and owing to Cogent pursuant to the Equity Swap Confirmation, as restated as of November 1, 2006, and the Interest Rate Swap Confirmation, restated as of November 1, 2006.

*Lightman Decl. Ex. K (November 1, 2006 Equity Swap Confirmation).*

*Lightman Decl. Ex. L (November 1, 2006 Interest Rate Swap Confirmation).*

C16.  As of June 1, 2007, Innofone owes Cogent $553,831.03 pursuant to the Interest Rate Swap Confirmation; (ii) $831,250 of the cash fee; and (iii) interest on the cash fee in the amount of $57,692.54.

*Kofford Decl. ¶ 15.*

C17.  Additional sums are due monthly under the Interest Rate Swap Confirmation.

*Kofford Decl. ¶ 16.*

C18.  Innofone has breached the Transaction agreements by failing to make several of the agreed-upon payments to the Corporate Cogent Parties.

*Kofford Decl. ¶¶ 14-16.*

C19.  Innofone has breached the Transaction agreements by withdrawing the registration statement and failing to register the 5 million shares on which Cogent has demand registration rights.

*Kofford Decl. ¶¶ 13, 17.*

C20.  The Cogent Parties did not represent to anyone at Innofone that the SEC was certain to declare Innofone's registration statement effective.

*Kofford Decl. ¶ 4.*

C21. The Cogent Parties did not participate in Innofone's calls with the SEC regarding the registration statement.

*Kofford Decl. ¶ 11.*

*Lightman Decl. Ex. H (December 28, 2006 email from Lightman to Marcus, stating "We would have been stronger at answering the questions [from the SEC] if Greg and Mark of Cogent had been on the call.  They really wanted to be and even called into your office, but your assistant wouldn't patch them through, despite their request.").*

C22.  The Cogent Parties did not receive an opportunity to comment on the initial draft/filing of Innofone's registration statement.

*Kofford Decl. ¶ 10.*

Dated:  June 18, 2007
         New York, New York

                                          /s/                                          
                                          MORRISON & FOERSTER LLP
                                          Joel C. Haims (JH-9829)
                                          Mitchell M. Wong (MW-8795)
                                          Emily S. Richman (ER-2277)
                                          1290 Avenue of the Americas
                                          New York, New York  10104
                                          (212) 468-8000

                                          *Attorneys for Cogent Capital Financial LLC, Cogent Capital Investments LLC, Cogent Capital Group LLC, Gregory L. Kofford and Mark W. Holden*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2007, I caused to be served a true and correct copy of the following documents by e-mail and ECF filing on Roderick McLeod, Esq., of Jones Day, counsel for Innofone.com, Inc.; and Paula Bagger, Esq., of Cooke Clancy & Gruenthal LLP, counsel for Investors Bank & Trust Company:

(1)    The Cogent Parties' Memorandum of Law in Opposition to Innofone's Motion for Summary Judgment;

(2)    The Cogent Parties' Counterstatement of Material Facts Pursuant to Local Rule 56.1(b) in Opposition to Innofone's Motion for Summary Judgment;

(3)    Declaration of David Kaufman; and

(3)    Declaration of Gregory L. Kofford.


Dated:    New York, New York
          June 18, 2007

                                    ___/s/_____
                                        Mitchell M. Wong (MW-8795)