UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
Cogent Capital Financial LLC and Cogent ) **ECF CASE**
Capital Investments LLC, )
) No. 07 Civ. 2701 (JSR)
           Plaintiffs, )
)
           -against- )
)
Innofone.com, Incorporated, )
)
           Defendant. )
)
---------------------------------------------------------- )
Innofone.com, Incorporated, ) **ECF CASE**
)
           Plaintiff, ) No. 07 Civ. 3966 (JSR)
)
           -against- )
)
Cogent Capital Financial LLC, Cogent Capital )
Investments LLC, Cogent Capital Group LLC, )
Gregory L. Kofford, Mark W. Holden, and )
Investors bank & Trust Company, )
)
           Defendants. )
---------------------------------------------------------- x

## INNOFONE.COM, INCORPORATED'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

                                              Jones Day
                                              555 California Avenue
                                              26th Floor
                                              San Francisco, California 94104-1500
                                              Telephone:   (415) 626-3939
                                              Facsimile:    (415) 875-5700

                                              *Attorneys for Plaintiff*
                                              *Innofone.com, Incorporated*

*Of Counsel:*
    *Gidon M. Caine*
    *Roderick A. McLeod*
    *Jessica L. Repa*
    *Joanna Rosen*

## TABLE OF CONTENTS

                                                                                                                                                        **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.      THE COGENT PARTIES FAIL TO RAISE A GENUINE ISSUE OF FACT BARRING INNOFONE'S CLAIM FOR RESCISSION BASED ON ILLEGALITY ........................................................................................................... 1

        A.     The SEC Made Clear That Innofone Could Not Register Its Stock ...................... 1

        B.     The Cogent Parties' Rule 144 Argument is Unavailing ........................................ 2

        C.     The Transaction Documents Do Not Allocate The Risk ....................................... 4

        D.     Consummation of the Transaction Was Illegal Without SEC Approval ............... 5

II.     THE COGENT PARTIES' ARGUMENTS AGAINST RESCISSION FOR MUTUAL MISTAKE FAIL ................................................................................................ 5

III.    THE COGENT PARTIES FAIL TO ADDUCE FACTS SHOWING THAT THE TRANSACTION AS CONTEMPLATED REMAINS POSSIBLE ................................. 7

IV.   THE COGENT PARTIES' OWN EVIDENCE PROVES THE TRANSACTION SHOULD BE RESCINDED FOR FAILURE OF CONSIDERATION ........................... 9

V.    THE COGENT PARTIES' "UNCLEAN HANDS" ARGUMENT FAILS .................... 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page

## Cases

*Conn. Nat'l Bank v. Trans World Airlines, Inc.*,
  762 F. Supp. 76 (S.D.N.Y. 1991) ........................................................................................... 7

*Cont'l Energy Corp. v. Cornell Capital Partners L.P.*,
  04 Civ. 260 (GEL), 2005 U.S. Dist. LEXIS 38120 (S.D.N.Y. Dec. 28, 2005) ........................ 7

*Coram Healthcare Corp. v. Cigna*,
  No. 00 Civ. 2677 (RMB), 2002 U.S. Dist. LEXIS 23307 (S.D.N.Y. July 23, 2002) ............... 7

*Culver & Thiesen, Inc. v. Starr Realty Co. (NE) LLC*,
  763 N.Y.S.2d 84 (App. Div. 2d Dep't 2003) ........................................................................... 4

*DiScipio v. Sullivan*,
  816 N.Y.S.2d 576 (App. Div. 3d Dep't 2006) ......................................................................... 8

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
  165 F. Supp. 2d 615 (S.D.N.Y. 2001), *aff'd in part, rev'd in part*, 343 F.3d 189 (2d Cir. 2003)
  ................................................................................................................................................. 6

*Gould v. Bd. of Educ.*,
  616 N.E.2d 142 (N.Y. 1993) ................................................................................................... 6

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
  723 F. Supp. 976 (S.D.N.Y. 1989) .......................................................................................... 6

*Health-Chem Corp. v. Baker*,
  915 F.2d 805 (2d Cir 1990) ................................................................................................. 6, 8

