UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
Cogent Capital Financial LLC and Cogent Capital
Investments LLC,                                    :

                           Plaintiffs,        :

              - against -            :

Innofone.com, Incorporated,                        :

                       Defendant.         :
------------------------------------------------------------- x
Innofone.com, Incorporated,                        :

                        Plaintiff,        :

              - against -            :

Cogent Capital Financial LLC, Cogent Capital        :
Investments LLC, Cogent Capital Group LLC,
Gregory L. Kofford, Mark W. Holden, and Investors  :
Bank & Trust Company,

                             :

                       Defendants.         :
------------------------------------------------------------- x

**ECF CASE**

No. 07 Civ. 2701 (JSR)

**ECF CASE**

No. 07 Civ. 3966 (JSR)

## APPENDIX OF UNREPORTED AUTHORITIES CITED IN INNOFONE.COM, INCORPORATED'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Jones Day
555 California Avenue
26th Floor
San Francisco, California 94104-1500
Telephone (415) 626-3939
Fax (415) 875-5700

*Attorneys for Plaintiff*
*Innofone.com, Incorporated*

*Of Counsel:*
   *Gidon M. Caine*
   *Roderick A. McLeod*
   *Jessica L. Repa*
   *Joanna Rosen*

# TABLE OF UNREPORTED AUTHORITIES

**Tab**

*Cont'l Energy Corp. v. Cornell Capital Partners L.P.*,
   04 Civ. 260 (GEL), 2005 U.S. Dist. LEXIS 38120 (S.D.N.Y. Dec. 28, 2005) ........................ 1

*Coram Healthcare Corp. v. Cigna*,
   No. 00 Civ. 2677 (RMB), 2002 U.S. Dist. LEXIS 23307 (S.D.N.Y. July 23, 2002) ................ 2

# TAB 1

2005 U.S. Dist. LEXIS 38120, *

LEXSEE 2005 US DIST LEXIS 38120



Cited
As of: Jun 22, 2007

**CONTINENTAL ENERGY CORPORATION, Plaintiff, -against- CORNELL CAPITAL PARTNERS, L.P. and YORKVILLE ADVISORS MANAGEMENT, LLC, Defendants.**

**04 Civ. 260 (GEL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 38120*

**December 28, 2005, Decided
December 28, 2005, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, an oil and gas exploration firm, sued defendant, a private equity fund, seeking a declaratory judgment that an investment contract between the parties was void for lack of consideration. The fund counterclaimed for a declaration that the contract was valid and enforceable and was breached by the firm. The parties cross-moved for summary judgment on all claims.

**OVERVIEW:** The contract obliged the fund to purchase some of the firm's common stock. The firm was obliged to file a registration statement with the Securities and Exchange Commission (SEC) that would permit the fund to resell any stock issued under the contract, but it never did so and thus never became empowered to demand capital from or issue stock to the fund. The firm did not comply with the fund's demand to provide stock constituting the second portion of the commitment fee, and this action followed. The court held as the contract enabled the firm to draw down financing as needed, there was more than ample consideration. The firm's claim that the contract was unenforceable due to impossibility of performance, as SEC regulations prevented it from registering its securities, failed as it provided no admissible evidence or legal authority to support this assertion. As the firm's other claims were premised on the invalidity or frustration of the agreement, the fund was entitled to summary judgment on them as well. As the firm did not deliver the second portion of the commitment fee, the firm was enti-

tled to a declaratory judgment that the contract was valid and that the firm breached it.

**OUTCOME:** The fund's motion for summary judgment was granted and the firm's motion was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1] Summary judgment shall be granted if the court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. A genuine issue of material fact exists if the evidence is such that a reasonable jury could find in favor of the non-moving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
[HN2] The party moving for summary judgment bears the burden of establishing the absence of any genuine issue of material fact.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Evidence > Testimony > Credibility > General Overview*
[HN3] In deciding a summary judgment motion, the court must resolve all ambiguities and draw all reasonable in-

ferences in the light most favorable to the party opposing the motion. In addition, the court is not to make any credibility assessments or weigh the evidence at this stage.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > Cross-Motions*
[HN4] That both parties have moved for summary judgment does not necessarily mean that summary judgment is appropriate for either side.

*Contracts Law > Consideration > Adequate Consideration*
[HN5] Under New York law, it is well established that the slightest consideration is sufficient to support the most onerous obligation and that the courts are not to inquire into the adequacy of consideration. Generally, parties are free to make their own bargains, and, absent a claim of fraud or unconscionability, it is enough that something of real value in the eye of the law was exchanged.

*Contracts Law > Performance > Impossibility of Performance > General Overview*
[HN6] It is common ground that parties cannot ordinarily contract to perform the impossible; the doctrine of impossibility is implicated where performance is forbidden or prevented by law or decree or administrative action in that location. So long as the contracting party is acting in good faith, it is discharged from duty when the performance could not be effected pursuant to local law.

*Civil Procedure > Summary Judgment > Evidence*
[HN7] Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.

*Contracts Law > Performance > Impossibility of Performance > General Overview*
[HN8] The doctrine of impossibility excuses a party's performance only when an intervening development makes performance objectively impossible. It is not enough that a party believes that performance is impossible; for the impossibility doctrine to apply, performance must actually be impossible.

**COUNSEL:** [*1] Richard S. Heller and Susan C. Stanley, Shustak Jalil & Heller, New York, NY, for plaintiff.

Seth T. Taube, Richard B. Harper, and Margaret Dooley Nolan, Baker Botts LLP, New York, NY, for defendants.

**JUDGES:** GERARD E. LYNCH, United States District Judge.

**OPINION BY:** GERARD E. LYNCH

**OPINION**

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge:

Plaintiff Continental Energy Corporation ("Continental"), an oil and gas exploration firm, brings this action against defendants Cornell Capital Partners, L.P. and Yorkville Advisors Management, LLC (collectively, "Cornell"), a private equity fund, seeking a declaratory judgment that a an investment contract between Continental and Cornell is void for lack of consideration, and related relief. Cornell counterclaims for a declaration that the contracts are valid and enforceable, and have been breached by Continental. The parties have cross-moved for summary judgment on all claims. Defendants' motion will be granted and plaintiff's denied.

**BACKGROUND**

The facts are straightforward and essentially uncontested. Seeking to raise capital to drill for oil in Indonesia, Continental approached a number of investors. Eventually, Cornell (a group [*2] composed of former members of another investment firm that had negotiated an abortive transaction with Continental) entered an equity finance agreement with Continental. The terms of the transaction were embodied in a series of written agreements centered on an Equity Line of Credit Agreement (the "Agreement"), which were signed on September 18, 2001.

Under the terms of the Agreement, Cornell committed to purchase up to $ 20 million worth of Continental common stock, at Continental's discretion, over the following three years. The Agreement authorized Continental to issue shares of its stock to Cornell, which Cornell was obliged to purchase at a share price equal to 91% of the lowest closing bid price of Continental stock during a specified trading period. (Agreement § 2.1(a).) As a condition precedent to Continental's right to issue stock to Cornell, Continental was obligated to file a registration statement with the Securities and Exchange Commission ("SEC") that would permit Cornell to resell any stock issued pursuant to the Agreement. (Id. § 7.2(a).) In this regard, Continental agreed to "use its best efforts to comply with all applicable rules and regulations of the SEC [*3] in connection with any registration" of the securities. (Registration Rights Agreement § 3n.) In ex-

2005 U.S. Dist. LEXIS 38120, *

change for Cornell's commitment to provide such capital on demand, Continental agreed to pay certain commitment fees, including issuing one million shares of its common stock upon execution of the Agreement, and $ 250,000 worth of additional shares either six months after the filing of an effective registration statement or nine months after the execution of the Agreement, whichever was earlier. (Agreement § 12.4(b).)

The Agreement includes a merger clause, providing that the Agreement supersedes all prior oral or written agreements among the parties, and further providing that "no provision of this Agreement may be waived or amended other than by an instrument in writing signed by the party to be charged with enforcement." (Id. § 12.2.) The Agreement also contains a choice of law clause providing that the Agreement shall be governed by and interpreted according to New York law. (Id. § 9.1.)

On or about the date of the execution of the Agreement, Continental did deliver the one million shares of stock as promised. However, Continental never filed a registration statement [*4] as required by the Agreement. Accordingly, it never became empowered to demand capital from or issue stock to Cornell as contemplated by the Agreement. In July 2002, Cornell demanded that Continental provide the $ 250,000 worth of stock constituting the second portion of the commitment fee, which (given that a registration statement had not been filed) had come due nine months after the execution of the Agreement. Continental never complied with this demand, and this action followed.

## DISCUSSION

### I. Summary Judgment Standard

[HN1] Summary judgment shall be granted if the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party. *Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001).* [HN2] The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* [HN3] In deciding a summary [*5] judgment motion, the Court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion." *Cifarelli v. Babylon, 93 F.3d 47, 51 (2d Cir. 1996).* In addition, the Court is not to make any credibility assessments or weigh the evidence at this stage. *Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).*

[HN4] That both parties have moved for summary judgment does not necessarily mean that summary judgment is appropriate for either side. *Home Ins. Co. v. Aetna Casualty & Surety Co., 528 F.2d 1388, 1390 (2d Cir. 1976).* In this case, however, the mutual agreement that the case can be resolved on summary judgment is correct. The dispute between the parties turns entirely on the interpretation of the Agreement, and the legal effect of a handful of additional undisputed facts.

### II. Validity of the Agreement

Continental's claim that the Agreement is void for lack of consideration is totally lacking in merit. [HN5] Under New York law, "it is well established that the 'slightest consideration is sufficient to support the most onerous obligation' and that the courts are not to inquire into [*6] the adequacy of consideration." *Caisse Nationale de Credit Agricole v. Valcorp, Inc., 28 F.3d 259, 265 (2d Cir. 1994),* quoting *Mencher v. Weiss, 306 N.Y. 1, 8, 114 N.E.2d 177 (1953).* "Generally, parties are free to make their own bargains, and, absent a claim of fraud or unconscionability, it is enough that something of real value in the eye of the law was exchanged." *Ferguson v. Lion Holding, Inc., 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004)* (internal citations and quotations omitted).

