UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

Cogent Capital Financial LLC and Cogent Capital
Investments LLC,                                          :

                 Plaintiffs,               :

           - against -               :

Innofone.com, Incorporated,                              :

               Defendant.                :

------------------------------------------------------------- x

Innofone.com, Incorporated,                              :

                Plaintiff,                :

           - against -               :

Cogent Capital Financial LLC, Cogent Capital           :
Investments LLC, Cogent Capital Group LLC,
Gregory L. Kofford, Mark W. Holden, and Investors      :
Bank & Trust Company,
                              :

             Defendants.                :

------------------------------------------------------------- x

**ECF CASE**

No. 07 Civ. 2701 (JSR)

**ECF CASE**

No. 07 Civ. 3966 (JSR)


## THE COGENT PARTIES' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS INNOFONE'S COMPLAINT


MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
(212) 468-8000

*Attorneys for Cogent Capital Financial
LLC, Cogent Capital Investments LLC,
Cogent Capital Group LLC, Gregory L.
Kofford and Mark W. Holden*

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ...................................................................................1

ARGUMENT ........................................................................................................2

    I.    THE MERGER CLAUSES IN THE TRANSACTION AGREEMENTS
        WERE CUSTOM-MADE FOR THIS SPECIFIC TRANSACTION. ....................2

    II.   INNOFONE CONTINUES TO MISREAD RULE 144............................................4

    III.  THE COGENT PARTIES' ALLEGED PREDICTION THAT THE SEC
        WOULD DECLARE INNOFONE'S REGISTRATION STATEMENT
        EFFECTIVE IS FORWARD-LOOKING. ................................................................6

    IV.  INNOFONE'S SCIENTER ALLEGATIONS ARE INADEQUATE. ....................7

    V.   LEAVE TO REPLEAD SHOULD BE DENIED BECAUSE
        AMENDMENT WOULD BE FUTILE....................................................................8

CONCLUSION......................................................................................................10

# TABLE OF AUTHORITIES

Page

## CASES

*Belin v. Weissler,*
  No. 97 Civ. 8787, 1998 U.S. Dist. LEXIS 10492 (S.D.N.Y. July 14, 1998) ............................9

*Caiola v. Citibank, N.A.,*
  295 F.3d 312 (2d Cir. 2002) ...........................................................................................2, 3

*Chill v. Gen. Elec. Co.,*
  101 F.3d 263 (2d Cir. 1996) ..................................................................................................8

*Dafofin Holdings S.A. v. Hotelworks.com, Inc.,*
  No. 00 Civ. 7861 (LAP), 2001 WL 940632 (S.D.N.Y. Aug. 17, 2001) .......................................3

*Dresner v. Utility.com, Inc.,*
  371 F. Supp. 2d 476 (S.D.N.Y. 2005) .................................................................................3, 4

*Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc.,*
  343 F. 3d 189 (2d Cir. 2003) ..........................................................................................2, 3, 9

*Geiger v. The Solomon-Page Group, Inc.,*
  933 F. Supp. 1180 (S.D.N.Y. July 10, 1996).............................................................................9

*Halperin v. eBanker USA.com, Inc.,*
  295 F.3d 352 (2d Cir. 2002) ..................................................................................................7

*Harsco Corp. v. Segui,*
  91 F.3d 337 (2d Cir. 1996) ...........................................................................................2, 3, 4

*In re Lockheed Martin Corp. Sec. Litig.,*
  272 F. Supp. 2d 944 (C.D. Cal. 2003) ....................................................................................6

*In re Nokia Corp. Sec. Litig.,*
  No. 96 Civ. 3752, 1998, U.S. Dist. LEXIS 4100 (S.D.N.Y. April 1, 1998).................................9

*Kaiser-Frazer Corp. v. Otis & Co.,*
  195 F.2d 838 (2d Cir. 1952) ..................................................................................................5

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp,*
  320 F.3d 920 (9th Cir. 2003) ............................................................................................6, 7

*Novak v. Kasaks,*
  216 F.3d 300 (2d Cir. 2000) ............................................................................................6, 7

