# EXHIBIT A

Westlaw.

--- S.Ct. ----
--- S.Ct. ----, 2007 WL 1773208 (U.S.)
(Cite as: --- S.Ct. ----)

Page 1

**H**
Tellabs, Inc. v. Makor Issues & Rights, Ltd.
U.S.,2007.
Only the Westlaw citation is currently available.
Supreme Court of the United States
**TELLABS**, INC., et al., Petitioners,
v.
**MAKOR** ISSUES & RIGHTS, LTD., et al.
No. 06-484.

Argued March 28, 2007.
Decided June 21, 2007.

**Background:** Investors brought securities fraud class action against corporation and its chief executive officer (CEO). The United States District Court for the Northern District of Illinois, Amy J. St. Eve, J., dismissed action. Investors appealed. The United States Court of Appeals for the Seventh Circuit, 437 F.3d 588, reversed. Certiorari was granted.

**Holdings:** The Supreme Court, Justice Ginsburg, held that:

(1) in determining whether securities fraud complaint gives rise to "strong inference" of scienter, within meaning of Private Securities Litigation Reform Act (PSLRA), court must consider competing inferences, and

(2) plaintiff alleging fraud in § 10(b) action must plead facts rendering inference of scienter at least as likely as any plausible opposing inference.

Vacated and remanded.

Justices Scalia and Alito filed opinions concurring in the judgment.

Justice Stevens filed dissenting opinion.

[1] **Securities Regulation 349B** ⚖══60.45(1)

349B Securities Regulation
 349BI Federal Regulation
  349BI(C) Trading and Markets
   349BI(C)7 Fraud and Manipulation
    349Bk60.43 Grounds of and Defenses to Liability
     349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
      349Bk60.45(1) k. In General. Most Cited Cases
To establish liability under § 10(b) and Rule 10b-5, private plaintiff must prove that defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

[2] **Federal Civil Procedure 170A** ⚖══1835

170A Federal Civil Procedure
 170AXI Dismissal
  170AXI(B) Involuntary Dismissal
   170AXI(B)5 Proceedings
    170Ak1827 Determination
     170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
On motion to dismiss § 10(b) action for failure to state claim on which relief can be granted, court must accept all factual allegations in complaint as true. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[3] **Federal Civil Procedure 170A** ⚖══1832

170A Federal Civil Procedure
 170AXI Dismissal
  170AXI(B) Involuntary Dismissal
   170AXI(B)5 Proceedings
    170Ak1827 Determination
     170Ak1832 k. Matters Considered in General. Most Cited Cases
On motion to dismiss § 10(b) action for failure to state claim on which relief can be granted, court must consider complaint in its entirety, as well as other sources courts ordinarily examine when ruling on such motions, in particular, documents incorporated into complaint by reference, and matters of which court may take judicial notice; inquiry is whether all of the facts alleged, taken collectively, give rise to strong inference of scienter, not whether any individual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----
--- S.Ct. ----, 2007 WL 1773208 (U.S.)
(Cite as: --- S.Ct. ----)

Page 2

allegation, scrutinized in isolation, meets that standard. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Securities Regulation 349B ⚷60.51**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 k. In General. Most Cited Cases
In determining whether securities fraud complaint gives rise to "strong inference" of scienter, within meaning of Private Securities Litigation Reform Act (PSLRA), court must consider competing inferences; to determine whether plaintiff has alleged facts that give rise to requisite "strong inference" of scienter, court must consider plausible nonculpable explanations for defendant's conduct, as well as inferences favoring plaintiff. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2).

**[5] Securities Regulation 349B ⚷60.51**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 k. In General. Most Cited Cases
Inference of scienter in securities fraud complaint must be more than merely "reasonable" or "permissible" to satisfy Private Securities Litigation Reform Act (PSLRA); it must be cogent and compelling, thus strong in light of other explanations, and complaint will survive only if reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2).

**[6] Securities Regulation 349B ⚷60.51**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.51 k. In General. Most Cited Cases
While motive can be relevant consideration, and personal financial gain may weigh heavily in favor of finding that securities fraud complaint gives rise to "strong inference" of scienter, within meaning of Private Securities Litigation Reform Act (PSLRA), absence of motive allegation is not fatal. Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2).

**[7] Jury 230 ⚷34(1)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(1) k. In General. Most Cited Cases
In determining whether securities fraud complaint gives rise to "strong inference" of scienter, within meaning of Private Securities Litigation Reform Act (PSLRA), court's comparative assessment of plausible inferences, while constantly assuming plaintiff's allegations to be true, does not impinge upon Seventh Amendment right to jury trial. U.S.C.A. Const.Amend. 7; Private Securities Litigation Reform Act of 1995, § 101(b), 15 U.S.C.A. § 78u-4(b)(2).

Syllabus [FN*]

> FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

*1 As a check against abusive litigation in private securities fraud actions, the Private Securities Litigation Reform Act of 1995 (PSLRA) includes exacting pleading requirements. The Act requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.,* the defendant's intention "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, and n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668. As set out in § 21D(b)(2), plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Congress left the key term "strong inference" undefined.

Petitioner **Tellabs**, Inc., manufactures specialized

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

equipment for fiber optic networks. Respondents (Shareholders) purchased **Tellabs** stock between December 11, 2000, and June 19, 2001. They filed a class action, alleging that **Tellabs** and petitioner Notebaert, then **Tellabs'** chief executive officer and president, had engaged in securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, and that Notebaert was a "controlling person" under the 1934 Act, and therefore derivatively liable for the company's fraudulent acts. **Tellabs** moved to dismiss the complaint on the ground that the Shareholders had failed to plead their case with the particularity the PSLRA requires. The District Court agreed, dismissing the complaint without prejudice. The Shareholders then amended their complaint, adding references to 27 confidential sources and making further, more specific, allegations concerning Notebaert's mental state. The District Court again dismissed, this time with prejudice. The Shareholders had sufficiently pleaded that Notebaert's statements were misleading, the court determined, but they had insufficiently alleged that he acted with scienter. The Seventh Circuit reversed in relevant part. Like the District Court, it found that the Shareholders had pleaded the misleading character of Notebaert's statements with sufficient particularity. Unlike the District Court, however, it concluded that the Shareholders had sufficiently alleged that Notebaert acted with the requisite state of mind. In evaluating whether the PSLRA's pleading standard is met, the Circuit said, courts should examine all of the complaint's allegations to decide whether collectively they establish an inference of scienter; the complaint would survive, the court stated, if a reasonable person could infer from the complaint's allegations that the defendant acted with the requisite state of mind.

*Held:* To qualify as "strong" within the intendment of § 21D(b)(2), an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. Pp. ---- - ----6-18.

