# EXHIBIT

# B.1

SECURITIES AND EXCHANGE COMMISSION

17 CFR Parts 230 and 239

[Release No. 33-8813; File No. S7-11-07]

RIN 3235-AH13

REVISIONS TO RULE 144 AND RULE 145 TO SHORTEN HOLDING PERIOD
FOR AFFILIATES AND NON-AFFILIATES

AGENCY:  Securities and Exchange Commission.

ACTION:  Proposed rule.

SUMMARY:  Rule 144 under the Securities Act of 1933 creates a safe harbor for the

sale of securities under the exemption set forth in Section 4(1) of the Securities Act.  We

are proposing a six-month holding period requirement under Rule 144 for "restricted

securities" of companies that are subject to the reporting requirements of the Securities

Exchange Act of 1934.  The proposed six-month holding period for restricted securities

of reporting companies would be extended, for up to an additional six months, by the

amount of time during which the security holder has engaged in hedging transactions.

Restricted securities of companies that are not subject to the Exchange Act reporting

requirements would continue to be subject to a one-year holding period prior to any

public resale.  We also propose to substantially reduce the restrictions on the resale of

securities by non-affiliates.  In addition, we propose to simplify the Preliminary Note to

Rule 144, eliminate the manner of sale restrictions with respect to debt securities,

increase the Form 144 filing thresholds, and codify several staff interpretive positions

that relate to Rule 144.  We also solicit comment on how best to coordinate Form 144 and

Form 4 filing requirements.  Finally, we propose amendments to Securities Act Rule 145,

which establishes resale limitations on certain persons who acquire securities in business

combination transactions, to eliminate the presumptive underwriter position in Rule

145(c), except for transactions involving a shell company, and to revise the resale

requirements in Rule 145(d). We believe that the proposed changes will increase the

liquidity of privately sold securities and decrease the cost of capital for all companies

without compromising investor protection.

**DATES**: Comments should be received on or before [insert date 60 days after publication

in the Federal Register].

**ADDRESSES**: Comments may be submitted by any of the following methods:

Electronic comments:

- Use the Commission's Internet comment form

  (http://www.sec.gov/rules/proposed.shtml); or

- Send an E-mail to rule-comments@sec.gov. Please include File Number

  S7-11-07 on the subject line; or

- Use the Federal eRulemaking Portal (http://www.regulations.gov). Follow the

  instructions for submitting comments.

Paper comments:

- Send paper comments in triplicate to Nancy M. Morris, Secretary, Securities

  and Exchange Commission, 100 F Street, NE, Washington, DC 20549-1090.

All submissions should refer to File Number S7-11-07. This file number should be

included on the subject line if e-mail is used. To help us process and review your

comments more efficiently, please use only one method. The Commission will post all

comments on the Commission's Web site (http://www.sec.gov/rules/proposed.shtml).

Comments are also available for public inspection and copying in the Commission's Public Reference Room, 100 F Street, NE, Washington, DC 20549.  All comments received will be posted without change; we do not edit personal identifying information from submissions.  You should submit only information that you wish to make available publicly.

**FOR FURTHER INFORMATION CONTACT:**  Katherine Hsu, Special Counsel, and Ray Be, Special Counsel, Office of Rulemaking, Division of Corporation Finance, at (202) 551-3430, 100 F Street, NE, Washington, DC 20549.

**SUPPLEMENTARY INFORMATION:**  The Commission is proposing amendments to Rule 144,[1] Rule 145,[2] Rule 190,[3] Rule 701[4] and Form 144[5] under the Securities Act of 1933.[6]

---

[1]      17 CFR 230.144.

[2]      17 CFR 230.145.

[3]      17 CFR 230.190.

[4]      17 CFR 230.701.

[5]      17 CFR 239.144.

[6]      15 U.S.C. 77a et seq.

Table of Contents

I.    Background and Overview

II.   Discussion of Proposals
      A.    Simplification of the Preliminary Note and Text of Rule 144
      B.    Amendments to Holding Period Requirement and Reduction of
            Requirements Applicable to Non-Affiliates
            1.    Background
            2.    Amendments to Holding Period in Rule 144(d)
                  a.    Six-Month Holding Period for Exchange Act Reporting
                        Companies
                  b.    Tolling Provision
            3.    Significant Reduction of Requirements Applicable to
                  Non-Affiliates
      C.    Elimination of Manner of Sale Limitations for Debt Securities
      D.    Increase of the Form 144 Filing Thresholds
      E.    Codification of Several Staff Positions
            1.    Securities issued under Section 4(6) of the Securities Act are
                  considered "restricted securities"
            2.    Tacking of holding periods when a company reorganizes into a
                  holding company structure
            3.    Tacking of holding periods for conversions and exchanges of
                  securities
            4.    Cashless exercise of options and warrants
            5.    Aggregation of pledged securities
            6.    Treatment of securities issued by "reporting and non-reporting
                  shell companies"
            7.    Representations required from security holders relying on Rule
                  10b5-1(c)
      F.    Amendments to Rule 145
      G.    Conforming and Other Amendments
            1.    Underlying Securities in Asset-Backed Securities Transactions
            2.    Securities Act Rule 701(g)(3)

III.  Coordination of Form 144 Filing Requirements with Form 4 Filing Requirements

IV.   General Request for Comments

V.    Paperwork Reduction Act
      A.    Background
      B.    Summary of Proposed Amendments
      C.    Solicitation of Comments

VI.    Cost-Benefit Analysis
       A.    Background
       B.    Description of Proposal
       C.    Benefits
       D.    Costs
       E.    Request for Comments

VII.   Consideration of Burden on Competition and Promotion of Efficiency,
       Competition and Capital Formation

VIII.  Initial Regulatory Flexibility Analysis
       A.    Reasons for, and Objectives of, Proposed Action
       B.    Legal Basis
       C.    Small Entities Subject to Rule
       D.    Reporting, Recordkeeping and Other Compliance Requirements
       E.    Overlapping of Conflicting Federal Rules
       F.    Significant Alternatives
       G.    Solicitation of Comments

IX.    Small Business Regulatory Enforcement Fairness Act

X.     Statutory Basis and Text of Proposed Amendments

## I.    Background and Overview

The Securities Act requires registration of all offers and sales of securities in interstate commerce or by use of the U.S. mails, unless an exemption from the registration requirement is available.[7]  Section 4(1) of the Securities Act provides such an exemption for transactions by any person other than an issuer, underwriter or dealer.[8]

The definition of the term "underwriter" is key to the operation of the Section 4(1) exemption.  Section 2(a)(11) of the Securities Act defines an underwriter as "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking."[9]  The Securities Act does not, however, provide specific criteria for determining when a person purchases securities "with a view to . . . the distribution" of those securities.  In 1972, the Commission adopted Rule 144 to provide a safe harbor from this definition of "underwriter" to assist security holders in determining whether the Section 4(1) exemption is available for their resale of securities.[10]  If a selling security holder satisfies all of Rule 144's applicable conditions in connection with a transaction, he or she is deemed not to be an "underwriter," and the Section 4(1) exemption would be available for the resale of the securities.

Since its adoption, we have reviewed and revised Rule 144 several times.  We last made major changes in 1997.[11]  At that time, we shortened the required holding period

---

[7]       See 15 U.S.C. 77e.

[8]       15 U.S.C. 77d(1).

[9]       15 U.S.C. 77b(a)(11).

[10]      Release No. 33-5223 (Jan. 14, 1972) [37 FR 591].

[11]      See Release No. 33-7390 (Feb. 28, 1997) [62 FR 9242].

for securities that are defined as "restricted securities."[12] Before the 1997 amendments, affiliates and non-affiliates could resell restricted securities, subject to limitation, after two years, and non-affiliates (who had not been affiliates during the prior three months) could resell restricted securities without limitation after three years.[13] The 1997 amendments changed these two-year and three-year periods to one-year and two-year periods, respectively.

At the time we adopted those changes, we proposed and solicited comment on several possible additional changes to Rule 144, Rule 145 and Form 144, including reducing the holding period further.[14] We received 38 comment letters on those proposed changes. As discussed more fully below, most commenters were divided between supporting further shortening of the holding period and waiting to see the results of the 1997 amendments. We have not taken further action to adopt the 1997 proposals.

Rule 144 regulates the resale of two categories of securities – restricted securities and control securities. Restricted securities are securities acquired pursuant to one of the transactions listed in Rule 144(a)(3).[15] Although it is not a term defined in Rule 144,

---

[12]    See 17 CFR 230.144(a)(3).

[13]    The term "affiliate" is defined in 17 CFR 230.144(a)(1) as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, [the] issuer."

[14]    Release No. 33-7391 (Feb. 28, 1997) [62 FR 9246] ("the 1997 proposing release"). In that release, we proposed to (1) revise the Preliminary Note to Rule 144 to restate the intent and effect of the rule, (2) add a bright-line test to the Rule 144 definition of "affiliate," (3) eliminate the Rule 144 manner of sale requirements, (4) increase the Form 144 filing thresholds, (5) include in the definition of "restricted securities" securities issued pursuant to the Securities Act Section 4(6) exemption, (6) clarify the holding period determination for securities acquired in certain exchanges with the issuer and in holding company formations, (7) streamline and simplify several Rule 144 provisions, and (8) eliminate the presumptive underwriter provisions of Rule 145. We also solicited comment on (1) further revisions to the Rule 144 holding periods, (2) elimination of the trading volume tests to determine the amount of securities that can be resold under Rule 144, and (3) several possible regulatory approaches with respect to certain hedging activities.

[15]    17 CFR 230.144(a)(3).

"control securities" is used commonly to refer to securities held by affiliates of the issuer, regardless of how the affiliates acquired the securities.[16]  Therefore, if an affiliate acquires securities in a transaction that is listed in Rule 144(a)(3), those securities would be both restricted securities and control securities.

Rule 144 states that a selling security holder shall be deemed not to be engaged in a distribution of securities and therefore not an underwriter with respect to such securities, thus making available the Section 4(1) exemption from registration, if the resale meets particular criteria.  If the security holder is an affiliate of the issuer, or a non-affiliate that has held the restricted securities for less than two years,[17] these criteria include the following:

- There must be available adequate current public information about the issuer;[18]

- If the securities being sold are restricted securities, the seller must have held the security for a specified holding period;[19]

- The resale must be within specified sales volume limitations;[20]

- The resale must comply with the manner of sale conditions;[21] and

- The selling security holder may be required to file a Form 144.[22]

---

[16]    See the 1997 proposing release.