*In re Adler, Coleman Clearing Corp.*,
  263 B.R. 406 (S.D.N.Y. 2001) ................................................................................................ 5

*In re Liquidation of N.Y. Agency*,
  90 N.Y.2d 410 (1997) ............................................................................................................. 6

*In re Martin Paint Stores*,
  199 B.R. 258 (S.D.N.Y. 1996) ................................................................................................ 7

*Kaiser-Frazer Corp. v. Otis & Co.*,
  195 F.2d 838 (2d Cir. 1952) .................................................................................................... 5

*Kamma Rippa Music, Inc. v. Schekeryk*,
  510 F.2d 837 (2d Cir. 1975) .................................................................................................... 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Playboy Enterprises, Inc. v. Chuckleberry Publ'g, Inc.*,
   486 F. Supp. 414 (S.D.N.Y. 1980) .................................................................................. 10

*Rekis v. Lake Minnewaska Mountain Houses, Inc.*,
   573 N.Y.S.2d 331 (App. Div. 3d Dep't 1991) ..................................................................... 6

*United States v. Zapata*,
   357 F. Supp. 2d 667 (S.D.N.Y. 2005) ................................................................................. 9

## Statutes

17 C.F.R. § 230.144 (2007) ........................................................................................................ 2

17 C.F.R. § 230.144(2)(a) (2007) ............................................................................................... 3

17 C.F.R. § 230.144(2)(e) (2007) ........................................................................................... 3, 9

## Other Authorities

22 N.Y. Jur. 2d *Contracts* § 144 (1996) ..................................................................................... 1

Louis Loss et al., Securities Regulation § 3-D-2 (3d ed. 2005) ................................................. 3

Restatement (Second) of Contracts § 151 (1981) ...................................................................... 6

Restatement (Second) of Contracts § 261, Illustration 5d (1981) ........................................... 8, 9

## PRELIMINARY STATEMENT

Try as they might, the Cogent Parties simply cannot create a genuine issue of material fact preventing the granting of summary judgment to Innofone on its Claims for Relief for rescission of the Transaction based on illegality, mutual mistake, or for declaratory relief based on impossibility and the failure of consideration.

The Cogent Parties' own evidence shows they never placed the full $50 million in bonds in escrow. They also do not dispute that they never released control of the bonds to Innofone. They ignore the elephant in the room -- that the Transaction only works if the SEC allows registration. After months of trying and multiple registration statements, that did not happen. In their opposition, the Cogent Parties urge Innofone to simply try harder or they conjure up alternatives to registration. Their suggestions do not work. This deal fractured along a number of points, providing multiple grounds for rescission. Summary judgment is appropriate here.

## ARGUMENT

### I. THE COGENT PARTIES FAIL TO RAISE A GENUINE ISSUE OF FACT BARRING INNOFONE'S CLAIM FOR RESCISSION BASED ON ILLEGALITY.

The Cogent Parties adduce no evidence creating a genuine issue of material fact. They argue instead that: (1) the SEC did not declare the transaction illegal; (2) they can offer Innofone's common stock legally using an exemption to registration; (3) Innofone assumed the risk that its common stock could not be registered; and (4) the agreements do not call for the parties to perform an illegal act. Cogent Mem. at 5-10.[1] These arguments fail.

#### A. The SEC Made Clear That Innofone Could Not Register Its Stock.

The fundamental flaw in the Cogent Parties' argument is that it ignores the SEC's comments, the content of which is beyond dispute. After multiple attempts to seek approval, on

---

[1] As Innofone explained in its opposition to the Cogent Parties' motion to dismiss, their citation to 22 N.Y. Jur. 2d *Contracts* § 144 (1996) should instead be to section 195 of that article.

December 28, 2006 the SEC warned Innofone: "we do not agree with your conclusion that the private placement is complete . . . [a]s a result *you may not register the resale of the shares of common stock issued in the private placement to Cogent until that private placement has been completed* . . . ." Declaration of Alex Lightman in Support of Innofone Mot. for Summ. J. ("Lightman Decl."), Ex. Z ¶ 1 (emphasis added); Statement of Undisputed Facts ("UF") 10, 21, 37, 50. The Cogent Parties fail to raise a genuine issue of material fact that public resale of stock would be illegal.