Here, there is no question that the Agreement provided to Continental extremely valuable legal rights, far beyond the "slightest consideration" requisite to create a binding contract. Under the Agreement, Continental acquired the right to demand and receive from Cornell infusions of capital of up to $ 20 million, at its sole discretion. Like an agreement to create a line of credit in exchange for the payment of a fee, the Agreement provided Continental with an ability to draw down financing as needed. This is more than ample consideration to support the commitment fees Continental obligated itself to pay, whether or not it ever called upon the financing that Cornell [*7] pledged to provide.

### III. Impossibility of Performance

In its opposition to Cornell's motion for summary judgment, Continental shifts ground, essentially abandoning the argument of lack of consideration in favor of a claim that the Agreement is unenforceable because of impossibility of performance. [1] Continental argues that performance of the Agreement was frustrated because it was legally impossible for it to file a registration statement, since the transaction contemplated in the Agreement "was not consistent with applicable SEC regulations." (Pl. Mem. Opp. Summ. J. 5.) According to Continental, the Agreement "was executed in a form no longer approved by the SEC," as the "pricing mechanism . . . set forth in the . . . Agreement would not be acceptable to the SEC," and there was thus "no way a registration statement

Case 1:07-cv-03966-JSR    Document 24-2    Filed 06/22/2007    Page 7 of 25

Page 4
2005 U.S. Dist. LEXIS 38120, *

would be approved by the SEC with that pricing mechanism in it." (Id.) Continental's argument, however, is completely devoid of legal or factual support.

   1  Continental also makes no effort to defend, and therefore is deemed to have abandoned, its Second Cause of Action, which asserts that Cornell breached the Agreement by failing for preform certain brokerage and research services. (Compl. PP10, 18.) In any event, the claim is meritless, as the Agreement contains no terms requiring Cornell to provide any such services, and the merger clause precludes Continental from relying on any promises allegedly made during negotiations preceding execution of the written Agreement.

[*8] [HN6] It is common ground that "parties cannot ordinarily contract to perform the impossible; the doctrine of impossibility is implicated where performance is forbidden or prevented by law or decree or administrative action in that location. . . . So long as the contracting party is acting in good faith, it is discharged from duty when the performance could not be effected pursuant to local law." *In re Flag Telecom Holdings Ltd., 320 B.R. 763, 771 (S.D.N.Y. 2005)* (internal citations and quotations omitted). Indeed, the Agreement itself contains a provision requiring that the transaction comply with applicable laws and SEC regulations. (Agreement § 7.2(e).) Thus, if SEC regulations in fact prohibited the registration of the Continental stock that is the condition precedent to the performance of the Agreement, Continental would be correct that its performance would be excused.

   However, Continental offers no evidence whatsoever of any SEC regulation to that effect. Nowhere in its brief does it cite or refer to a single SEC regulation, decision, or pronouncement of any kind, nor does it identify the source of the prohibition that it claims prevented registration of stock [*9] priced according to the mechanism set forth in the Agreement. Nor does Continental present an affidavit or testimony from any expert witness knowledgeable in SEC practice to support the proposition that the SEC has a policy or practice of refusing registration to securities so priced. The closest thing to evidence of this kind proffered by Continental is testimony by its CEO Richard McAdoo that he was advised by a lawyer named Clay Parker that registration would be impossible. (McAdoo Dep. 92-97.) This statement, however, is inadmissible hearsay if offered to prove the truth of the matter asserted -- that is, that SEC regulations or policies would in fact prevent registration of the securities with the pricing mechanism contained in the Agreement. *Fed. R. Evid. 801(c)*, *802*. [HN7] "Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)*; see also *Fed. R. Civ. P. 56(e)* (summary judgment affidavits

"shall set forth such facts as would be admissible in evidence"). [*10] [2]

   2  The hearsay rule does not preclude admission of Parker's statement to prove the state of mind of the Continental executives who allegedly were privy to the statement, but for that purpose it is irrelevant; [HN8] the doctrine of impossibility "excuses a party's performance only when [an intervening development] makes performance objectively impossible." *Kell-Kim Corp. v. Central Markets, Inc., 70 N.Y.2d 900, 902, 519 N.E.2d 295, 524 N.Y.S.2d 384 (1987)*, quoted in *Burke v. Steinman, 2004 U.S. Dist. LEXIS 8930, No. 03 Civ. 1390 (GEL), 2004 WL 1117891, at *9 (S.D.N.Y. May 18, 2004)*. It is not enough that Continental *believed* that performance was impossible; for the impossibility doctrine to apply, performance must actually *be* impossible.

Continental thus provides neither admissible evidence nor citation to legal authority to support its bald assertion that SEC regulations prevented the registration of the securities and the performance of the Agreement. [3] It has had ample opportunity to do so. Cornell demanded compliance with the [*11] commitment fee provisions of the Agreement in July 2002; this action has been pending since January 2004. Nevertheless, Continental proffered in its opening brief no supporting legal analysis, evidentiary support, or expert opinion to back up its claims regarding SEC regulations or policy. Cornell's submission in opposition to Continental's cross-motion, which calls attention to the absence of supporting authority or evidence, was filed in June 2005; Continental has not filed a reply brief. On this record, Continental has raised no genuine issue of material fact regarding impossibility of performance.

   3  Cornell, in contrast, asserts that the SEC has approved a registration that contains a pricing mechanism similar to the one in this Agreement. (Def. Reply Mem. Supp. Summ. J. 6-7, citing Nolan Decl. II Ex. K.) While the provisions at issue in the example provided by Cornell do indeed appear similar to those here, the Court declines the invitation to make an independent evaluation of SEC practice based on a single instance, or an independent analysis of whether the two cases are indeed parallel. Continental bears the burden of demonstrating impossibility, *United States v. Int'l Bhd. of Teamsters, 816 F. Supp. 864, 873 (S.D.N.Y. 1992)*, and it has offered no evidence whatsoever to support its theory. That is sufficient to reject Continental's position.

[*12] IV. Remaining Claims

Continental's claims for unjust enrichment, conversion, and replevin, which seek return of the one million shares already provided to Cornell, are all premised on the invalidity or frustration of the Agreement. Since Continental's position in this regard is without merit, Cornell is entitled to summary judgment on those claims as well. As there is no dispute that Continental has not performed its promise to deliver the second portion of the commitment fee, and its defense to Cornell's claim for breach of contract is premised solely on its claims of invalidity of the contract, Continental is entitled to a declaratory judgment not only that the Agreement is valid and enforceable but also that Continental has breached the contract. In light of that determination, Cornell's counterclaim sounding in promissory estoppel and detrimental reliance is dismissed as moot.

**CONCLUSION**

Accordingly, for the reasons stated above, defendants' motion for summary judgment dismissing plaintiff's claims is granted; defendants' motion for summary judgment in their favor on their counterclaims is granted as to Count One and Count Two, and Count Three is dismissed as [*13] moot; and plaintiff's cross-motion for summary judgment is denied.

SO ORDERED.

Dated: New York, New York

December 28, 2005

GERARD E. LYNCH

United States District Judge

# TAB 2

2002 U.S. Dist. LEXIS 23307, *

LEXSEE 2002 US DIST LEXIS 23307



Positive
As of: Jun 19, 2007

**CORAM HEALTHCARE CORPORATION, Plaintiff, -against-CIGNA, DELTA AIRLINES, and THE DELTA AIRLINES HEALTH PLAN (Alva Cook), Defendants.**

**00 Civ. 2677 (RMB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2002 U.S. Dist. LEXIS 23307*

**July 23, 2002, Decided**

**DISPOSITION:**    [*1] Defendants' motion for summary judgment granted. Plaintiff's cross-motion for summary judgment denied; and its motion for order enlarging time to file proof of service granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, an employer, its claims administrator, and a health plan, filed a motion for summary judgment pursuant to *Fed. R. Civ. P. 56* after the plan had successfully removed plaintiff healthcare corporation's state action to federal court under the Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001 et seq.*, and diversity of citizenship. The corporation also filed a cross-motion for summary judgment.

**OVERVIEW:** The corporation initiated its action asserting a single breach of contract claim against defendants, seeking damages as assignee for treatment, services, supplies, and equipment provided to the covered employee under the plan. The claims at issue sought reimbursement for home infusion care provided by the corporation to the employee. On its cross-motion, the corporation asserted additional causes of action for misrepresentation, estoppel, and breach of fiduciary duty. The court first addressed the claims administrator's and employer's argument that they were not the proper parties against whom the claims should have been brought. The court agreed, and held that ERISA permitted suits to recover benefits only against the plan as an entity. The employer and the plan also argued that the corporation failed to serve them within 120 days of filing the com-

plaint as required by *Fed. R. Civ. P. 4(m)*. The court exercised its discretion to extend the 120-day period of service. Addressing the exhaustion requirement, the court found that the corporation had not made the clear and positive showing that exhaustion of administrative remedies would have been futile.

**OUTCOME:** The court granted defendants' motion for summary judgment and denied the corporation's cross-motion for summary judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] Summary judgment may not be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*

2002 U.S. Dist. LEXIS 23307, *

*Civil Procedure > Summary Judgment > Standards > Appropriateness*

[HN2] The moving party in a motion for summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. If the moving party meets its burden, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat the motion for summary judgment. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences in favor of the opposing party. When both parties have moved for summary judgment, the court considers each motion separately, resolving all ambiguities and drawing all inferences from the record in favor of the party against whom summary judgment is sought. Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. The nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment.

*Contracts Law > Contract Conditions & Provisions > General Overview*
*Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & Misrepresentation*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption*

[HN3] The civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1001 et seq.*, operate to recharacterize state law claims for benefits as actions arising under federal law. When a claim asserted in state court is preempted by the civil enforcement provisions of ERISA, removal is allowed on the basis of federal question jurisdiction.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan Benefits*

[HN4] The Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001 et seq.*, permits suits to recover benefits only against the plan as an entity.

*Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions*

*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > Dismissals*
*Civil Procedure > Dismissals > General Overview*

[HN5] *Fed. R. Civ. P. 4(m)* provides that if service is not made within 120 days after filing of the complaint, the court shall dismiss the action without prejudice or direct that service be effected within a specified time. In a removed action, the 120-day period begins to run on the date the action is removed to federal court. If a plaintiff establishes good cause for the failure to serve the summons and complaint within the 120-day period, *Rule 4(m)* provides that the court shall extend the time for service for an appropriate period. Courts generally consider three factors to determine whether such good cause exists: (1) whether the delay resulted from inadvertence or whether a reasonable effort to effect service has occurred, (2) prejudice to the defendant, and (3) whether the plaintiff has moved for an enlargement of time to effect service under *Fed. R. Civ. P. 6(b)*. In general, "good cause" exists only in exceptional circumstances where the failure to serve process in a timely manner results from circumstances beyond the plaintiff's control. Mistake or inadvertence of counsel does not constitute 'good cause' justifying failure to effect timely service of process.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Governments > Legislation > Statutes of Limitations > General Overview*

[HN6] Even absent good cause, the court may exercise its discretion to extend the time for service. In exercising its discretion to extend the time for service, the court should consider (1) whether the applicable statute of limitations would bar the re-filed action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's relief from the provision.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*

[HN7] A plaintiff's cause of action accrues upon a clear repudiation that is known, or should be known, to the plaintiff.

*Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies*

Case 1:07-cv-03966-JSR    Document 24-2    Filed 06/22/2007    Page 12 of 25

Page 3
2002 U.S. Dist. LEXIS 23307, *

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Exhaustion of Remedies*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Claim Procedures*
[HN8] Before addressing the merits of a plaintiff's Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1001 et seq.*, claims the court must consider the threshold question of whether the plaintiff exhausted its administrative remedies before filing the suit. ERISA requires that employee benefit plans afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. Thus, exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Exhaustion of Remedies*
[HN9] The United States Court of Appeals for the Second Circuit has recognized the firmly established federal policy favoring exhaustion of administrative remedies in Employee Retirement Income Security Act of 1974 (ERISA), *29 U.S.C.S. § 1001 et seq.*, cases. The doctrine of exhaustion of administrative remedies is founded upon the principle that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. In the ERISA context, the primary purposes of the exhaustion requirement are to (1) uphold Congress's desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo. This exhaustion requirement is a jurisdictional prerequisite to a suit for benefits under § 502 of ERISA.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Penalties*
[HN10] The futility exception in Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001 et seq.*, cases applies only where claimants make a clear and positive showing that pursuing available administrative remedies would be futile.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
[HN11] A complaint need not plead the legal theory or theories and statutory basis supporting a claim. However, at the very least, the plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. A plaintiff's failure to assert a cause of action until the last minute will inevitably prejudice the defendant. It is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Judicial Review > Standards of Review > De Novo Review*
[HN12] The United States Supreme Court has held that a denial of benefits challenged under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001 et seq.*, is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Where such discretionary authority is given to the plan administrator, a reviewing court should disturb the administrator's interpretations and actions only if they are arbitrary and capricious. A decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. In interpreting the plan, where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, the court must accept that offered by the administrators.

*Healthcare Law > Insurance > Reimbursement > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting*
*Public Health & Welfare Law > Social Security > Medicare > Providers > Reimbursement > General Overview*
[HN13] When a health care provider receives Medicare payments directly on behalf of an Employee Retirement Income Security Act of 1974, *29 U.S.C.S. § 1001 et seq.*, participant or beneficiary, the provider agrees to accept Medicare's reasonable charge for a given service thereby

2002 U.S. Dist. LEXIS 23307, *

assuring that the Medicare payments will be made directly to them.

**COUNSEL:** For CORAM HEALTHCARE CORPORATION, plaintiff: Abraham Wax, New York, NY.

For CIGNA, DELTA AIRLINES, THE DELTA AIRLINES HEALTH PLAN, defendants: Ira G. Rosenstein, Orrick, Herrington & Sutcliffe, L.L.P., New York, NY.

**JUDGES:** Richard M. Berman, United States District Judge.

**OPINION BY:** Richard M. Berman

**OPINION**

*ORDER*

    **Richard M. Berman, United States District Judge:**

    **I. Introduction**

    The crux of plaintiff's claim is that defendants incorrectly (under) calculated the amount of reimbursement owed to plaintiff for the medical services it provided to the late Alva Cook ("Cook") from February 7, 1997 to October 1, 1998.

    On or about March 8, 2000, plaintiff Coram Healthcare Corporation ("Plaintiff" or "Coram") initiated an action in New York State Supreme Court, New York County, asserting a (single) breach of contract claim against CIGNA ("CIGNA"), Delta Airlines ("Delta"), [1] and The Delta Airlines Health Plan (Alva Cook) ("Plan") [2] (collectively, "Defendants"), and seeking, [*2] among other things, damages in the amount of $ 233,951.88, [3] as assignee, for "treatment, services, supplies and equipment" provided to Cook. (Plaintiff's Complaint ("Compl.") PP 3, 8, 11). On April 6, 2000, CIGNA removed the action to federal court on the grounds that the state claim is preempted under the Employee Retirement Income Security Act of 1974, as amended, *29 U.S.C. § 1001 et seq.* ("ERISA") and that diversity of citizenship exists under *28 U.S.C. § 1332*. ("Notice of Removal" PP 4, 5, 7). Plaintiff has not opposed the removal.

    1  Though it is sued here as "Delta Airlines," Delta's actual name is "Delta Air Lines, Inc." *See* Answer of Delta Air Lines, Inc., dated February 13, 2001.

    2  Though it is sued here as "The Delta Airlines Health Plan (Alva Cook)", the Plan's actual name is the "Delta Family-Care Medical Plan." *See*

Answer of Delta Family-Care Medical Plan, dated February 13, 2001.

    3  By letter of August 14, 2000, Plaintiff sought to amend its complaint "to increase the addendum [sic] clause from $ 233,951.88 to $ 337,773.36" because it "miscalculated the damages." By Order dated August 23, 2000, this Court denied the request on the ground that the amount of damages would be determined at trial.

    [*3]  On April 23, 2001, Defendants moved for summary judgment, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. because "Plaintiff's claims fail substantively and procedurally." Defendants' Memorandum of Law in Support of Its Motion for Summary Judgment ("Def. Mem.") at 1. Specifically, Defendants argue that: (1) "Delta and CIGNA ... are not the proper parties against whom the claims should be brought," Def. Mem. at 15; (2) "the Complaints against Delta and the Plan should be dismissed for failure to timely serve," Def. Mem. at 17; (3) "Even assuming that all three Defendants were properly named and timely served ... Plaintiff's claim should be dismissed because it failed to timely exercise its right to appeal," Def. Mem. at 3, 19; and (4) "CIGNA's decision on behalf of the Plan was consistent with the reasonable interpretation of the Summary Plan Description and the Plan," Def. Mem. at 19. On May 22, 2001, Plaintiff filed its Memorandum of Law in Opposition to Delta's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl. Cross-Mem. and Opp."). Defendants filed a reply brief, dated June 12, 2001 ("Def. Reply"). Plaintiff filed [*4] a sur-reply brief, dated June 26, 2001 ("Pl. Sur-Reply"). Oral argument was held on July 23, 2002.

**For the reasons set forth below, Defendants' motion for summary judgment is granted as to CIGNA, Delta, and the Plan, and Plaintiff's cross-motion for summary judgment is denied.**

**II. Background**

    The Plan is an employee welfare benefit plan subject to ERISA. *See* Defendants' Reply Statement of Undisputed Facts ("Def. Reply SOMF") P 1. The Plan administrator (as that term is defined by ERISA, *29 U.S.C. § 1002(16)(A)*) is the Administrative Committee of Delta ("Administrative Committee"). *Id.* at P 2. The Administrative Committee is vested with broad discretion in deciding claims for benefits under the Plan. *Id.* at P 3. [4] The Administrative Committee delegated authority to decide claims and interpret the Plan to CIGNA, its claims administrator, pursuant to sections 15.02(i) and 15.05 of the Plan. Def. Reply SOMF P 6; King Dec., Ex. C at 5 ("Ef-

fective as of January 1, 1995, the Administrative Committee hereby delegates to CIGNA the exclusive discretion and authority to interpret and construe the terms of the Plan as necessary to reach factually [*5] supported conclusions with respect to the Delegated Claims and to make a full and fair review of each Delegated Claim that has been denied ....").

4   The Plan expressly provides, *inter alia:*

In addition to powers and duties otherwise stated in this Plan, the Administrative Committee shall have such duties and powers as may be necessary to discharge its responsibilities under the Plan, including, but not limited to, the following:

(a) To establish and enforce such rules, regulations, and procedures as it shall deem necessary or proper for the efficient operation and administration of the Plan;

(b) The discretionary authority to interpret and construe the Plan, and decide all questions of eligibility of any Eligible Family Member to participate in the Plan or to receive benefits under it, its interpretation and decisions to be final and conclusive;

(c) To determine the amount, manner, and time of payment of benefits which shall be payable to any Employee or Dependant ...;

***

(e) To prescribe procedures to

be followed in filing applications for benefits;

***

(g) To decide all questions concerning the Plan;

***

(i) To delegate its powers and duties as set forth in Section 15.05.

The Administrative Committee shall have the broadest discretionary authority permitted under law in the exercise of all its functions, including but not limited to deciding questions of eligibility, interpretation, and the right to benefits hereunder ....

Declaration of Brian King, Esq., dated April 20, 2001 ("King Dec."), Ex. A, Section 15.02.