TABLE OF AUTHORITIES
(continued)

Page(s)

## CASES

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
  98 F. 3d 2 (2d Cir. 1996)) .............................................................................. 7

*Osan Ltd. v. Accenture LLP*,
  454 F. Supp. 2d 46 (E.D.N.Y. 2006) ............................................................ 4

*Scala v. Sequor Group, Inc.*,
  No. 94 Civ. 0449, 1995 U.S. Dist. LEXIS 4969 (S.D.N.Y. April 14, 1995) ............. 9

*Steinberg v. PRT Group, Inc.*,
  88 F. Supp. 2d 294 (S.D.N.Y. 2000) ............................................................ 9

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
  No. 06-484, 2007 U.S. LEXIS 8270 (U.S. June 21, 2007) ..................... 1, 8

*Waxman v. Envipco Pick Up & Processing Services, Inc.*,
  No. 02 Civ. 10132 (GEL), 2003 WL 22439796 (S.D.N.Y. Oct. 28, 2003) ............. 3

## STATUTES

Fed.R.Civ.P. 9(b) ............................................................................................ 8

## REGULATIONS

17 C.F.R. § 230.144 ................................................................... 1, 4, 5, 6, 9

Cogent Capital Financial LLC ("CCF"), Cogent Capital Investments LLC ("CCI"), Cogent Capital Group LLC ("CCG"), Gregory L. Kofford and Mark W. Holden (collectively, the "Cogent Parties"), respectfully submit this reply memorandum of law in further support of their motion to dismiss Innofone's Complaint.[*]

## SUMMARY OF ARGUMENT

Innofone's memorandum cites no controlling authority showing the application of the legal principles it urges.  Instead, its brief is littered with irrelevant "facts" and ungrounded readings of cases.  For example, Innofone argues that the merger clauses in the Transaction agreements should not bar its fraud and misrepresentation claims because the merger clauses do not individually disavow each of the alleged misrepresentations.  This argument is unsupported by any authority and is impracticable as a matter of common sense.  Innofone also argues that the merger clauses are negated by Section 29(a) of the Securities Exchange Act, but that argument has been squarely rejected by Second Circuit authority.  *See* discussion *infra* Part I.

Similarly, with respect to the securities fraud claim, Innofone argues that Cogent's alleged predictions are not protected by the "bespeaks caution" doctrine because they are not forward-looking, but Innofone's use of the past tense to characterize these statements does not render them less forward looking.  Moreover, the recent U.S. Supreme Court decision in *Tellabs*, confirms that Innofone has failed to adequately plead scienter.  *See* discussion *infra* Part III.

Further, straining beyond its Complaint, Innofone reformulates its Rule 144 argument, now claiming that the transaction is illegal, impossible and lacking in consideration because Rule 144 does not permit the Corporate Cogent Parties to resell a sufficient number of shares for a

---

[*] Capitalized terms not defined herein shall have the meanings specified in the opening brief.

"Resale Condition" to occur. This construction of Rule 144 is wrong as a matter of law. *See*

discussion *infra* Part II.

Finally, amendment of the complaint would not save any of Innofone's claims, and leave

to replead such dismissed claims should be denied. *See* discussion *infra* Part IV.

## ARGUMENT

### I.    THE MERGER CLAUSES IN THE TRANSACTION AGREEMENTS WERE CUSTOM-MADE FOR THIS SPECIFIC TRANSACTION.

Innofone argues that the merger clauses in the transaction agreements mean nothing

unless they are "specific warnings and disclaimers in the agreement [that] exactly meet the

specific claims of fraud." (Innofone Opp. at 8.)   Innofone's "specific warning" rule finds no

support from the Second Circuit.  For these reasons, Innofone's claims based on fraud and

misrepresentation (First, Third and Fourth Claims for Relief) should be dismissed.

In *Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc.*, 343 F.3d 189, 193 (2d Cir.