(a) Setting a uniform pleading standard for § 10(b) actions was among Congress' objectives in enacting the PSLRA. Designed to curb perceived abuses of the § 10(b) private action, the PSLRA installed both substantive and procedural controls. As relevant here, § 21D(b) of the PSLRA "impose[d] heightened pleading requirements in [§ 10(b) and Rule 10b-5] actions." *Dabit,* 547 U.S., at 81, 126 S.Ct. 1503. In the instant case, the District Court and the Seventh Circuit agreed that the complaint sufficiently specified Notebaert's alleged misleading statements and the reasons why the statements were misleading. But those courts disagreed on whether the Shareholders, as required by § 21D(b)(2), "state[d] with particularity facts giving rise to a strong inference that [Notebaert] acted with [scienter]," § 78u-4(b)(2). Congress did not shed much light on what facts would create a strong inference or how courts could determine the existence of the requisite inference. With no clear guide from Congress other than its "inten[tion] to strengthen existing pleading requirements," H.R. Conf. Rep., at 41, Courts of Appeals have diverged in construing the term "strong inference." Among the uncertainties, should courts consider competing inferences in determining whether an inference of scienter is "strong"? This Court's task is to prescribe a workable construction of the "strong inference" standard, a reading geared to the PSLRA's twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims. Pp. ---- - ----6-10.

*2 (b) The Court establishes the following prescriptions: *First,* faced with a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517. *Second,* courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions. The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. *Third,* in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences. The Seventh Circuit expressly declined to engage in such a comparative inquiry. But in § 21D(b)(2), Congress did not merely require plaintiffs to allege facts from which an inference of scienter rationally *could* be drawn. Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong"-*i.e.,* a powerful or cogent-inference. To determine whether the plaintiff has alleged facts giving rise to the requisite "strong inference," a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, but it must be more than merely "reasonable" or "permissible"-it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive only if a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged. Pp. ---- - ----11-13.

(c) **Tellabs** contends that when competing inferences are considered, Notebaert's evident lack of pecuniary motive will be dispositive. The Court agrees that motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference. The absence of a motive allegation, however, is not fatal for allegations must be considered collectively; the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the complaint's entirety. **Tellabs** also maintains that several of the Shareholders' allegations are too vague or ambiguous to contribute to a strong inference of scienter. While omissions and ambiguities count against inferring scienter, the court's job is not to scrutinize each allegation in isolation but to access all the allegations holistically. Pp. ---- - ----13-15.

*3 (d) The Seventh Circuit was unduly concerned that a court's comparative assessment of plausible inferences would impinge upon the Seventh Amendment right to jury trial. Congress, as creator of federal statutory claims, has power to prescribe what must be pleaded to state the claim, just as it has power to determine what must be proved to prevail on the merits. It is the federal lawmaker's prerogative, therefore, to allow, disallow, or shape the contours of-including the pleading and proof requirements for- § 10(b) private actions. This Court has never questioned that authority in general, or suggested, in particular, that the Seventh Amendment inhibits Congress from establishing whatever pleading requirements it finds appropriate for federal statutory claims. Provided that the Shareholders have satisfied the congressionally "prescribe[d] ... means of making an issue," Fidelity & Deposit Co. of Md. v. United States, 187 U.S. 315, 320, 23 S.Ct. 120, 47 L.Ed. 194, the case will fall within the jury's authority to assess the credibility of witnesses, resolve genuine issues of fact, and make the ultimate determination whether Notebaert and, by imputation, **Tellabs** acted with scienter. Under this Court's construction of the "strong inference" standard, a plaintiff is not forced to plead more than she would be required to prove at trial. A plaintiff alleging fraud under § 10(b) must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference. At trial, she must then prove her case by a "preponderance of the evidence." Pp. ---- - ----15-17.

(e) Neither the District Court nor the Court of Appeals had the opportunity to consider whether the Shareholders' allegations warrant "a strong inference that [Notebaert and **Tellabs**] acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), in light of the prescriptions announced today. Thus, the case is remanded for a determination under this Court's construction of § 21D(b)(2). P. ----18.

437 F.3d 588, vacated and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C.J., and KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined. SCALIA, J., and ALITO, J., filed opinions concurring in the judgment. STEVENS, J., filed a dissenting opinion.

Carter G. Phillips, Washington, DC, for petitioners.
Kannon K. Shanmugam, Washington, DC, for the United States as amicus curiae, by special leave of the Court, supporting petitioners.
Arthur R. Miller, New York, NY, for respondents.
David F. Graham, Hille R. Sheppard, Robert N. Hochman, Melanie E. Walker, Sidley Austin LLP, Chicago, Illinois, Carter G. Phillips, Counsel of Record, Richard D. Bernstein, Eamon P. Joyce, Sidley Austin LLP, Washington, D.C., for Petitioners.
Arthur R. Miller, Cambridge, MA, Melvyn I. Weiss, Jerome M. Congress, Richard H. Weiss, Counsel of Record, Clifford S. Goodstein, Milberg Weiss & Bershad LLP, New York, NY, for Respondents.For U.S. Supreme Court Briefs, see:2007 WL 432763 (Pet.Brief)2007 WL 760412 (Resp.Brief)2007 WL 835317 (Reply.Brief)
Justice GINSBURG delivered the opinion of the Court.
*4 This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC). See, *e.g.,* Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 345, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); J.I. Case Co. v. Borak, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Private securities fraud actions, however, if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006). As a check against abusive litigation by private parties, Congress enacted the Private Securities Litigation Reform Act of 1995

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(PSLRA), 109 Stat. 737.

Exacting pleading requirements are among the control measures Congress included in the PSLRA. The Act requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, and n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); see 15 U.S.C. § 78u-4(b)(1),(2). This case concerns the latter requirement. As set out in § 21D(b)(2) of the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Congress left the key term "strong inference" undefined, and Courts of Appeals have divided on its meaning. In the case before us, the Court of Appeals for the Seventh Circuit held that the "strong inference" standard would be met if the complaint "allege[d] facts from which, if true, a reasonable person could infer that the defendant acted with the required intent." 437 F.3d 588, 602 (2006). That formulation, we conclude, does not capture the stricter demand Congress sought to convey in § 21D(b)(2). It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, as the Seventh Circuit did, but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as "strong" within the intendment of § 21D(b)(2), we hold, an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

I

*5 Petitioner **Tellabs**, Inc., manufactures specialized equipment used in fiber optic networks. During the time period relevant to this case, petitioner Richard Notebaert was **Tellabs**' chief executive officer and president. Respondents (Shareholders) are persons who purchased **Tellabs** stock between December 11, 2000, and June 19, 2001. They accuse **Tellabs** and Notebaert (as well as several other **Tellabs** executives) of engaging in a scheme to deceive the investing public about the true value of **Tellabs**' stock. See 437 F.3d, at 591; App. 94-98.[FN1]

> FN1. The Shareholders brought suit against **Tellabs** executives other than Notebaert, including Richard Birck, **Tellabs**' chairman and former chief executive officer. Because the claims against the other executives, many of which have been dismissed, are not before us, we focus on the allegations as they relate to Notebaert. We refer to the defendant-petitioners collectively as "**Tellabs**."