[17]    See 17 CFR 230.144(k).

[18]    17 CFR 230.144(c).

[19]    17 CFR 230.144(d).

[20]    17 CFR 230.144(e).

[21]    17 CFR 230.144(f) and (g).

[22]    17 CFR 230.144(h).

Under the current rule, a non-affiliate may publicly resell restricted securities without being subject to the above limitations if he or she has held the securities for two years and if he or she is not, and for the prior three months has not been, an "affiliate" of the issuer.[23]

We now are proposing amendments that would:

- Simplify the Preliminary Note to Rule 144 and text of Rule 144, using plain English principles;[24]

- Amend the Rule 144 holding period requirement for restricted securities of companies that are required to file reports under the Securities Exchange Act of 1934[25] to provide for a six-month holding period if the security holder has not engaged in certain hedging transactions;[26]

- Require that security holders toll, or suspend, the holding period during the time they enter into certain hedging transactions, although under no circumstance would the holding period extend beyond one year;[27]

- Substantially reduce the requirements for non-affiliates so that they can resell securities freely after the holding period (except that non-affiliates of reporting companies would be subject to the current public information requirement until one year after the acquisition of the securities);[28]

---

[23]    17 CFR 230.144(k).

[24]    See the proposed Preliminary Note, proposed paragraph (b), proposed paragraph (c) and related note, and proposed paragraphs (d)(3)(i), (e)(1), (e)(2)(vii) and (f).

[25]    15 U.S.C. 78a et seq.

[26]    See proposed Rule 144(d).

[27]    See proposed Rule 144(d)(3)(xi).

[28]    See proposed Rules 144(b)(1) and (d).

- Eliminate the "manner of sale" limitations with respect to debt securities;[29]

- Increase the thresholds that would trigger a Form 144 filing requirement;[30]

- Codify the staff's positions, as they relate to Rule 144, concerning the following issues:

  ○ Inclusion of securities acquired under Section 4(6) of the Securities Act in the definition of "restricted securities,"[31]

  ○ The effect that creation of a holding company structure has on a security holder's holding period,[32]

  ○ Holding periods for conversions and exchanges of securities,[33]

  ○ Holding periods for the cashless exercise of options and warrants,[34]

  ○ Aggregation of a pledgee's resales with resales by other pledgees of the same security,[35]

  ○ The extent to which securities issued by "reporting and non-reporting shell companies" are eligible for resale under Rule 144,[36] and

---

[29]    See proposed Rule 144(f).

[30]    See proposed Rule 144(h).

[31]    See proposed Rule 144(a)(3)(viii).

[32]    See proposed Rule 144(d)(3)(ix).

[33]    See proposed Rule 144(d)(3)(ii).

[34]    See proposed Rule 144(d)(3)(xi).

[35]    See proposed note to Rule 144(e)(2)(ii).

[36]    See proposed Rule 144(i).

     °     Representations required from security holders relying on Rule 10b5-1(c);[37] and

- Eliminate the presumptive underwriter provision in Securities Act Rule 145, except for transactions involving a shell company, and harmonize the resale requirements in Rule 145 with the resale provisions for the securities of shell companies in Rule 144.[38]

We also solicit comment on delaying the Form 144 filing deadline to coincide with the deadline for filing a Form 4[39] under Section 16[40] of the Exchange Act and permitting persons who are subject to Section 16 to meet their Form 144 filing requirement by filing a Form 4.[41]

The following table briefly compares some of the most significant proposed amendments to the current regulatory scheme:

---

[37]    17 CFR 240.10b5-1(c).  See proposed amendments to Form 144.

[38]    See proposed Rule 145(d).

[39]    17 CFR 249.104.

[40]    15 U.S.C. 78p.

[41]    Section 16 applies to every person who is the beneficial owner of more than 10% of any class of equity securities registered under Section 12 of the Exchange Act, and each officer and director (collectively, "reporting persons" or "insiders") of the issuer of such security.  Section 16(a) of the Exchange Act requires that reporting persons report changes in their beneficial ownership of all equity securities of the issuer on Form 4 before the end of the second business day following the day on which the subject transaction (which caused the change in beneficial ownership) was executed.

|  | **Current Regulations** | **Proposed Amendments** |
|---|---|---|
| **Resales of Restricted Securities by Non-Affiliates Under Rule 144** | -Limited resales after holding restricted securities for one year.<br><br>-Unlimited resales after holding restricted securities for two years if they have not been affiliates during the prior three months. | -Unlimited resales after holding restricted securities of Exchange Act reporting companies for six months if they have not been affiliates during the prior three months, except that such resales would be subject to the current public information requirement between the end of the six-month holding period and one year after the acquisition date of the securities.<br><br>-Unlimited resales after holding restricted securities of non-reporting companies for one year if they have not been affiliates during the prior three months. |
|  | -No tolling of holding period as a result of hedging transactions. | -Specific provision tolling the holding period when engaged in certain hedging transactions. Maximum one-year holding period. |
| **Resales by Affiliates Under Rule 144** | -Limited resales after holding restricted securities for one year. | -Limited resales after holding restricted securities of Exchange Act reporting companies for six months.<br><br>- Limited resales after holding restricted securities of non-reporting companies for one year. |
|  | -No tolling of holding period as a result of hedging transactions. | -Specific provision tolling the holding period when engaged in certain hedging transactions. Maximum one-year holding period. |
| **Manner of Sale Restrictions** | -Apply to resale of any type of security under Rule 144. | -Would not apply to resale of debt securities by affiliates or to any resale by non-affiliates. |

|  | **Current Regulations** | **Proposed Amendments** |
|---|---|---|
| **Form 144** | -Filing threshold at 500 shares or $10,000. | -With respect to affiliates, filing threshold at 1,000 shares or $50,000.<br>-No Form 144 filing required for non-affiliates. |
| **Rule 145** | -Presumptive underwriter provision applies to all Rule 145(a) transactions. | -Presumptive underwriter provision applies only to Rule 145(a) transactions involving shell companies, with revised resale requirements in Rule 145(d). |

## II.     Discussion of Proposals

### A.     Simplification of the Preliminary Note and Text of Rule 144

As in the 1997 proposing release, we again are proposing amendments to simplify and clarify the Preliminary Note to Rule 144 and to incorporate plain English principles.[42] The current Preliminary Note is complex and may be confusing to many security holders. These proposed amendments to the Preliminary Note are not intended to alter the substantive operation of the rule. The revised Preliminary Note would briefly explain the benefits of complying with the rule. It also would clarify that any person who sells restricted securities, and any affiliate or any person who sells restricted securities or other securities on behalf of an affiliate, shall not be deemed to be engaged in a distribution of such securities and therefore not an underwriter with respect to such securities if the sale in question is made in accordance with all the applicable provisions of the rule. The Preliminary Note would further clarify that, although Rule 144 provides a safe harbor for establishing the availability of the exemption provided by Section 4(1), it is not the exclusive means for reselling securities without registration. Therefore, it

---

[42]     In 1997, all commenters to such amendments favored the simplification of the Preliminary Note. We note, however, that the current proposal would result in a significantly shorter note than the Preliminary Note proposed in 1997.

does not eliminate or otherwise affect the availability of any other exemption for resales.[43]

In the original adopting release for Rule 144, we stated:

In view of the objectives and policies underlying the Act, the rule shall not be available to any individual or entity with respect to any transaction which, although in technical compliance with the provisions of the rule, is part of a plan by such individual or entity to distribute or redistribute securities to the public. In such case, registration is required.[44]

Consistent with this statement, we propose to add a statement to the Preliminary Note that the Rule 144 safe harbor is not available with respect to any transaction or series of transactions that, although in technical compliance with the rule, is part of a plan or scheme to evade the registration requirements of the Act.[45]

In addition, we are proposing changes throughout the rule to attempt to make the rule less complex and easier to read.

**Request for Comment**

- Should we adopt the simplified Preliminary Note? Should we keep more detail in the Preliminary Note than proposed? Does the Preliminary Note need further revision? If so, how should we revise it?

- Does the proposed language of the Preliminary Note delete or omit any information that should be addressed? Does the proposed language change the meaning of any information in the existing Preliminary Note?

---

[43] Because we make this clarification in the Preliminary Note, we propose to delete current Rule 144(j), which currently provides that Rule 144 is a non-exclusive safe harbor.

[44] Release No. 33-5223.

[45] See proposed Preliminary Note to Rule 144. Similar language can also be found in other rules such as in the Preliminary Note to Securities Act Rule 144A [17 CFR 230.144A].

- Should we not make any changes to the Preliminary Note? Does the existing Preliminary Note provide useful background information on Rule 144, the Section 2(a)(11) definition of an underwriter, or the Section 4(1) exemption? Is the Preliminary Note necessary or helpful? Should we eliminate it entirely?

- We also have streamlined and proposed plain English changes to various portions of the rule other than the Preliminary Note. Would any of the proposed language inadvertently change the substantive requirements of the rule? Do any of the changes create ambiguity with respect to settled issues?

**B.    Amendments to Holding Period Requirement in Rule 144(d) for Restricted Securities and Reduction of Requirements Applicable to Non-Affiliates**

**1.    Background**

As stated above, in 1997, we reduced the Rule 144 holding periods for restricted securities for both affiliates and non-affiliates.[46] Before the 1997 amendments, under Rule 144(d), security holders could sell limited amounts of restricted securities after holding their securities for two years if they satisfied all other conditions imposed by Rule 144.[47] Under 144(k), non-affiliates could sell restricted securities without limitation and be subject to no other conditions after holding their securities for three years. The 1997 amendments to Rule 144 reduced the two-year Rule 144(d) holding period to one

---

[46]    Release No. 33-7390 (Feb. 28, 1997) [62 FR 9242]. See 17 CFR 230.144(d) and (k).

[47]    These other conditions included the availability of current public information, the volume of sale limitations, the manner of sale limitations, and the filing of a notice. See 17 CFR 230.144(c), (e), (f) and (h).

year and amended Rule 144(k) so that non-affiliates could freely sell an unlimited amount of securities after two years, instead of three.