Nor could they. In this regard, the Cogent Parties also try to brush off their January 18, 2007 letter in which they "ask that the [SEC] permit the Company to proceed . . . and not require an unwind of the transaction." Lightman Decl. ¶ 42, Ex. AA at 6. Cogent Mem. at 5. But their words have meaning, and this Court should hold them to that meaning.

**B.    The Cogent Parties' Rule 144 Argument is Unavailing.**

The Cogent Parties urge that the Transaction can be salvaged because Innofone's common stock can be sold to the public pursuant to SEC Rule 144, codified at 17 C.F.R. § 230.144 (2007). Cogent Mem. at 2, 6-8, 13-14, 17, 20-21. The argument misconstrues the fundamental elements of the deal.

The Cogent Parties have acknowledged that without an effective registration statement, they would have to unwind the deal. Lightman Decl. ¶ 42, Ex. AA at 6. Their Complaint thus concedes that "[t]he periodic settlements of the Equity Swap and related collateral releases commence 30 days after the effective date of the registration statement[.]" Cogent Compl. ¶ 21. The Warrant and Registration Rights Agreement assume it as well. Compl. Exs. D (Warrant) § 3(d), E (Registration Rights Agreement). The Rule 144 argument tries to shift attention away from this fundamental fact. The best the Cogent Parties can do is produce two random e-mails written months after it was clear that the registration was not going to occur, which say nothing

2

about the nature of the deal as originally structured.

Second, their Rule 144 analysis fails because Rule 144 could never provide the type of financing the parties bargained for – financing for a technology company that needed the money now, not years from now. In this regard, the Cogent Parties may only resell their Innofone common stock under Rule 144 if they meet a number of requirements, including: (1) a minimum of one year has elapsed between the date of the acquisition of the securities and the resale; and (2) a strict limit on the number of shares sold during any three-month period. *See* Louis Loss, et al., Securities Regulation § 3-D-2 (3d ed. 2005). The one-year waiting period, and the limits on sales, were fundamentally at odds with the purpose of the Transaction, which was to provide two-and-a-half years worth of funding within thirty days of registration. *See* Compl. ¶¶ 25, 72. In light of the SEC's position that a private placement never occurred, the Cogent Parties also could never begin the holding period necessary to take advantage of Rule 144. Lightman Decl., Ex. Z (December 28, 2006 SEC Comment Letter) ¶ 1.[2]

With regard to the amount of stock that could be sold, under Rule 144, no sale in any three month period can exceed the greater of one percent of either: (a) the shares of that class outstanding as shown by the most recent statement of the issuer; or (b) the average weekly trading volume reported on all exchanges for the four weeks preceding the filing of the notice of sale. 17 C.F.R. § 230.144(2)(e) (2007). As of October 24, 2006, Innofone had 74,435,328 shares outstanding. Lightman Decl., Ex. EE at 12. As of June 5, 2007, Innofone's average weekly trading volume for the past 52 weeks was about 51.13 million shares. If the Cogent Parties had sold one percent of these 74,435,328 shares (as the greater of the two figures) every

---

[2] The Cogent Parties also assume that they are non-affiliates, and thus can sell within a year. By virtue of their ownership of 47 percent of Innofone common stock, they are affiliates, and must wait *two* years before they sell their stock, further undermining the Transaction's purpose. 17 C.F.R. § 230.144(2)(a) (2007). Moreover, consistent with the SEC's conclusion, the Cogent Parties never paid for the shares or released the treasury bonds, and thus the holding period has never actually commenced.

three months, they would have sold 744,353 shares a quarter, 2,977,412 shares a year, and 7,443,533 shares over thirty months – nowhere near 50 million. Thus Rule 144 sales could never have generated the $50 million the Cogent Parties agreed to make available to Innofone in exchange for 50 million shares of common stock.