[*6]  Prior to his death, Cook was a retired Delta employee who received medical benefits under the Plan. The terms and conditions of Cook's benefits are outlined in the May 1997 Nonpilot Regular Full-Time Benefits Handbook ("Summary Plan Description"). *See* King Dec., Ex. B. During the relevant time period, Cook was covered under the Plan's "Out-of-Area" option, [5] Def. Reply SOMF P 7, in accordance with which a participant pays the first $ 150 of medical costs each year as a deductible [6] and pays no more than $ 1000 as the annual out-of-pocket maximum. [7] King Dec., Ex. B at SPD 057. After the deductible is met and the participant has paid the annual out-of-pocket maximum, 100% of a retiree's "Reasonable and Customary" expenses for covered medical treatment are paid by the Plan. *Id.,* Ex. B at SPD 030. An expense which a participant is "not legally obligated to pay" is not "Reasonable and Customary." *Id.,* Ex. A at DM 67. [8] That is, the Plan excludes "expenses for services ... for which the patient is not required to pay." *Id.,* Ex. B at SPD 071.

5   "Under the Out-of-Area option, the Plan generally pays 80% of the reasonable and customary (R & C) charges for the medically necessary treatment of a nonoccupational illness, disease, or injury ... [The participant] pay[s] the remaining portion, after the annual deductible is met, plus

any charges over the R & C amount and for treatment and services not provided by the Plan." King Dec., Ex. B at SPD 050.

[*7]

6    "Before the Plan pays its share of covered medical expenses [a participant] must first meet [his/ her] medical deductible. The Out-of-Area option requires an individual deductible of $ 150 .... This deductible is not applied to [the] annual out-of-pocket maximum." King Dec., Ex. B at SPD 050.

7    "The Plan has a feature that limits the out-of-pocket expense ... that you pay so that you are not faced with unexpected, large medical bills during the year. When the 20% coinsurance portion (excluding the deductible) for an individual reaches the maximum out-of-pocket expense of $ 1,000 per individual, the Plan pays 100% of covered R & C expenses for that individual for the remainder of the calendar year." King Dec., Ex. B at SPD 050.

8    "'Reasonable and Customary' means a charge for a service or supply which does not exceed the prevailing fee in the geographical area in which the charge is incurred ... or which is determined to be reasonable for the service or supply provided." *Id.*

As a retired Delta employee, Cook was covered by the Plan and was also eligible for Medicare. [9] [*8] Def. Reply SOMF P 10. Under the Plan, Cook's Medicare coverage was his "primary" coverage, and his claims were in the first instance submitted to Medicare. King Dec., Ex. B at SPD 027-28, 030. The Plan provided, in relevant part:

> Note: If you are Medicare eligible and no longer an active employee, the Delta Plan is your secondary coverage. **You should understand that once you meet your deductible and annual out-of-pocket maximum under the Delta Plan, 100% of your covered Reasonable & Customary (R & C) expenses will be paid for the remainder of that calendar year.** Medicare will pay its portion of the expense as the primary Plan and the Delta Plan will pick up the remaining covered R & C expense, for a total of 100%."

*Id.,* Ex. B at SPD 030 (emphasis in original). The Plan also contained a "Medicare Carveout" feature, which stated:

> When the Delta Plan pays secondary to Medicare, **your benefits will be calculated based on the amount Medicare would have paid,** even if you do not apply for Medicare (Parts A & B) when you first become eligible. In other words, even if you are not enrolled in Medicare, the Delta benefit will be calculated as if you are. [*9]

*Id.* (emphasis added).

9    Medicare subsidizes the medical costs of persons sixty-five years of age or older and those who are disabled. Cook, who was sixty-nine years old when Coram began providing medical services, qualified for Medicare based on his age. *See* Declaration of Kathleen T. McGarrigle, dated April 23, 2001 ("McGarrigle Dec."), Ex. A. Medicare Part A generally covers inpatient hospital expenses, and Part B covers outpatient medical expenses not covered by Part A, including the home infusion care Coram provided to Cook. *See 42 U.S.C. § 1395 (2002) et seq.* Under Part B, the federal government reimburses participants, or their assigned health care providers, "80 percent of the reasonable charges for the services" as determined by Medicare. *42 U.S.C. § 1395(a)(1) (2002).* The Medicare participant is responsible for the remaining 20%. Under Part B, some medical service providers accept "assignment" of participant claims. Providers who accept assignment of claims against the government for services rendered under Part B of Medicare agree to accept the charges allowed by Medicare. *See 42 U.S.C. § 1395u(b)(3)(B)(ii) (2002).* It is undisputed that Coram received payment of its claims directly from Medicare and CIGNA. Def. Reply SOMF P 12.

[*10] Plaintiff provided home infusion therapy [10] to Cook for his heart condition from February 7, 1997 to October 1, 1998. Compl. PP 3, 6; Plaintiff's Statement Pursuant to Local Rule 56.1 ("Pl. SOMF") P 4; Deposition of Carol Belfiore ("Belfiore Dep.") at 39. Cook, in turn, entered into a "Service Agreement Assignment of Benefits" ("Assignment") with Coram on February 7, 1997. Def. Reply SOMF P 8. The Assignment stated, in relevant part:

> I hereby assign to [Coram] all insurance benefits and payments to which I am entitled from whatever source for any services, equipment, and supplies which are furnished to me in conjunction with my home

infusion therapy care, and I authorize [Coram] to seek such benefits and payments on my behalf.

*See* Affidavit of Chris Mater, sworn to May 22, 2001 ("Mater Aff."), Ex. C. Cook also assigned the payment of his Medicare benefits directly to Coram. [11] *Id.*

10    Home infusion therapy involves medical treatment received at home which "supplies essential nutrients, fluids, electrolytes, medication, blood or blood products directly into the patient's blood stream." *AssistGuide.com Glossary* (visited June 26, 2002) <http://www.assist-guide.com/glossary.asp?letter=H>.

[*11]

11    "I request that payment of authorized Medicare benefits be made on my behalf for any services furnished me by    ." *Id.* It is undisputed that Cook's benefits were paid to Plaintiff by Medicare. Def. Reply SOMF P 8.

The thirty-two claims at issue in this case seek reimbursement for home infusion care provided by Coram to Cook between February 7, 1997 and October 1, 1998. In order to obtain reimbursement, Coram was required to submit claim forms to CIGNA for the services rendered to Cook. King Dec., Ex. A, Section 11.01 ("All claims for benefits shall be made on the Plan's forms and contain all information requested on such forms ...."). CIGNA made the following benefit determinations on Coram's thirty-two claims: (1) on fifteen claims, CIGNA paid less than the amount requested by Coram; (2) on four claims, CIGNA paid the full amount requested by Coram; (3) on four claims, CIGNA received the claims and denied payment; and (4) on nine claims, CIGNA denies receiving the claims and paid nothing. The parties dispute the amount of reimbursement to which Coram was entitled under the Plan, [*12] including whether Coram submitted its claims in a timely fashion.

The parties agree that twenty-one of the thirty-two claims were timely submitted but dispute the appropriate amount of reimbursement owed to Coram. For fifteen of these twenty-one claims, [12] it is undisputed that CIGNA paid Coram less than the amount Coram requested. [13] For four of the twenty-one claims, [14] it is undisputed that Coram only requested payment for 20% of the Medicare allowed amount, which CIGNA paid. For the remaining two (of the twenty-one) claims, it is undisputed that neither Medicare nor CIGNA reimbursed Coram for any of the medical services it had provided to Cook. [15] Between July 23, 1997 and January 27, 1999, CIGNA decided how much, if any, reimbursement would be paid to Coram

under the Plan on these twenty-one claims. Def. Reply SOMF P 25.

12    The relevant time periods are as follows: (1) 02/07/97-02/28/97; (2) 03/01/97-03/21/97; (3) 03/22/97-03/28/97; (4) 03/29/97-04/04/97; (5) 04/05/97-04/11/97; (6) 04/12/97-04/18/97; (7) 04/19/97-05/02/97; (8) 05/03/97-05/09/97; (9) 05/11/97-07/03/97; (10) 07/05/97-08/01/97; (11) 08/30/97-09/05/97; (12) 12/06/97-01/02/98; (13) 01/03/98-02/06/98; (14) 09/01/98-09/07/98; and (15) 09/08/98-10/01/98.

[*13]

13    CIGNA calculated the amount paid on these claims by determining the amount allowed by Medicare for the service, subtracting 80% of the amount paid by Medicare, and paying the 20% difference. *See* McGarrigle Dec., Ex. B. In other words, Coram received 100% of the Medicare allowed amount for a particular service: 80% from Medicare and 20% from CIGNA. *Id.* Coram, referring to the definition of "Reasonable and Customary" in the Summary Plan Description, asserts that CIGNA "should pay ... the 'R & C', **at market rates,** less what Medicare paid." Pl. Cross-Mem. and Opp. at 7 (emphasis added).

14    The relevant time periods for these claims are as follows: (1) 08/02/97-08/29/97; (2) 09/06/97-09/26/97; (3) 09/27/97-10/03/97; and (4) 10/04/97-10/31/97.

15    The relevant time periods for these claims are (1) 11/07/97-11/20/97 and (2) 11/27/97-12/05/97. Coram sought payment of the entire amount of the claims, but CIGNA denied payment because Medicare had disallowed reimbursement on these claims.