2003), a merger clause characterized by the Second Circuit as a "standard merger clause"

precluded justifiable reliance—the merger clause simply stated that "there were no

representations other than those contained [in the Agreement]."   Similarly, in *Harsco Corp. v.

Segui*, 91 F.3d 337, 346 (2d Cir. 1996), the clause broadly stated that "there were no

representations other than those contained [in the Agreement]."  In both of these cases, the

Second Circuit found the merger clauses sufficient to preclude justifiable reliance, even though

the merger clauses plainly did not contain "specific warnings and disclaimers in the agreement

[that] exactly meet the specific claims of fraud," as Innofone demands.  (Innofone Opp. at 8.)

Innofone relies heavily on *Caiola*, also a Second Circuit decision, which held that a

boilerplate disclaimer in a prior version of the ISDA agreement here and the parties'

accompanying confirmation was *alone* insufficient to bar claims for relief.  295 F.3d 312 (2d Cir.

2

2002). In contrast, here, the parties negotiated for the inclusion of such a clause in the custom-made Purchase Agreement, in addition to the ISDA Master Agreement, and the two Equity Swap Confirmations. *See* Compl. Ex. B ¶ 8.6. Thus, even if the merger clause in the *Caiola* ISDA Agreement were considered "boilerplate," the custom-crafted merger clauses and disclaimers in the Purchase Agreement are not.

Nor are Innofone's efforts to distinguish *Harsco* and *Emergent* persuasive.[1] Innofone argues that there were fewer representations and warranties on fewer pages in the agreements in this case than in *Harsco*. (*Cf.* Innofone Opp. at 9.) Nothing in *Harsco, Emergent* or *Caiola*, however, conditions the validity of a merger clause upon the length or number of representations and warranties. The length and number of the representations and warranties merely signifies that either Innofone asked the Corporate Cogent Parties for fewer representations and warranties or that the Corporate Cogent Parties were unwilling to give Innofone more representations and warranties during the bargaining process.

Innofone also suggests that *Emergent* is somehow inapposite because Innofone was not "a sophisticated consumer of complex financial products." (Innofone Opp. at 9.) Nothing in *Emergent* creates an "[un]sophisticated consumer" defense to the effect of a merger clause.

---

[1]  Innofone's attempts to distinguish the Cogent Parties' other citations from this Circuit are equally unconvincing. Contrary to Innofone's assertion, the merger clause in *Dresner v. Utility.com, Inc.* used language that was less specific than the clause here—it did not even name the specific type of risk that was being disclaimed. 371 F. Supp. 2d. 476, 492 (S.D.N.Y. 2005). Further, in *Waxman v. Envipco Pick Up & Processing Services, Inc.*, this Court's holding that the merger clause precluded the misrepresentation claims was not dictum merely because the merger-clause ground was one of several independent grounds for dismissal. No. 02 Civ. 10132 (GEL), 2003 WL 22439796, at *10 (S.D.N.Y. Oct. 28, 2003). Innofone's intimation that *Dafofin Holdings S.A. v. Hotelworks.com, Inc.* is irrelevant because it considered whether a merger clause provided plaintiff with inquiry notice does not detract from the court's finding that the merger clause made clear that "there [were] no other agreements between the parties." No. 00 Civ. 7861 (LAP), 2001 WL 940632, at *1 & *4 (S.D.N.Y. Aug. 17, 2001).

Moreover, the Complaint's exhibits plainly show that Innofone was advised by both in-house and outside counsel; Innofone could hardly be considered an "[un]sophisticated party" here.[2]

Finally, Innofone argues that Section 29(a) of the Securities Exchange Act—which negates waivers of compliance with the federal securities laws—also nullifies any contractual provision that disclaims representations or warranties. (Innofone Opp. at 12-13.) The Second Circuit rejected this very argument in *Harsco,* holding that disclaimer provisions merely "define[d] the boundaries of the transaction," and did not run afoul of Section 29(a). *Id.* at 343. Thus, Section 29(a) also provides no avenue by which Innofone could escape the merger clause.