Beginning on December 11, 2000, the Shareholders allege, Notebaert (and by imputation **Tellabs**) "falsely reassured public investors, in a series of statements ... that **Tellabs** was continuing to enjoy strong demand for its products and earning record revenues," when, in fact, Notebaert knew the opposite was true. *Id.,* at 94-95, 98. From December 2000 until the spring of 2001, the Shareholders claim, Notebaert knowingly misled the public in four ways. 437 F.3d, at 596. First, he made statements indicating that demand for **Tellabs**' flagship networking device, the TITAN 5500, was continuing to grow, when in fact demand for that product was waning. *Id.,* at 596, 597. Second, Notebaert made statements indicating that the TITAN 6500, **Tellabs**' next-generation networking device, was available for delivery, and that demand for that product was strong and growing, when in truth the product was not ready for delivery and demand was weak. *Id.,* at 596, 597-598. Third, he falsely represented **Tellabs**' financial results for the fourth quarter of 2000 (and, in connection with those results, condoned the practice of "channel stuffing," under which **Tellabs** flooded its customers with unwanted products). *Id.,* at 596, 598. Fourth, Notebaert made a series of overstated revenue projections, when demand for the TITAN 5500 was drying up and production of the TITAN 6500 was behind schedule. *Id.,* at 596, 598-599. Based on Notebaert's sunny assessments, the Shareholders contend, market analysts recommended that investors buy **Tellabs**' stock. See *id.,* at 592.

The first public glimmer that business was not so healthy came in March 2001 when **Tellabs** modestly reduced its first quarter sales projections. *Ibid.* In the next months, **Tellabs** made progressively more cautious statements about its projected sales. On June 19, 2001, the last day of the class period, **Tellabs** disclosed that demand for the TITAN 5500 had

significantly dropped. *Id., at 593.* Simultaneously, the company substantially lowered its revenue projections for the second quarter of 2001. The next day, the price of **Tellabs** stock, which had reached a high of $67 during the period, plunged to a low of $15.87. *Ibid.*

On December 3, 2002, the Shareholders filed a class action in the District Court for the Northern District of Illinois. *Ibid.* Their complaint stated, *inter alia,* that **Tellabs** and Notebaert had engaged in securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 CFR § 240.10b-5 (2006), also that Notebaert was a "controlling person" under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), and therefore derivatively liable for the company's fraudulent acts. See App. 98-101, 167-171. **Tellabs** moved to dismiss the complaint on the ground that the Shareholders had failed to plead their case with the particularity the PSLRA requires. The District Court agreed, and therefore dismissed the complaint without prejudice. App. to Pet. for Cert. 80a-117a; see *Johnson v. Tellabs, Inc.,* 303 F.Supp.2d 941, 945 (N.D.Ill.2004).

*6 The Shareholders then amended their complaint, adding references to 27 confidential sources and making further, more specific, allegations concerning Notebaert's mental state. See 437 F.3d, at 594; App. 91-93, 152-160. The District Court again dismissed, this time with prejudice. 303 F.Supp.2d, at 971. The Shareholders had sufficiently pleaded that Notebaert's statements were misleading, the court determined, *id., at 955-961,* but they had insufficiently alleged that he acted with scienter, *id., at 954-955, 961-969.*

The Court of Appeals for the Seventh Circuit reversed in relevant part. 437 F.3d, at 591. Like the District Court, the Court of Appeals found that the Shareholders had pleaded the misleading character of Notebaert's statements with sufficient particularity. *Id., at 595-600.* Unlike the District Court, however, the Seventh Circuit concluded that the Shareholders had sufficiently alleged that Notebaert acted with the requisite state of mind. *Id., at 603-605.*

The Court of Appeals recognized that the PSLRA "unequivocally raise[d] the bar for pleading scienter" by requiring plaintiffs to "plea[d] sufficient facts to create a strong inference of scienter." *Id., at 601* (internal quotation marks omitted). In evaluating whether that pleading standard is met, the Seventh Circuit said, "courts [should] examine all of the allegations in the complaint and then ... decide whether collectively they establish such an inference." *Ibid.* "[W]e will allow the complaint to survive," the court next and critically stated, "if it alleges facts from which, if true, a reasonable person could infer that the defendant acted with the required intent .... If a reasonable person could not draw such an inference from the alleged facts, the defendants are entitled to dismissal." *Id., at 602.*

In adopting its standard for the survival of a complaint, the Seventh Circuit explicitly rejected a stiffer standard adopted by the Sixth Circuit, *i.e.,* that "plaintiffs are entitled only to the most plausible of competing inferences." *Id., at 601, 602* (quoting *Fidel v. Farley,* 392 F.3d 220, 227 (C.A.6 2004)). The Sixth Circuit's standard, the court observed, because it involved an assessment of competing inferences, "could potentially infringe upon plaintiffs' Seventh Amendment rights." 437 F.3d, at 602. We granted certiorari to resolve the disagreement among the Circuits on whether, and to what extent, a court must consider competing inferences in determining whether a securities fraud complaint gives rise to a "strong inference" of scienter. [FN2] 549 U.S. ----, 127 S.Ct. 853, 166 L.Ed.2d 681 (2007).

FN2. See, *e.g.,* 437 F.3d 588, 602 (C.A.7 2006) (decision below); *Brown v. Credit Suisse First Boston Corp.,* 431 F.3d 36, 49, 51 (C.A.1 2005); *Ottmann v. Hanger Orthopedic Group, Inc.,* 353 F.3d 338, 347-349 (C.A.4 2003); *Pirraglia v. Novell, Inc.,* 339 F.3d 1182, 1187-1188 (C.A.10 2003); *Gompper v. VISX, Inc.,* 298 F.3d 893, 896-897 (C.A.9 2002); *Helwig v. Vencor, Inc.,* 251 F.3d 540, 553 (C.A.6 2001) (en banc).

II

*7 [1] Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security ..., [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements § 10(b) by declaring it unlawful:
"(a) To employ any device, scheme, or artifice to defraud,
"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading, or
"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b-5.