In the 1997 proposing release, we solicited comment on whether these holding periods should be reduced even further, with a focus on six months for the Rule 144(d) holding period. We received numerous comments on this issue. Twelve commenters recommended that we further reduce the holding period to six months.[48] Two other commenters thought that we should maintain the holding periods adopted in 1997.[49] Eight commenters recommended that we gain more experience with the new holding periods created in 1997 before proposing further amendments to those holding periods.[50]

### 2.     Amendments to Holding Period in Rule 144(d)

### a.     Six-Month Holding Period for Exchange Act Reporting Companies

We now propose amendments to provide for a reduced holding period under Rule 144(d) for restricted securities of Exchange Act reporting companies held by affiliates and non-affiliates. Under the proposed revisions to Rule 144(d), affiliates and non-affiliates would both be permitted to resell restricted securities of Exchange Act reporting companies[51] publicly after holding the securities for six months, subject to

---

[48]     See letters from American Society of Corporate Secretaries (ASCS); Association for Investment Management & Research (AIMR); Association of the City Bar of New York (NY City Bar); Baltimore Gas & Electric (BG&E); Investment Company Institute (ICI); Charles Lilienthal (Lilienthal); Loeb & Loeb; New York Bar Association (NY Bar); Schwarz Investments; Sullivan & Cromwell; Testa, Hurwitz & Thibeault (Testa Hurwitz); and Willkie, Farr & Gallagher (Willkie Farr).

[49]     See letters from Argent and The Corporate Counsel (Corporate Counsel).

[50]     See letters from ABA; joint letter from Goldman Sachs, JP Morgan, Morgan Stanley and Salomon Brothers (Four Brokers); Lehman Brothers; Merrill Lynch; Morgan Stanley; Regional Investment Bankers Association (Regional Bankers); Securities Industry Association (SIA); and Smith Barney.

[51]     As proposed, the six-month holding period would apply to securities of the issuer that is, and has been for at least 90 days before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act. As proposed, a non-reporting issuer would be an issuer that is not, or has not been for at least 90 days immediately before the sale, subject to the reporting requirements

other conditions of Rule 144, when applicable, if they have not engaged in hedging transactions with respect to the securities.[52]  We believe that shortening the holding period in this way would increase the liquidity of privately sold securities and decrease the cost of capital for reporting companies without compromising investor protection.[53]  By reducing the holding period for restricted securities, the proposed amendments could enable companies to raise capital more often through the issuance of securities in unregistered transactions, such as offshore offerings under Regulation S[54] or other transactions not involving a public offering, rather than through financing structures such as extremely dilutive convertible securities.

The fundamental purpose of Rule 144 is to provide objective criteria for determining whether an investor is an underwriter or has acquired securities for distribution.  At the same time, we do not want the holding period to be longer than necessary or impose any unnecessary costs or restrictions on capital formation.  Assumption of the economic risk of investment is a critical factor in determining whether a security holder purchased the securities for distribution.[55]  After observing the operation of Rule 144 since the 1997 amendments, with regard to reporting companies,

---

of Section 13 or 15(d) of the Exchange Act.  This delineation between reporting and non-reporting companies and the 90-day waiting period for reporting companies are similar to the provisions in Rule 144(c).

[52]     See proposed Rule 144(d)(1)(i).  These proposed amendments would not change the Rule 144(d) requirement that, if the acquiror takes by purchase, the holding period will not commence until the full purchase price is paid.

[53]     See Section VI. of this release.

[54]     17 CFR 230.901 through 230.905 and Preliminary Notes.

[55]     See Release No. 33-5223 (Jan. 14, 1972) [37 FR 591].

we believe that holding securities for six months is a reasonable indication that an investor has assumed the economic risk of investment in those securities.[56]

Because we are concerned that the market does not have sufficient information and safeguards with respect to non-reporting companies, we propose that the holding period for restricted securities in non-reporting companies would remain at one year for affiliates and non-affiliates.[57]  However, as discussed below, we propose to eliminate the resale restrictions imposed on non-affiliates of non-reporting companies after the one-year holding period.  Non-affiliates of non-reporting companies would be subject to no other Rule 144 condition after meeting the one-year holding period under the proposals.[58]

### b.    Tolling Provision

In 1990, we eliminated a Rule 144 provision that tolled the holding period of a security holder maintaining a short position in, or any put or other option to dispose of, securities equivalent to the restricted securities owned by the security holder.[59]  We eliminated this provision in conjunction with an amendment to broaden a security

---

[56]    See also letter to John W. White, Director, SEC Division of Corporation Finance, from Keith F. Higgins, Chair, Committee on Federal Regulation of Securities, ABA Section of Business Law (Mar. 22, 2007) ("the 2007 ABA Letter"), available at http://www.abanet.org/buslaw/committees/CL410000pub/comments/20070322000000.pdf.  The 2007 ABA Letter recommended that the Commission reconsider the 1997 proposals and shorten the Rule 144(d) holding period to six months and the Rule 144(k) period to one year.  The letter pointed out that, in light of the increased volatility of today's marketplace, holding periods of six months and one year represent greater economic risk than they did when the current holding periods were adopted, and they are more than long enough to ensure that a purchaser has assumed the economic risk of investment.

[57]    See proposed Rule 144(d)(1)(ii).  The 2007 ABA letter also recommended that in the case of non-reporting companies, the Commission should consider permitting resales without restriction under Rule 144 after a one-year holding period.

[58]    The proposals would delete paragraph (k) of Rule 144 and permit non-affiliates to resell restricted securities of non-reporting companies freely after one year.

[59]    See Release No. 33-6862 (Apr. 23, 1990) [55 FR 17933].

holder's ability to tack the holding periods of prior owners to the security holder's own holding period.[60]

Despite the prior elimination of the tolling provision, we are concerned about the effect of hedging activities designed to shift the economic risk of investment away from the security holder with respect to restricted securities to be resold under Rule 144.[61]  It becomes more difficult to conclude that the security holder who engages in hedging transactions, and thereby transfers the economic risk of the investment to a third party, soon after acquiring the security, has held the security for investment purposes and not with a view to distribution.

For example, prior to the expiration of the required holding period, a security holder may enter into an equity swap agreement with a third party, under which the security holder exchanges the dividends received on the restricted securities for the dividends on, for example, a securities index.  In addition, that shareholder may agree to exchange, at a set date, any price change in the security since the date of the agreement for any price change in the securities index.  The effect of such a transaction would be the economic equivalent of selling the restricted securities before the holding period has expired and purchasing the securities index.

The concern regarding hedging transactions is particularly acute if we provide for a six-month holding period requirement, as proposed.  At the time of the 1990 amendments, Rule 144 provided for a two-year holding period before a security holder

---

[60]    We reasoned that, "a single period running from the date of the purchase from the issuer or an affiliate of the issuer is sufficient to prevent the distribution by the issuer of securities to the public." Release No. 33-6862.

[61]    For a discussion on hedging arrangements in prior releases, see Section IV.B of the 1997 proposing release and Section II.A of Release No. 33-7187 (Jul. 10, 1995) [60 FR 35645].

could sell limited amounts of restricted securities, and a three-year period before a non-affiliate security holder could sell an unlimited amount of the securities. The proposed six-month holding period requirement could make the entry into such hedging arrangements significantly easier and less costly because they would cover a much shorter period.

The 1997 proposing release proposed several alternatives for addressing these concerns.[62] Seven commenters recommended that we adopt measures to eliminate or restrict hedging activities during the holding period.[63] Six commenters recommended maintaining the status quo.[64] Six commenters suggested that we adopt a safe harbor for certain hedging activities that would be deemed permissible under Rule 144.[65] Because the proposed shortening of the holding period requirement would make hedging arrangements significantly easier, we believe that it is appropriate to reintroduce a tolling provision to Rule 144. Therefore, we propose to add a new paragraph to Rule 144 to toll the holding period for restricted securities of Exchange Act reporting companies while an affiliate or a non-affiliate is engaged in certain hedging transactions.[66]

---

[62]    See the 1997 proposing release. In that release, we proposed five different alternatives. These were the following: (1) make the Rule 144 safe harbor unavailable to persons who hedge during the restricted period; (2) independent of Rule 144, promulgate a rule that would define a sale for purposes of Section 5 to include specified hedging transactions; (3) adopt a shorter holding period during which hedging could not occur without losing the safe harbor; (4) reintroduce a tolling provision in Rule 144 similar to the provision that was included prior to 1990; or (5) maintain the status quo with no specific prohibition against hedging. We believe that the proposed tolling provision in this release offers a balanced approach to addressing hedging activities in Rule 144.

[63]    See letters from ABA; AIMR; Argent; ASCS; Constantine Katsoris; Corporate Counsel; and Schwartz Investments.

[64]    See letters from Bear Stearns; BG&E; Intel; Paine Webber; Wilkie Farr; and XXI Securities.

[65]    See letters from Four Brokers; NY Bar; SIA; Merrill Lynch; Citibank; and Lehman Brothers.

[66]    See proposed Rule 144(d)(3)(xi).

We also propose to expand the scope of the earlier tolling provision, which covered only short sales and options. Since 1990, many new risk-hedging products such as equity swaps and single stock futures have been introduced into the market that also have the effect of limiting or eliminating risk. We are proposing to exclude from the holding period any period in which the security holder had a short position, or had entered into a "put equivalent position," as defined by Exchange Act Rule 16a-1(h),[67] with respect to the same class of securities (or in the case of nonconvertible debt, with respect to any nonconvertible debt securities of the same issuer).

Given that the proposed tolling provision would work in conjunction with the Rule 144 provisions that permit tacking of holding periods,[68] a selling security holder would be required to determine whether a previous owner of the securities had engaged in hedging activities with respect to the securities, if the holding period includes a period in which a previous owner held the securities. Accordingly, we propose to provide that the holding period should not include any period in which the previous owner held a short position or put equivalent position with respect to the securities. There would be no tolling of the previous owner's holding period, if the security holder for whose account the securities are to be sold reasonably believes that no such short or put equivalent position was held by the previous owner.[69] In other words, the proposed provision would

---

[67]    17 CFR 240.16a-1(h). Rule 16a-1(h) defines a "put equivalent position" as a derivative security position that increases in value as the value of the underlying equity decreases, including, but not limited to, a long put option and a short call option position.

[68]    "Tacking" the holding period is the ability of the security holder to count the period that the securities are held by a previous owner as part of his or her own holding period for the purposes of Rule 144(d). Further discussion about tacking is located in Section II.E.2 of this release.

[69]    See proposed Rule 144(d)(3)(xi)(C). If the security holder relying on Rule 144 is unable to determine that the previous owner did not engage in hedging activities with respect to the securities, then the security holder should omit the period in which the security holder is not able

permit a security holder to tack the period during which the security holder reasonably believes that the previous owner did not engage in hedging activities to his or her holding period. We are proposing a "reasonable belief" standard, because it may be difficult for a selling security holder to determine definitively whether a previous owner had engaged in hedging activities with respect to the securities.