### C. The Transaction Documents Do Not Allocate The Risk.

The Cogent Parties argue curiously that the parties contemplated this "illegality" at the time of contract formation. *See* Cogent Mem. at 9-10. In this regard, they cite Section 4.7 of the Securities Purchase Agreement (Compl. Ex. B § 4.7); Section 5(b)(vi) of the ISDA Master Agreement (Compl. Ex. G § 5(b)(vi)); Section 1(g) of the ISDA Master Agreement Schedule (Compl. Ex. H § 1(g)); and Sections 2 and 5 of the June 2, 2006 Equity Swap Confirmation (which was later superseded by Confirmations dated November 1, 2006) (Compl. Ex. I §§ 2, 5).

They are wrong. None of these clauses warn that registration is not a fundamental condition of the deal. Thus, the Cogent Parties' citation to *Culver & Thiesen, Inc. v. Starr Realty Co. (NE) LLC*, 763 N.Y.S.2d 84, 86 (App. Div. 2d Dep't 2003) is entirely distinguishable. Unlike the agreement in Culver which specifically addressed the possibility that the lease might violate zoning laws, and allocated the risk of that contingency, nothing in any of the transaction documents contemplated that Innofone would not be able to access the bonds because the SEC would not register its stock.[3]

The Cogent Parties also appear to argue that Innofone assumed the risk of a Rule 144 distribution, and argue that the November 1 confirmation proves this. Cogent Mem. at 9-10. Not so. The November 1 Confirmation merely lowers the number of shares that need to be registered in order for the swap to be triggered, from 18.5 million to 10 million shares. *Compare*

---

[3] It also bears remembering that the Cogent Parties never actually ceded control over the Treasury bonds. *See* Lightman Decl. ¶ 39, Ex. X ¶ 7. Indeed, they never even bothered to deposit the full $50 million in bonds into escrow. *See* Exs. A and B, Declaration of Gregory L. Kofford ("Kofford Decl.") (letters to escrow agent showing deposit of only $49,950,000).

4

Complaint Ex. I (June 2 Confirmation) at 6 *with* Ex. K at 6 (November 1 Confirmation). The transaction's basic purpose remained unchanged – thirty months of financing.

### D. Consummation of the Transaction Was Illegal Without SEC Approval.

The Cogent Parties argue that the agreements themselves do not contain a provision which on its face is illegal. *See* Cogent Mem. at 10-11. They claim that "at most, [Innofone] alleges that, if the parties attempted to sell the shares without registration or an exemption from registration, the parties would be violating the law. *Such a contingency is not contemplated by the plain text of the agreements, nor was it contemplated by the parties at the time of contracting.*" Cogent Mem. at 10 (emphasis added). This admission neatly encapsulates why the Transaction should be rescinded for mistake of fact. *See infra* § II.

The Cogent Parties continue that "[t]his fact easily distinguishes the Transaction from the cases cited by Innofone." Cogent Mem. at 10 (discussing *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838 (2d Cir. 1952), and *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406 (S.D.N.Y. 2001)). Although it is unclear what "fact" they are referring to, what is clear is that in both *Kaiser-Frazer* and *Adler* the contracts were facially valid, but were held to be unenforceable because they would have resulted in an illegal act. *See* 195 F.2d at 843-44; 263 B.R. at 492-94. That is what occurred here. Although the Cogent Parties try to distinguish the other cases on their facts, they cannot dispute that the transaction requires the performance of an illegal act before Innofone can obtain the benefit of its bargain.

## II. THE COGENT PARTIES' ARGUMENTS AGAINST RESCISSION FOR MUTUAL MISTAKE FAIL.

The Cogent Parties argue that summary judgment is inappropriate because the SEC's approval of registration of Innofone's common stock was a future event. *See* Cogent Mem. at 12-15. Not so.

The SEC's registration of the shares was a present condition of the deal, not a prediction. *See* UF 16, 17, 18. The mistaken belief "must relate to the facts as they exist at the time of the making of the contract." Restatement (Second) of Contracts § 151 (1981); *see Rekis v. Lake Minnewaska Mountain Houses, Inc.*, 573 N.Y.S.2d 331, 335 (App. Div. 3d Dep't 1991) ("it is the general rule that a contract [may be rescinded] if the parties entered into [it] under a mutual mistake of fact which is substantial and existed at the time [it] was entered into").