The parties disagree on whether the remaining eleven (out of thirty-two) claims were timely [*14] submitted to CIGNA. Defendants contend that Plaintiff has produced no evidence that nine of these claims [16] "were ever submitted to CIGNA," that "CIGNA has been unable to verify that it has ever received these alleged claims," and that "the documents produced could never have been submitted to CIGNA regarding the claims at issue ...." Def. Mem. at 12. Plaintiff states that "all the invoices were sent to Delta and/ or CIGNA in the ordinary course of business." Def. Reply SOMF P 22. **It is undisputed that all of the claim forms produced by Plaintiff in support of these claims are unsigned, undated forms for services provided during the first eight months of 1998. And, it is also undisputed that the forms were not generated until June 5, 2000 -- three months after this action was filed.** [17] Def. Reply SOMF P 23. There is no indication in

2002 U.S. Dist. LEXIS 23307, *

the record that CIGNA issued an explanation of benefits form (a document normally sent with each CIGNA denial or authorization of benefits under the Plan) with respect to these nine claims. With respect to the remaining two claims, [18] the documents produced by Plaintiff to support the claims are also dated June 5, 2000. CIGNA (evidently received [*15]) these two claims because, on October 13, 1999, CIGNA issued an explanation of benefits form denying the claims as "not submitted within the time frame of consideration specified by this plan." McGarrigle Dec., Ex. B at P106. [19]

> 16   The relevant time periods are as follows: (1) 02/07/98-02/27/98; (2) 02/28/98-03/06/98; (3) 03/04/98-04/03/98; (4) 04/04/98-05/01/98; (5) 05/09/98-06/01/98; (6) 06/02/98-06/08/98; (7) 06/09/98-06/29/98; (8) 06/30/98-07/05/98; and (9) 08/11/98-08/31/98.

> 17   Carol Belfiore, Coram's designated representative pursuant to *Fed. R. Civ. P. 30(b)(6)*, testified at her deposition that the date on the upper left portion of the claim form is the date that the form was generated by Coram. Belfiore Dep. at 33. According to Belfiore, there is no way to tell from looking at a claim form whether it had been submitted for reimbursement prior to the generation date. *Id.* at 33-34.

> 18   The relevant time periods for these claims are (1) 07/06/98-08/03/98 and (2) 08/04/98-08/10/98.

> 19   Defendants admit that. for these two claims, "CIGNA received a claim form out of time." Def. Mem. at 12, n.60.

[*16] The Summary Plan Description outlines the procedure to appeal the denial of a claim for benefits:

> Please review the following appeals procedures carefully. It is important that your appeal be received by the proper party in a timely manner. **All appeal time deadlines will be strictly adhered to.**
>
> ***
>
> If you wish a review of a denial, you or a duly authorized representative designated in writing by you, must submit a written request that is received by the Administrative Subcommittee within 90 days of the date of the letter or notice of denial ... **The Subcommittee expressly reserves the right to refuse to consider tardy appeals.**

King Dec., Ex. B at SPD 019 (emphasis in original).

The Summary Plan Description also provides, "You must timely exhaust the administrative remedies allowed under the Delta Air Lines, Inc. DELTAFLEX Plan as described above before filing any legal action on your claim." *Id.* In addition, the reverse side of CIGNA's explanation of benefits form informs health care providers that "if you have any questions or disagree with the payment reflected on this Explanation of Benefits, you may ask to have it reviewed." Declaration of [*17] Carla B. Cook ("Cook Dec."), Ex. C.

Coram did not appeal any of CIGNA's benefits decisions -- including the amount of payment on nineteen of the claims and denial of four of the claims -- before instituting this litigation. Def. Reply SOMF P 26. As discussed *supra at 8*, CIGNA did make any benefits decisions with respect to nine of Coram's claims because "CIGNA has been unable to verify that it has ever received these alleged claims." Def. Mem. at 12.

During discovery, Coram produced a letter from Abraham Wax, Esq. dated April 18, 2000 -- more than fourteen months after the date of CIGNA's last payment to Coram and more than one month after Coram commenced the current action -- which purported to be an appeal letter to CIGNA and which stated:

> Our office represents Coram Healthcare in connection with the claims for the care and treatment of Alva Cook during the time period set forth above.
>
> Payment for the above claims was denied by Cigna. We, on behalf of Coram Healthcare hereby appeal the denial and request a review of the claims.
>
> We have enclosed the following documents in connection with our request:
>
> 1. Invoices.
>
> 2. Certificates of medical necessity.
>
> [3.] Doctor's [*18] orders.
>
> [4.] St. Joseph's hospital records.

McGarrigle Dec., Ex. A at P163-64. The letter identified neither the "claims" Coram sought to appeal nor any specific "denial" by CIGNA. *Id.*

CIGNA contends that it never received this letter, and, even if it had, the appeal was untimely because it was not received by the Administrative Subcommittee within 90 days of the notice(s) of denial and also because the letter

was first provided on August 5, 2000 -- during discovery in the present action. Def. Reply SOMF P 28; Cook Dec., Ex. A; King Dec., Ex. B at SPD 019. On October 4, 2000, CIGNA wrote to Plaintiff's counsel stating, in pertinent part:

> CIGNA has no record of ever receiving your April 18, 2000 appeal. Instead, it was first brought to CIGNA's attention after our attorney received it from you in discovery in the federal court litigation on August 5, 2000. Even though the appeal must be submitted to CIGNA directly as specified in the governing documents, (the reverse side of the EOBs and pages 13-16 of the summary plan description) CIGNA has decided to treat your appeal as received on August 5, 2000-the date it was received by CIGNA's attorney .... Although your [*19] letter is ambiguous, and even if it was considered mailed and received on April 18, 2000, the appeal is well past the last date that CIGNA denied a claim for benefits under the Delta Family-Care Medical Plan from Coram with respect to services provided to Mr. Alva Cook. **Instead of outright denying your appeal at this time, we have decided to exercise the right to extend the time to consider the appeal for 60 days pursuant to** *29 C.F.R. sec. 2560.503-1.* [20]

Cook Dec., Ex. A (emphasis added). CIGNA requested that Plaintiff's counsel "send all information supporting [Coram's] argument that the appeal was timely, and any other information that you believe supports [Coram's] appeal, to CIGNA HealthCare by October 23, 2000. You should be advised that the information you indicated was attached to the April 18, 2000 letter was not attached. You should submit that information also." *Id.* On April 10, 2001, having heard nothing more from Coram, CIGNA denied the appeal as untimely:

> You have not responded to our letter of October 4, 2000 explaining why the April 18, 2000 appeal exceeded the time limit to file an appeal. Therefore, we must [*20] consider your appeal dated April 18, 2000 untimely since it exceeds the 60 day time limit during which an appeal must be filed. The original claim decision must be maintained.

Cook Dec., Ex. B.

20    *29 C.F.R. § 2560.503-1* addresses the rules and regulations for claims procedures under ERISA. Subsection h governs appeals of adverse benefit determinations and provides, in pertinent part:

> The claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures -- (i) Provide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination; (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits; ... (iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

*29 C.F.R. § 2560.503-1(h)(2) (2002).*

[*21] While, as noted, Plaintiff's Complaint asserts a single breach of contract claim against Defendants, its cross-motion for summary judgment raises, for the first time, additional causes of action for misrepresentation, estoppel, and breach of fiduciary duty.

For the reasons discussed herein, the Court determines that (1) Plaintiff's common law contract claim is preempted by ERISA and fails both procedurally and on the merits and (2) Plaintiff's newly-asserted claims of misrepresentation, estoppel, and breach of fiduciary duty are not properly before the Court.

### III. Standard of Review

[HN1] Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *see also I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council*

*Ins. Trust Fund, 136 F.3d 114, 119 (2d Cir. 1998); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989).*

[HN2] The moving party bears the initial burden of "informing [*22] the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); see also Wojciechowski v. Metro. Life Ins. Co., 75 F. Supp. 2d 256, 260-61 (S.D.N.Y. 1999)* (Barrington D. Parker, Jr., J.). "If the moving party meets its burden, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat the motion for summary judgment ...." *Turay v. Aetna U.S. Healthcare, 160 F. Supp. 2d 557, 559-60 (S.D.N.Y. 2001); see also Fed. R. Civ. P. 56(e)* (opposing party "must set forth specific facts showing that there is a genuine issue for trial"). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable [*23] inferences in favor of the opposing party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Wojciechowski, 75 F. Supp. 2d at 260.* "When both parties have moved for summary judgment, [the court] considers each motion separately, resolving all ambiguities and drawing all inferences [from the record] in favor of the party against whom summary judgment is sought." *I.V. Servs., 136 F.3d at 119* (citation and internal quotation marks omitted).

"'Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.'" *Turay, 160 F. Supp. 2d at 560* (quoting *Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996)); see also Wojciechowski, 75 F. Supp. 2d at 261.* "The nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment." *Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992); see also Bowden ex rel. Bowden v. Wal-Mart Stores, Inc., 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000)* [*24] ("The opinions, allegations, and conclusory statements of counsel do not substitute for evidence."); *Gill v. DeFrank, 2000 U.S. Dist. LEXIS 8836, 98 Civ. 7851 (AJP), 2000 WL 270854, at *9 (S.D.N.Y. Mar. 9, 2000), report & rec. adopted in relevant part, 2000 U.S. Dist. LEXIS 9122, 2000 WL 897152 (S.D.N.Y. July 6, 2000)* (Buchwald, J.), *aff'd mem., 8 Fed. Appx. 35, 2001 WL 388057 (2d Cir. 2001)* ("Counsel's argument in a brief is no substitute for evidence.").

## IV. Analysis

### A. Jurisdiction

The case is before the Court as a result of CIGNA's April 6, 2000 removal from the New York State Supreme Court, New York County, which Plaintiff has not opposed. [HN3] "The civil enforcement provisions of ERISA operate to recharacterize state law claims for benefits as actions arising under federal law." *Smith v. Dunham-Bush, Inc., 959 F.2d 6, 10 (2d Cir. 1992)* (citation omitted). Plaintiff's state law breach of contract claim is properly (re)characterized as a claim for medical benefits pursuant to ERISA § 502(a)(1)(B), *29 U.S.C. § 1132(a)(1)(B).* [21] Thus, Plaintiff's breach of contract claim is preempted by ERISA. [22] *See Fisher v. Building Serv. 32 B-J Health Fund, 1997 U.S. Dist. LEXIS 12886, 96 Civ. 5526 (LAP), 1997 WL 531315, at *3 (S.D.N.Y. Aug. 27, 1997)* [*25] ("The plaintiff asserts the rights, taken by assignment, of a plan member for reimbursement by the Fund. This claim therefore plainly relates to an employee benefits plan, and the state law claim is preempted by ERISA."). "When a claim asserted in state court is preempted by the civil enforcement provisions of ERISA, removal is allowed on the basis of federal question jurisdiction." *Midpoint Serv. Provider, Inc. v. CIGNA, 256 F.3d 81, 83 (2d Cir. 2001)* (citation omitted).