## II.    INNOFONE CONTINUES TO MISREAD RULE 144.

Innofone's Opposition Brief advances a new interpretation of Rule 144 that is different from that in its Complaint, but equally erroneous. In its Complaint, Innofone argues that "it would be illegal for the Cogent Parties to offer the securities for sale to the public without an effective registration statement." (Compl. ¶59.) In other words, Innofone argues that, without an effective registration statement, the Corporate Cogent Parties could not resell any of the shares purchased in the Transaction and therefore, a "Resale Condition" could not occur, rendering the Transaction illegal, impossible and lacking in consideration.

Now, after the Cogent Parties demonstrated in their motion to dismiss that the Corporate Cogent Parties could, in fact, sell the shares without an effective registration statement under Rule 144, Innofone argues instead that the Corporate Cogent Parties could not sell enough shares under Rule 144 to generate $50 million. This argument is plainly wrong because Paragraph (k)

---

[2]  Innofone's "sophisticated investor" requirement also contradicts precedent in this Circuit. *See, e.g., Osan Ltd. v. Accenture LLP,* 454 F. Supp. 2d 46 (E.D.N.Y. 2006) (finding no reliance by plaintiff, a start-up company developing online voting mechanisms); *Dresner v. Utility.com, Inc.,* 371 F. Supp. 2d 476 (S.D.N.Y. 2005) (same where plaintiff company was a dot.com business developing telecommunications software).

of Rule 144 ("Rule 144(k)") permits sales of restricted securities without any volume limitations.
17 C.F.R. § 230.144(k). Rule 144(k) also eliminates other requirements of Rule 144, namely the
current information requirement (Rule 144(c)), the manner of sale requirement (Rule 144(f)), and
the notice requirement (Rule 144(h)). *Id*. To be eligible to use 144(k), a person must hold the
securities sought to be sold for at least a two-year period and must not be an "affiliate" of the
issuer at the time of sale or for the preceding three months. *Id*. Thus, no later than June 5, 2008,
two years from the closing of the private placement, the Corporate Cogent Parties would be able
to sell the shares purchased in the Transaction without volume limitations, thus satisfying the
"Resale Condition."[3]

Innofone's heavy reliance on *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838 (2d Cir.
1952), is therefore misplaced. In *Kaiser-Frazer*, the Second Circuit held that an issuer could not
maintain an action to compel its underwriter to purchase shares to be issued pursuant to a
fraudulent prospectus. *Id.* at 843-44. The appellate court rescinded the underwriter's lawful
obligation to purchase the shares because the fraudulent prospectus prevented the shares from
ever being resold legally to the public. *Id.* at 844. In contrast, here, Rule 144 permits the
Corporate Cogent Parties to resell the shares legally, and there is no illegality or impossibility
associated with the Transaction.

In sum, Innofone remains mired in a continuing misinterpretation of Rule 144. Because
this misunderstanding of the law forms the basis for Innofone's claims for relief on the theories
of illegality, impossibility and want of consideration, those claims should be dismissed.

---

[3] Innofone doesn't claim that the Corporate Cogent Parties are "affiliates." Nor could it
because, for example, the bulk of the shares held by the Corporate Cogent Parties are non-
voting convertible preferred stock, the Corporate Cogent Parties have no right to appoint any
directors, do not sit on Innofone's board, and do not hold any officerships or other managerial
positions.

### III.  THE COGENT PARTIES' ALLEGED PREDICTION THAT THE SEC WOULD DECLARE INNOFONE'S REGISTRATION STATEMENT EFFECTIVE IS FORWARD-LOOKING.

Contrary to Innofone's arguments, the Cogent Parties alleged prediction that the SEC would declare Innofone's registration statement effective is plainly forward-looking.  At the outset, it should be noted that Innofone withdrew its registration statement after disclosing that certain of its financial statements would have to be restated.  Innofone blames the need to restate its financial statements on "the transaction at issue here." (Innofone Opp. at 1.)  This accusation is ridiculous—the financial statements that need to be restated include the nine-month period *before* the parties even entered into the Transaction.  *Compare* Compl. Ex. B (June 2, 2006 agreement) *with* Wong Decl. Ex. E (withdrawing financial statements for the quarters ending Mar. 31, 2006, Dec. 31, 2005, and Sept. 30, 2005).  A motion to dismiss requires a court to adopt the facts as stated in the Complaint—it does not require the judge to abandon all common sense.  Thus, Innofone's First Claim for Relief should be dismissed.