Section 10(b), this Court has implied from the statute's text and purpose, affords a right of action to purchasers or sellers of securities injured by its violation. See, e.g., *Dura Pharmaceuticals*, 544 U.S., at 341, 125 S.Ct. 1627. See also *id.*, at 345, 125 S.Ct. 1627 ("The securities statutes seek to maintain public confidence in the marketplace .... by deterring fraud, in part, through the availability of private securities fraud actions."); *Borak*, 377 U.S., at 432, 84 S.Ct. 1555 (private securities fraud actions provide "a most effective weapon in the enforcement" of securities laws and are "a necessary supplement to Commission action"). To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst*, 425 U.S., at 193-194, and n. 12, 96 S.Ct. 1375. [FN3]

> FN3. We have previously reserved the question whether reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b-5. See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Every Court of Appeals that has considered the issue has held that a plaintiff may meet the scienter requirement by showing that the defendant acted intentionally or recklessly, though the Circuits differ on the degree of recklessness required. See *Ottmann*, 353 F.3d, at 343 (collecting cases). The question whether and when recklessness satisfies the scienter requirement is not presented in this case.

In an ordinary civil action, the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Although the rule encourages brevity, the complaint must say enough to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharmaceuticals*, 544 U.S., at 346, 125 S.Ct. 1627 (internal quotation marks omitted). Prior to the enactment of the PSLRA, the sufficiency of a complaint for securities fraud was governed not by Rule 8, but by the heightened pleading standard set forth in Rule 9(b). See *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (C.A.1 1992) (Breyer, J.) (collecting cases). Rule 9(b) applies to "all averments of fraud or mistake"; it requires that "the circumstances constituting fraud ... be stated with particularity" but provides that "[m]alice, intent, knowledge, and other condition of mind of a person, may be averred generally."

Courts of Appeals diverged on the character of the Rule 9(b) inquiry in § 10(b) cases: Could securities fraud plaintiffs allege the requisite mental state "simply by stating that scienter existed," *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1546-1547 (C.A.9 1994) (en banc), or were they required to allege with particularity facts giving rise to an inference of scienter? Compare *id.*, at 1546 ("We are not permitted to add new requirements to Rule 9(b) simply because we like the effects of doing so."), with, e.g., *Greenstone*, 975 F.2d, at 25 (were the law to permit a securities fraud complaint simply to allege scienter without supporting facts, "a complaint could evade too easily the 'particularity' requirement in Rule 9(b)'s first sentence"). Circuits requiring plaintiffs to allege specific facts indicating scienter expressed that requirement variously. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301.1, pp. 300-302 (3d ed.2004) (hereinafter Wright & Miller). The Second Circuit's formulation was the most stringent. Securities fraud plaintiffs in that Circuit were required to "specifically plead those [facts] which they assert give rise to a *strong inference* that the defendants had" the requisite state of mind. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (1979) (emphasis added). The "strong inference" formulation was appropriate, the Second Circuit said, to ward off allegations of "fraud by hindsight." See, e.g., *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (1994) (quoting *Denny v. Barber*, 576 F.2d 465, 470 (C.A.2 1978) (Friendly, J.)).

*8 Setting a uniform pleading standard for § 10(b) actions was among Congress' objectives when it enacted the PSLRA. Designed to curb perceived abuses of the § 10(b) private action-"nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers," *Dabit*, 547 U.S., at 81, 126 S.Ct. 1503 (quoting H.R. Conf. Rep. No. 104-369, p. 31 (1995), U.S.Code Cong. & Admin.News 1995, p. 730 (hereinafter H.R. Conf. Rep.))-the PSLRA installed both substantive and procedural controls.[FN4] Notably, Congress prescribed new procedures for the appointment of lead plaintiffs and lead counsel. This innovation aimed to increase the likelihood that institutional investors-parties more likely to balance the interests of the class with the long-term interests of the company-would serve as lead plaintiffs. See *id.*, at 33-34; S.Rep. No. 104-98, p. 11 (1995), U.S.Code

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----  
--- S.Ct. ----, 2007 WL 1773208 (U.S.)  
(Cite as: --- S.Ct. ----)

Page 8

Cong. & Admin.News 1995, pp. 679, 690. Congress also "limit[ed] recoverable damages and attorney's fees, provide[d] a 'safe harbor' for forward-looking statements, ... mandate[d] imposition of sanctions for frivolous litigation, and authorize[d] a stay of discovery pending resolution of any motion to dismiss." Dabit, 547 U.S., at 81, 126 S.Ct. 1503. And in § 21D(b) of the PSLRA, Congress "impose[d] heightened pleading requirements in actions brought pursuant to § 10(b) and Rule 10b-5." Ibid.

> FN4. Nothing in the Act, we have previously noted, casts doubt on the conclusion "that private securities litigation [i]s an indispensable tool with which defrauded investors can recover their losses"-a matter crucial to the integrity of domestic capital markets. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006) (internal quotation marks omitted).

Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," § 78u-4(b)(2). In the instant case, as earlier stated, see supra, at ----5, the District Court and the Seventh Circuit agreed that the Shareholders met the first of the two requirements: The complaint sufficiently specified Notebaert's alleged misleading statements and the reasons why the statements were misleading. 303 F.Supp.2d, at 955-961, 437 F.3d, at 596-600. But those courts disagreed on whether the Shareholders, as required by § 21D(b)(2), "state[d] with particularity facts giving rise to a strong inference that [Notebaert] acted with [scienter]," § 78u-4(b)(2). See supra, at ----5.

*9 The "strong inference" standard "unequivocally raise[d] the bar for pleading scienter," 437 F.3d, at 601, and signaled Congress' purpose to promote greater uniformity among the Circuits, see H.R. Conf. Rep., p. 41. But "Congress did not ... throw much light on what facts ... suffice to create [a strong] inference," or on what "degree of imagination courts can use in divining whether" the requisite inference exists. 437 F.3d, at 601. While adopting the Second Circuit's "strong inference" standard, Congress did not codify that Circuit's case law interpreting the standard. See § 78u-4(b)(2). See also Brief for United States as Amicus Curiae 18. With no clear guide from Congress other than its "inten[tion] to strengthen existing pleading requirements," H.R. Conf. Rep., p. 41, Courts of Appeals have diverged again, this time in construing the term "strong inference." Among the uncertainties, should courts consider competing inferences in determining whether an inference of scienter is "strong"? See 437 F.3d, at 601-602 (collecting cases). Our task is to prescribe a workable construction of the "strong inference" standard, a reading geared to the PSLRA's twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims.

III

A

[2] We establish the following prescriptions: *First,* faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). On this point, the parties agree. See Reply Brief 8; Brief for Respondents 26; Brief for United States as Amicus Curiae 8, 20, 21.