Also, we believe that the proposed tolling provision should not result in a longer holding period than under the current rule. Because the fact that the current rule does not toll the one-year holding period while the security holder has engaged in hedging activities has not raised concerns, we believe, on balance, that one year between the acquisition date of the securities from the issuer or affiliate of the issuer and the resale date sufficiently protects against the indirect distribution of the securities by the issuer to the public. The proposed rule would therefore impose a ceiling on the proposed tolling provision so that, regardless of the security holder's hedging transactions, the holding period, as computed under all other paragraphs in Rule 144(d), would in no event extend beyond one year.[70] Under the proposed rules, security holders who wish to rely on Rule 144 to resell restricted securities of non-reporting companies already would be required to hold their securities for at least one year, and therefore would not be subject to the tolling provision.

In concert with the proposed tolling provision, we also propose other related changes to Rule 144. First, we propose to require that information be provided in Form 144 regarding any short or put equivalent position held with respect to the securities prior

---

to determine whether the previous owner had a short position or a put equivalent position when calculating the holding period under Rule 144(d).

[70]    See proposed note to Rule 144(d)(3)(xi).

to the resale of the securities. A similar requirement was part of Form 144 before the

tolling provision was eliminated in 1990.[71]

The second related change concerns the manner of sale requirements in Rule

144(f), which we propose to retain for equity securities of affiliates. One option to meet

the manner of sale requirements is to sell the securities through "brokers' transactions"

within the meaning of Section 4(4) of the Securities Act.[72] Rule 144(g) specifies

transactions by a broker that are deemed to be included as "brokers' transactions." One

criteria for these "brokers' transactions" is that the broker, after reasonable inquiry, is not

aware of circumstances indicating that the person for whose account the securities are

sold is an underwriter with regard to the securities or that the transaction is a part of a

distribution of the securities of an issuer. Existing Note (ii) of Rule 144(g)(3)[73] contains

a list of some questions that brokers should ask in order to satisfy this inquiry. We are

proposing to amend Note (ii) to Rule 144(g)(3) to explain that in order to satisfy the

reasonable inquiry requirement, a broker should also inquire into, if the securities have

been held for less than one year, the existence and character of any short position or put

equivalent position with regard to the securities held by the person for whose account the

securities are to be sold, whether such person has made inquiries into the existence and

character of any short position or put equivalent position held by the previous owner of

the securities, and the results of such person's inquiries.[74] We believe that an inquiry into

such positions would not impose an undue burden on brokers as part of their existing

---

[71]    See Release No. 33-5223.

[72]    15 U.S.C. 77d(4).

[73]    17 CFR 230.144(g)(3).

[74]    See proposed Paragraph 2 of Note 2 to Rule 144(g)(3).

inquiry.  We believe that this proposed amendment would be a valuable component in determining and monitoring whether security holders have met their holding period requirement under Rule 144.

### 3.    Significant Reduction of Requirements Applicable to Non-Affiliates

Non-affiliates currently are required to hold their restricted securities for one year under Rule 144(d).  During this one-year period, non-affiliates are not permitted to resell any securities under the rule.  When selling restricted securities that have been held for between one and two years, non-affiliates, like affiliates, are subject to all other applicable conditions of Rule 144, including the requirement that current information be publicly available about the issuer of the securities, limitations on the amount of securities that can be sold in any three-month period, manner of sale limitations and Form 144 filing requirements.[75]  We believe that, for the most part, holding the securities for the length of the holding period should be a sufficient indication that these non-affiliates have assumed the economic risk of investment in those securities.[76]  As such, we believe that it is appropriate to reduce the complexity of resale restrictions that may inhibit sales by, and impose costs on, non-affiliates.[77]

---

[75]     See 17 CFR 230.144(b) and (d).  A person who has held restricted securities for more than two years and has not been an affiliate for at least the most recent three months may resell those securities without complying with Rule 144's other requirements.  See 17 CFR 230.144(k).

[76]     We have concerns, however, about the indirect distribution of securities through resales by non-affiliates when those non-affiliates hold securities in shell companies.  As discussed below, we propose to codify the staff's interpretive position that security holders cannot rely on Rule 144 in the resale of securities of reporting and non-reporting shell companies.

[77]     While the SEC Advisory Committee on Smaller Public Companies did not specifically address Rule 144 in its final report, the Committee acknowledged the need to reduce the complexity of our rules for the benefit of smaller companies.  See Final Report of the Advisory Committee on Smaller Public Companies to the United States Securities and Exchange Commission (Apr. 23, 2006), available at http://www.sec.gov/info/smallbus/acspc.shtml.  See also Report on the Advisory Committee on the Capital Formation and Regulatory Process (Jul. 24, 1996) (suggesting that the SEC minimize the resale restrictions on restricted securities), available at http://www.sec.gov/news/studies/capform.htm.

Because Rule 144 is relied upon by many individuals to resell their restricted securities, we believe that it would be particularly helpful to streamline and reduce the complexity of the rule as much as possible while retaining its integrity. We therefore propose to reduce the restrictions for a person who is not an affiliate of the issuer at the time of the sale of the securities and has not been an affiliate during the three months prior to the sale of the securities. These non-affiliates with restricted securities of reporting companies would be permitted to resell their securities after their holding period, subject only to the requirement in Rule 144(c) that current information regarding the issuer of the securities be publicly available.[78] We preliminarily believe that retaining the current public information requirement would continue to be important in this instance so that the market has adequate information regarding the issuer of the securities and also would not impose an undue burden on a non-affiliate selling security holder. Non-affiliates of both reporting and non-reporting companies would be able to freely resell their restricted securities publicly one year after the acquisition date of the securities (as computed under Rule 144(d)) and without having to comply with any of the other conditions of the rule.[79]

The proposed requirements for the resale of restricted securities held by affiliates and non-affiliates under Rule 144 can be summarized as follows:

---

[78]    See proposed Rule 144(b)(1)(i). As set forth in paragraphs (c) and (d) of the proposed rules, a reporting company is an issuer that is, and has been for at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act. A non-reporting company is an issuer that is not, or has not been for at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act.

[79]    See proposed Rule 144(b)(1).

|  | **Affiliate or Person Selling on Behalf of an Affiliate** | **Non-Affiliate (and Has Not Been an Affiliate During the Prior Three Months)** |
|---|---|---|
| **Restricted Securities of Reporting Companies** | During six-month holding period* - no resales under Rule 144 permitted.<br><br>After six-month holding period* - may resell in accordance with all Rule 144 requirements including:<br>• Current public information,<br>• Volume limitations,<br>• Manner of sale for equity securities, and<br>• Filing of Form 144. | During six-month holding period* - no resales under Rule 144 permitted.<br><br>After six-month holding period* but before one year – may resell in accordance with the current public information requirement.<br><br>After one year - unlimited public resale under Rule 144; need not comply with other Rule 144 requirements. |
| **Restricted Securities of Non-Reporting Companies** | During one-year holding period - no resales under Rule 144 permitted.  Tolling provision does not apply.<br><br>After one-year holding period - may resell in accordance with all Rule 144 requirements except holding period, including:<br>• Current public information,<br>• Volume limitations,<br>• Manner of sale for equity securities, and<br>• Filing of Form 144. | During one-year holding period - no resales under Rule 144 permitted.  Tolling provision does not apply.<br><br>After one-year holding period - unlimited public resale under Rule 144; need not comply with other Rule 144 requirements |

\* Such holding period may be longer than six months (but not longer than one year), depending on hedging activities.

**Request for Comment**

- Should the holding period requirement for restricted securities of reporting companies be shortened to six months?  Is six months sufficient time to indicate that the affiliate has not acquired the securities for distribution?  Are there any concerns that six months would lead to an increase in abuse

with regard to the resale of restricted securities?  Should a six-month holding period requirement apply to restricted securities of reporting companies held by non-affiliates as well as affiliates?  If you suggest that either affiliates or non-affiliates should be required to comply with a holding period that is shorter than six months, what objective criteria demonstrate that such holding period is sufficient to indicate that the security holder has not acquired the securities for distribution?

- Should the one-year holding period requirement continue to apply to restricted securities of non-reporting companies held by non-affiliates as well as affiliates?  Should the holding period for restricted securities of non-reporting companies also be shortened to six months?  Should affiliates and non-affiliates of non-reporting companies be subject to the same holding period, or should they be required to comply with a longer or shorter holding period?

- For the purposes of the holding period, is it appropriate that a reporting company is an issuer that is, and has been for at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act?  Is there a more appropriate formulation?

- Should we amend Regulation S to conform the one-year distribution compliance period in Rule 903(b)(3)(iii)[80] to the proposed six-month holding period?  When Regulation S was amended in 1998,[81] the

---

[80]     17 CFR 230.903(b)(3)(iii).

[81]     Offshore Offers and Sales, Release No. 33-7505 (Feb. 17, 1998).

distribution compliance period applicable to U.S. companies (Category 3 issuers) was conformed to the one-year holding period under Rule 144. The purpose of the distribution compliance period in Regulation S is to ensure that during the offering period and the subsequent aftermarket trading that takes place offshore, the persons relying on the Rule 903 safe harbor (issuers, distributors and their affiliates) are not engaged in an unregistered, non-exempt distribution into the United States capital markets. We are now proposing to shorten the Rule 144 holding period for the resale of restricted securities of Exchange Act reporting companies to six months. Should we amend Regulation S to conform the one-year distribution compliance period for reporting U.S. companies under Rule 903(b)(3)(iii) to the proposed six-month holding period under Rule 144? In light of problematic practices with respect to offerings of U.S. companies under Regulation S, should the distribution compliance period for reporting U.S. companies remain one year consistent with the longest distribution compliance period that would be applicable to securities offered under Regulation S and with the default one-year holding period under Rule 144?

- Is it appropriate to retain the current public information requirement for non-affiliates with restricted securities in reporting companies during the period between the end of the six-month holding period (which may be longer depending on hedging activities) and one year after the securities

were acquired?  Should non-affiliates be subject to the current public information condition for a longer period of time?  If so, how long?

- Should non-affiliates with restricted securities of non-reporting companies remain subject after the holding period to all conditions of Rule 144 for an additional year, as under the current rule?  Are there any specific conditions to which non-affiliates with restricted securities of reporting companies should still be subject after the holding period, other than the current public information requirement?  Are there any specific conditions to which non-affiliates with restricted securities of non-reporting companies should still be subject after the holding period?  For example, should non-affiliates continue to be subject to volume limitations during a specified period of time after the holding period?  What should that specified time be (e.g., six months, one year)?  Should non-affiliates be subject to some sort of notice requirement when they have made a sale above the specified threshold amount?   What are the benefits if non-affiliates are still subject to such requirements or concerns if they are not?