All the parties assumed SEC approval and structured the deal to pass SEC muster. *Cf. In re Liquidation of N.Y. Agency*, 90 N.Y.2d 410, 424 (1997) (mistake relating to bank's status arose after contract formation).[4] If registration were not critical, why would the parties have spent months trying to register the shares? *See* UF 19, 20. If registration were not critical, why did the Cogent Parties tell the SEC that a rejection of registration would cause the deal to be unwound? These facts stress the materiality of the mistaken belief. *See Gould v. Bd. of Educ.*, 616 N.E.2d 142, 146 (N.Y. 1993) (mistake regarding employee's status was "critical").

The Cogent Parties' authorities thus are distinguishable because none involve a mistake as fundamental as the one involved here. *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615, 624 (S.D.N.Y. 2001) (increase in shares offered not fundamental), *aff'd in part, rev'd in part*, 343 F.3d 189 (2d Cir. 2003); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 984 (S.D.N.Y. 1989) (misrepresentations and mistake did not alter the "total mix" of what plaintiff understood the deal to be).

Indeed, the parties thought that "SEC approval was a foregone conclusion." Cogent Mem. at 12. Cogent has admitted that the underlying purpose of the contract was to provide Innofone with access to $50 million in bonds. On June 13, 2006, Mark Holden acknowledged

---

[4] The Cogent Parties miscite *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir 1990), for the proposition that there was "no mistake where contracting parties failed to predict substantial drop in stock price." There, the court held that because plaintiff expressly assumed the risk of stock drop, mistake was negated. *Id.*

6

that the Transaction was purposefully crafted such that Innofone's access to the equity would "take[] place through a defined schedule . . . beginning 30 days after registration of the shares . . . ." Lightman Decl., Ex. N. Ten months later, in its Complaint, Cogent admitted that Innofone would only obtain access to the bonds "upon satisfaction . . . of certain conditions. Among those conditions is a requirement that Innofone maintain an effective registration statement . . . ." Compl. ¶ 21. These are facts from which the Cogent Parties cannot now escape.[5]

### III. THE COGENT PARTIES FAIL TO ADDUCE FACTS SHOWING THAT THE TRANSACTION AS CONTEMPLATED REMAINS POSSIBLE.

Cogent argues that the contract is still objectively possible to perform. *See* Cogent Mem. at 16. Not so. Cogent forgets that the SEC has told the parties it will not register Innofone's shares, rendering performance impossible. *See In re Martin Paint Stores*, 199 B.R. 258, 265-66 (S.D.N.Y. 1996), *aff'd*, 207 B.R. 57 (S.D.N.Y. 1997).[6]

Innofone has demonstrated that performance is impossible. *Continental Energy* explains the factual showing for impossibility. *Cont'l Energy Corp. v. Cornell Capital Partners L.P.*, No. 04 Civ. 260 (GEL), 2005 U.S. Dist. LEXIS 38120, at *10 (S.D.N.Y. Dec. 28, 2005). Innofone made this showing: it attempted to register its stock four times; and persisted despite the SEC's

---

[5] The Cogent Parties discuss their dealings with Aegis Assessments, Inc. *See* Cogent Mem. at 13. This is irrelevant here. Equally irrelevant is their authority regarding summary judgment on issues of motive or intent. *See id.* at 12. This case involves undisputed facts. The Cogent Parties argue that they want to depose Innofone's witnesses. *Id.* at 14, n.7. They fail to "submit an affidavit explaining, *inter alia*, the facts that are sought, how they are to be obtained and . . . how these facts are expected to create a genuine issue of material fact." *Conn. Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991). The Cogent Parties cite *Coram Healthcare Corp. v. Cigna*, No. 00 Civ. 2677 (RMB), 2002 U.S. Dist. LEXIS 23307, at *43 (S.D.N.Y. July 23, 2002) for exactly the opposite proposition for which it stands. It holds that raising new claims in submissions in *opposition* to summary judgment is inappropriate.