21  ERISA § 502(a) provides, in pertinent part, that "[a] civil action may be brought -- (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...." Under federal common law, "the assignees of beneficiaries to an ERISA-governed insurance plan" may also sue under ERISA. *I.V. Servs., 136 F.3d at 117, n.2.*

22  Courts construing ERISA often refer to the internal statutory designations rather than the sections at which the statute is codified. For ease of reference, the Court hereinafter will refer to *29 U.S.C. § 1132* as ERISA § 502 and *29 U.S.C. § 1133* as ERISA § 503.

[*26] **B. Proper Parties**

Defendants Delta and CIGNA argue that they are "not the proper parties against whom the claims should be brought," Def. Mem. at 15, but that the only proper party to an ERISA § 502(a)(1)(B) action is the Plan itself. Plaintiff contends that "if [ERISA] states that both Delta and CIGNA are Plan fiduciaries, and the parties in interest,

it is hard to see by what law Delta is not a proper party to be sued." Pl. Cross-Mem. and Opp. at 15.

In *Lee v. Burkhart, 991 F.2d 1004 (2d Cir. 1993)*, the United States Court of Appeals for the Second Circuit considered whether plaintiffs could maintain an ERISA § 502(a)(1)(B) claim against an insurance company which they alleged was the administrator of the plan. In affirming the district court's dismissal of the action, the Court stated that "[a] third potential impediment [to the ERISA § 502(a)(1)(B) claim] is that [HN4] 'ERISA permits suits to recover benefits only against the Plan as an entity.'" *Id. at 1009* (quoting *Gelardi v. Pertec Computer Corp., 761 F.2d 1323 (9th Cir. 1985))*. Since neither Delta nor CIGNA is the Plan, Plaintiff's claim may not stand against them. [*27] [23] *See McManus v. Gitano Group, Inc., 851 F. Supp. 79, 81 (E.D.N.Y. 1994)* (granting summary judgment to plan administrator "because ERISA permits suits to recover benefits only against the Plan as an entity, and [the administrator] is not the Plan") (citations and internal quotation marks omitted); *see also Mellon Bank, N.A. v. United Bank Corp., 1994 U.S. Dist. LEXIS 18583, 91* Civ. 1066, 94 Civ. 423 (NPM), 1994 WL 722003, at *7-8 (N.D.N.Y. Dec. 22, 1994)* (granting defendant bank's motion for judgment on the pleadings). Plaintiff's reliance on *Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998)* ("ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries.") is misplaced. *See Turay, 160 F. Supp. 2d at 561* ("It is a cardinal rule that a district court must follow the applicable precedents of the relevant circuit court."); *In re Ramaekers, 33 F. Supp. 2d 312, 315 (S.D.N.Y. 1999)* ("Binding precedent for the district courts within a circuit is established by the Supreme Court and by the court of appeals for the circuit in which the district court sits.").

23    There is a split in authority in the Federal Circuit as to whether the ERISA plan is the only proper party. *Compare Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (7th Cir. 1997)* ("It is true that ERISA permits suits to recover benefits only against the plan as an entity ....") (citation omitted); *Lee, 991 F.2d at 1009; Gibson v. Prudential Ins. Co. of Am., 915 F.2d 414, 417 (9th Cir. 1990); with Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997)* ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.") (citation omitted); *Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997)* (allowing § 502(a)(1)(B) claim against a plan administrator); *Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988)* (finding that the proper party to a § 502(a)(1)(B) claim is the party that "is shown to control administration of a plan").

[*28] **C. Service of Process**

Defendants Delta and the Plan argue that Plaintiff failed to serve them "within 120 days [of filing the Complaint] as required by *Fed. R. Civ. P. 4(m)* and has not provided any good cause to excuse the delay in service." [24] Def. Mem. at 3. Plaintiff concedes that, although it "served and filed the summons and complaint against Delta," it "did not do so within the 120 day time limit." Pl. Cross-Mem. and Opp. at 15. [25] Plaintiff requests, however, that the "Court accept the filing of the proof of service *nunc pro tunc.*" [26] Pl. Cross-Mem. and Opp. at 16; *see also* Affidavit of Abraham Wax, sworn to May 23, 2001 ("Wax Aff."), at 2. And, Plaintiff's cross-motion for summary judgment requests "an order enlarging the time to file proof of service upon defendants Delta Airlines, and the Delta Airlines Health Plan." *See* Plaintiff's Notice of Cross-Motion for Summary Judgment and to Enlarge the Time to File Proof of Service, dated May 22, 2001, at 1.

24    CIGNA has raised no objection based on service of process. After Coram served the Summons and Complaint on CIGNA on March 17, 2000, CIGNA removed Plaintiff's state court action to this Court on April 6, 2000. Notice of Removal PP 1,2.

[*29]

25    Coram's service on the Plan was equally untimely; Coram served both Delta and the Plan on January 24, 2001. Def. Reply SOMF P 30. For the reasons discussed herein, Coram's service on Delta and the Plan was late by 173 days.

26    Black's Law Dictionary defines "nunc pro tunc" as "having retroactive legal effect through a court's inherent power ...." *Black's Law Dictionary* 1097 (7th ed. 1999).

[HN5] *Rule 4(m)* provides that if service is not made within 120 days after filing of the complaint, the Court "shall dismiss the action without prejudice ... or direct that service be effected within a specified time ...." *Fed. R. Civ. P. 4(m)*. "In a removed action, the 120-day period begins to run on the date the action is removed to federal court." *Mopex, Inc. v. Am. Stock Exch., LLC, 2002 U.S. Dist. LEXIS 3532, 02* Civ. 1656 (SAS), *2002 WL 342522, at *9 (S.D.N.Y. Mar. 5, 2002); see also G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999)*. Accordingly, Coram had 120 days from April 6, 2000 -- the date CIGNA filed the Notice of Removal -- to serve the Complaint on [*30] Delta and the Plan. As Coram admittedly did not serve Delta and the Plan until January 24, 2001 -- 293 days after the action was removed to this Court -- its service on those parties was untimely by 173 days and is subject to dismissal. *See Romero v.*

*Keeney, 168 F.R.D. 483, 484-85 (S.D.N.Y. 1996)* (seven month delay between filing of complaint and service warranted dismissal of action).

If a plaintiff establishes good cause for the failure to serve the summons and complaint within the 120-day period, *Rule 4(m)* provides that "the Court shall extend the time for service for an appropriate period." *Fed. R. Civ. P. 4(m).* "Courts generally consider three factors to determine whether such good cause exists: (1) whether the delay resulted from inadvertence or whether a reasonable effort to effect service has occurred, (2) prejudice to the defendant, and (3) whether the plaintiff has moved for an enlargement of time to effect service under *Rule 6(b) of the Federal Rules of Civil Procedure." Echevarria v. Dep't of Corr. Servs., 48 F. Supp. 2d 388, 392 (S.D.N.Y. 1999)* (citation omitted).

Coram has failed to show good cause for its failure to serve Delta and [*31] the Plan within the 120-day period. "In general, 'good cause' exists only in exceptional circumstances where the failure to serve process in a timely manner results from circumstances beyond the plaintiff's control." *Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999).* "Mistake or inadvertence of counsel ... does not constitute 'good cause' justifying failure to effect timely service of process." *Mejia v. Castle Hotel, Inc., 164 F.R.D. 343, 345, n.4 (S.D.N.Y. 1996); see also Zankel v. United States, 921 F.2d 432, 436 (2d Cir. 1990)* ("[A] judge is certainly not required to treat inadvertence or ignorance of the Rules as 'good cause' or 'excusable neglect' for delay in service."). Coram did not show good cause or that it made a "reasonable effort" to effect service. Coram argues (unpersuasively) that it attempted service on Delta on April 12, 2000 by sending the summons and complaint to the Sheriff of Fulton County, Georgia, who was "unable to serve the defendants since he could not locate Delta Airlines in the airport in Atlanta." Wax Aff. P 2 and Ex. [*32] A. Coram states (unconvincingly) that its service on the Plan was untimely because it "did not have the name of the plan, or the name of the person to be served. [Coram] then asked counsel to accept service on [the Plan's] behalf, and they refused, threatening ... Rule 11 sanctions." *Id.* at P 3. Coram made no further attempt to serve Delta and the Plan until January 24, 2001, *id.* at P 4, after Defendants submitted a letter to the Court, dated January 11, 2001, requesting permission to file a motion for summary judgment based, in part, on Plaintiff's failure to serve Delta and the Plan. And, Coram did not seek an extension of time pursuant to *Rule 6(b)* until May 23, 2001, and then only when it filed its cross-motion for summary judgment. Under these circumstances, Plaintiff has failed to establish good cause for an extension under *Rule 4(m)* as to Delta and the Plan. *See Gowan v. Teamsters Union (237), 170 F.R.D. 356, 360 (S.D.N.Y. 1997)*

(finding no good cause where plaintiff "offered no excuse for his failure to effect timely service"); *Reed Holdings, Inc. v. O.P.C. Corp., 122 F.R.D. 441, 444-45 (S.D.N.Y. 1988)* (finding no good cause where [*33] plaintiff made a single attempt at service).

[HN6] Even absent good cause, the Court may exercise its discretion to extend the time for service. *See Fed. R. Civ. P. 4(m)* advisory committee's note (an extension of time may be granted "even if there is no good cause shown"). "In exercising its discretion to extend the time for service, the Court should consider (1) whether the applicable statute of limitations would bar the re-filed action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's relief from the provision." *Charles v. New York City Police Dept., 1999 U.S. Dist. LEXIS 14274, 96* Civ. 9757 (THK), 1999 WL 717300, at *7 (S.D.N.Y. Sept. 15, 1999) (citation and internal quotation marks omitted).