Innofone alleges that the Cogent Parties represented that the Transaction "was specifically designed to meet [SEC requirements]."  Even if true, the statement is still forward-looking, despite its expression in the past tense.  (Compl. at ¶30.)  "[P]redictions of future events [do not] become actionable merely because they happen to have some basis in present facts." *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944, 949 (C.D. Cal. 2003).  At the time of the alleged statement, the Cogent Parties could not have known whether the SEC would approve the Transaction or whether the Transaction's design would actually satisfy the SEC.  The truth of the statement was contingent upon a future event, and the statement is therefore forward-looking.

Innofone's reliance on *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), and *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d

6

920 (9th Cir. 2003), is therefore misplaced.  In both cases, defendants allegedly misstated current

facts that they knew to be false at the time of the statements.  In *Novak,* defendants allegedly

stated that the store's inventory was "in good shape," even though they already knew that the

inventory was too old to be sold at full price.  216 F.3d at 304.  Likewise, in *America West,*

defendant airline stated that its settlement with the FAA would not hurt its financial

performance, even though it already knew that the settlement would require it to pay a large fine

and make costly improvements.  320 F.3d at 929.

Innofone also argues that the Cogent Parties' alleged misrepresentation "that the [SEC]

had approved this type of financing before" is not a forward-looking statement.  (Compl. at ¶30.)

The message in the alleged statement is forward-looking because it conveys an expectation that

the SEC would have registered Innofone's registration statement as well.

Finally, Innofone argues that the Cogent Parties misstated a current fact by touting their

own expertise in dealing with the SEC.  (Compl. at ¶30.)  As *Novak* teaches, any such alleged

statements are mere puffery and therefore not actionable.  *Novak,* 216 F.3d at 315.[4]

## IV.    INNOFONE'S SCIENTER ALLEGATIONS ARE INADEQUATE.

The Cogent Parties respectfully submit that nothing Innofone has argued in its Opposition

regarding the particularity of its pleadings materially affects the arguments made in the Cogent

---

[4]    Innfone argues that the cautionary language in *Halperin v. eBanker USA.com, Inc.* and
*Olkey v. Hyperion 1999 Term Trust, Inc.*, gave more graphic warnings.  This argument is
perplexing; the cautionary language in *Halperin* is less extensive than the language in the
Transaction agreements here.  *Compare Halperin*, 295 F.3d 352, 360 (2d Cir. 2002)
(plaintiff warned that if shares were not registered, investors may have to "retain
ownership of . . . their investment for an indefinite period") *with* Compl. Ex. B ¶ 4.7 (if
shares here are not registered, they "must be held indefinitely unless the sale or other
transfer thereof is subsequently registered pursuant to any Applicable Laws").  Moreover,
*Olkey*'s warning, too, is operatively indistinguishable.  98 F. 3d 2, 5 (2d Cir. 1996) (a
"significant decline in interest rates could lead to a significant decrease in the Trust's net
income").

Parties' opening memorandum in support of the motion to dismiss Innofone's complaint. For this reason, and because of space limitations, the Cogent Parties rest upon the opening memorandum.

However, Innofone is wrong in stating that it is sufficient under the PSLRA to plead scienter merely by alleging that the Cogent Parties' statements "showed a high degree of recklessness which is the equivalent of intent." (Compl. ¶¶ 32 & 53.) As the Supreme Court explained in its decision yesterday:

> [T]he inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged.

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*, slip op., No. 06-484, 2007 U.S. LEXIS 8270, at *29-30 (U.S. June 21, 2007) (emphasis added).