[3] *Second,* courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. See 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007). The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. See, *e.g.,* Abrams v. Baker Hughes Inc., 292 F.3d 424, 431 (C.A.5 2002); Gompper v. VISX, Inc., 298 F.3d 893, 897 (C.A.9 2002). See also Brief for United States as Amicus Curiae 25.

*10 [4] *Third,* in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences. The Seventh Circuit expressly declined to engage in such a comparative inquiry. A complaint could survive, that court said, as long as it "alleges

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

facts from which, if true, a reasonable person could infer that the defendant acted with the required intent"; in other words, only "[i]f a reasonable person could not draw such an inference from the alleged facts" would the defendant prevail on a motion to dismiss. 437 F.3d, at 602. But in § 21D(b)(2), Congress did not merely require plaintiffs to "provide a factual basis for [their] scienter allegations," *ibid.* (quoting *In re Cerner Corp. Securities Litigation,* 425 F.3d 1079, 1084, 1085 (C.A.8 2005)), *i.e.,* to allege facts from which an inference of scienter rationally *could* be drawn. Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong"-*i.e.,* a powerful or cogent-inference. See American Heritage Dictionary 1717 (4th ed.2000) (defining "strong" as "[p]ersuasive, effective, and cogent"); 16 Oxford English Dictionary 949 (2d ed.1989) (defining "strong" as "[p]owerful to demonstrate or convince" (definition 16b)); cf. 7 *id.,* at 924 (defining "inference" as "a conclusion [drawn] from known or assumed facts or statements"; "reasoning from something known or assumed to something else which follows from it").

[5] The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the "smoking-gun" genre, or even the "most plausible of competing inferences," *Fidel,* 392 F.3d, at 227 (quoting *Helwig v. Vencor, Inc.,* 251 F.3d 540, 553 (C.A.6 2001) (en banc)). Recall in this regard that § 21D(b)'s pleading requirements are but one constraint among many the PSLRA installed to screen out frivolous suits, while allowing meritorious actions to move forward. See *supra,* at ----9, and n. 4. Yet the inference of scienter must be more than merely "reasonable" or "permissible"-it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.[FN5]

FN5. Justice SCALIA objects to this standard on the ground that "[i]f a jade falcon were stolen from a room to which only A and B had access," it could not "*possibly* be said there was a 'strong inference' that B was the thief." *Post,* at ----1 (opinion concurring in judgment) (emphasis in original). I suspect, however, that law enforcement officials as well as the owner of the precious falcon would find the inference of guilt as to B quite strong-certainly strong enough to warrant further investigation. Indeed, an inference at least as likely as competing inferences can, in some cases, warrant recovery. See *Summers v. Tice,* 33 Cal.2d 80, 84-87, 199 P.2d 1, 3-5 (1948) (in bank) (plaintiff wounded by gunshot could recover from two defendants, even though the most he could prove was that each defendant was at least as likely to have injured him as the other); Restatement (Third) of Torts § 28(b), Comment *e,* p. 504 (Proposed Final Draft No. 1, Apr. 6, 2005) ("Since the publication of the Second Restatement in 1965, courts have generally accepted the alternative-liability principle of [*Summers v. Tice,* adopted in] § 433B(3), while fleshing out its limits."). In any event, we disagree with Justice SCALIA that the hardly stock term "strong inference" has only one invariably right ("natural" or "normal") reading-his. See *post,* at ----3.

Justice ALITO agrees with Justice SCALIA, and would transpose to the pleading stage "the test that is used at the summary-judgment and judgment-as-a-matter-of-law stages." *Post,* at ----3 (opinion concurring in judgment). But the test at each stage is measured against a different backdrop. It is improbable that Congress, without so stating, intended courts to test pleadings, unaided by discovery, to determine whether there is "no genuine issue as to any material fact." See Fed. Rule Civ. Proc. 56(c). And judgment as a matter of law is a post-trial device, turning on the question whether a party has produced evidence "legally sufficient" to warrant a jury determination in that party's favor. See Rule 50(a)(1).

B

*11 [6] Tellabs contends that when competing inferences are considered, Notebaert's evident lack of pecuniary motive will be dispositive. The Shareholders, **Tellabs** stresses, did not allege that Notebaert sold any shares during the class period. See Brief for Petitioners 50 ("The absence of any allegations of motive color all the other allegations

putatively giving rise to an inference of scienter."). While it is true that motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference, we agree with the Seventh Circuit that the absence of a motive allegation is not fatal. See 437 F.3d, at 601. As earlier stated, *supra,* at ----11, allegations must be considered collectively; the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint.

**Tellabs** also maintains that several of the Shareholders' allegations are too vague or ambiguous to contribute to a strong inference of scienter. For example, the Shareholders alleged that **Tellabs** flooded its customers with unwanted products, a practice known as "channel stuffing." See *supra,* at ----3. But they failed, **Tellabs** argues, to specify whether the channel stuffing allegedly known to Notebaert was the illegitimate kind (*e.g.,* writing orders for products customers had not requested) or the legitimate kind (*e.g.,* offering customers discounts as an incentive to buy). Brief for Petitioners 44-46; Reply Brief 8. See also *id.,* at 8-9 (complaint lacks precise dates of reports critical to distinguish legitimate conduct from culpable conduct). But see 437 F.3d, at 598, 603-604 (pointing to multiple particulars alleged by the Shareholders, including specifications as to timing). We agree that omissions and ambiguities count against inferring scienter, for plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2). We reiterate, however, that the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically. See *supra,* at ----11; 437 F.3d, at 601. In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference? [FN6]

 FN6. The Seventh Circuit held that allegations of scienter made against one defendant cannot be imputed to all other individual defendants. 437 F.3d, at 602-603. See also *id.,* at 603 (to proceed beyond the pleading stage, the plaintiff must allege as to each defendant facts sufficient to demonstrate a culpable state of mind regarding his or her violations) (citing *Phillips v. Scientific-Atlanta, Inc.,* 374 F.3d 1015, 1018 (C.A.11 2004)). Though there is disagreement among the Circuits as to whether the group pleading doctrine survived the PSLRA, see, *e.g., Southland Securities Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 364 (C.A.5 2004), the Shareholders do not contest the Seventh Circuit's determination, and we do not disturb it.