- Is the proposed language requiring that the security holder toll the holding period if the holder had "a short position, or had entered into a 'put equivalent position' as defined by Exchange Act Rule 16a-1(h)" appropriate?  Does the proposed tolling provision sufficiently cover the hedging transactions that would result in the circumvention of the purposes of Rule 144?  Does it cover too few or too many hedging transactions?  If too many, what specific forms of hedging transactions

should be excluded and why?  If too few, what other forms of hedging transactions should be covered?

- Given that the proposed tolling provision is not applicable if the security holder has held the securities for one year, would a security holder be able to determine whether and how long previous owners entered into hedging transactions in order to properly calculate the holding period?  Would the proposed tolling provision make it too difficult to determine whether a security holder has complied with the holding period requirement?  By what other methods could we ensure that persons do not attempt to skirt the purposes of Rule 144 by engaging in hedging transactions?

- Should security holders be held to a "reasonable belief" standard with regard to the previous owner's hedging activities, or is a "bona fide belief" or some other standard more appropriate?  Should we specify what statements or documentation could security holders rely upon in order to formulate a reasonable belief that the previous owner has not engaged in hedging activities in the securities?  If so, what documentation should they be permitted to rely upon?

- Is it unnecessarily restrictive to require tolling if the security holder has engaged in hedging transactions with respect to any of his or her securities of the same class (or, in the case of nonconvertible debt, with respect to any nonconvertible debt securities of the same issuer)?  Are there any circumstances in which the proposed tolling provision would not be

30

appropriate?  If so, describe the circumstances and explain why the proposed tolling provision would not be appropriate.

- Should we address hedging in a different manner?  For example, should we preclude security holders who hedge securities during the holding period from relying on Rule 144?  Should we treat such hedging transactions as "sales" of the securities?

- Should the tolling provision apply only during the first year after the date of the acquisition of the securities from the issuer or affiliate?  Is one year the appropriate time period, or should the period be longer than one year?

- Is there any reason why we should not amend Note (ii) to Rule 144(g)(3) to add that if the securities have been held for less than one year, the broker's reasonable inquiry should also include an inquiry into the existence and character of any short position or put equivalent position with regard to the securities held by the person for whose account the securities are to be sold and whether that person has made inquiries into the existence and character of any short position held by a previous owner with regard to the securities?  Is the proposed amendment sufficiently clear?  Does the proposed amendment place an undue burden on the broker or the holder of the securities?  What level of inquiry should the brokers be required to conduct into the security holder's hedging transactions or the previous owner's hedging transactions?  What statements or documentation, if any, regarding hedging transactions should security holders be required to provide to brokers?

- What level of due diligence did brokers conduct to determine compliance with the holding period requirement before we eliminated the Rule 144 tolling provision in 1990? Were there any problems with tracking hedging positions when the tolling provision was in place, especially in relation to the limited provisions that permitted tacking that existed prior to 1990?

- Is there any reason we should not amend Form 144 to require disclosure of hedging transactions? Is the proposed disclosure appropriate and should it be changed in any way?

## C.     Elimination of Manner of Sale Limitations for Debt Securities

Rule 144(f) currently requires that securities be sold in "brokers' transactions,"[82] or in transactions directly with a "market maker," as that term is defined in Section 3(a)(38) of the Exchange Act.[83] Additionally, the rule prohibits a seller from: (1) soliciting or arranging for the solicitation of orders to buy the securities in anticipation of, or in connection with, the Rule 144 transaction; or (2) making any payment in connection with the offer or sale of the securities to any person other than the broker who executes the order to sell the securities. These manner of sale limitations do not apply to securities sold for the account of a non-affiliate of an issuer after the two-year period in Rule 144(k) has elapsed.[84]

The limitations on manner of sale were intended to assure that special selling efforts and compensation arrangements usually associated with a distribution are not

---

[82]     Current Rule 144(g) defines the term for purposes of Rule 144.

[83]     15 U.S.C. 78c(a)(38).

[84]     The manner of sale requirements also do not apply to securities sold for the account of the estate of a deceased person or for the account of a beneficiary of such estate, provided the estate or beneficiary is not an affiliate of the issuer.

present in a Rule 144 sale.[85]  In the 1997 proposing release, we proposed to eliminate the

manner of sale requirement entirely.  Commenters were split as to that proposal.  Eleven

commenters supported the proposal,[86] while seven commenters opposed it.[87]

Commenters who opposed the proposal noted that brokers act as gatekeepers to ensure

selling shareholders are complying with the requirements of Rule 144.  Two commenters

supported the proposal because transfer agents would not transfer shares without a release

from the issuer.[88]

We agree that, as financial intermediaries, brokers serve an important function as

gatekeepers for promoting compliance with Rule 144,[89] and we are concerned that

eliminating the manner of sale limitations for equity securities may lead to abusive

transactions.  However, we believe that the fixed income securities market does not raise

the same concerns, and that the manner of sale provision may place an unnecessary

burden on the resale of such securities.[90]  Such securities generally are traded in dealer

transactions in which the dealer seeks buyers for securities to fill sell orders instead of

through the means prescribed in Rule 144(f).  Thus, we are proposing that the manner of

sale limitations would not apply to resales of debt securities.[91]  This would allow holders

of debt securities greater flexibility in the resale of their securities, including, as

---

[85]    Release No. 33-5186 (Sept. 10, 1971) [36 FR 18586].

[86]    See letters from ABA; AT&T; ASCS; Intel; BG&E; Lehman Brothers; Morgan Stanley; NY Bar;
        NY City Bar; Sullivan & Cromwell; and Testa Hurwitz.

[87]    See letters from Corporate Counsel; Matthew Crain; Constantine Katsoris; Merrill Lynch;
        Regional Bankers; SIA; and Smith Barney.

[88]    See letters from ASCS and BG&E.

[89]    Brokers also must comply with the criteria set forth in Rule 144(g) in order to claim the "brokers'
        transactions" exemption under Section 4(4) of the Securities Act.

[90]    See also the 2007 ABA Letter.

[91]    See proposed Rule 144(f).  As discussed above, we also propose to eliminate the manner of sale
        limitations for resales by non-affiliates.

discussed in the 1997 proposing release, the option to privately negotiate the resale of the securities.[92]

In addition, we believe that non-participating preferred stock, which has debt-like characteristics, and asset-backed securities, where the predominant purchasers are institutional investors, including financial institutions, pension funds, insurance companies, mutual funds and money managers,[93] should be treated similarly to debt securities. Thus, we have included these securities in the "debt securities" category for the purpose of the proposed revisions to the manner of sale limitations in Rule 144.[94]

**Request for Comment**

- Would eliminating the manner of sale requirement be appropriate for debt securities, as proposed? Is there a need for brokers to serve as an intermediary for such a secondary market? Would transfer agents be able to adequately confirm compliance with Rule 144?

- Should we eliminate the manner of sale requirement for equity securities as well? If so, why? What problems or abuses may arise if the proposal were extended to equity securities? Would removal of the manner of sale requirements for equity securities diminish security transaction transparency by encouraging more privately negotiated transactions? If so, would the markets be adversely affected, particularly for stocks of smaller companies and more thinly traded securities?

---

[92]     Section III.C. of the 1997 proposing release.

[93]     See Release No. 33-8518 (Dec. 22, 2004) [70 FR 1506].

[94]     See proposed Rule 144(f). This proposal is for Rule 144(f) purposes only and does not affect the classification of these securities as debt or equity for other purposes. This treatment is consistent with the treatment of such securities under Regulation S. See Release No. 33-7505.

- Are there other purposes served by the manner of sale requirements that justify retaining those requirements? How would the removal of the manner of sale requirements affect participants, such as transfer agents, brokers and market makers, in Rule 144 transactions? Would transfer agents assume a greater role in determining compliance with the resale provisions? How would removing the manner of sale limitations affect brokers' obligations with respect to their ability to qualify for the "brokers' transactions" exemption under Section 4(4) of the Securities Act?

- Is it appropriate to include asset-backed securities and non-participating preferred stock as debt securities for the purposes of this rule? Are there any other types of securities to which the limitations on manner of sale should not apply? If so, why?

- Are there any other conditions in Rule 144 to which debt securities should not be subject? For example, should we raise the volume limitations in Rule 144(e) for debt securities, or eliminate the volume limitations for debt securities altogether?[95]

**D.    Increase of the Form 144 Filing Thresholds**

Rule 144(h) requires a selling security holder to file Form 144 if the security holder's intended sale exceeds either 500 shares or $10,000 within a three-month period.[96] These filing thresholds have been in place since 1972.[97] In the 1997 proposing

---

[95]    See discussion in 2007 ABA Letter.

[96]    17 CFR 230.144(h).

35

release, we proposed to increase the filing thresholds to 1,000 shares or $40,000. Thirteen commenters supported raising the filing threshold and no commenters opposed it.[98] Six commenters suggested that we eliminate Form 144.[99] One commenter suggested raising the threshold to $100,000.[100] Another commenter suggested raising it to $250,000.[101]

As discussed above, under the proposed rules, only affiliates of the issuer would be required to file a notice of proposed sale on Form 144 when relying on Rule 144. We now are proposing to increase the Form 144 filing thresholds to trades of 1,000 shares or $50,000 within a three-month period for affiliates.[102] The purpose of raising the dollar threshold to $50,000 is to adjust for inflation since 1972.[103] We believe that the 1,000 share threshold is an appropriate alternate threshold that would capture trades which merit notice but for which the dollar amount of the trades may not be as significant. In addition to this proposed amendment to Rule 144(h), we solicit comment below on how best to coordinate the filing deadline for Form 144 with the filing deadline for Form 4 and permit affiliates subject to Section 16 filing requirements to, at their option, satisfy

---

[97]    The 500 share and $10,000 thresholds have remained constant since Rule 144's inception in 1972. However, in 1978, we shortened the relevant time period during which sales volume is to be calculated from six months to three months to conform to a change shortening the time period in which sale volume should be calculated for the purposes of the Rule 144 volume limitation condition from six months to three months. Release No. 33-5995 (Nov. 8, 1978) [43 FR 54229].

[98]    See letters from ABA; ASCS; AT&T; BG&E; Corporate Counsel; Merrill Lynch; Morgan Stanley; NY Bar; NY City Bar; Regional Bankers; SIA; Smith Barney; and Sullivan & Cromwell.