[6] The Cogent Parties cannot distinguish *Martin Paint Stores*, which holds that performance is discharged where government action makes performance impossible. 199 B.R. at 266. Their authority is inapposite because it involves force majeure, economic hardship, or the failure to perform a condition subsequent.

7

questioning the deal from the inception. UF 32-33, 35-38. Unfortunately, the deal was dead on arrival at the SEC.

Cogent simply cannot ignore that the Transaction was predicated upon effective registration. They admit as much in their complaint. *See* Lightman Decl., Ex. O, Cogent Compl. ¶ 21; UF 34. Their documents concede that the point of the equity swap was to provide Innofone with immediate financing for 30 months. *See id.* at Ex. M ("our highest priorities will be to get the SB-2 registering your shares approved"); Ex. N ("The receipt of any additional funds via the equity swap . . . takes place through a defined schedule over 30 months . . . which schedule has been designed with timing intended to coordinate with INFN's cash requirements."). It is not merely that Innofone "desired" this arrangement or that performance has become more difficult or slow. *See* Cogent Mem. at 17; *cf. Health-Chem Corp. v. Baker*, 915 F.2d, 805, 810 (2d Cir. 1990); *DiScipio v. Sullivan*, 816 N.Y.S.2d 576, 578 (App. Div. 3d Dep't 2006). As the Cogent Parties' own words illustrate, the parties purposefully "designed" the Transaction to commence upon registration.[7] Indeed, there is no need for a registration rights agreement if shares are not going to be registered. *See* Cogent Mem. at 18. Non-registration did not just make financing more cumbersome. It made it impossible.

The Cogent Parties argue that since Innofone's stock can be offered to the public under Rule 144, the Transaction is not impossible. *See* Cogent Mem. at 17. This distorts the impossibility doctrine. As the Second Restatement of Contracts explains,

> Although the rule stated . . . is sometimes phrased in terms of "impossibility," it has long been recognized that it may operate to discharge a party's duty even though the event has not made performance absolutely impossible. This Section, therefore, uses "impracticable" . . . to

---

[7] The Cogent Parties' statements and the Transaction documents prove neither party assumed the risk of non-registration. *See* Cogent Mem. at 18. The Registration Rights Agreement confirms that registration is a condition precedent. Section 4.7 of the Securities Purchase Agreement does not allocate risk. And the November 1, 2006 Swap Confirmation highlights that a Rule 144 exemption could not have met Innofone's needs over 30 months.

8

> describe the required extent of the impediment to performance.
> Performance may be impracticable because extreme and unreasonable
> difficulty, expense, injury, or loss to one of the parties will be involved.

Restatement (Second) of Contracts § 261, Illustration 5d (1981). The deal would be pragmatically impossible to consummate even under Rule 144 because the Rule's restrictions on the quantity of shares which may be publicly re-sold would have prevented Innofone from ever accessing anything near the $50 million in bonds. *See* 17 C.F.R. § 230.144(2)(e).

The Cogent Parties suggest that Innofone "restate its financial statements and re-file its registration statement with the SEC." Cogent Mem. at 17, *see also id.* at 19. However, "[t]he law does not require the doing of a futile act." *United States v. Zapata*, 357 F. Supp. 2d 667, 668 n.1 (S.D.N.Y. 2005) (citation omitted). The SEC repeatedly rejected Innofone's and the Cogent Parties' attempts to register Innofone's stock. Enough is enough. Unlike the plaintiff in *Kamma Rippa Music, Inc. v. Schekeryk*, 510 F.2d 837, 842-43 (2d Cir. 1975), Innofone did not create the impossibility.

## IV. THE COGENT PARTIES' OWN EVIDENCE PROVES THE TRANSACTION SHOULD BE RESCINDED FOR FAILURE OF CONSIDERATION.

The Cogent Parties' argument regarding consideration fails because they cannot show that they provided the consideration contemplated by the Transaction. *See* Cogent Mem. at 20-21.