These four factors are analyzed as follows. First, the statute of limitations on Plaintiff's claim has not yet run. In New York, an ERISA § 502(a)(1)(B) claim for benefits is subject to a six-year statute of limitations. *See Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 46-47 (2d Cir. 1999).* [*34] [HN7] "[A] plaintiff's cause of action accrues upon a clear repudiation that is known, or should be known, to the plaintiff ...." *Id.* at 47-48. Because CIGNA did not make its first denial of benefits to Coram until July 23, 1997, Def. Reply SOMF P 25, this claim, as well as Coram's subsequent claims are still within the limitations period. *See AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 109 (S.D.N.Y. 2000)* ("If the statute of limitations has not expired then a discretionary extension of time to serve would be warranted because no useful purpose would be served by dismissing the complaint ... Presumably the only result of a dismissal would be that the [plaintiffs] would refile their complaint, resulting in a waste of judicial resources."). Second, both Delta and the Plan had actual notice of the action as of April 6, 2000. [27] Third, no argument has been made, and nothing in the record indicates, that Delta or the Plan attempted to evade service or conceal the defect in Plaintiff's service. Fourth, and most important, neither Delta nor the Plan alleges any prejudice resulting from the untimely service. *Id. at 111* [*35] ("An important factor not specifically mentioned in the Advisory Committee Note, but which the courts have considered in determining whether to grant a discretionary extension, is prejudice to the defendant.") (citations omitted). The Court exercises its discretion to extend the 120-day period of service through and including February 6, 2001, the date Plaintiff filed its proof of service with the Court.

Case 1:07-cv-03966-JSR    Document 24-2    Filed 06/22/2007    Page 22 of 25

Page 13
2002 U.S. Dist. LEXIS 23307, *

27    *See* Notice of Removal, Ex. B ("The Plan consents to the removal of [the] action to [this] Court ... Delta consents to the removal of [the] action to [this] Court.").

### D. Exhaustion of Administrative Remedies

[HN8] "Before addressing the merits of Plaintiff's ERISA claims ... the Court must consider the threshold question of whether Plaintiff exhausted [its] administrative remedies before filing the instant suit." *Yoran v. Bronx-Lebanon Hosp. Ctr., 1999 U.S. Dist. LEXIS 8679, 96* Civ. 2179 (PKL), 1999 WL 378350, at *7 (S.D.N.Y. June 10, 1999). Defendants argue that Plaintiff's claim should be barred due [*36] to "Plaintiff's failure to timely exhaust the administrative remedies under the Plan." Def. Mem. at 3. Plaintiff does not dispute its failure to exhaust administrative remedies but argues that "appealing within the ERISA system ... would have been futile ...." Pl. Cross-Mem. and Opp. at 18.

ERISA requires that employee benefit plans "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." ERISA § 503(2). "Thus, exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993)* (citations omitted).

[HN9] The Court of Appeals for the Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Alfarone v. Bernie Wolff Constr. Corp., 788 F.2d 76, 79 (2d Cir. 1986)*. The doctrine of exhaustion of administrative remedies is founded upon the principle "'that no one is entitled to judicial relief for a supposed or threatened [*37] injury until the prescribed administrative remedy has been exhausted.'" *Kennedy, 989 F.2d at 588* (quoting *Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 82 L. Ed. 638, 58 S. Ct. 459 (1938)*). In the ERISA context,

the primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.

*989 F.2d at 594* (citation omitted). "[Plaintiff] made no attempt, as required, to exhaust the administrative remedies provided for under the plan." *Leonelli, 887 F.2d at 1199* (citation omitted); *see also Kennedy, 989 F.2d at 594-96* (affirming dismissal of ERISA plaintiffs' complaint for failure to exhaust administrative remedies). "This exhaustion requirement is a jurisdictional prerequisite to a suit for benefits under ERISA [§ 502]." *Yoran, 1999 U.S. Dist. LEXIS 8679, 1999 WL 378350*, at *7; [*38] *see also Sanfilippo v. Provident Life & Cas. Ins. Co., 178 F. Supp. 2d 450, 458 (S.D.N.Y. 2002)* (same); *Barnett v. Int'l Bus. Machs. Corp., 885 F. Supp. 581, 586-87 (S.D.N.Y. 1995)* (same); *Ludwig v. NYNEX Serv. Co., 838 F. Supp. 769, 781 (S.D.N.Y. 1993)* (same). [28]

28    Assignees must also exhaust administrative remedies. *See Weiner v. Klais and Co., Inc., 108 F.3d 86, 91 (6th Cir. 1997)* ("We conclude that plaintiff [a physician assignee of rights] should have exhausted the administrative remedies provided under the plans and, because he did not, dismissal of his action for recovery of benefits is proper.").

Plaintiff contends that the Court should apply the "futility exception" to the exhaustion requirement because the Defendants' "interpretation' of the Plan terms was so without merit [and] has been such a long term practice that there is virtually no chance that an employee of either Delta or CIGNA would overturn their decision ...." Pl. [*39] Cross-Mem. and Opp. at 18. Plaintiff also contends that futility is demonstrated by Defendants' "vigorous opposition in this case." *Id.* Defendants respond that "since Plaintiff has failed to provide any admissible evidence of futility, its argument fails as a matter of law." Def. Reply at 5.

[HN10] The futility exception applies only "where claimants make a 'clear and positive** showing' that pursuing available administrative remedies would be futile ...." *Kennedy, 989 F.2d at 594* (citation omitted) (emphasis added). In *Kennedy*, the Court rejected plaintiffs' futility argument because "there [was] no evidence in the record that any ERISA plaintiff even *notified* [the plan administrator] of any disputed claim." *Id. at 595* (emphasis in original).

Coram has not made the requisite "clear and positive showing" that exhaustion of administrative remedies would be futile. Among other things, Plaintiff did not even attempt to appeal CIGNA's denial of benefits before instituting the present action and did not even respond to CIGNA's offered extension of time to lodge an appeal. *See Kennedy, 989 F.2d at 595* ("We hold that the ERISA [*40] plaintiffs have not made a 'clear and positive showing' of futility, given that they took no action whatsoever with respect to their disputed claims before

bringing this action ...."); *see also Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001)* ("Defendants' position in this lawsuit does not establish futility."). [29]

> 29    As discussed in Section IV.E, *infra,* the Court does not consider Plaintiff's belated attempt to add claims for misrepresentation, estoppel, and breach of fiduciary duty via its opposition papers. Plaintiff's arguments that "the defense of exhaustion of administrative remedies is misplaced in this action for misrepresentation or estoppel," Pl. Cross-Mem. and Opp. at 16, and that "where the statute is violated, exhaustion is not necessary," Pl. Cross-Mem. and Opp. at 19, are, therefore, not persuasive.

### E. Plaintiff's (Late) Misrepresentation, Estoppel, and Breach of Fiduciary Duty "Claims"

And, even assuming that Defendants were not entitled to summary [*41] judgment because Delta and CIGNA are not proper parties and because Plaintiff did not exhaust its administrative remedies, Plaintiff's cross-motion for summary judgment would fail for an additional reason. That is, Plaintiff raises for the first time in its moving papers "claims" that are not alleged in the Complaint, including: (1) a common law claim for negligent misrepresentation, Pl. Cross-Mem. and Opp. at 1 ("The information given by Delta-CIGNA was misrepresented, giving rise to an action for negligent (or perhaps deliberate) misrepresentation ... which is not preempted by ERISA."); (2) a common law claim for estoppel, Pl. Cross-Mem. and Opp. at 1 ("The information given by Delta-CIGNA was misrepresented, giving rise to an action for ... equitable estoppel, which is not preempted by ERISA."); and (3) a breach of fiduciary duty claim under ERISA, Pl. Cross-Mem. and Opp. at 14 ("Both CIGNA and Delta are fiduciaries, and both violated their fiduciary duties by not carrying out the terms of the Plan."). Defendants appropriately object to Plaintiff's attempt to add additional claims at the "eleventh hour." *See* Def. Reply at 2, 3 ("Since Plaintiff has only alleged a breach of contract [*42] claim in its Complaint, any misrepresentation claim has been waived ... Plaintiff ... has not pursued a breach of fiduciary duty claim but a typical benefits claim under [ERISA § 502(a)(1)(B)].").

The Complaint includes neither claims for misrepresentation, estoppel, or breach of fiduciary duty, nor "any facts that can be construed as alleging the existence" of such claims. *See Beckman v. United States Postal Serv., 79 F. Supp. 2d 394, 406 (S.D.N.Y. 2000); see also Fed. R. Civ. P. 8(a)(2)* ("A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.").

[HN11] A complaint need not plead "the legal theory or theories and statutory basis supporting [a] claim." *Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 712 n.4 (2d Cir. 1980)* (citations omitted). However, "at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense." *Beckman, 79 F. Supp. 2d at 407.* A plaintiff's failure to assert a cause of action "until the last minute will inevitably prejudice the defendant .. [*43] .." *Id.* **"It is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."** *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y. 1997); see also Beckman, 79 F. Supp. 2d at 406-08* (collecting cases); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997)* ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a dispositive motion.") (emphasis added); *see also Mauro v. Southern New England Telecomm., Inc., 208 F.3d 384, 386 n.1 (2d Cir. 2000)* ("Because [plaintiff] did not include [a] claim in his complaint, the district court refused to consider it. We will not disturb this decision on appeal."). Therefore, Plaintiff's newly added claims neither "prevent the granting of defendants' motion for summary judgment," *Thomas v. Thomas, 2000 U.S. Dist. LEXIS 3689, 97* Civ. 4541 (LAP), 2000 WL 307391, at *3 (S.D.N.Y. Mar. 23, 2000) [*44] , nor entitle Plaintiff to summary judgment on its cross-motion. *See Caribbean Wholesales, 963 F. Supp. at 1359* ("Summary judgment cannot be granted as to [a] 'claim' [raised for the first time on a motion for summary judgment] because it is not a claim.").