Here, Innofone does not allege a "reasonable" or "permissible" inference—it claims that any allegation of recklessness somehow becomes "the equivalent" of intent. Such a pleading does not satisfy Fed.R.Civ.P. 9(b)'s requirement, much less the heightened requirement under the PSLRA, as construed by *Tellabs*. Accordingly, Innofone's allegations of scienter are inadequate and the First Claim for Relief must be dismissed.

## V.    LEAVE TO REPLEAD SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE.

This Court should deny Innofone leave to replead those claims for which repleading would be futile. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 272 (2d Cir. 1996) (futility of amendment is a "good reason" to dismiss without leave to amend).

If this Court holds that the merger clause requires dismissal of the fraud-based claims (the First, Third, and Fourth Claims for Relief), no amount of repleading could save those Claims, and leave to replead should be denied. *See, e.g., Emergent Cap. Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189 (2d Cir. 2003) (affirming denial of leave to replead misrepresentation-based securities fraud claims because a merger clause prevented showing justifiable reliance).[5]

Likewise, if this Court dismisses the illegality, mistake, impossibility and want-of-consideration claims (the Second, Third, Fourth and Fifth Claims for Relief) on the ground a "Resale Condition" can occur even in the absence of an effective registration statement because Rule 144 permits the Corporate Cogent Parties to resell Innofone's shares no later than two years after the closing of the transaction without a registration statement, no amount of repleading would alter the construction of Rule 144. Accordingly, leave should be denied upon such a dismissal. *Cf. Geiger v. The Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1192 (S.D.N.Y. 1996) (denying leave to replead because the sole basis of the plaintiff's claims was immaterial as a matter of law).

Finally, if this Court dismisses the First Claim for Relief under the "bespeaks caution" doctrine, no repleading could erase the existence of the cautionary statements, and leave to replead should be denied. *See, e.g., Steinberg v. PRT Group, Inc.*, 88 F. Supp. 2d 294, 308, 311 (S.D.N.Y. 2000) (holding the "bespeaks caution" rendered one of the defendant's alleged misrepresentations immaterial, and denying leave to amend as futile). *In re Nokia Corp. Sec. Litig.*, 96 Civ. 3752 (DC), 1998 U.S. Dist. LEXIS 4100, at *23–26, *41 (S.D.N.Y. April 1, 1998)

---

[5] *See also Belin v. Weissler*, 97 Civ. 8787 (RWS), 1998 U.S. Dist. LEXIS 10492, at *25 (S.D.N.Y. July 14, 1998); *Scala v. Sequor Group, Inc.*, 94 Civ. 0449 (LAP), 1995 U.S. Dist. LEXIS 4969, at *25, 31 (S.D.N.Y. April 14, 1995).

(dismissing certain securities fraud claims without leave to amend because the statements at issue were immaterial under the "bespeaks caution" doctrine).

## CONCLUSION

For the foregoing reasons, the Cogent Parties respectfully request that this Court enter an order (1) dismissing Innofone's Complaint in its entirety; (2) denying leave to replead where leave would be futile; and (3) granting any further relief as the Court may deem just and proper.

Dated: June 22, 2007
       New York, New York

MORRISON & FOERSTER LLP
Joel C. Haims (JH-9829)
Mitchell M. Wong (MW-8795)
Emily S. Richman (ER-2277)
1290 Avenue of the Americas
New York, New York  10104
(212) 468-8000

*Attorneys for Cogent Capital Financial
LLC, Cogent Capital Investments LLC,
Cogent Capital Group LLC, Gregory L.
Kofford and Mark W. Holden*

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2007, I caused to be served a true and correct copy of the

following documents by e-mail and ECF filing on Roderick McLeod, Esq., of Jones Day,

counsel for Innofone.com, Inc.; and Paula Bagger, Esq., of Cooke Clancy & Gruenthal LLP,

counsel for Investors Bank & Trust Company:

    (1)    The Cogent Parties' Reply Memorandum of Law in Further Support of
Their Motion to Dismiss Innofone's Complaint.

Dated:    New York, New York
June 22, 2007

Mitchell M. Wong (MW-8795)