IV

[7] Accounting for its construction of § 21D(b)(2), the Seventh Circuit explained that the court "th[ought] it wis[e] to adopt an approach that [could not] be misunderstood as a usurpation of the jury's role." 437 F.3d, at 602. In our view, the Seventh Circuit's concern was undue.[FN7] A court's comparative assessment of plausible inferences, while constantly assuming the plaintiff's allegations to be true, we think it plain, does not impinge upon the Seventh Amendment right to jury trial.[FN8]

 FN7. The Seventh Circuit raised the possibility of a Seventh Amendment problem on its own initiative. The Shareholders did not contend below that dismissal of their complaint under § 21D(b)(2) would violate their right to trial by jury. Cf. *Monroe Employees Retirement System v. Bridgestone Corp.,* 399 F.3d 651, 683, n. 25 (C.A.6 2005) (noting possible Seventh Amendment argument but declining to address it when not raised by plaintiffs).

 FN8. In numerous contexts, gatekeeping judicial determinations prevent submission of claims to a jury's judgment without violating the Seventh Amendment. See, *e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (expert testimony can be excluded based on judicial determination of reliability); *Neely v. Martin K. Eby Constr. Co.,* 386 U.S. 317, 321, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967) (judgment as a matter of law); *Pease v. Rathbun-Jones Engineering Co.,* 243 U.S. 273, 278, 37 S.Ct. 283, 61 L.Ed. 715 (1917) (summary judgment).

Congress, as creator of federal statutory claims, has power to prescribe what must be pleaded to state the claim, just as it has power to determine what must be proved to prevail on the merits. It is the federal lawmaker's prerogative, therefore, to allow, disallow, or shape the contours of-including the pleading and proof requirements for- § 10(b) private actions. No

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

decision of this Court questions that authority in general, or suggests, in particular, that the Seventh Amendment inhibits Congress from establishing whatever pleading requirements it finds appropriate for federal statutory claims. Cf. _Swierkiewicz v. Sorema N. A._, 534 U.S. 506, 512-513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); _Leatherman_, 507 U.S., at 168, 113 S.Ct. 1160 (both recognizing that heightened pleading requirements can be established by Federal Rule, citing Fed. Rule Civ. Proc. 9(b), which requires that fraud or mistake be pleaded with particularity).[FN9]

> FN9. Any heightened pleading rule, including Fed. Rule Civ. Proc. 9(b), could have the effect of preventing a plaintiff from getting discovery on a claim that might have gone to a jury, had discovery occurred and yielded substantial evidence. In recognizing Congress' or the Federal Rule makers' authority to adopt special pleading rules, we have detected no Seventh Amendment impediment.

*12 Our decision in _Fidelity & Deposit Co. of Md. v. United States_, 187 U.S. 315, 23 S.Ct. 120, 47 L.Ed. 194 (1902), is instructive. That case concerned a rule adopted by the Supreme Court of the District of Columbia in 1879 pursuant to rulemaking power delegated by Congress. The rule required defendants, in certain contract actions, to file an affidavit "specifically stating ..., in precise and distinct terms, the grounds of his defen[s]e." _Id._, at 318, 23 S.Ct. 120 (internal quotation marks omitted). The defendant's affidavit was found insufficient, and judgment was entered for the plaintiff, whose declaration and supporting affidavit had been found satisfactory. _Ibid._ This Court upheld the District's rule against the contention that it violated the Seventh Amendment. _Id._, at 320, 23 S.Ct. 120. Just as the purpose of § 21D(b) is to screen out frivolous complaints, the purpose of the prescription at issue in _Fidelity & Deposit Co._ was to "preserve the courts from frivolous defen[s]es," _ibid._ Explaining why the Seventh Amendment was not implicated, this Court said that the heightened pleading rule simply "prescribes the means of making an issue," and that, when "[t]he issue [was] made as prescribed, the right of trial by jury accrues." _Ibid.;_ accord _Ex parte Peterson_, 253 U.S. 300, 310, 40 S.Ct. 543, 64 L.Ed. 919 (1920) (Brandeis, J.) (citing _Fidelity & Deposit Co.,_ and reiterating: "It does not infringe the constitutional right to a trial by jury [in a civil case], to require, with a view to formulating the issues, an oath by each party to the facts relied upon."). See also _Walker v. New Mexico & Southern Pacific R. Co._, 165 U.S. 593, 596, 17 S.Ct. 421, 41 L.Ed. 837 (1897) (Seventh Amendment "does not attempt to regulate matters of pleading").

In the instant case, provided that the Shareholders have satisfied the congressionally "prescribe[d] ... means of making an issue," _Fidelity & Deposit Co.,_ 187 U.S., at 320, 23 S.Ct. 120, the case will fall within the jury's authority to assess the credibility of witnesses, resolve any genuine issues of fact, and make the ultimate determination whether Notebaert and, by imputation, **Tellabs** acted with scienter. We emphasize, as well, that under our construction of the "strong inference" standard, a plaintiff is not forced to plead more than she would be required to prove at trial. A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter _at least as likely as_ any plausible opposing inference. At trial, she must then prove her case by a "preponderance of the evidence." Stated otherwise, she must demonstrate that it is _more likely_ than not that the defendant acted with scienter. See _Herman & MacLean v. Huddleston_, 459 U.S. 375, 390, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

\* \* \*

*13 While we reject the Seventh Circuit's approach to § 21D(b)(2), we do not decide whether, under the standard we have described, see _supra,_ at --- - ----11-14, the Shareholders' allegations warrant "a strong inference that [Notebaert and **Tellabs**] acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2). Neither the District Court nor the Court of Appeals had the opportunity to consider the matter in light of the prescriptions we announce today. We therefore vacate the Seventh Circuit's judgment so that the case may be reexamined in accord with our construction of § 21D(b)(2).

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

_It is so ordered._
Justice SCALIA, concurring in the judgment.
I fail to see how an inference that is merely "at least as compelling as any opposing inference," _ante,_ at ----2, can conceivably be called what the statute here at issue requires: a "strong inference," 15 U.S.C. § 78u-4(b)(2). If a jade falcon were stolen from a room to which only A and B had access, could it _possibly_ be said there was a "strong inference" that B was the thief? I think not, and I therefore think that the Court's test

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

must fail. In my view, the test should be whether the inference of scienter (if any) is *more plausible* than the inference of innocence.[FN*]

> FN* The Court suggests that "the owner of the precious falcon would find the inference of guilt as to B quite strong." *Ante,* at ----13, n. 5. If he should draw such an inference, it would only prove the wisdom of the ancient maxim "*aliquis non debet esse Judex in propria causa*"-no man ought to be a judge of his own cause. *Dr. Bonham's Case,* 8 Co. 107a, 114a, 118a, 77 Eng. Rep. 638, 646, 652 (C.P. 1610). For it is quite clear (from the dispassionate perspective of one who does not own a jade falcon) that a *possibility,* even a strong possibility, that B is responsible is not a strong *inference* that B is responsible. "Inference" connotes "belief" in what is inferred, and it would be impossible to form a strong belief that it was B and not A, or A and not B.