[99]    See letters from ABA; Benesch, Friedlander, Coplan & Aranoff (Benesch Friedlander); NY Bar; NY City Bar; and Sullivan & Cromwell.

[100]   See letter from ABA.

[101]   See letter from NY Bar.

[102]   See proposed Rule 144(h).

[103]   The adjustment would be approximately $42,000 if based on the Personal Consumption Expenditures Chain-Type Price Index, as published by the Department of Commerce. In addition, if based on the Consumer Price Index, the adjustment would be approximately $50,000. To achieve a round number, we are proposing to raise the filing threshold to $50,000.

their Form 144 filing requirements by timely filing a Form 4 to report the sale of their securities.

**Request for Comment**

- Should the dollar threshold be higher or lower than proposed (e.g., $25,000, $75,000, or $100,000)? Should the threshold based on the number of shares be higher or lower than proposed (e.g., 500, 1,500, 2,000 or 2,500 shares)?

- Should the threshold be based solely on the number of shares sold, or solely on the dollar amount of the transaction? Should it be based on a formula using both variables? Should we allow for adjustments to the dollar amount threshold every five years that would reflect changes due to inflation?

- Should thresholds be based on a different number such as a percentage of the company's public float, or a different self-adjusting index?

- If you believe the thresholds should be different, please explain why your suggested threshold would be appropriate, including information and data to support your beliefs.

E.    **Codification of Several Staff Positions**

The following are proposed codifications of staff positions issued by the Division of Corporation Finance. These codifications should simplify the rule by making these staff positions more transparent and readily available to the public. The first three proposals were included in the 1997 proposing release. The last four proposals are new proposed codifications of existing staff positions.

1.      **Securities acquired under Section 4(6) of the Securities Act are considered "restricted securities"**

The 1997 proposing release proposed to codify the Division of Corporation Finance's interpretive position that securities acquired from the issuer pursuant to an exemption from registration under Section 4(6) of the Securities Act[104] are considered "restricted securities" under Rule 144(a)(3).[105]  We did not receive any comments on this proposal.

Section 4(6) provides for an exemption from registration for an offering that does not exceed $5,000,000 that is made only to accredited investors, that does not involve any advertising or public solicitation by the issuer or anyone acting on the issuer's behalf and for which a Form D has been filed.[106]  Because the resale status of securities acquired in Section 4(6) exempt transactions should be the same as securities received in other non-public offerings that are included in the definition of restricted securities, we believe that securities acquired under Section 4(6) should be defined as restricted securities for purposes of Rule 144.  Therefore, we are proposing an amendment to Rule 144 to codify the staff's position that securities acquired under Section 4(6) of the Securities Act are "restricted securities" under Rule 144(a)(3).[107]

---

[104]    15 U.S.C. 77d(6).  Section 4(6) was included in the Securities Act pursuant to the Small Business Investment Incentive Act of 1980 [Pub. L. No. 96-477 (Oct. 21, 1980)].

[105]    17 CFR 230.144(a)(3).  See the Division of Corporation Finance's Compliance and Disclosure Interpretations on Rule 144 (Updated April 2, 2007), at Section 104 (Rule 144(a)(3)), Question No. 104.03.

[106]    See 15 U.S.C. 77d(6).

[107]    See proposed Rule 144(a)(3)(viii).

2.    **Tacking of holding periods when a company reorganizes into a holding company structure**

The 1997 proposing release also proposed codifying the Division of Corporation Finance's interpretive position that holders may tack the Rule 144 holding period in connection with transactions made solely to form a holding company.[108] In "tacking," holders may count the period that the securities are held before the transaction made to form a holding company as part of period they hold the securities used to meet the Rule 144(d) requirement. We did not receive any comments on this proposal.

We are proposing again to codify that interpretive position.[109] This provision would permit tacking of the holding period if the following three conditions are satisfied:

- The newly formed holding company's securities are issued solely in exchange for the securities of the predecessor company as part of a reorganization of the predecessor company into a holding company structure;

- Security holders receive securities of the same class evidencing the same proportional interest in the holding company as they held in the predecessor company, and the rights and interests of the holders of such securities are substantially the same as those they possessed as holders of the predecessor company's securities; and

- Immediately following the transaction, the holding company has no significant assets other than securities of the predecessor and its existing

---

[108]    Morgan Olmstead (Jan. 8, 1988).

[109]    See proposed Rule 144(d)(3)(ix).

subsidiaries and has substantially the same assets and liabilities on a

consolidated basis as the predecessor had before the transaction.

In such transactions, tacking would be appropriate because the securities being

exchanged are substantially equivalent, and there is no significant change in the

economic risk of the investment in the restricted securities.  We believe that the

codification of this interpretation and as well as the codification of the following two

interpretations below would assist security holders in determining whether they have met

the Rule 144(d) holding period requirement.

### 3.    Tacking of holding periods for conversions and exchanges of securities

The 1997 proposing release proposed codifying the Division of Corporation

Finance's position that if the securities sold were acquired from the issuer solely in

exchange for other securities of the same issuer, the newly acquired securities shall be

deemed to have been acquired at the same time as the securities surrendered for

conversion or exchange, even if the securities surrendered were not convertible or

exchangeable by their terms.[110]  As noted in the 1997 release, Rule 144 does not state

whether the surrendered securities must have been convertible by their terms in order for

tacking to be permitted, which led to some confusion on how to calculate the Rule 144

holding period.  We did not receive any comments on this proposal.

We are proposing again these amendments to Rule 144(d)(3)(ii).[111]  In addition,

we are proposing a note to this provision that clarifies the Division's position that if:

---

[110]    See Planning Research Corp. (Dec. 8, 1980).

[111]    See proposed Rule 144(d)(3)(ii).

- The original securities do not permit cashless conversion or exchange by their terms;

- The parties amend the original securities to allow for cashless conversion or exchange; and

- The security holder provides consideration, other than solely securities of the issuer, for that amendment,

then shares will be deemed to have been acquired on the date that the original securities were so amended.[112]

### 4.    Cashless exercise of options and warrants

Several commenters responding to the 1997 release suggested that we codify the Division of Corporation Finance's position that, upon a cashless exercise of options or warrants, the newly acquired underlying securities are deemed to have been acquired when the corresponding options or warrants were acquired, even if the options or warrants originally did not provide for cashless exercise by their terms.[113]  We are proposing to revise Rule 144 to codify that position in response to those comments.[114]

In addition, we are proposing to add two notes to this new paragraph.  The first note would codify the Division's position that if:

- The original options or warrants do not permit cashless exercise by their terms; and

- The holder provides consideration, other than solely securities of the issuer, to amend the options or warrants to allow for cashless exercise,

---

[112]    See <u>Morgan Stanley & Co., Inc.</u> (June 30, 1993).

[113]    See the Division of Corporation Finance's Compliance and Disclosure Interpretations on Rule 144 (Updated April 2, 2007), at Section 212 (Rule 144(d)(3)), Interpretation No. 212.01.

then the options or warrants would be deemed to have been acquired on the date that the original options or warrants were so amended.[115]  This treatment is analogous to our treatment of conversions and exchanges.

The second note would codify the Division's position that the grant of certain options or warrants that are not purchased for cash or property does not create any investment risk in the holder in a manner that would justify identification of the holding period of the securities received upon exercise of the options or warrants with that of the options or warrants.[116]  This is the case for employee stock options.  The note would clarify that in such instances, the holder would not be allowed to tack the holding period of the option or warrant and would be deemed to have acquired the underlying securities on the date the option or warrant was exercised, if the conditions of Rule 144(d)(1) and Rule 144(d)(2) are met at the time of exercise.

### 5. Aggregation of pledged securities

In response to suggestions from commenters, we are proposing to add a note to Rule 144(e)(2)(ii)[117] that would address calculation of the volume of securities that a pledgee of securities may sell.[118]  It would codify the Division of Corporation Finance's position that, so long as the pledgees are not the same "person" under Rule 144(a)(2), a pledgee of securities may sell the pledged securities without having to aggregate the sale with sales by other pledgees of the same securities from the same pledgor, as long as

---

[114]    See proposed Rule 144(d)(3)(x).

[115]    See Morgan Stanley & Co., Inc. (June 30, 1993).

[116]    See Morgan Stanley & Co., Inc. (June 30, 1993) and Malden Trust Corporation (Feb. 21, 1989).

[117]    17 CFR 230.144(e)(2)(ii).

[118]    If the proposed amendments eliminating certain requirements for non-affiliates are adopted, then the volume limitations in Rule 144(e) would apply only to affiliates.

there is no concerted action by those pledgees.[119]  As an example, assume that a security

holder (the pledgor) pledges the securities he owns in Company A to two banks, Bank X

and Bank Y (the pledgees).  If the pledgor defaults:

- Upon default, Bank X does not have to aggregate its sales of Company A securities with Bank Y's sales of Company A securities unless Bank X and Bank Y are acting in concert, but

- Bank X individually still must aggregate its sales with the pledgor's sales, and

- Bank Y individually still must aggregate its sales with the pledgor's sales.

Provided that the loans and pledges are bona fide transactions and there is no

concerted action among pledgees and no other aggregation provisions under Rule 144(e)

apply, we do not believe that extra burdens on pledgees to track and coordinate resales by

other pledgees are warranted.

### 6.     Treatment of securities issued by "reporting and non-reporting shell companies"

A blank check company is a company that:

- Is in the development stage;

- Has no specific business plan or purpose, or has indicated that its business plan is to merge with or acquire an unidentified third party; and

- Issues penny stock.[120]

---

[119]    See the Division of Corporation Finance's Compliance and Disclosure Interpretations on Rule 144 (Updated April 2, 2007), at Section 216 (Rule 144(e)(3)), Interpretation No. 216.01.  See also Standard Chartered Bank (June 22, 1987).

[120]    17 CFR 230.419.  The term "penny stock" is defined in 17 CFR 240.3a51-1.

Such companies historically have provided opportunity for abuse of the federal securities laws, particularly by serving as vehicles to avoid the registration requirements of the securities laws.[121]  Rule 419 under the Securities Act[122] was adopted in 1992 to control the extent to which such companies are able to access funds from a public offering.