First, their own documents show that they placed only $49,950,000 in escrow, not the $50,000,000 agreed upon. Kofford Decl., Exs. A & B. Second, they never dispute that they gave up control of the bonds. Reinforcing this concession, Investors Bank & Trust has notified the parties that it is in the process of amending its Answer to Innofone's Complaint in order to deny that the bonds were deposited into escrow on June 2, 2006. Third, Innofone bargained for access to the bonds, but has been unable to do so, even though it must pay interest on them. UF 47-52. Innofone's financial statements assume that the rest of the contract can be performed.

9

Lightman Decl., Ex. W at 12.[8] Through no fault of Innofone this is impossible, and the Transaction is worthless to it.

## V.     THE COGENT PARTIES' "UNCLEAN HANDS" ARGUMENT FAILS.

The Cogent Parties argue that Innofone's December 29, 2006 and January 11, 2007 disclosures that it would restate its financial statements shows that it has unclean hands. *See* Cogent Mem. at 21-24. Not so. On December 8, Innofone disclosed that it "did not properly account for its loss on the Equity Swap Agreement resulting in a writedown of fees paid in conjunction with the Equity Swap Agreement and an additional expense of $9,161,641 as unrealized loss on Equity Swap Agreement." Lightman Decl., Ex. FF at F-19. Because the Cogent Parties participated in the discussions with the SEC (*see* Declaration of Arthur Marcus ¶¶ 8, 11), contrary to their intimations, they knew about the restatement before December 29.[9] *See* Declaration of David Kaufman ¶ 7. In any case, on January 18, 2007, *after* the alleged revelations, they pleaded with the SEC to "permit [Innofone] to proceed . . . and not require an unwind of the transaction." Lightman Decl., Ex. AA at 6. Their position therefore is nothing more than a spurious attempt to avoid summary judgment. *See Playboy Enterprises, Inc. v. Chuckleberry Publ'g, Inc.*, 486 F. Supp. 414, 435 (S.D.N.Y. 1980) (unclean hands a "limited device" used only for egregious conduct).

---

[8] Indeed, it was the accounting for the Transaction that led the SEC to demand the restatement that the Cogent Parties stress shows unclean hands. *See infra* § V.

[9] The two announcements mention that the restatement will cover the accounting for certain warrants, but these are minor compared with the size of the transaction at issue here.

## CONCLUSION

For the foregoing reasons, Innofone's motion for summary judgment should be granted.

Dated: San Francisco, California  
       June 22, 2007

JONES DAY

By: /s/ _____  
    Roderick A. McLeod (RM 4936)

555 California Avenue, Suite 2600  
San Francisco, California 94104  
Telephone: (415) 626-3939  
Facsimile: (415) 875-5700

Of Counsel:

Gidon M. Caine  
Jessica L. Repa  
Joanna Rosen

Attorneys for Plaintiff  
Innofone.com, Incorporated

SVI-48000v3

11

## CERTIFICATE OF SERVICE

I, Julie A. Gleaves, declare: I am employed in Santa Clara County, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address is: 1755 Embarcadero Road, Palo Alto, California 94303. On June 22, 2007, I served true and correct copies of

   (1) INNOFONE.COM, INCORPORATED'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT;

   (2) PLAINTIFF'S RESPONSE AND COUNTERSTATEMENT OF MATERIAL FACTS TO THE COGENT PARTIES' COUNTERSTATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFF INNOFONE.COM, INCORPORATED'S MOTION FOR SUMMARY JUDGMENT;

   (3) APPENDIX OF UNREPORTED AUTHORITIES CITED IN INNOFONE.COM, INCORPORATED'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**via ecf filing** on all counsel so registered. Counsel for the parties were also served via e-mail at jhaims@mofo.com, mwong@mofo.com, erichman@mofo.com, and pbagger@ccg-law.com.

I declare that I am employed within the office of a member of the bar of this Court at whose direction the service was made.

Dated: Palo Alto, California
       June 22, 2007

_____
Julie A. Gleaves

SVI-48051v1