### F. Merits of Plaintiff's Claim: CIGNA's Determination of Benefits

Assuming *arguendo* that Coram's claim for benefits were properly before this Court, CIGNA's determination of benefits cannot be said to be either "arbitrary or capricious." *See Preston v. Am. Fed'n of Television and Radio Artists, 2002 U.S. Dist. LEXIS 8826, 90* Civ. 7094 (RJW), 2002 WL 1009458, at *7 (S.D.N.Y. May 16, 2002) ("Because the Fund's denials of plaintiffs' claims for ... benefits were reasonable and supported by substantial evidence, the Court finds that the decisions were not arbitrary or capricious. Accordingly, the Fund's decisions will be upheld, and plaintiffs' remaining claims for wrongful denial of benefits under [ERISA § 502] are dismissed."); *see also Caidor v. Chase Manhattan Bank, 2001 U.S. Dist. LEXIS 3495, 98* Civ. 5018 (RLE), 2001 WL 311227, at *9 (S.D.N.Y. Mar. 27, 2001), , *aff'd mem., 29 Fed. Appx. 704, 2002 WL 243316* (2d Cir. Feb. 19, 2002) [*45] ("The Court's function in reviewing the

2002 U.S. Dist. LEXIS 23307, *

denial of benefits by [a claims administrator] under an arbitrary and capricious standard is to determine whether a reasonable basis exists for its interpretation of the plan language.").

CIGNA, as the claims administrator, had discretion to interpret the Plan's provisions. *See* Def. Reply SOMF PP 3, 4, 6; *see also* King Dec., Ex. C at 5 (delegating to CIGNA the "exclusive discretion and authority to interpret and construe the Plan ... and to make a full and fair review" of each claim that it denies). [HN12] The United States Supreme Court has held that "a denial of benefits challenged under [ERISA § 502(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).* Where, as here, such discretionary authority is given to the plan administrator, a reviewing court should disturb the administrator's interpretations and actions only if they are arbitrary [*46] and capricious. *See Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir. 1995).* A decision is arbitrary and capricious if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)* (citations omitted). In interpreting the plan, "where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, this Court must accept that offered by the administrators." *Id. at 443.*

Defendants contend that "as Plaintiff's own designated corporate representative testified, the benefits that Plaintiff received from Medicare on Mr. Cook's behalf require that Plaintiff ... not seek more than the amount Medicare allowed Plaintiff to charge;" that "the only written agreement between the Plan and Plaintiff was to pay to Plaintiff the amount of the benefit that Mr. Cook could [legally] receive;" that "the combination of the Assignment and the Plan constitutes an agreement between Plaintiff and the Plan limiting the benefits Plaintiff could seek to [those] that Cook could receive under the Plan; [*47] " and that "except where there were other reasons to deny [Coram's] claim[s], it is undisputed that CIGNA paid [20% of the Medicare allowed amount] with respect to each charge." Def. Mem. at 21-22. At oral argument, Defendants emphasized that the Assignment limits Coram's right to reimbursement because Cook, who, under the Plan, was entitled to no more than the Medicare allowed amount, could not assign greater rights than he possessed. *See also* Def. Mem. at 21. Plaintiff counters that "the Plan requires payment of Reasonable and Customary rates;" that CIGNA paid only "20% of the Medicare 'allowable;'" and that CIGNA's "interpretation of the

Plan is certainly arbitrary and capricious." Pl. Cross-Mem. and Opp. at 20, 22.

CIGNA's determination of benefits was based upon the terms of the Plan. For the twenty-one claims which the parties agree were timely submitted, CIGNA reasonably interpreted the Plan to require reimbursement of 20% of the Medicare allowed amount or 0% where Medicare denied payment altogether. [30] CIGNA's interpretation was reasonable and supported by substantial evidence. *See Pagan, 52 F.3d at 442.* Under the Plan, benefits for retirees, like [*48] Cook, who were eligible for Medicare "will be calculated based on the amount Medicare would have paid ...." King Dec., Ex. B at SPD 030. [HN13] When a health care provider, such as Coram, receives Medicare payments directly on behalf of an ERISA participant or beneficiary, the provider agrees to "accept [Medicare's] reasonable charge for a given service thereby assuring that the Medicare payments will be made directly to them." *Medical Soc'y of New York v. Cuomo, 976 F.2d 812, 814 (2d Cir. 1992)* (construing the Social Security Act, *42 U.S.C. § 1395u(b)(3)(B)(ii)).* Here, it is undisputed that Coram received reimbursement directly from Medicare and, thus, was entitled to receive no more than the amount allowed by Medicare for any given service. [31] The express language of the Assignment between Coram and Cook granted Coram only the right to "payment of authorized Medicare benefits." Mater Aff., Ex. C. And, Belfiore testified at her deposition that the "checked" Box 27 on Coram's claim forms indicates "that we accept what governmental claims will pay us and will not bill the patient for the difference." Belfiore Dep. at 43-44. [32]

30    That is, for nineteen of the twenty-one claims which the parties agree were timely submitted, Medicare paid Coram 80% of the Medicare allowed amount for the services rendered and CIGNA authorized the payment of the remaining 20% of the Medicare allowed amount -- for a total of 100% of the Medicare allowed amount. Indeed, for four of these twenty-one claims, Coram only requested reimbursement for 20% of the Medicare allowed amount. For the remaining two claims, CIGNA denied reimbursement because Medicare had previously refused to pay anything on the claims.

[*49]

31    Plaintiff's reliance on *42 C.F.R. § 411.31 (2002)* is misplaced. *42 C.F.R. § 411.31(a)* states, "The fact that Medicare payments are limited to the DRG amount, or the reasonable charge, reasonable cost, capitation or fee schedule rate, does not affect the amount that a third party payer may pay." The legislative basis for this regulation is section 1862(b)(2)(A)(i) & (ii) of the Social Security Act, which is codified at *42 U.S.C. §*

*1395y(b)(2)(A)(i) & (ii)* and known as the Medicare as Secondary Payer ("MSP") statute. *See 42 C.F.R. § 411.20(a)(1) & (2) (2002).* "As a former employee participating in an employee benefit plan, [plaintiff] certainly has statutorily created rights under ERISA. The MSP statute, however, only gives express legal rights to active and current employees." *Santana v. Deluxe Corp., 12 F. Supp. 2d 162, 169 (D. Mass. 1998); see also Hammack v. Baroid Corp., 142 F.3d 266, 270-71 (5th Cir. 1998).* Plaintiff's reliance on *42 C.F.R. § 411.104 (2002),* which defines "current employment status," is similarly misplaced. In *Santana,* the court held that Health Care Financing Administration's definition of "current employment status," for the purposes of the MSP statute, was entitled to deference and that "Congress clearly did not intend the MSP provision for the disabled to extend to retirees and other former employees ...." *Santana, 12 F. Supp. 2d at 172* (citation omitted).

[*50]

32   Coram attempts to disavow Belfiore's testimony, arguing that she "knows nothing about this case" and was chosen "to testify simply as to procedures used by Coram when handling a claim." Pl. Cross-Mem. and Opp. at 2. The notice of deposition, however, specifically requested a witness able to testify as to "Medicare's rules and regulations regarding the payment of claims submitted to Medicare by Plaintiff that are the subject of this case;" "the payments by CIGNA to Plaintiff for all or any of a portion of the expenses that are the basis for Plaintiff's claims in this suit;" and "the payments by Medicare to Plaintiff for all or any portion of the expenses that are the basis for Plaintiff's claims in this suit ...." Declaration of J. Timothy McDonald, Esq., dated April 23, 2001, Ex. C at 2. During the deposition, Belfiore confirmed that she was knowledgeable on each of these topics. Belfiore Dep. at 9-10. There is no requirement that a *Rule 30(b)(6)* witness have first-hand knowledge of and involvement in the underlying transaction. *See SEC v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992)* (rejecting contention that *Fed. R. Civ. P. 30(b)(6)* is only intended to apply to actions in which agency or someone in its employ has participated in transactions or events in controversy or has actual knowledge of facts or information relevant to action); *see also* 7 James Wm. Moore *et al., Moore's Federal Practice,* P 30.25[3] (3d ed. 1997). "To satisfy *Rule 30(b)(6),* the corporate deponent has an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and **binding** answers on its behalf." *Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 268 (2d Cir. 1999), cert. denied, 528 U.S. 1119, 145 L. Ed. 2d 818, 120 S. Ct. 940 (2000)* (citation and internal quotation marks omitted) (emphasis added).

[*51]   For the eleven claims which CIGNA denied as untimely, there was good reason to deny payment -- namely, Coram's failure to submit timely the claims for reimbursement and failure to submit an appeal when given the opportunity to do so. The Plan provides, **"Claims must be filed with and received by CIGNA ... within one year of the date services were rendered."** King Dec., Ex. B at SPD 032 (emphasis in original). The Plan also provides that "if you wish a review of a denial, you or a duly authorized representative designated in writing by you, must submit a written request that is received by the Administrative Subcommittee within 90 days of the date of the letter or notice of denial." King Dec., Ex. B at SPD 019. And, CIGNA's explanation of benefits form states that "if you have any questions or disagree with the payment reflected on this Explanation of Benefits, you may ask to have it reviewed." Cook Dec., Ex. C. For nine of these eleven claims, for services provided to Cook from February to August 1998, Coram has produced only unsigned, undated claim forms dated June 5, 2000 -- long after the (one year) period to submit claims had expired. For the remaining two claims, CIGNA denied [*52] them as untimely. When given the opportunity to file a late appeal of CIGNA's determination of benefits, Coram did not even respond. Under these circumstances, the Court cannot conclude that CIGNA's determination of benefits was arbitrary and capricious. *See Miller, 72 F.3d at 1070.*

## V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [21-1] is granted. Plaintiff's cross-motion for summary judgment [15-1] is denied; and its motion for an order enlarging the time to file proof of service [18-1] is granted. The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York

July 23, 2002

**RICHARD M. BERMAN, U.S.D.J.**