The Court's explicit rejection of this reading, *ante,* at ----12, rests on two assertions. The first (doubtless true) is that the statute does not require that "[t]he inference that the defendant acted with scienter ... be irrefutable, *i.e.,* of the 'smoking-gun' genre," *ibid.* It is up to Congress, however, and not to us, to determine what pleading standard would avoid those extremities while yet effectively deterring baseless actions. Congress has expressed its determination in the phrase "strong inference"; it is our job to give that phrase its normal meaning. And if we are to abandon text in favor of unexpressed purpose, as the Court does, it is inconceivable that Congress's enactment of stringent pleading requirements in the Private Securities Litigation Reform Act of 1995 somehow manifests the purpose of giving plaintiffs the edge in close cases.

The Court's second assertion (also true) is that "an inference at least as likely as competing inferences can, in some cases, warrant recovery." *Ante,* at ----13, n. 5 (citing *Summers v. Tice,* 33 Cal.2d 80, 84-87, 199 P.2d 1, 3-5 (1948) (in bank)). *Summers* is a famous case, however, because it sticks out of the ordinary body of tort law like a sore thumb. It represented "a relaxation" of "such proof as is ordinarily required" to succeed in a negligence action. *Id.,* at 86, 199 P.2d, at 4 (internal quotation marks omitted). There is no indication that the statute at issue here was meant to relax the ordinary rule under which a tie goes to the defendant. To the contrary, it explicitly strengthens that rule by extending it to the pleading stage of a case.

*14 One of petitioners' *amici* suggests that my reading of the statute would transform the text from requiring a "strong" inference to requiring the "strongest" inference. See Brief for American Association for Justice as *Amicus Curiae* 27. The point might have some force if Congress could have more clearly adopted my standard by using the word "strongest" instead of the word "strong." But the use of the superlative would not have made any sense given the provision's structure: What does it mean to require a plaintiff to plead "facts giving rise to *the strongest* inference that the defendant acted with the required state of mind"? It is certainly true that, if Congress had wanted to adopt my standard with even greater clarity, it could have restructured the entire provision-to require, for example, that the plaintiff plead "facts giving rise to *an inference of scienter that is more compelling than the inference that the defendant acted with a nonculpable state of mind.*" But if one is to consider the possibility of total restructuring, it is equally true that, to express the Court's standard, Congress could have demanded "*an inference of scienter that is at least as compelling as the inference that the defendant acted with a nonculpable state of mind.*" Argument from the possibility of saying it differently is clearly a draw. We must be content to give "strong inference" its normal meaning. I hasten to add that, while precision of interpretation should always be pursued for its own sake, I doubt that in this instance what I deem to be the correct test will produce results much different from the Court's. How often is it that inferences are precisely in equipoise? All the more reason, I think, to read the language for what it says.

The Court and the dissent criticize me for suggesting that there is only one reading of the text. *Ante,* at ----13, n. 5; *post,* at ----2, n. 1 (STEVENS, J., dissenting). They are both mistaken. I assert only that mine is the natural reading of the statute (*i.e.,* the normal reading), not that it is the only conceivable one. The Court has no standing to object to this approach, since it concludes that, in another respect, the statute admits of only one natural reading, namely, that competing inferences must be weighed because the strong-inference requirement "is inherently comparative" *ante,* at ----12. As for the dissent, it asserts that the statute cannot possibly have a natural and discernible meaning, since "courts of appeals" and "Members of this Court" "have divided" over the question. It was just weeks ago, however, that the author of the dissent, joined by the author of today's opinion for the Court, concluded that a statute's meaning was "plain," *Rockwell Int'l Corp. v. United*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*States,* 549 U.S. ----, ----, 127 S.Ct. 1397, 1412, 167 L.Ed.2d 190 (2007) (STEVENS, J., dissenting), even though the Courts of Appeals and Members of this Court divided over the question, *id.,* at ----, n. 5 (127 S.Ct., at 1407, n. 5). Was plain meaning then, as the dissent claims it is today, *post,* at ----2, n. 1, "in the eye of the beholder"?

It is unremarkable that various Justices in this case reach different conclusions about the correct interpretation of the statutory text. It is remarkable, however, that the dissent believes that Congress "implicitly delegated significant lawmaking authority to the Judiciary in determining how th[e] [strong-inference] standard should operate in practice." *Post,* at ----1. This is language usually employed to describe the discretion conferred upon administrative agencies, which need not adopt what courts would consider the interpretation most faithful to the text of the statute, but may choose some other interpretation, so long as it is within the bounds of the reasonable, and may later change to some *other* interpretation that is within the bounds of the reasonable. See *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Courts, by contrast, *must* give the statute its single, most plausible, reading. To describe this as an exercise of "delegated lawmaking authority" seems to me peculiar-unless one believes in lawmakers who have no discretion. Courts must apply judgment, to be sure. But judgment is not discretion.

*15 Even if I agreed with the Court's interpretation of "strong inference," I would not join the Court's opinion because of its frequent indulgence in the last remaining legal fiction of the West: that the report of a single committee of a single House expresses the will of Congress. The Court says, for example, that "Congress'[s] purpose" was "to promote greater uniformity among the Circuits," *ante,* at ----10, relying for that certitude upon the statement of managers accompanying a House Conference Committee Report whose text was never adopted by the House, much less by the Senate, and as far as we know was read by almost no one. The Court is sure that Congress " 'inten[ded] to strengthen existing pleading requirements,' " *ibid.,* because-again-the statement of managers said so. I come to the same conclusion for the much safer reason that the law which Congress adopted (and which the Members of both Houses actually *voted* on) so indicates. And had the legislation not done so, the statement of managers assuredly could not have remedied the deficiency.

With the above exceptions, I am generally in agreement with the Court's analysis, and so concur in its judgment.

Justice ALITO, concurring in the judgment.

I agree with the Court that the Seventh Circuit used an erroneously low standard for determining whether the plaintiffs in this case satisfied their burden of pleading "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). I further agree that the case should be remanded to allow the lower courts to decide in the first instance whether the allegations survive under the correct standard. In two respects, however, I disagree with the opinion of the Court. First, the best interpretation of the statute is that only those facts that are alleged "with particularity" may properly be considered in determining whether the allegations of scienter are sufficient. Second, I agree with Justice SCALIA that a "strong inference" of scienter, in the present context, means an inference that is more likely than not correct.

I

*16 On the first point, the statutory language is quite clear. Section 78u-4(b)(2) states that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Thus, "a strong inference" of scienter must arise from those facts that are stated "with particularity." It follows that facts not stated with the requisite particularity cannot be considered in determining whether the strong-inference test is met.