In 2005, we amended Securities Act Rule 405 to define a "shell company" to mean a registrant, other than an asset-backed issuer, that has:

(1)    no or nominal operations; and

(2)    either:

- no or nominal assets;

- assets consisting solely of cash and cash equivalents; or

- assets consisting of any amount of cash and cash equivalents and nominal other assets.[123]

On January 21, 2000, the Division of Corporation Finance concluded in a letter to NASD Regulation, Inc. that Rule 144 is not available for the resale of securities issued by companies that are, or previously were, blank check companies.[124]  In an effort to curtail misuse of Rule 144 by security holders through transactions in the securities of blank

---

[121]    See Release No. 33-6932 (Apr. 28, 1992) [57 FR 18037].

[122]    17 CFR 230.419.

[123]    See 17 CFR 230.405 and Release No. 33-8587 (Jul. 15, 2005) [70 FR 42234].

[124]    Ken Worm, NASD Regulation, Inc. (Jan. 21, 2000).  In that letter, the Division stated that "transactions in blank check company securities by their promoters or affiliates . . . are not the kind of ordinary trading transactions between individual investors of securities already issued that Section 4(1) [of the Securities Act] was designed to exempt."  The Division stated its view that "both before and after the business combination or transaction with an operating entity or other person, the promoters or affiliates of blank check companies, as well as their transferees, are 'underwriters' of the securities issued. . . . Rule 144 would not be available for resale transactions in this situation, regardless of technical compliance with that rule, because these resale transactions appear to be designed to distribute or redistribute securities to the public without compliance with the registration requirements of the Securities Act."

check companies, we are proposing to codify this position with some modifications.[125]

First, we propose to modify the staff interpretation to address securities of all companies,

other than asset-backed issuers, that meet the definition of "shell company."[126]  These

companies would include any company, including a blank check company, that meets the

definition.  The category of companies to whom the staff interpretation is proposed to

apply would be broader than the definition of "shell company" in Rule 405, however, as

it would apply to any "issuer" meeting that standard, whereas the Rule 405 definition

refers only to "registrants."  We believe that this provision better describes the companies

that are the subject of the abuse that the staff interpretation is designed to address.  For

the purposes of the discussion in this release only, we call these companies, "reporting

and non-reporting shell companies."  Under the proposed rule, a person who wishes to

resell securities issued by a company that is, or was, a reporting or a non-reporting shell

company, other than a business combination related shell company,[127] would not be able

to rely on Rule 144 to sell the securities.

Second, because the reasons for prohibiting reliance on Rule 144 do not appear to

be present after a reporting company has ceased to be a shell company and there is

adequate disclosure in the market that would serve to protect against further abuse,[128] we

propose to permit the availability of Rule 144 for resales under provisions that are similar

---

[125]    See proposed Rule 144(i).

[126]    See proposed paragraph (i)(1) of Rule 144.

[127]    "Business combination related shell company" is defined in Securities Act Rule 405.

[128]    We are not proposing a comparable provision for security holders of non-reporting companies that
have ceased to be shell companies because they have business operations or more than nominal
non-cash assets.  We have not proposed a comparable provision for these companies, because we
preliminarily believe that the information that a non-reporting company would provide to the
market does not adequately protect against potential abuse in those situations.

to our provisions that permit the use of a Securities Act Form S-8[129] registration statement by reporting companies that were formally shell companies.[130]  We propose to permit reliance on Rule 144 for resales by a security holder when:

- the issuer of the securities that was formally a reporting or non-reporting shell company has ceased to be a shell company;

- the issuer of the securities is subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act;

- the issuer of the securities has filed all reports and material required to be filed during the preceding 12 months (or for such shorter period that the registrant was required to file such reports and materials); and

- at least 90 days have elapsed from the time the issuer files current "Form 10 information" with the Commission reflecting its status as an entity that is not a shell company.

Form 10 information is equivalent to information that a company would be required to file if it were registering a class of securities on Form 10, Form 10-SB, or Form 20-F under the Exchange Act,[131] and such information is ordinarily filed on Form 8-K.[132]

Under the proposed amendments, an affiliate security holder selling control securities would have to wait at least 90 days before being permitted to resell the

---

[129]     17 CFR 239.16b.

[130]     See Release No. 33-8587.  These provisions are consistent with the Form S-8 provisions for shell companies, except that Form S-8 requires a former shell company to wait 60 days, rather than 90 days, before it is able to use the form to register securities.

[131]     17 CFR 249.210; 17 CFR 249.210b; and 17 CFR 249.220f.

[132]     17 CFR 249.308.  Items 2.01(f) and 5.01(a)(8) of Form 8-K require a company in a transaction where the company ceases being a shell company to file a current report on Form 8-K containing the information (or identifying the previous filing in which the information is included) that would be required in a registration statement on Form 10 or Form 10-SB to register a class of securities under Section 12 of the Exchange Act.

securities, and a security holder selling restricted securities would be required to wait the duration of the holding period before being permitted to resell the securities.[133]  The 90-day delay or the duration of the holding period would provide the market with time to absorb the Form 10 information filed with the Commission regarding the company, and the 90-day delay here is consistent with the 90-day waiting period in Rule 144(c) and proposed Rule 144(d).

<div style="margin-left:2em">

**7.**　　**Representations required from security holders relying on Exchange Act Rule 10b5-1(c)**

</div>

Rule 10b5-1[134] under the Exchange Act defines when a purchase or sale constitutes trading "on the basis of" material nonpublic information in insider trading cases brought under Exchange Act Section 10(b)[135] and Rule 10b-5.[136]  Specifically, a purchase or sale of a security of an issuer is "on the basis of" material nonpublic information about that security or issuer if the person making the purchase or sale was aware of the material nonpublic information when the person made the purchase or sale.  However, Rule 10b5-1(c) provides an affirmative defense that a person's purchase or sale was not "on the basis of" material nonpublic information.  For this defense to be available, the person must demonstrate that:

---

[133]　For the purposes of computing the holding period under the proposed rule, the securities shall be deemed to have been acquired either at the time the securities were acquired from the issuer or affiliate of the issuer, or at the time the "Form 10 information" is filed with the Commission, whichever is the latest date.  See proposed Rule 144(d)(3)(xii).

[134]　17 CFR 240.10b5-1.

[135]　15 USC 78j(b).

[136]　17 CFR 240.10b-5.  As stated in Rule 10b5-1(a), the "manipulative and deceptive devices" prohibited by Section 10(b) and Rule 10b-5 include, among other things, the purchase or sale of a security of any issuer, on the basis of material nonpublic information about that security or issuer, in breach of a duty of trust or confidence that is owed directly, indirectly, or derivatively, to the issuer of that security or the shareholders of that issuer, or to any other person who is the source of the material nonpublic information.

- before becoming aware of the material nonpublic information, he or she had entered into a binding contract to purchase or sell the securities, provided instructions to another person to execute the trade for the instructing person's account, or adopted a written plan for trading the securities;

- the contract, instructions or written trading plan satisfy the conditions of Rule 10b5-1(c); and

- the purchase or sale that occurred was pursuant to the contract instruction or plan.

Currently, Form 144 requires a selling security holder to represent, as of the date that the form is signed, that he or she "does not know any material adverse information in regard to the current and prospective operations of the issuer of the securities to be sold which has not been publicly disclosed." The Division of Corporation Finance has indicated that a selling security holder who satisfies Rule 10b5-1(c) may modify the Form 144 representation to indicate that he or she had no knowledge of material adverse information about the issuer as of the date on which the holder adopted the written trading plan or gave the trading instructions, specifying that date and indicating that the representation speaks as of that date.[137]

In order to reconcile the Form 144 representation with Rule 10b5-1, we are proposing to codify this interpretive position. Under the proposed amendments, Form 144 filers would be able to make the required representation as of the date that they adopted written trading plans or gave trading instructions that satisfy Rule 10b5-1(c).

---

[137]    See the Division of Corporation Finance Manual of Publicly Available Telephone Interpretations, Fourth Supplement (May 30, 2001), at Rule 10b5-1; Form 144, Interpretation No. 2.

**Request for Comments**

- Should we codify all of the above staff positions?  Is the codification of the staff position on securities acquired under Section 4(6) appropriate and consistent with the purposes of Rule 144?  Would codification of the staff positions on the Rule 144 holding period help to resolve any confusion regarding how to calculate the holding period?  Would codification of the position on the aggregation of pledgees securities assist security holders in determining their volume limitations?  If you believe we should not codify any of these positions, which one or ones should we not codify?  If so, why?

- Should we revise any of the staff's existing positions on these matters?  If so, which position and why?  Does the wording of any of the proposed language suggest a change, or create ambiguity, in the staff's position?

- Would codification of the staff position on the treatment of securities issued by blank check companies protect against abuse relating to the resale of such securities?  Should we expand the staff position to preclude reporting and non-reporting shell companies from relying on Rule 144?

- Should we permit reliance on Rule 144 for the resale of securities of former shell companies if the company is a reporting company, the company is no longer a shell company, the company has filed Form 10 information reflecting its status as an entity that is not a shell company, and either 90 days have elapsed since the filing of the Form 10 information or the holding period has been met?  Is 90 days an appropriate

amount of time?  Should the delay be longer (e.g., 180 days or one year)?
Are there any reasons not to adopt such an amendment?  Should we
expand the proposed revision to permit reliance on Rule 144 also for the
resale of securities of non-reporting companies that were formerly non-
reporting shell companies where there is publicly available information
(provided under Rule 15c2-11)[138] reflecting that such companies have
obtained business operations or more than nominal assets?

**F.      Amendments to Rule 145**

Securities Act Rule 145 provides that exchanges of securities in connection with
reclassifications of securities, mergers or consolidations or transfers of assets that are
subject to shareholder vote constitute sales of those securities.  Rule 145(c) deems
persons who were parties to such a transaction, other than the issuer, or affiliates of such
parties to be underwriters.  Rule 145(d) sets forth the restrictions on the resale of
securities received in such transactions by persons deemed underwriters.  In the 1997
proposal, we proposed to eliminate the presumed underwriter and resale provisions in
Rule 145(c) and (d).  Many commenters supported the 1997 proposal.[139]

After reviewing comments on the proposal, we believe it is appropriate to
eliminate the presumptive underwriter provision in Rule 145, as it is no longer necessary
in most circumstances.  However, based on our experience with business combinations
involving shell companies that have resulted in abusive sales of securities, we believe that
there continues to be a need to apply the presumptive underwriter provision to shell

---

[138]      17 CFR 240.15c2-11.