In dicta, however, the Court states that "omissions and ambiguities" merely "count against" inferring scienter, and that a court should consider all allegations of scienter, even nonparticularized ones, when considering whether a complaint meets the "strong inference" requirement. *Ante,* at ----14. Not only does this interpretation contradict the clear statutory language on this point, but it undermines the particularity requirement's purpose of preventing a plaintiff from using vague or general allegations in order to get by a motion to dismiss for failure to state a claim. Allowing a plaintiff to derive benefit from such allegations would permit him to circumvent this important provision.

Furthermore, the Court's interpretation of the particularity requirement in no way distinguishes it from normal pleading review, under which a court

naturally gives less weight to allegations containing "omissions and ambiguities" and more weight to allegations stating particularized facts. The particularity requirement is thus stripped of all meaning.

Questions certainly may arise as to whether certain allegations meet the statutory particularity requirement, but where that requirement is violated, the offending allegations cannot be taken into account.

II

I would also hold that a "strong inference that the defendant acted with the required state of mind" is an inference that is stronger than the inference that the defendant lacked the required state of mind. Congress has provided very little guidance regarding the meaning of "strong inference," and the difference between the Court's interpretation (the inference of scienter must be at least as strong as the inference of no scienter) and Justice SCALIA's (the inference of scienter must be at least marginally stronger than the inference of no scienter) is unlikely to make any practical difference. The two approaches are similar in that they both regard the critical question as posing a binary choice (either the facts give rise to a "strong inference" of scienter or they do not). But Justice SCALIA's interpretation would align the pleading test under § 78u-4(b)(2) with the test that is used at the summary-judgment and judgment-as-a-matter-of-law stages, whereas the Court's test would introduce a test previously unknown in civil litigation. It seems more likely that Congress meant to adopt a known quantity and thus to adopt Justice SCALIA's approach.

Justice STEVENS, dissenting.
*17 As the Court explains, when Congress enacted a heightened pleading requirement for private actions to enforce the federal securities laws, it "left the key term 'strong inference' undefined." *Ante,* at ----2. It thus implicitly delegated significant lawmaking authority to the Judiciary in determining how that standard should operate in practice. Today the majority crafts a perfectly workable definition of the term, but I am persuaded that a different interpretation would be both easier to apply and more consistent with the statute.

The basic purpose of the heightened pleading requirement in the context of securities fraud litigation is to protect defendants from the costs of discovery and trial in unmeritorious cases. Because of its intrusive nature, discovery may also invade the privacy interests of the defendants and their executives. Like citizens suspected of having engaged in criminal activity, those defendants should not be required to produce their private effects unless there is probable cause to believe them guilty of misconduct. Admittedly, the probable-cause standard is not capable of precise measurement, but it is a concept that is familiar to judges. As a matter of normal English usage, its meaning is roughly the same as "strong inference." Moreover, it is most unlikely that Congress intended us to adopt a standard that makes it more difficult to commence a civil case than a criminal case.[FN1]

> FN1. The meaning of a statute can only be determined on a case by case basis and will, in each case, turn differently on the clarity of the statutory language, its context, and the intent of its drafters. Here, in my judgment, a probable-cause standard is more faithful to the intent of Congress, as expressed in both the specific pleading requirement and the statute as a whole, than the more defendant-friendly interpretation that Justice SCALIA prefers. He is clearly wrong in concluding that in divining the meaning of this term, we can merely "read the language for what it says," and that it is susceptible to only one reading. *Ante,* at ----3 (opinion concurring in judgment). He argues that we "must be content to give 'strong inference' its normal meaning," *ibid.,* and yet the "normal meaning" of a term such as "strong inference" is surely in the eye of the beholder. As the Court's opinion points out, Courts of Appeals have divided on the meaning of the standard, see *ante,* at ----2, ----10, and today, the Members of this Court have done the same. Although Justice SCALIA may disagree with the Court's reading of the term, he should at least acknowledge that, in this case, the term itself is open to interpretation.

In addition to the benefit of its grounding in an already familiar legal concept, using a probable-cause standard would avoid the unnecessary conclusion that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court *must* take into account plausible opposing inferences." *Ante,* at ----11 (emphasis added). There are times when an inference can easily be deemed strong without any need to weigh competing inferences. For example, if a known drug dealer exits a building immediately after a confirmed drug transaction, carrying a suspicious looking package, a judge could draw a strong

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inference that the individual was involved in the aforementioned drug transaction without debating whether the suspect might have been leaving the building at that exact time for another unrelated reason.

If, using that same methodology, we assume (as we must, see *ante,* at ----11, ----14) the truth of the detailed factual allegations attributed to 27 different confidential informants described in the complaint, App. 91-93, and view those allegations collectively, I think it clear that they establish probable cause to believe that **Tellabs'** chief executive officer "acted with the required intent," as the Seventh Circuit held.[FN2] 437 F.3d 588, 602 (2006).

> FN2. The "channel stuffing" allegations in ¶ ¶ 62-72 of the amended complaint, App. 110-113, are particularly persuasive. Contrary to petitioners' arguments that respondents' allegations of channel stuffing "are too vague or ambiguous to contribute to a strong inference of scienter," *ante,* at ----13, this portion of the complaint clearly alleges that Notebaert himself had specific knowledge of illegitimate channel stuffing during the relevant time period. See, *e.g.,* App. 111, ¶ 67 ("Defendant Notebaert worked directly with **Tellabs'** sales personnel to channel stuff SBC"); *id.,* at 110-112 (alleging, in describing such channel stuffing, that **Tellabs** took "extraordinary" steps that amounted to "an abnormal practice in the industry"; that "distributors were upset and later returned the inventory" (and, in the case of Verizon's Chairman, called **Tellabs** to complain); that customers "did not want" products that **Tellabs** sent and that **Tellabs** employees wrote purchase orders for; that "returns were so heavy during January and February 2001 that **Tellabs** had to lease extra storage space to accommodate all the returns"; and that **Tellabs** "backdat[ed] sales" that actually took place in 2001 to appear as having occurred in 2000). If these allegations are actually taken as true and viewed in the collective, it is hard to imagine what competing inference could effectively counteract the inference that Notebaert and **Tellabs** " 'acted with the required state of mind.' " *Ante,* at ----18 (opinion of the Court) (quoting 15 U.S.C. § 78u-4(b)(2)).

Accordingly, I would affirm the judgment of the Court of Appeals.

U.S.,2007.
Tellabs, Inc. v. Makor Issues & Rights, Ltd.
--- S.Ct. ----, 2007 WL 1773208 (U.S.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.