[139]      See letters from ABA; ASCS; AT&T; BG&E; Brobeck, Phleger & Harrison, LLP (Brobeck);
Corporate Counsel; Intel; NY Bar; NY City Bar; SIA; Smith Barney; Sullivan & Cromwell; and
Testa Hurwitz.

companies and their affiliates and promoters.  Accordingly, we propose amendments to Rule 145(c) and (d) that would:[140]

- Eliminate the presumed underwriter status provision in Rule 145(c) except with regard to Rule 145(a) transactions that involve a shell company (other than a business related shell company);[141] and

- Harmonize the requirements in Rule 145(d) with the proposed provisions in Rule 144 that would apply to securities of shell companies.[142]

Under the proposed rule, parties to the transaction in Rule 145(a), other than the issuer, and their affiliates, where a party to the transaction is a shell company, other than a business combination related shell company, could resell securities acquired in connection with the transaction only in accordance with Rule 145(d).

Under proposed Rule 145(d), the persons and parties that are deemed presumed underwriters would be permitted to resell their securities to the same extent that affiliates of a shell company would be permitted to resell their securities under Rule 144, as proposed.  The securities could be only sold after any company that was a shell company and a party to the transaction has ceased to be a shell company and at least 90 days have elapsed since the securities were acquired in the transaction, subject to Rule 144 conditions.[143]  The 90 day-delay is consistent with the 90-day delay that we are

---

[140]   We also propose to add the definition of "affiliate" to paragraph (e) and transfer the definition of "party" from paragraph (c) to paragraph (e).

[141]   See proposed Rule 145(c).  The terms, "shell company" and "business combination related shell company," are defined in Securities Act Rule 405.  See also Release No. 33-8587 (Jul. 15, 2005) [70 FR 42233].

[142]   See proposed Rule 145(d).

[143]   The securities acquired by the parties and persons deemed presumed underwriters would be acquired pursuant to an effective registration statement.  As in the proposed Rule 144 amendments, this 90-day delay would allow the market extra time to absorb the information in the registration statement before these persons and parties can publicly resell the securities.

proposing in paragraph (i) of Rule 144 relating to the use of Rule 144 for the resale of securities of a former shell company. As in the proposed amendments to Rule 144, after six months have elapsed since the securities were acquired in the transaction, the persons and parties would be permitted to resell their securities, subject only to the current public information condition in Rule 144, provided that the sellers are not affiliates of the issuer at the time of sale and have not been affiliates during the three months before the sale. As in the proposed amendments to Rule 144, one year after the securities were acquired in the transaction the persons and parties would be permitted to freely resell their securities, provided that they are non-affiliates at the time of sale and have not been affiliates during the three months before the sale.

In addition, similar to the proposal for the Preliminary Note in Rule 144, we propose to add a note that Rule 145(c) and (d) are not available with respect to any transaction or series of transactions that, although in technical compliance with the rule, is part of a plan or scheme to evade the registration requirements of the Act.[144] We also propose to clarify language in Rule 145(d) regarding the securities that were acquired in a transaction specified in paragraph Rule 145(a).[145]

**Request for Comment**

- Should we limit the Rule 145 presumptive underwriter provision only to transactions involving shell companies? Are there any other transactions for which the presumptive underwriter provision should continue to

---

[144]    See proposed Note to Paragraphs (c) and (d) of Rule 145.

[145]    We propose to revise the phrase in Rule 145(d) relating to "registered securities" to say instead "securities acquired in a transaction specified in paragraph (a) that was registered under the Act," which we believe is a more accurate description.

apply?  Should we eliminate this provision with respect to transactions involving shell companies?

- Are the proposed amendments to Rule 145(d) appropriate?  Should we retain the requirement that the issuer of the securities must meet the current public information requirements of Rule 144(c) for a prescribed period of time before the party is permitted to resell freely its securities in the issuer?

- Are the time periods that the parties and their affiliates must wait before being permitted to resell the securities in proposed Rule 145(d) appropriate?  Is it appropriate to require those deemed underwriters to wait at least 90 days before being permitted to resell their securities?  Should the requirement be shorter or longer (e.g., 30, 60, 120, or 180 days, or one year)?  If so, why?

- Should we add the note that Rule 145(c) and (d) are not available with respect to any transaction or series of transactions that, although in technical compliance with the rule, is part of a plan or scheme to evade the registration requirements of the Act?

## G.    Conforming and Other Amendments

### 1.    Underlying Securities in Asset-Backed Securities Transactions

The proposals we make today necessitate consideration of proposed changes to other rules that refer to Rule 144.  In particular, we are proposing changes to the asset-backed rules.  We adopted Securities Act Rule 190 to clarify when registration of the sale

of underlying securities in asset-backed securities transactions is required.[146]  One of the basic premises underlying ABS offerings is that an investor is buying participation in the underlying assets.  Therefore, if the assets being securitized are themselves securities under the Securities Act (commonly referred to as a "resecuritization"), the offering of the underlying securities must itself be registered or exempt from registration under the Securities Act.  Rule 190 provides the framework for determining if registration of the sale of these underlying assets is required at the time of the registered ABS offering.

One of the requirements of Rule 190 is that the depositor would be free to publicly resell the securities without registration under the Securities Act.[147]  This provision currently notes as an example that if the underlying securities are Rule 144 restricted securities, they must meet the condition of 144(k) (e.g., a two-year holding period by non-affiliates).  Because of the manner of sale restrictions on asset-backed securities, this example means that in order to meet this condition under Rule 190, at least two years must have elapsed from the date the securities were acquired from the issuer of the underlying securities, or an affiliate, and the date they are pooled and resecuritized pursuant to Rule 190.

Our proposed revisions to Rule 144 with no concurrent revision to Rule 190 would allow privately placed debt or other ABS to be publicly resecuritized in as little as six months after their original issuance without registration of the underlying securities.[148]  Given that that Rule 190 addresses the public distribution of privately

---

[146]    17 CFR 230.190 and Release No. 33-8518 (Dec. 22, 2004) [70 FR 1506].

[147]    17 CFR 230.190(a)(3).

[148]    Although the ABS securities we are discussing may be privately placed, the issuing trust will have also registered the sale of other ABS and may have a reporting obligation under Section 15(d) for some time.

placed securities via resecuritization transactions, we are proposing revisions to Rule 190 in order to keep the current two-year period for resecuritizations that do not require registration of the underlying securities.[149]

A particular issuance of asset-backed securities often involves one or more publicly offered classes (e.g., classes rated investment grade) as well as one or more privately placed classes (e.g., non-investment grade subordinated classes). In most instances, the subordinated classes act as structural credit enhancement for the publicly offered senior classes by receiving payments after, and therefore absorbing losses before, the senior classes. These unregistered asset-backed securities are typically rated below investment grade or are unrated and as such could not be offered on Form S-3. They typically are not fungible with registered securities from the same offering and are held by very few investors. Further, the trust or issuing entity usually ceases reporting under the Exchange Act with respect to the publicly offered classes after its initial Form 10-K is filed. We understand the privately placed subordinated securities in these transactions are often the types of securities that are pooled and resecuritized into new asset-backed securities.[150]

Due to the particular circumstances of asset-backed securities and the established experience with a two-year period under both the ABS rules and the prior staff positions that were codified by those rules, we are not persuaded at this time that we should shorten the current two-year holding period for restricted securities that are to be sold into

---

[149]   This proposed change would not in any way impact the disclosure requirements for resecuritizaitons.

[150]   See Saskia Scholtes, Left in the Dark on Debt Obligations, FT.com (Mar. 27, 2007) (describing privately placed collateralized debt obligations (CDOs) vehicles used to repackage portfolios of other debt and noting that "the biggest category of deals, at 44%, consisted of CDOS backed by asset-backed securities such as those backed by subprime mortgages").

publicly-registered securitizations. As a result, we are proposing to amend Rule 190 to provide that if the underlying securities are Rule 144 restricted securities, Rule 144 must be available for the sale of the securities in the resecuritization, except that at least two years must have elapsed since the later of the date the securities were acquired from the issuer of the underlying securities or from an affiliate of the issuer of the underlying securities. Of course, the underlying securities could still be resecuritized if they do not meet this requirement; their sale would just need to be concurrently registered with the offering of the asset-backed securities on a form for which the offering of the class of underlying securities would be eligible. In addition, nothing in Rule 190 as we propose to amend it would lengthen the holding period of the underlying securities for resales other than in connection with publicly registered resecuritizations.

2.      **Securities Act Rule 701(g)(3)**

Securities Act Rule 701(g)(3)[151] outlines the resale limitations for securities issued under Rule 701. The limitations for resales by non-affiliates includes references to paragraphs (e) and (h) of Rule 144, which under the proposed rules, would no longer apply to resales by non-affiliates. Accordingly, it is appropriate to propose a conforming amendment to remove references to Rule 144(e) and (h) from Rule 701.[152]

**Request for Comment**

- Is the revision to Rule 190 appropriate? Are we correct in understanding that privately placed securities that are resecuritized pursuant to Rule 190 typically were acquired from the issuer two or more years ago? Should we shorten the two-year period for resecuritizations, but to not as short as

---

[151]      17 CFR 230.701(g)(3).

the six months we propose for certain other resales under Rule 144?  What interim length would be appropriate (e.g., one year)?

- Should we limit our revision to just underlying securities that are asset-backed securities and allow non-asset-backed securities such as corporate debt to be securitized without registration in the revised Rule 144 periods?

- Are there other instances where our rules reference Rule 144 or Rule 145 that would warrant change as a result of our proposed revisions to those rules?

- Is the proposed change to Rule 701 appropriate?

## III.    Coordination of Form 144 Filing Requirements with Form 4 Filing Requirements

Rule 144 requires a seller to transmit a Form 144 for filing concurrently with either the placing with a broker of an order to execute a sale of securities in reliance upon Rule 144 or the execution directly with a market maker of such a sale, if the sale has exceeded certain filing thresholds.[153]  The proposed amendments above eliminate the Form 144 filing requirement for non-affiliates, and therefore, the Form 144 filing requirements would apply only to affiliates of the issuer.[154]

Many affiliates of an issuer under Rule 144 are also insiders of the issuer under Section 16 of the Exchange Act.[155]  Pursuant to Exchange Act Rule 16a-3,[156] insiders are

---

[152]    See proposed Rule 701(g)(3).

[153]    See Rule 144(h).  As noted above, we are proposing to raise the thresholds that trigger the Form 144 filing requirement.

[154]    See Section II.B above.

[155]    Section 16 requirements apply to every person who is directly or indirectly the beneficial owner of more than 10% of any class of any equity security (other than an exempted security) which is registered pursuant to Section 12, or who is a director or an officer of the issuer.

[156]    17 CFR 240.16a-3.