# EXHIBIT

# B.2

required to report changes in beneficial ownership, including purchases and sales of securities, on Form 4.[157]  Some of the items required by Form 144 are duplicative of the requirements on Form 4.  The Sarbanes-Oxley Act of 2002[158] changed the Form 4 filing deadline to two business days after the transaction is executed.  As a result, affiliates selling securities under Rule 144 often are required to file a Form 4 just a few days after they file a Form 144 to report information regarding the same sale of securities.

In order to reduce duplicative requirements on individuals who are subject to both the Form 144 filing requirements and the Section 16 filing requirements, we solicit comment on how best to coordinate the Form 144 filing requirement with the filing requirements under Section 16 of the Exchange Act for an affiliate who wishes to rely on Rule 144 and is subject to the Section 16 filing requirements.[159]  Specifically, we solicit comment on the following:

- Revising the filing deadline for Form 144 to coincide with the filing deadline for Form 4 (before the end of the second business day following the day on which the subject transaction was executed);[160]

- Permitting affiliates subject to Section 16 filing requirements to, at their option, satisfy their Form 144 filing requirements by timely filing a Form 4 to report the sale of their securities; and

---

[157]    17 CFR 249.104 and 17 CFR 274.203.

[158]    P. L. No. 107-204, 116 Stat. 745.

[159]    See also letter from Corporate Counsel.

[160]    See Exchange Act Rule 16a-3(g).

- Revising Item 701 of Regulations S-B and S-K[161] to require additional disclosure about the resale status of securities issued in unregistered transactions at the time the company first issues the securities.

While Form 144 and Form 4 both provide information regarding the title of the class of securities sold, the number of shares subject to sale, the aggregate market value of those shares, and the date of sale, there are, however, some differences in the disclosure required by Form 144 and Form 4 with respect to sales of securities. For example, Form 4 does not request some information that is required to be provided in Form 144, including:

- the date that the securities were acquired;

- the nature of the acquisition transaction;

- the name of the person from whom the securities were acquired;

- the amount of securities acquired;

- the date of payment for the securities; and

- the nature of payment.

In addition, while Form 144 requires disclosure regarding securities sold in the three months prior to the sale, if a person has not been subject to the Section 16 reporting obligations for three months, that person's Section 16 reports would not provide complete information regarding sales of securities in the last three months. Also, Form 4 does not contain the proposed representation that is given by security holders that they do not

---

[161]     17 CFR 228.701 and 229.701. We recently proposed to integrate Regulation S-B disclosure requirements into Regulation S-K disclosure requirements. See SEC Press Release No. 2007-102 (May 23, 2007), available at http://www.sec.gov/news/press.shtml.

know material adverse information about the company as of the date that they adopted a

plan under Exchange Act Rule 10b5-1 or gave trading instructions, as applicable.[162]

We preliminarily believe that if we permit a security holder to satisfy a Form 144

filing requirement by filing a Form 4, Form 4 should be amended to require the security

holder that wishes to satisfy a Form 144 filing requirement to provide the following

information regarding Rule 144 compliance in Form 4:

- the date that the securities were acquired (for purposes of the holding period calculation under Rule 144(d));[163]

- the name of the person from whom the securities were acquired;

- the date of payment for the securities; and

- the nature of the payment.

Regarding the items in Form 144 relating to the nature of the acquisition transaction and

the amount of securities acquired, we believe that such information or similar information

could be available in a previously filed Form 4 reporting the purchase of the securities,

unless the security holder was not subject to Section 16 requirements at the time the

securities were acquired.  We solicit comment on which Form 144 disclosure items we

should preserve and transfer from Form 144 to Form 4, if we were to permit security

holders to satisfy their Form 144 obligations with a Form 4.

We also solicit comment on whether Form 4 should be expanded to include these

additional disclosure items.  We have concerns, however, that simply combining the

---

[162]     See Section II.E.7 of this release.

[163]     We believe that this item should be added to Form 4, because if the security holder was deemed to
have acquired the securities on an earlier date under the tacking provisions in Rule 144(d), the date
that the security holder acquired the securities for Rule 144 purposes could differ from the date
that would have been previously reported on the Form 4 covering the acquisition transaction.

required disclosures on the two forms into Form 4 may be confusing to filing persons as well as other market participants. For example, because some of the information required on Form 144 is not relevant to all persons filing Form 4, a person filing a Form 4 who is not required to file a Form 144 should not be required to provide that information. Similarly, the two forms also can report different events. Form 4 reports both purchases and sales, while Form 144 reports only sales. In short, much of the information in each form may not be relevant to filers of the other form and may cause confusion among filers of the forms and investors.

Because Form 4 is an electronic filing on the Commission's Electronic Data Gathering, Analysis, and Retrieval System (EDGAR), one alternative may be to implement programming changes to EDGAR to modify the user interface for Form 4 in such a way as to provide access to the portion of that form that would request Rule 144 information only if the filer affirmatively asserts that he or she wishes to satisfy his or her Rule 144 notice obligations on Form 4. Programming changes also could be made to enable a filer to enter all relevant information on one user interface which would automatically create two separate filings, one on Form 4 and the other on Form 144. To the extent possible, we seek to reduce filing requirements without losing important disclosure or causing confusion to filers and users of Form 4 and Form 144.

Such coordination also would require a revision to the statement in Rule 144(g) that the broker would deemed to be aware of any facts or statements contained in the notice required by Rule 144(h).[164] If a security holder has filed a Form 4 to satisfy his or

---

[164]     Existing Note (i) of Rule 144(g)(3) also states that the broker, for his own protection, should obtain and retain in his files a copy of the notice required by paragraph (h).

her Form 144 filing requirement, we preliminarily believe that a broker should also be deemed to be aware of any facts contained in a Form 4 that are relevant to Rule 144, if this is the approach we adopt in the end.  We request comment on this point and how to best address this issue.

Because some information on Form 144 would no longer be provided if we were to adopt these amendments, we believe that additional disclosure in registration statements or periodic reports filed by the issuer of the securities may help to inform the market about the number of restricted securities available for resale.  We solicit comment on a possible amendment to Item 701 of Regulations S-K and S-B that would require disclosure regarding: (1) whether the securities issued in unregistered transactions were restricted securities, as defined in Rule 144(a)(3); (2) if the securities were not restricted securities, the resale status of such securities under Rule 144; and (3) if the securities were restricted securities, the first date when such securities could be deemed to meet the holding period requirement in Rule 144(d).

**Request for Comment**

- Should we permit persons who are subject to Section 16 reporting obligations to provide the disclosure required by Form 144 on Form 4 instead?  Is there any particular information currently disclosed on Form 144 that would otherwise not be disclosed on Form 4 which industry participants or security holders want or find material?  If so, what is that information?

- Could relevant information be reported elsewhere?  Should we revise Item 701 of Regulations S-K and S-B to require added disclosure in a

company's registration statement or periodic reports about the resale status of securities issued in unregistered transactions at the time when the company first sells the securities? What other types of disclosure regarding restricted securities (other than the resale status of the securities) would be useful to the market? Would disclosure regarding the securities at the time they were first issued be beneficial, or would such disclosure be premature and speculative?

- If we permit persons subject to Section 16 reporting obligations to file a Form 4 in lieu of a Form 144, is it appropriate to delay the filing deadline of Form 144 to two business days after the transaction is completed?[165] Is there a benefit to having this information at an earlier time, rather than two business days after the transaction is completed? How do market participants use the information in Form 144 today?

- If we expand Form 4 by adding requirements from Form 144, would Form 144 information contained in Form 4 be more difficult to find? Should we provide a means to allow persons searching on EDGAR to determine whether a Form 4 is being used to disclose Form 144 information (e.g., a checkbox on Form 4)?

- Should we mandate that Form 144 be filed electronically on EDGAR when the form relates to the securities of a reporting company?

---

[165]  Such an amendment would also necessitate revising the rule to modify or delete the requirement in proposed Rule 144(h) that the security holder filing the notice shall have a bona fide intention to sell the securities referred to therein within a reasonable time after the filing of such notice.

- Should we expand Form 4 to add disclosure requirements from Form 144 for these purposes?  If so, which disclosures from Form 144 should we retain?  Should we modify Form 4 to incorporate them or should this information be provided as a supplement to Form 4?  For example, should Form 144 information be in a new separate table?  Would a combined Form 4/Form 144 be confusing to investors, other persons using the forms, or persons submitting the forms?

- Should we require only persons that seek to satisfy both their Rule 144 and Form 4 requirements with one form to fill out all of the questions on a combined Form 4/Form 144?  If so, what mechanisms can we use to prevent confusion and assist filers in providing only the information that they are required to provide?  For example, should we implement programming changes to EDGAR that would electronically filter out any filers not seeking to report information pursuant to Rule 144 on their Form 4 by withholding questions relevant to Rule 144 unless the filer indicates that he or she intends to provide such information on Form 4?

- Would combining the forms and delaying the Rule 144 filing date make it more difficult for brokers to perform the inquiries required in order to qualify the transaction as a "brokers' transaction"?  Do brokers and transfer agents need to see Form 144 information prior to executing the transaction?  Is there a better way for these parties to obtain this information prior to executing the transaction other than a separate filing?

Should brokers be deemed to be aware of facts contained in Form 4 to the extent that the form is filed for Rule 144 purposes?

- Should we implement programming changes to EDGAR that would enable security holders to create two separate filings, one Form 4 and one Form 144, at the same time by completing only one submission to EDGAR? Would this lessen the probability of confusion that would result if items on Form 144 were transferred to Form 4?

## IV.    General Request for Comments

We request and encourage any interested person to submit comments regarding:

- The proposed rule changes that are the subject of this release;

- Additional or different changes; or

- Other matters that may have an effect on the proposals contained in this release.

We request comment from the point of view of registrants, investors and other users of information about the resale of restricted securities and securities owned by affiliates of the issuer.

## V.    Paperwork Reduction Act

### A.    Background

Our proposals contain "collection of information" requirements within the meaning of the Paperwork Reduction Act of 1995 ("PRA").[166]  We are submitting the proposed revisions to Form 144 to the Office of Management and Budget (OMB) for

---

[166]    44 U.S.C. 3501 et seq.

review in accordance with the PRA.[167]  The title for the information collection is "Notice

of Proposed Sale of Securities Pursuant to Rule 144 under the Securities Act of 1933"

(OMB Control No. 3235-0101).  An agency may not conduct or sponsor, and a person is

not required to respond to, a collection of information unless it displays a current valid

control number.

### B.    Summary of Proposed Amendments

The proposed amendments would eliminate the need for non-affiliates of the

issuer to file Form 144.  In addition, the proposal would raise the filing threshold for

Form 144 to 1,000 shares or $50,000 worth of securities during a three-month period.

Currently, the Form 144 filing threshold is 500 shares and $10,000.  Form 144 may be

filed in paper or electronically using the EDGAR filing system.  The proposed

amendments also include two limited changes to Form 144.[168]  The primary purpose of

this collection of information is the disclosure of a proposed sale of securities by security

holders deemed not to be engaged in the distribution of the securities.  The filings are

publicly available.  Persons reselling securities in reliance on Rule 144 are the

respondents to the information required by Form 144.  The information collection

requirements imposed by Form 144 are mandatory.

Currently, an estimated 60,500 notices on Form 144 are filed annually for a total

burden of 121,000 hours.[169]  If adopted, the amendments would eliminate the need for

non-affiliates to ever file a Form 144.  We currently estimate that approximately 45%, or

---

[167]    See 44 U.S.C. 3507 and 5 CFR 1320.11.

[168]    We propose to amend Form 144 to include information regarding security holders' hedging
activities and to allow security holders to represent that they do not know of material adverse
information about the company as of the date they adopt a plan under Exchange Act Rule 10b5-1.

[169]    This reflects current OMB estimates.

66

27,127, of the total 60,500 filings are filed by non-affiliates.[170]  Under the proposals,

these filings would no longer be required.  In addition, we estimate that increasing the

Form 144 filing thresholds from 500 shares or $10,000 to 1,000 shares or $50,000 would

reduce the number of filings by affiliates by approximately 5%, or 3,025 filings.[171]  We

estimate that each notice on Form 144 imposes a burden for purposes of the Paperwork

Reduction Act of two hours.[172]  Therefore, we estimate that the proposals would reduce

the burden on selling security holders by approximately 60,300 burden hours.[173]

**C.    Solicitation of Comments**

Pursuant to 44 U.S.C. 3506(c)(2)(B), we request comments to (1) evaluate

whether the proposed collection of information is necessary for the proper performance

of the functions of the agency, including whether the information would have practical

utility; (2) evaluate the accuracy of our estimate of the burden of the proposed collection

of information; (3) determine whether there are ways to enhance the quality, utility and

clarity of the information to be collected; and (4) evaluate whether there are ways to

minimize the burden of the collection of information on those who are to respond,

including through the use of automated collection techniques or other forms of

information technology.

Persons submitting comments on the collection of information requirements

should direct the comments to the Office of Management and Budget, Attention: Desk

Officer for the Securities and Exchange Commission, Office of Information and

---

[170]  The Office of Economic Analysis obtained data from the Thomson Financial Wharton Research Database.  The estimate is based on information contained in notices on Form 144 filed in 2005.

[171]  This estimate is based on information contained in notices on Form 144 filed in 2005.

[172]  This is the same as the current OMB estimate.

[173]  (27,127 filings + 3,025 filings) * 2 hours/filing = 60,304 hours.

Regulatory Affairs, Washington, DC 20503, and should send a copy to Nancy M. Morris, Secretary, Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549-9303, with reference to File No. S7-11-07. Requests for materials submitted to OMB by the Commission with regard to these collections of information should be in writing, refer to File No. S7-11-07, and be submitted to the Securities and Exchange Commission, Records Management, Office of Filings and Information Services, 100 F Street, NE, Washington, DC 20549. OMB is required to make a decision concerning the collection of information between 30 and 60 days after publication of this release. Consequently, a comment to OMB is best assured of having its full effect if OMB receives it within 30 days of publication.

## VI.    Cost-Benefit Analysis

### A.    Background

Rule 144 under the Securities Act of 1933 creates a safe harbor for the sale of securities under the exemption set forth in Section 4(1) of the Securities Act. Specifically, a selling shareholder is deemed not an underwriter under Section 2(a)(11), and therefore may take advantage of the Section 4(1) exemption and need not register its sale of securities, if the sale complies with the provisions of the rule. Rule 145 requires Securities Act registration of certain types of business combination transactions. Rule 145 contains a safe harbor provision similar to Rule 144 for presumed underwriters who receive securities in such a business combination transaction. Form 144 is required to be filed by persons intending to sell securities in reliance on Rule 144 if the amount of securities to be sold in any three-month period exceeds 500 shares or other units or the aggregate sales price exceeds $10,000. The primary purpose of the form is to publicly

disclose the proposed sale of securities by persons not deemed to be engaged in the distribution of the securities.

### B.    Description of Proposal

We are proposing amendments to Rule 144, Rule 145, and Form 144 that would accomplish the following:

- Simplify the Preliminary Note to Rule 144 and text of Rule 144, using plain English principles;

- Reduce the Rule 144(d) holding period for restricted securities of reporting companies to six months for both affiliates and non-affiliates;

- Significantly reduce requirements applicable to non-affiliates of reporting and non-reporting companies so that:

  - Non-affiliates of reporting companies would be subject only to the current public information requirement after meeting the six-month (or more depending on hedging activities) holding period and up until one year since the date they acquired their securities; and

  - Non-affiliates of non-reporting companies would be able to resell freely after the one-year holding period;

- Require that security holders toll the holding period during the time they enter into certain hedging transactions, but in no event would the holding period extend beyond one year;

- Eliminate the "manner of sale" limitations with respect to debt securities;

- Increase the thresholds that would trigger a Form 144 filing requirement;

- Codify the staff's positions, as they relate to Rule 144, concerning the following issues:

  ○ Inclusion of securities acquired in a transaction under Section 4(6) of the Securities Act in the definition of "restricted securities,"

  ○ The effect that creation of a holding company structure has on a security holder's holding period,

  ○ Holding periods for conversions and exchanges of securities,

  ○ Holding periods for cashless exercise of options and warrants,

  ○ Aggregation of a pledgee's resales with resales by other pledgees of the same security for the purpose of determining the amount of securities sold,

  ○ The extent to which securities issued by reporting and non-reporting shell companies are eligible for resale under Rule 144, and

  ○ Representations required from security holders relying on Rule 10b5-1(c); and

- Eliminate the presumptive underwriter status in Securities Act Rule 145, except for transactions involving a shell company, and harmonize the resale requirements in that rule with the proposed resale requirements for securities of shell companies in Rule 144.

We also solicit comment on how best to coordinate the Form 144 filing deadline with the Form 4 filing deadline and permit persons who are subject to Section 16 to meet their Form 144 filing requirement by filing a Form 4.

### C.     Benefits

If adopted, the proposed amendments should reduce the cost of complying with Rules 144 and 145.  We have examined the Forms 144 that have been filed with the Commission since 1997.[174]  In 2006, the volume of transactions filed under Rule 144 exceeded $71 billion, and more than 50% of U.S. public companies, large and small alike, have reported every year at least one transaction on Form 144.  Reducing the burden associated with these transactions can reduce the cost of capital to these companies.

One item on Form 144 requires security holders to provide information on the nature of the acquisition transaction.  Some Form 144 filers acquire their securities from the company as a private investment, while others receive the securities as part of their employee awards, or as a form of payment for services to the company.  Reducing the burden associated with selling these securities not only can reduce the cost of raising capital, but also may increase the value of these securities in non-cash transactions and reduce the cost of services and employment.

For the most part, transactions that were filed on Form 144 have been small.  In 2006, about 90% of the transactions had a market value of less than $2 million and 99% of these transactions had a market value of less than $20 million.  More than half of the investors report total annual transactions of a market value of less than $240,000 with any specific company.  Thus, reducing the costs associated with filing Form 144 and raising the thresholds that trigger a Form 144 filing requirement are likely to affect many small investors.

---

[174]     These filings were obtained through Thomson Financial's Wharton Research Database which includes Forms 144 filed from 1996 through 2007.

We expect that the increase in the value of these securities would come from several sources under the proposed rule. The first is the increase in the liquidity of the securities. Investors, suppliers, or employees who are restricted from selling securities and who cannot hedge their positions are generally exposed to more risk than those who are not subject to such limitations, and generally require higher compensation (or a larger discount) for this risk.[175] We should also expect that the longer the non-trading period, the higher the premium that investors charge for their lack of liquidity.[176] Thus, reducing the time limit for selling these securities in the market is likely to reduce the discount that investors will charge for these securities, or the amount of securities that the company will need to provide for services. The actual reduction in this cost of capital will depend on the extent to which the six-month limit has a binding impact on security holders' decisions to resell their securities, and the extent to which investors, employees, or service providers can protect themselves against such exposure.

---

[175] There is also evidence that the non-trading period is associated with the premium that investors charge for lack of liquidity. See, for example, Silber, W.L., Discounts on restricted stock: The impact of illiquidity on stock prices, Financial Analysts Journal, 47, 60-64 (1991). Several studies have attempted to separate the discount associated with the non-transferability of the shares from other factors that affect the discount. See, for example, Wruck, K. H., Equity Ownership Concentration and Firm Value, Evidence from Private Equity Financings, Journal of Financial Economics, 23, 3-28 (1989); Hertzel, M., and R. L. Smith, Market Discounts and Shareholder Gains for Placing Equity Privately, Journal of Finance, 459-485 (1993); Bajaj, M., Denis, D., Ferris, S.P., and A. Sarin, Firm Value and Marketability Discounts, Journal of Corporate Law, 27, 89-115 (2001); Finnerty, J.D., The Impact of Transfer Restrictions on Stock Prices (Fordham U. Working Paper, 2002). The average discounts attributed to lack of transferability across these studies is estimated between 7% and 20%. Other factors that could affect the discount are the amount of resources that private investors need to expend to assess the quality of the issuing firm or to monitor the firm, the ability of the investors to diversify the risk associated with the investment, whether the investors are cash constrained, the financial situation of the firm, etc.

[176] We are not aware of any empirical work that examines the effect of shortening the holding period in Rule 144 on the discount. Longstaff (1995) calculates an upper bound for percentage discounts for lack of marketability. According to his model, drops in a restriction from two years to one year and from one year to 180 days are associated each with a 30% drop in the discount. Longstaff, F. A., How Much Can Marketability Affect Security Values? Journal of Finance, 50, 1767-1774 (1995).

Also, resale transactional costs for non-affiliate selling security holders should decrease as a result of the removal of all conditions other than the holding period and the current public information condition applicable to non-affiliates.   Reducing restrictions on resales by non-affiliates would streamline the rule and reduce the complexity of the rule.  This and other simplifications of the rule and Preliminary Note to Rule 144 should make it easier to understand and follow, reducing the time that investors must spend analyzing whether or not they can rely on the rule as a safe harbor from the requirement to register the resale of their securities.  However, because we are proposing to shorten the holding period only with respect to securities of reporting companies, the proposals would add some additional complexity that would diminish the effect of simplifying the other aspects of the rule.

If the proposals are adopted, non-affiliates would no longer have to file a Form 144.  Therefore, they would save the cost of preparing and filing this form, as well as the transactional costs related to Rule 144's manner of sale requirements and volume of sale limitations.  The increase in the Form 144 filing thresholds should further reduce the number of transactions for which a Form 144 needs to be filed for affiliates of the issuer. This would eliminate the cost of filing the form for transactions that fall below the thresholds.

The elimination of the manner of sale limitations would reduce costs for debt security holders.  It is difficult to estimate the amount of reduction.   Among the Forms 144 filed in 2005, we found at least 200 filings covering a sale of debt securities, although we believe the actual number of debt securities resales relying on Rule 144 may

be higher than this.[177]   The elimination of the manner of sale limitation may also reduce

brokers' fees, and therefore result in a reduction of revenue for brokers.

The codification of existing staff positions should create no added cost to

companies or investors because, substantively, there is no expected change in practice.

However, these codifications should provide substantial benefit to the investing

community by clarifying and better publicizing the staff's positions.  Greater clarity and

transparency of our rules should reduce security holders' transactional costs by

eliminating uncertainty and reducing the need for legal analysis.

The proposed amendments to Rule 145 remove what we preliminarily believe are

unnecessary restraints on the resale of securities by parties or their affiliates to a merger,

recapitalization, or other transaction listed in Rule 145(a).  The proposed amendments to

Rule 145 would reduce costs incurred by companies, parties to the transaction, and their

affiliates to comply with the resale and other restrictions of the rule.  Retaining the

presumptive underwriter provision for transactions involving shell companies is intended

to afford investors with additional protection against manipulative practices or abusive

sales by parties to the transaction and their affiliates after the completion of the Rule 145

transaction.

The primary benefit of permitting an affiliate to satisfy a Form 144 filing

requirement by timely filing a Form 4 reporting the sale of securities would be to reduce

duplicative paperwork costs incurred by these individuals.  We solicit comment on a

number of alternatives to address this point, including which items on Form 144 could be

transferred to Form 4 in order to ascertain which items on Form 144 are more important

---

[177]   We base the estimate on number of filings that indicated that the securities were debt securities in the section of the Form 144 that requests information on the nature of the acquisition transaction.

to the market and should therefore be preserved. While the market would receive the information later if the Form 144 filing deadline were to be revised to coincide with the Form 4 filing deadline, the information that would have been contained on Form 144 may be more easily accessible to users of the information, if transferred to Form 4, which is filed electronically.

### D.    Costs

The proposal to reintroduce a provision that tolls the holding period if the shareholder had entered into a transaction that hedges the economic risk of ownership of the securities may increase the cost of a private offering. The proposal provides that regardless of the presence of such hedging, the holding period would not extend beyond one year, which is the current holding period before security holders may begin to sell their restricted securities. After one year, affiliates would be able to trade subject to the conditions to which they are subject under the current rules. However, the tolling provision may add a layer of complexity to calculating whether the holding period requirement has been met between the six-month and one-year marks because subsequent purchasers must determine whether previous owners of the securities have entered into such hedging transactions. We seek to minimize the burden on security holders of making this determination by providing, under the proposed rules, that the holding period need not be suspended if the security holder reasonably believes that the previous owner has not engaged in hedging transactions. We also believe that the ceiling on the proposed tolling provision minimizes burdens. For example, a security holder who wishes to rely on proposed Rule 144 but is unable to determine the previous owner's hedging activities would be able to omit the period in which the previous owner held the securities in the

75

calculation of the holding period or be subject to a maximum one-year holding period, as under the current rule, and a non-affiliate security holder would be permitted to resell the securities after one-year, regardless of any hedging activities in connection with the securities. Also, as provided under the proposed revision to Note (ii) of Rule 144(g)(3), brokers would also be required to inquire into security holders' hedging transaction which may increase some costs for them, although we preliminarily believe such costs would not be significant.

Under the proposed amendments, after one year, non-affiliates would be permitted to sell their restricted securities freely without being subject to any other condition. One concern is whether, in cases of the securities of a non-reporting company, relieving non-affiliates from compliance with Rule 144's existing conditions, including the current public information condition requiring that there be adequate available current information with respect to the issuer of the securities, would lead to abuse.

Reducing the requirements under Rule 144 might also cause a substitution effect, where companies might choose to rely more on private transactions than on public transactions to raise capital. There is also the risk that the market would not be informed about the nature of these transactions, given that these transactions would not need to be registered and given the changes to the Form 144 filing requirements. The market may also be less informed, given that restricted securities of reporting companies could be resold by non-affiliates earlier without complying with the condition that current information on the issuer of the securities be publicly available, and restricted securities of non-reporting companies could be resold by non-affiliates without ever complying with the current public information condition. This, in return, could lead to a less

efficient price formation.  Direct negotiated deals with companies could also lead to informational advantage of some investors.  Reducing the requirements could also lead to movement of certain investors from public transactions to private transactions.  The effect of the proposed rule on these movements and their effect on investor wealth are thus subject to many factors.

While these are potential costs, we believe that they are justified by the potential benefits of the proposal and may not be significant in the aggregate.  First, there is some evidence that, on average, the announcement of resales under Rule 144 by security holders has no adverse effect on stock prices, suggesting that the market does not attribute an information advantage to these security holders at the time of selling.[178] Second, the rule provides several barriers to selling restricted securities by affiliated investors to alleviate these concerns.  Third, to the extent that privately negotiated deals give private investors lucrative terms at the expense of public investors, public investors may avoid such companies, and these companies may eventually be worse off.  We solicit comment as to whether information regarding the resale status of an issuer's securities should be provided by other means such as pursuant to Item 701 of Regulation S-K or Regulation S-B.

As noted above, the proposed amendments to Rule 145 would reduce costs incurred by companies, parties to the transaction, and their affiliates to comply with the resale and other restrictions of the presumed underwriter provision.  The magnitude of such reduction may vary.

---

[178]    Osborne, Alfred E., <u>Rule 144 Volume Limitations and the Sale of Restricted Securities in the Over-The-Counter Market</u>, Journal of Finance, 37,505-523 (1982).

E.    **Request for Comments**

We seek comments and empirical data on all aspects of this Cost-Benefit Analysis. Specifically, we ask the following:

- What would be the effect on the liquidity discount for privately issued securities of reducing the holding period for securities of reporting companies to six months? Would this effect significantly increase a company's ability to raise capital in private securities transactions? Would the reduced holding period have an impact, in particular, on the ability of smaller businesses to raise capital?

- Would shortening the holding period to six months for reporting companies increase the frequency of abusive transactions where the security holder has not taken a sufficient economic risk of investment? What if the holding period for non-reporting companies is shortened to six months as well?

- What is the impact of eliminating the conditions to which non-affiliates are currently subject for a period of time prior to free public resale (i.e., the current public information requirement, the volume limitations, the manner of sale limitations, and the notice requirement)? Do any of the current conditions to which non-affiliates are subject provide a measurable benefit to the market? For example, would buyers of restricted securities of non-reporting companies be disadvantaged because sellers relying on Rule 144 are no longer subject to the condition requiring that current information of the issuer be publicly available?

78

- Who uses the information filed on Form 144? Would the proposed elimination of the requirement to file a Form 144 by non-affiliates and the proposed filing thresholds result in a loss of important information for these individuals?

- What would be the effect of reintroducing the tolling concept to Rule 144? How would it affect a company's ability to raise capital? Would the tolling provision impose undue costs on brokers and security holders due to the additional duties relating to tracking the security holders' or previous owners' hedging transactions? Would the tolling provision impose costs on transfer agents?

- What would be the impact of the proposed elimination of the limitations on the manner of sale for debt securities? How much would debt security holders save in fees that they would no longer incur under the proposed amendments? What impact would the elimination have on brokers? Would this proposal increase the burden on transfer agents?

- What are the benefits and costs of codifying the staff's existing interpretations under Rule 144?

- What is the effect of the elimination of the presumptive underwriter provision in Rule 145 for all transactions except those involving a shell company?

## VII.    Consideration of Burden of Competition and Promotion of Efficiency, Competition and Capital Formation

Securities Act Section 2(b)[179] requires us when engaging in rulemaking that requires us to consider or determine whether an action is necessary or appropriate in the public interest, to consider, in addition to the protection of investors, whether the action will promote efficiency, competition, and capital formation.

The proposed amendments are intended to reduce regulatory requirements for the resale of securities and simplify the process of reselling such securities.  Currently, a shareholder owning restricted securities must wait until at least one year after the securities are last sold by the issuer or an affiliate before that shareholder can rely on Rule 144 safe harbor to resell those securities.  The amendments would reduce this holding period to as little as six months for restricted securities of Exchange Act reporting companies if the security holder did not engage in hedging transactions with respect to the securities.  The holding period would extend past six months to the extent the security holder engaged in hedging transactions, but in no event would the holding period extend beyond one year.  Restricted securities of non-reporting companies would continue to be subject to a one-year holding period.  A shorter holding period for restricted securities of reporting companies may increase the liquidity of securities sold in private transactions.  This could result in increased efficiency in securities offerings because companies will be able to sell securities in private offerings at prices closer to prices that they may obtain in public markets, without the need to register those securities, and otherwise obtain better terms in private offerings.  We also believe that this would promote capital formation, particularly for smaller companies, because the

---

[179]    15 U.S.C. 77b(b).

proposals would increase the liquidity of securities sold in private transactions. The amendments should increase a company's ability to raise capital in private securities transactions, which may improve the competitiveness of those companies, particularly smaller businesses that do not have ready access to public markets.

We do not believe that the proposed tolling provision that suspends the holding period while a security holder is engaged in hedging transactions places an undue burden on competition. The proposed tolling provision also may decrease efficiency somewhat by discouraging security holders from engaging in hedging with respect to their securities, however this effect should not be significant, as the proposed tolling provision would apply only for up to six months.

The other proposed amendments to Rule 144 generally should increase efficiency and assist in capital formation. We believe that the proposed elimination of most of the Rule 144 conditions applicable to non-affiliates may further increase the liquidity of privately sold securities. We anticipate that the proposed elimination of the manner of sale limitations for debt securities would provide security holders with greater flexibility in the resale of their securities, thereby increasing efficiency. Raising the Form 144 filing thresholds, as proposed, should also improve efficiency by reducing security holders' paperwork burden.

Under the proposed amendment to Rule 145, individuals and small entities owning stock in companies that engage in transactions specified in Rule 145(a) would no longer be subject to the presumptive underwriter provision, except in the case of transactions involving a shell company. These proposed amendments should improve

competitiveness of many small entities by permitting them to resell securities without the restrictions imposed by the current rule.

We request comment on whether the proposals, if adopted, would promote efficiency, competition, and capital formation.  Commenters are requested to provide empirical data and other factual support for their views, if possible.

Section 23(a)(2) of the Exchange Act[180] requires us, when adopting rules under the Exchange Act, to consider the impact that any new rule would have on competition.  In addition, Section 23(a)(2) prohibits us from adopting any rule that would impose a burden on competition not necessary or appropriate in furtherance of the purposes of the Exchange Act.  We do not believe that the proposed coordination of the Form 144 filing requirements with Form 4 filing requirements, if implemented, would cause a burden on competition.  We request comment on whether such amendments would have competitively harmful effects, and how we can minimize those effects.

## VIII.   Initial Regulatory Flexibility Analysis

We have prepared this Initial Regulatory Flexibility Analysis in accordance with Section 603 of the Regulatory Flexibility Act.[181]  This analysis relates to the proposed amendments to Rules 144 and 145 and Form 144 under the Securities Act.

### A.        Reasons for, and Objectives of, Proposed Action

Rule 144 creates a safe harbor for the sale of securities under the exemption set forth in Section 4(1) of the Securities Act.  If a selling security holder satisfies its conditions, that selling security holder may resell his or her securities publicly without registration and without being deemed an underwriter.

---

[180]      15 U.S.C. 78w(a)(2).

82

Rule 145 governs the offer and sale of certain securities received in connection with reclassifications, mergers, consolidations and asset transfers. It imposes restrictions similar to Rule 144 on a party to such transactions and to persons who are affiliates of that party at the time the transaction is submitted for vote or consent, with regard to securities acquired in that transaction. Rule 145 contains holding period requirements similar to those in Rule 144.

Form 144 is required to be filed by persons intending to sell securities in reliance on Rule 144 if the amount of securities to be sold in any three-month period exceeds 500 shares or other units or the aggregate sales price exceeds $10,000. The primary purpose of the form is to publicly disclose the proposed sale of securities by persons deemed not to be engaged in the distribution of the securities.

We are proposing amendments that would make Rule 144 easier to understand and apply. We propose to streamline both the Preliminary Note to Rule 144 and the rule. In addition to codifying several staff interpretive positions, the proposals would reduce the Rule 144 holding period and substantially reduce requirements for non-affiliates. The proposals would reintroduce a provision tolling the holding period but only up to one year after the acquisition of the securities from the issuer or an affiliate of the issuer, which is the holding period under the current rules.

The reduction of the Rule 144 holding periods for restricted securities of reporting companies for affiliates and non-affiliates should increase the liquidity of privately issued securities, enabling companies to raise private capital more efficiently. An increase in the Form 144 filing threshold would take into account the effects of inflation since the

---

[181]    5 U.S.C. 603.

last amendment to that provision in 1972. Although the codification of several staff interpretive positions is not intended to substantively change the rules, they should simplify analyses under Rule 144 by compiling these interpretations in one readily accessible location. The objectives of the proposed amendments are to simplify Rule 144, to reduce its burdens on investors where consistent with investor protection, and to facilitate capital formation.

The release solicits comment on how best to coordinate the Form 144 filing deadline with the Form 4 filing deadline and permit a person who is subject to Section 16 of the Exchange Act to meet a Form 144 filing requirement with a Form 4 filing, to the extent possible. Such amendments could simplify filing requirements for Section 16 persons even further by allowing them to file only one form to meet the requirements of both Rule 144 and Form 4.

**B.     Legal Basis**

The amendments are proposed pursuant to Sections 2(a)(11), 4(1), 4(4), 7, 10, 19(a) and 28 of the Securities Act, as amended.

**C.     Small Entities Subject to Rule**

The proposed rules would affect both small entities that issue securities and small entities that hold such securities. An issuer, other than an investment company, is considered a "small business" for purposes of the Regulatory Flexibility Act if that issuer:

- Has assets of $5 million or less on the last day of its most recent fiscal year, and

- Is engaged or proposing to engage in a small business financing.[182]

An issuer is considered to be engaged in a small business financing if it is conducting or proposes to conduct an offering of securities that does not exceed the dollar limitation prescribed by Section 3(b)[183] of the Securities Act. This dollar amount is currently $5 million. When used with reference to an issuer or person, other than an investment company, Exchange Act Rule 0-10[184] defines small entity to mean an issuer or person that, on the last day of its most recent fiscal year, had total assets of $5 million or less.

We are aware of approximately 1,100 Exchange Act reporting companies that currently satisfy the definition of "small business" and may be affected by the proposed amendments as issuers.[185] The proposed amendments also may affect companies that are small businesses, but that are not subject to Exchange Act reporting requirements. As noted above, we currently estimate that approximately 60,500 notices on Form 144 are filed annually.[186] The Commission does not collect information about the size of private companies about which a Form 144 is filed, but some of these non-reporting issuers may be "small." The proposed tolling provision and the proposals to eliminate the manner of sale limitations may also affect brokers that qualify as small entities. We estimate that 910 broker-dealers registered with the Commission are small entities for the purposes of

---

[182]    17 CFR 230.157.  See 5 U.S.C. 601((2).

[183]    15 U.S.C. 77c(b).

[184]    17 CFR 240.0-10.

[185]    The estimated number of reporting small entities is based on 2007 data including the Commission's EDGAR database and Thomson Financial's Worldscope database.  This represents an update from the number of reporting small entities estimated in prior rulemakings.  See, for example, Executive Compensation and Related Disclosure, Release No. 33-8732A (Aug. 29, 2006) [71 FR 53158] (in which the Commission estimated a total of 2,500 small entities, other than investment companies).

[186]    This reflects current OMB estimates.

the Regulatory Flexibility Act.[187]  We ask for comments regarding an estimate of the

number of small entities that may be affected if the proposed amendments are adopted.

**D.       Reporting, Recordkeeping and Other Compliance Requirements**

We expect several of the proposed amendments to reduce the number of Form

144 filings made to the SEC by selling security holders.  These proposed amendments

are:

- Elimination of all Rule 144 requirements, other than the holding period

    and the current public information requirement for six months, for non-

    affiliates; and

- Increased share number and dollar amount thresholds for filing Form 144.

As a result of the elimination of all requirements for non-affiliate security holders,

other than the holding period and the current public information requirement, non-

affiliates no longer would have to file a Form 144, regardless of the amount of securities

sold.  We estimate that 45% of the Form 144 filings that we currently receive are from

non-affiliates.  Therefore, this particular amendment should result in a corresponding

reduction in Form 144 filings.

The increase in the filing threshold for Form 144 should decrease the number of

Form 144 filings filed by affiliates.  Based on studies by the Commission's Office of

Economic Analysis, we expect the number of Form 144 filings to decrease by

approximately 5%, or 3,025 filings, if the thresholds are increased to 1,000 shares or

$50,000 in sales price.

---

[187]     For purposes of the Regulatory Flexibility Act, a broker or dealer is small entity if it (i) had total
        capital of less than $500,000 on the date in its prior fiscal year as of which its audited financial
        statements were prepared or, if not required to file audited financial statements, on the last

Clerical skills are necessary to complete Form 144.

Also, because the proposed amendments would significantly reduce the conditions in Rule 144 to which non-affiliates are subject, non-affiliates would also no longer be required to keep track of compliance with those conditions. Non-affiliates with securities of both reporting companies and non-reporting companies would no longer be required to comply with the manner of sale limitations and volume limitations. Non-affiliates of non-reporting companies would no longer be required to comply with the requirement that there be current information regarding the issuer that is publicly available.

The reintroduction of the tolling provision would require the security holder and brokers to determine whether the security holder or a previous owner had engaged in hedging transactions with respect to the securities, which may require them to maintain some additional documentation. However, the holding period need not be suspended if the security holder reasonably believes that the previous owner had not engaged in hedging transactions in the securities. Also, a determination regarding hedging activities would only need to be made where the issuer of the securities is a reporting company and the securities are sold before a year has passed since the date the securities were acquired from the issuer or affiliate.

The proposal to eliminate the manner of sale limitation for debt securities would also obviate the need for security holders to determine whether such condition has been met in the resale of their debt securities. The amendments to Rule 145 eliminate the need for parties to a Rule 145(a) transaction or their affiliates to determine whether they have

---

business day of its prior fiscal year, and (ii) is not affiliated with any person that is not a small entity and is not affiliated with any person that is not a small entity. 17 CFR 240.0-1.

met the resale provisions of Rule 145, except when the transaction involves a shell

company.

### E.    Overlapping or Conflicting Federal Rules

No current federal rules duplicate, overlap or conflict with the rules and forms

that we are proposing, except that persons subject to the reporting requirements under

Section 16 of the Securities Exchange Act of 1934 may need to file reports on Form 4 as

well as Form 144 under certain circumstances.  However, the class of Form 144 filers is

different than that for Form 4 filers because affiliates of companies not subject to the

Exchange Act reporting requirements must file Form 144, but not Form 4.  Further,

persons who may be deemed affiliates under Rule 144 may not necessarily be the same

persons who also are subject to Section 16.  Also, Form 144 is required to be filed earlier

than Form 4 and Form 144 contains some information that is not required to be included

on Form 4.  As noted above, the release also solicits comment on whether Form 4 and

Form 144 filing requirements should be coordinated to delay the Form 144 filing

deadline to match the Form 4 filing deadline and so that persons subject to Section 16

could be exempt from filing a Form 144 regarding a particular transaction if they have

already filed a Form 4 with respect to that transaction.

### F.    Significant Alternatives

We considered different compliance standards for small entities that would be

affected by the proposed amendments.  In the 1997 proposing release, we solicited

comment regarding the possibility of different standards for small entities.  However, we

believe that such differences would be inconsistent with the purposes of the rules.

Commenters on this issue in the 1997 proposing release unanimously agreed that

different standards would not be feasible and would only add to the complexity and difficulty of applying the rules.

We also considered the other types of alternatives set forth in the Regulatory Flexibility Act to minimize the economic impact of the amendments on small entities. These included the following:

- the clarification, consolidation, or simplification of compliance and reporting requirements for small entities;

- the use of performance rather than design standards; and

- an exemption from some or all of the proposed amendments for small entities.

Because the proposed amendments would benefit all companies and holders of restricted securities, differing compliance timetables or standards for small entities would not be appropriate.  In addition, the proposed holding period would likely have a favorable impact on small entities by increasing a company's ability to raise capital in private securities transactions, which may improve the competitiveness of those companies, particularly smaller businesses that do not have ready access to public markets.  The amendments which clarify and streamline Rule 144 should benefit all companies, including small entities.  We continue to believe that further changes such as the use of performance standards or other exemptions with regard to small entities would overly complicate the rule, which would be contrary to our stated purpose.  The proposed hedging provision seeks to ensure that any security holder relying on Rule 144 has taken sufficient economic risk of investment in the securities and the prohibition against

security holders of reporting and non-reporting shell companies protect against abuses relating to the resale of privately issued securities.

The proposed changes to Rule 145 would eliminate presumptive underwriter provision and resale restrictions on parties to a transaction specified in Rule 145(a) and their affiliates, including small entities and their affiliates, except when the transaction involves a shell company. We believe that retaining the presumptive underwriter provision when the transaction involves a shell company is necessary, given the potential for abuse relating to such transactions.

### G. Solicitation of Comments

We encourage you to submit written comments with respect to any aspect of this Initial Regulatory Flexibility Analysis. In particular, we seek comment on: (a) the number of small entities that would be affected by the proposed rule; (b) the expected impact on small entities of the proposals as discussed above; and (c) a reliable means to quantify the number of small entities that would be affected by the proposed rules and the rules' impact on small entities.

We ask commenters to describe the nature of any impact and provide empirical data supporting the extent of the impact. We will consider comments when we prepare the Final Regulatory Flexibility Analysis if the proposed revisions are adopted. Persons wishing to submit written comments should file them with: Nancy M. Morris, Secretary, Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549. All comments received will be available for public inspection and copying at the SEC's Public Reference Room at the same address.

IX.    **Small Business Regulatory Enforcement Fairness Act**

For purposes of the Small Business Regulatory Enforcement Fairness Act of 1996,[188] a rule is "major" if it has resulted, or is likely to result in:

- An annual effect on the economy of $100 million or more;

- A major increase in costs or prices for consumers or individual industries; or

- Significant adverse effects on competition, investment or innovation.

We request comment on whether our proposals would be a "major rule" for purposes of SBREFA.  We solicit comment and empirical data on:

- The potential effect on the U.S. economy on an annual basis;

- Any potential increase in costs or prices for consumers or individual industries; and

- Any potential effect on competition, investment or innovation.

X.    **Statutory Basis and Text of Proposed Amendments**

We are proposing to adopt the amendments pursuant to Sections 2(a)(11), 4(1), 4(4), 7, 10, 19(a) and 28 of the Securities Act, as amended.

**List of Subjects**

17 CFR Part 230

Advertising, Reporting and recordkeeping requirements, Securities.

17 CFR Part 239

Reporting and recordkeeping requirements, Securities.

---

[188]    Pub. L. No. 104-121, Title II, 110 Stat. 857 (1996).

For the reasons set out above, title 17, chapter II of the Code of Federal Regulations is proposed to be amended as follows:

**PART 230 -- GENERAL RULES AND REGULATIONS, SECURITIES ACT OF 1933**

1.      Revise the authority citation for Part 230 to read, in part, as follows:

Authority: 15 U.S.C. 77b, 77c, 77d, 77f, 77g, 77h, 77j, 77r, 77s, 77z-3, 77sss, 78c, 78d, 78j, 78l, 78m, 78n, 78o, 78w, 78ll(d), 78mm, 78t, 80a-8, 80a-24, 80a-28, 80a-29, 80a-30, and 80a-37, unless otherwise noted.

\*     \*     \*     \*     \*

2.      Amend §230.144 by:

a.      Revising the preliminary note;

b.      Revising paragraphs (a)(3)(vi) and (a)(3)(vii), and adding paragraph (a)(3)(viii);

c.      Revising paragraphs (b), (c), (d)(1), (d)(3)(i), (d)(3)(ii), and (d)(3)(viii);

d.      Adding paragraphs (d)(3)(ix) through paragraphs (d)(3)(xii);

e.      Revising the heading and the introductory text to paragraphs (e) and (e)(1);

f.      Removing paragraphs (e)(2), (j) and (k);

g.      Redesignating existing paragraph (e)(3) as paragraph (e)(2);

h.      Revising newly redesignated paragraph (e)(2); and

i.      Revising paragraphs (f), the notes to paragraph (g)(3), paragraph (h) and paragraph (i).

The revisions and additions read as follows:

### § 230.144  Persons deemed not to be engaged in a distribution and therefore not underwriters.

### PRELIMINARY NOTE

Rule 144 creates a safe harbor from the definition of the term "underwriter" found in Section 2(a)(11) of the Securities Act.  If a sale of securities complies with all of the applicable provisions of Rule 144:

1.      Any person who sells restricted securities will be deemed not to be engaged in a distribution and therefore not an underwriter for that transaction;

2.      An affiliate or any person who sells restricted or other securities on behalf of an affiliate of the issuer will be deemed not to be engaged in a distribution and therefore not an underwriter for that transaction; and

3.      The purchaser will receive securities that are not restricted securities.

This means that someone entitled to claim the safe harbor would be able to sell his or her securities under Section 4(1) of the Act.

Rule 144 is not an exclusive safe harbor.  This means that a person who does not meet all the requirements of Rule 144 still may claim any other available exemption for resales under the Act.  The Rule 144 safe harbor is not available with respect to any transaction or series of transactions that, although in technical compliance with the rule, is part of a plan or scheme to evade the registration requirements of the Act.

(a)      *  *  *

(3)      *  *  *

(vi)      Securities acquired in a transaction made under §230.801 to the same extent and proportion that the securities held by the security holder of the class with

respect to which the rights offering was made were, as of the record date for the rights offering, "restricted securities" within the meaning of this paragraph (a)(3);

(vii)    Securities acquired in a transaction made under §230.802 to the same extent and proportion that the securities that were tendered or exchanged in the exchange offer or business combination were "restricted securities" within the meaning of this paragraph (a)(3); and

(viii)    Securities acquired from the issuer in a transaction subject to an exemption under section 4(6) (15 U.S.C. 77d(6)) of the Act.

(b)    <u>Conditions to be met.</u>  Subject to paragraph (i) of this section, the following conditions must be met:

(1)    <u>Non-Affiliates</u>.

(i)    If the issuer of the securities is, and has been for at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, any person who is not an affiliate of the issuer, and has not been an affiliate during the preceding three months, who sells restricted securities of an issuer for his or her own account shall be deemed not to be an underwriter of those securities within the meaning of section 2(a)(11) of the Act if all of the conditions of paragraphs (c)(1) and (d) of this section are met.  The requirements of paragraph (c)(1) of this section shall not apply to restricted securities sold for the account of a person who is not an affiliate of the issuer at the time of the sale and has not been an affiliate during the preceding three months, provided a period of one year has elapsed since the later of the date the securities were acquired from the issuer or from an affiliate of the issuer.

(ii)    If the issuer of the securities is not, or has not been for at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, any person who is not an affiliate of the issuer, and has not been an affiliate during the preceding three months, who sells restricted securities of an issuer for his or her own account shall be deemed not to be an underwriter of those securities within the meaning of section 2(a)(11) of the Act if the condition of paragraph (d) of this section is met.

(2)    _Affiliates_.  Any affiliate who sells restricted securities or any other securities of an issuer for his or her own account shall be deemed not to be an underwriter of those securities within the meaning of section 2(a)(11) of the Act if all of the conditions of this section are met.

(3)    _Persons selling on behalf of affiliates_.  Any person who sells restricted or any other securities for the account of an affiliate of the issuer of such securities shall be deemed not to be an underwriter of those securities within the meaning of section 2(a)(11) of the Act if all of the conditions of this section are met.

(c)    _Current public information_.  Adequate current public information with respect to the issuer of the securities must be available. Such information will be deemed to be available only if at least one of the following conditions is met:

(1)    _Reporting Issuers_. The issuer is, and has been for at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act and has filed all required reports under section 13 or 15(d) during the 12 months preceding such sale (or for such shorter period that the issuer was required to file such reports), other than Form 8-K reports (§249.308 of this chapter); or

(2)    Non-reporting Issuers.  If the issuer is not subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, there is publicly available the information concerning the issuer specified in paragraphs (a)(5)(i) to (xiv), inclusive, and paragraph (a)(5)(xvi) of §240.15c2-11 of this chapter, or, if the issuer is an insurance company, the information specified in section 12(g)(2)(G)(i) of the Exchange Act (15 U.S.C. 78l(g)(2)(G)(i)).

Note to §230.144(c).  With respect to paragraph (c)(1), the person can rely upon:

1.    A statement in whichever is the most recent report, quarterly or annual, required to be filed and filed by the issuer that such issuer has filed all reports required under section 13 or 15(d) of the Exchange Act during the preceding 12 months (or for such shorter period that the issuer was required to file such reports), other than Form 8-K reports (§249.308 of this chapter), and has been subject to such filing requirements for the past 90 days; or

2.    A written statement from the issuer that it has complied with such reporting requirements.

3.    Neither type of statement may be relied upon, however, if the person knows or has reason to believe that the issuer has not complied with such requirements.

(d)    *   *   *

(1)    General rule.

(i)    If the issuer of the securities is, and has been for at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, a minimum of six months must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and

any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.

(ii)    If the issuer of the securities is not, or has not been for at least 90 days immediately before the sale, subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, a minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.

(iii)    If the acquiror takes the securities by purchase, the holding period shall not begin until the full purchase price or other consideration is paid or given by the person acquiring the securities from the issuer or from an affiliate of the issuer.

*    *    *    *    *

(3)    *    *    *

(i)    <u>Stock dividends, splits and recapitalizations</u>.  Securities acquired from the issuer as a dividend or pursuant to a stock split, reverse split or recapitalization shall be deemed to have been acquired at the same time as the securities on which the dividend or, if more than one, the initial dividend was paid, the securities involved in the split or reverse split, or the securities surrendered in connection with the recapitalization.

(ii)    <u>Conversions and exchanges</u>.  If the securities sold were acquired from the issuer solely in exchange for other securities of the same issuer, the newly acquired securities shall be deemed to have been acquired at the same time as the securities surrendered for conversion or exchange, even if the securities surrendered were not convertible or exchangeable by their terms.

Note to §230.144(d)(3)(ii).  If the surrendered securities originally did not provide for cashless conversion or exchange by their terms and the holder provided consideration, other than solely securities of the same issuer, in connection with the amendment of the surrendered securities to permit cashless conversion or exchange, then the newly acquired securities shall be deemed to have been acquired at the same time as such amendment to the surrendered securities, so long as the conversion or exchange itself meets the conditions of this section.

*   *   *   *   *

(viii)    Rule 145(a) transactions.  The holding period for securities acquired in a transaction specified in §230.145(a) shall be deemed to commence on the date the securities were acquired by the purchaser in such transaction, except as otherwise provided in paragraphs (d)(3)(ii) and (ix) of this section.

(ix)    Holding company formations.  Securities acquired from the issuer in a transaction effected solely for the purpose of forming a holding company shall be deemed to have been acquired at the same time as the securities of the predecessor issuer exchanged in the holding company formation where:

(A)    The newly formed holding company's securities were issued solely in exchange for the securities of the predecessor company as part of a reorganization of the predecessor company into a holding company structure;

(B)    Holders received securities of the same class evidencing the same proportional interest in the holding company as they held in the predecessor, and the rights and interests of the holders of such securities are substantially the same as those they possessed as holders of the predecessor company's securities; and

98

(C)    Immediately following the transaction, the holding company has no

significant assets other than securities of the predecessor company and its existing

subsidiaries and has substantially the same assets and liabilities on a consolidated basis as

the predecessor had before the transaction.

(x)    <u>Cashless exercise of options and warrants</u>. If the securities sold were

acquired from the issuer solely upon cashless exercise of options or warrants issued by

the issuer, the newly acquired securities shall be deemed to have been acquired at the

same time as the exercised options or warrants, even if the options or warrants exercised

originally did not provide for cashless exercise by their terms.

<u>Notes to §230.144(d)(3)(x).</u>

<u>Note 1 to §230.144(d)(3)(x).</u>  If the options or warrants originally did not provide

for cashless exercise by their terms and the holder provided consideration, other than

solely securities of the same issuer, in connection with the amendment of the options or

warrants to permit cashless exercise, then the newly acquired securities shall be deemed

to have been acquired at the same time as such amendment to the options or warrants.

<u>Note 2 to §230.144(d)(3)(x).</u>  If the options or warrants are not purchased for cash

or property and do not create any investment risk to the holder, as in the case of employee

stock options, the newly acquired securities shall be deemed to have been acquired at the

time the options or warrants are exercised, so long as the conditions of Rule 144(d)(1)

and Rule 144(d)(2) are met at the time of exercise.

(xi)    <u>Short sales and hedging transactions.</u>  In computing the six-month holding

period the following periods shall be excluded:

(A)    If the securities sold are equity securities, as defined in §230.405, there shall be excluded any period during which the person for whose account they are sold had a short position, or had entered into a "put equivalent position" (as defined in §240.16a-1(h) of this chapter), with respect to any equity securities of the same class or any securities convertible into securities of such class; and

(B)    If the securities sold are nonconvertible debt securities, there shall be excluded any period during which the person for whose account they are sold had a short position, or had entered into a "put equivalent position" (as defined in §240.16a-1(h) of this chapter), with respect to any nonconvertible debt securities of the same issuer.

(C)    If the holding period is based on a period that a previous owner has held the securities, there shall be excluded any period during which the previous owner had a short position or had entered into a "put equivalent position" (as defined in §240.16a-1(h) of this chapter), with respect to any equity securities of the same class or any securities convertible into securities of such class, if the securities sold are equity securities, or with respect to any nonconvertible debt securities of the same issuer, if the securities sold are nonconvertible debt securities, unless the person for whose account the securities are sold reasonably believes that no such position was held by a previous owner.

Note to §230.144(d)(3)(xi).

This paragraph shall not apply if the holding period computed under paragraph (d) of this rule (excluding this paragraph) has been twelve months or more.

(xii)    Securities sold under paragraph (i)(2).  For the purposes of computing the holding period of securities sold under paragraph (i)(2) of this rule, securities of an issuer that has ceased to be an issuer described in paragraph (i)(1)(i) shall be deemed to have

been acquired at the time the securities were acquired from the issuer, at the time they

were acquired from an affiliate of the issuer, or at the time the "Form 10 information"

regarding the issuer is filed with the Commission, whichever is the latest date.

(e)    Limitation on amount of securities sold by or for affiliates. Except as

hereinafter provided, the amount of securities which may be sold by or for affiliates in

reliance upon this rule shall be determined as follows:

(1)    If any securities are sold for the account of an affiliate of the issuer,

regardless of whether those securities are restricted, the amount of securities sold,

together with all sales of securities of the same class sold for the account of such person

within the preceding three months, shall not exceed the greatest of:

\*    \*    \*    \*    \*

(2)    Determination of amount. For the purpose of determining the amount of

securities specified in paragraph (e)(1) of this section, the following provisions shall

apply:

(i)    Where both convertible securities and securities of the class into which

they are convertible are sold, the amount of convertible securities sold shall be deemed to

be the amount of securities of the class into which they are convertible for the purpose of

determining the aggregate amount of securities of both classes sold;

(ii)    The amount of securities sold for the account of a pledgee of those

securities, or for the account of a purchaser of the pledged securities, during any period of

three months within six months after a default in the obligation secured by the pledge,

and the amount of securities sold during the same three-month period for the account of

the pledgor shall not exceed, in the aggregate, the amount specified in paragraph (e)(1) of this section;

Note to §230.144(e)(2)(ii):  Sales by a pledgee of securities pledged by a borrower will not be aggregated under paragraph (e)(2)(ii) with sales of the securities of the same issuer by other pledgees of such borrower in the absence of concerted action by such pledgees.

(iii)    The amount of securities sold for the account of a donee of those securities during any three-month period within six months after the donation, and the amount of securities sold during the same three-month period for the account of the donor, shall not exceed, in the aggregate, the amount specified in paragraph (e)(1) of this section;

(iv)    Where securities were acquired by a trust from the settlor of the trust, the amount of such securities sold for the account of the trust during any three-month period within six months after the acquisition of the securities by the trust, and the amount of securities sold during the same three-month period for the account of the settlor, shall not exceed, in the aggregate, the amount specified in paragraph (e)(1) of this section;

(v)    The amount of securities sold for the account of the estate of a deceased person, or for the account of a beneficiary of such estate, during any three-month period and the amount of securities sold during the same three-month period for the account of the deceased person prior to his death shall not exceed, in the aggregate, the amount specified in paragraph (e)(1) of this section; provided, that no limitation on amount shall apply if the estate or beneficiary of the estate is not an affiliate of the issuer;

(vi)    When two or more affiliates or other persons agree to act in concert for the purpose of selling securities of an issuer, all securities of the same class sold for the

account of all such persons during any period of three months shall be aggregated for the purpose of determining the limitation on the amount of securities sold;

(vii)    The following sales of securities need not be included in determining the amount of securities sold in reliance upon this rule:

(A)    Securities sold pursuant to an effective registration statement under the Act;

(B)    Securities sold pursuant to an exemption provided by Regulation A (§230.251 through §230.263) under the Act;

(C)    Securities sold in a transaction exempt pursuant to section 4 of the Act (15 U.S.C. 77d) and not involving any public offering; and

(D)    Securities sold offshore pursuant to Regulation S (§230.901 through §230.905, and Preliminary Notes) under the Act.

(f)    <u>Manner of sale</u>.

(1)    The securities shall be sold in <u>brokers' transactions</u> within the meaning of section 4(4) of the Act or in transactions directly with a <u>market maker,</u> as that term is defined in section 3(a)(38) of the Exchange Act, and the person selling the securities shall not:

(i)    Solicit or arrange for the solicitation of orders to buy the securities in anticipation of or in connection with such transaction, or

(ii)    Make any payment in connection with the offer or sale of the securities to any person other than the broker who executes the order to sell the securities.

(2)    Paragraph (f)(1) shall not apply to:

(i)     Securities sold for the account of the estate of a deceased person or for the account of a beneficiary of such estate provided the estate or estate beneficiary is not an affiliate of the issuer; or

(ii)     Debt securities.

Note to §230.144(f)(2)

For the purposes of paragraph (f)(2), "debt securities" is defined to mean:

1.     Any security other than an equity security as defined in §230.405;

2.     Non-participatory preferred stock, which is defined as non-convertible capital stock, the holders of which are entitled to a preference in payment of dividends and in distribution of assets on liquidation, dissolution, or winding up of the issuer, but are not entitled to participate in residual earnings or assets of the issuer; and

3.     Asset-backed securities, as defined in §229.1101 of this section.

(g)     *   *   *

(3)     *   *   *

Notes to §230.144(g)(3).

Note 1 to paragraph (g)(3).  The broker, for his own protection, should obtain and retain in his files a copy of the notice required by paragraph (h) of this section.

Note 2 to paragraph (g)(3).  The reasonable inquiry required by paragraph (g)(3) of this section should include, but not necessarily be limited to, inquiry as to the following matters:

1.     The length of time the securities have been held by the person for whose account they are to be sold.  If practicable, the inquiry should include physical inspection of the securities;

2.      If the securities have been held for less than one year, the existence and character of any short position or put equivalent position with regard to the securities held by the person for whose account they are to be sold and whether such person has made inquiries about the existence and character of any short position or put equivalent position with regard to the securities held by the previous owner of the securities and the results of such person's inquiries;

3.      The nature of the transaction in which the securities were acquired by such person;

4.      The amount of securities of the same class sold during the past 3 months by all persons whose sales are required to be taken into consideration pursuant to paragraph (e) of this section;

5.      Whether such person intends to sell additional securities of the same class through any other means;

6.      Whether such person has solicited or made any arrangement for the solicitation of buy orders in connection with the proposed sale of securities;

7.      Whether such person has made any payment to any other person in connection with the proposed sale of the securities; and

8.      The number of shares or other units of the class outstanding, or the relevant trading volume.

(h)      <u>Notice of proposed sale</u>.

(1)      If the amount of securities to be sold in reliance upon this rule during any period of three months exceeds 1,000 shares or other units or has an aggregate sale price in excess of $50,000, three copies of a notice on Form 144 (§239.144 of this chapter)

shall be filed with the Commission at its principal office in Washington, DC. If such securities trade on any national securities exchange, one copy of such notice also shall be transmitted to the principal exchange on which such securities are traded.

(2)     The Form 144 shall be signed by the person for whose account the securities are to be sold and shall be transmitted for filing concurrently with either the placing with a broker of an order to execute a sale of securities in reliance upon this rule or the execution directly with a market maker of such a sale. Neither the filing of such notice nor the failure of the Commission to comment on such filing shall be deemed to preclude the Commission from taking any action that it deems necessary or appropriate with respect to the sale of the securities referred to in such notice. The person filing the notice required by this paragraph shall have a bona fide intention to sell the securities referred to therein within a reasonable time after the filing of such notice.

(i)     Inapplicability to issuers with no or nominal operations and no or nominal non-cash assets.

(1)     A selling security holder may not rely on this section to resell securities if the issuer of the securities is:

(i)     An issuer, other than a business combination related shell company, as defined in §230.405, or an asset-backed issuer, as defined in Item 1101(b) of Regulation AB (§229.1101(b) of this chapter), that has:

(A)     No or nominal operations; and

(B)     Either:

(1)     No or nominal assets;

(2)     Assets consisting solely of cash and cash equivalents; or

(<u>3</u>)    Assets consisting of any amount of cash and cash

equivalents and nominal other assets; or

(ii)    An issuer that has been at any time previously an issuer described in

paragraph (i)(1)(i).

(2)    Notwithstanding paragraph (i)(1), if the issuer of the securities previously

had been an issuer described in paragraph (i)(1)(i) but has ceased to be an issuer

described in paragraph (i)(1)(i); is subject to the reporting requirements of Section 13 or

15(d) of the Exchange Act; has filed all reports and other materials required to be filed by

such requirements during the preceding 12 months (or for such shorter period that the

registrant was required to file such reports and materials); and has filed current "Form 10

information" with the Commission reflecting its status as an entity that is no longer an

issuer described in paragraph (i)(1)(i), then a security holder may resell those securities

subject to the requirements of this rule 90 days after the "Form 10 information" is filed.

(3)    The term "Form 10 information" means the information that is required by

Form 10, Form 10-SB, or Form 20-F (§249.210, §249.210b, or §249.220f of this

chapter), as applicable to the issuer of the securities, to register under the Securities

Exchange Act of 1934 each class of securities being sold under this rule.  The issuer may

provide the Form 10 information in any issuer filing with the Commission.

3.    Remove the authority citation following §230.144.

4.    Amend §230.145 by revising paragraphs (c), (d) and (e) to read as follows:

**§230.145 Reclassification of securities, mergers, consolidations and acquisitions of assets.**

\*   \*   \*   \*   \*

(c)    <u>Persons and parties deemed to be underwriters.</u>  For purposes of this section, if any party to a transaction specified in paragraph (a) of this section is a shell company, other than a business combination related shell company, as those terms are defined in §230.405, any party to that transaction, other than the issuer, or any person who is an affiliate of such party at the time such transaction is submitted for vote or consent, who publicly offers or sells securities of the issuer acquired in connection with any such transaction, shall be deemed to be engaged in a distribution and therefore to be an underwriter thereof within the meaning of Section 2(a)(11) of the Act.

(d)    <u>Resale provisions for persons and parties deemed underwriters.</u> Notwithstanding the provisions of paragraph (c), a person or party specified in that paragraph shall not be deemed to be engaged in a distribution and therefore not to be an underwriter of securities acquired in a transaction specified in paragraph (a) that was registered under the Act if:

(1)    Any shell company specified in paragraph (c) is no longer a shell company; and

(2)    One of the following three conditions is met:

(i)    Such securities are sold by such person or party in accordance with the provisions of paragraphs (c), (e), (f), and (g) of §230.144 and at least 90 days have elapsed since the date the securities were acquired from the issuer in such transaction; or

(ii)    Such person or party is not, and has not been for at least three months, an affiliate of the issuer, and a period of at least six months, as determined in accordance

with paragraph (d) of §230.144, have elapsed since the date the securities were acquired from the issuer in such transaction, and the issuer meets the requirements of paragraph (c) of §230.144; or

(iii)    Such person or party is not, and has not been for at least three months, an affiliate of the issuer, and a period of at least one year, as determined in accordance with paragraph (d) of §230.144, has elapsed since the date the securities were acquired from the issuer in such transaction.

Note to paragraphs (c) and (d)

Paragraphs (c) and (d) are not available with respect to any transaction or series of transactions that, although in technical compliance with the rule, is part of a plan or scheme to evade the registration requirements of the Act.

(e)    Definitions.

(1)    The term affiliate as used in paragraphs (c) and (d) of this section shall have the same meaning as the definition of that term in §230.405.

(2)    The term party as used in paragraphs (c) and (d) of this section shall mean the corporations, business entities, or other person, other than the issuer, whose assets or capital structure are affected by the transactions specified in paragraph (a).

(3)    The term person as used in paragraphs (c) and (d) of this section, when used in reference to a person for whose account securities are to be sold, shall have the same meaning as the definition of that term in paragraph (a)(2) of §230.144.

5.      Remove the authority citation following §230.145.

6.      Amend §230.190 by:

a.      Revising paragraphs (a)(2) and (a)(3); and

b.      Adding paragraph (a)(4).

The revisions and addition read as follows:

**§230.190 Registration of underlying securities in asset-backed securities transactions.**

(a)      *   *   *

(1)      *   *   *

(2)      Neither the issuer of the underlying securities nor any of its affiliates is an affiliate of the sponsor, depositor, issuing entity or underwriter of the asset-backed securities transaction;

(3)      If the underlying securities are restricted securities, as defined in §230.144(a)(3), §230.144 must be available for the sale of the securities, provided however, that notwithstanding any other provision of §230.144, §230.144 shall only be so available if at least two years have elapsed since the later of the date the securities were acquired from the issuer of the underlying securities or from an affiliate of the issuer of the underlying securities; and

(4)      The depositor would be free to publicly resell the underlying securities without registration under the Act.  For example, the offering of the asset-backed security does not constitute part of a distribution of the underlying securities.  An offering of asset-backed securities with an asset pool containing underlying securities that at the time of the purchase for the asset pool are part of a subscription or unsold allotment would be a distribution of the underlying securities.  For purposes of this section, in an offering of

asset-backed securities involving a sponsor, depositor or underwriter that was an underwriter or an affiliate of an underwriter in a registered offering of the underlying securities, the distribution of the asset-backed securities will not constitute part of a distribution of the underlying securities if the underlying securities were purchased at arm's length in the secondary market at least three months after the last sale of any unsold allotment or subscription by the affiliated underwriter that participated in the registered offering of the underlying securities.

      7.      Amend §230.701, paragraph (g)(3), to revise the phrase "without compliance with paragraphs (c), (d), (e), and (h) of §230.144" to read "without compliance with paragraphs (c) and (d) of §230.144".

**PART 239--FORMS PRESCRIBED UNDER THE SECURITIES ACT OF 1933**

      8.      The authority citation for part 239 continues to read in part as follows:

Authority: 15 U.S.C. 77f, 77g, 77h, 77j, 77s, 77z-2, 77sss, 78c, 78l, 78m, 78n, 78o(d), 78u-5, 78w(a), 78ll(d), 79e, 79f, 79g, 79j, 79l, 79m, 79n, 79q, 79t, 80a-8, 80a-24, 80a-29, 80a-30 and 80a-37, unless otherwise noted.

*   *   *   *   *

      9.      Amend §239.144 by revising paragraph (b) to read as follows:

**§239.144  Form 144, for notice of proposed sale of securities pursuant to §230.144 of this chapter.**

*   *   *   *   *

      (b)      This form need not be filed if the amount of securities to be sold during any period of three months does not exceed 1,000 shares or other units and the aggregate

sale price does not exceed $50,000.

\* \* \* \* \*

10.    Form 144 (referenced in §239.144) is revised as set forth in the Appendix.

By the Commission.

Nancy M. Morris
Secretary

June 22, 2007

Note:    This Appendix to the Preamble will not appear in the Code of Federal
Regulations.

Appendix

112

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549**

**FORM 144**

**NOTICE OF PROPOSED SALE OF SECURITIES
PURSUANT TO RULE 144 UNDER THE SECURITIES ACT OF 1933**

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0101 |
| Expires: | December 31, 2009 |
| Estimated average burden hours per response ......... | 2.00 |

SEC USE ONLY
DOCUMENT SEQUENCE NO.

**ATTENTION:** *Transmit for filing 3 copies of this form concurrently with either placing an order with a broker to execute sale or executing a sale directly with a market maker.*

1 (a) NAME OF ISSUER *(Please type or print)*    (b) IRS IDENT. NO.    (c) S.E.C. FILE NO.

CUSIP NUMBER

1 (d) ADDRESS OF ISSUER    STREET    CITY    STATE    ZIP CODE

WORK LOCATION

2 (a) NAME OF PERSON FOR WHOSE ACCOUNT THE SECURITIES ARE TO BE SOLD    (b) IRS IDENT. NO.    (c) RELATIONSHIP TO ISSUER    (d) ADDRESS STREET    CITY    STATE    ZIP CODE    (e) TELEPHONE NO.  AREA CODE  NUMBER

**INSTRUCTION:** *The person filing this notice should contact the issuer to obtain the I.R.S. Identification Number and the S.E.C. File Number.*

| 3 (a) Title of the Class of Securities To Be Sold | (b) Name and Address of Each Broker Through Whom the Securities are to be Offered or Each Market Maker who is Acquiring the Securities | SEC USE ONLY Broker-Dealer File Number | (c) Number of Shares or Other Units To Be Sold (*See Instr. 3(c)*) | (d) Aggregate Market Value (*See Instr. 3(d)*) | (e) Number of Shares or Other Units Outstanding (*See Instr. 3(e)*) | (f) Approximate Date of Sale (*See Instr. 3(f)*) (MO. DAY. YR.) | (g) Name of Each Securities Exchange (*See Instr. 3(g)*) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**INSTRUCTIONS:**

1. (a) Name of issuer
   (b) Issuer's I.R.S. Identification Number
   (c) Issuer's S.E.C. file number, if any
   (d) Issuer's address, including zip code
   (e) Issuer's telephone number, including area code

2. (a) Name of person for whose account the securities are to be sold
   (b) Such person's I.R.S. identification number, if such person is an entity
   (c) Such person's relationship to the issuer (e.g., officer, director, 10% stockholder, or member of immediate family of any of the foregoing)
   (d) Such person's address, including zip code

3. (a) Title of the class of securities to be sold
   (b) Name and address of each broker through whom the securities are intended to be sold
   (c) Number of shares or other units to be sold (if debt securities, give the aggregate face amount)
   (d) Aggregate market value of the securities to be sold as of a specified date within 10 days prior to filing of this notice
   (e) Number of shares or other units of the class outstanding, or if debt securities the face amount thereof outstanding, as shown by the most recent report or statement published by the issuer
   (f) Approximate date on which the securities are to be sold
   (g) Name of each securities exchange, if any, on which the securities are intended to be sold

**Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

SEC 1147 (04-07)

## TABLE I — SECURITIES TO BE SOLD

*Furnish the following information with respect to the acquisition of the securities to be sold and with respect to the payment of all or any part of the purchase price or other consideration therefor:*

| Title of the Class | Date you Acquired | Nature of Acquisition Transaction | Name of Person from Whom Acquired (If gift, also give date donor acquired) | Amount of Securities Acquired | Date of Payment | Nature of Payment |
|---|---|---|---|---|---|---|
| | | | | | | |

**INSTRUCTIONS:**

(1) If the securities were purchased and full payment therefor was not made in cash at the time of purchase, explain in the table or in a note thereto the nature of the consideration given. If the consideration consisted of any note or other obligation, or if payment was made in installments describe the arrangement and state when the note or other obligation was discharged in full or the last installment paid.

(2) If the person for whose account the securities are to be sold has held the securities for less than a year and has entered into a short position or a put equivalent position (as defined in Exchange Act Rule 16a-1(h)) with respect to the same class of securities, provide a description of that position, including the dates during which such position was held. Information regarding a short position or put equivalent position held by any previous owner should be provided to the extent known.

## TABLE II — SECURITIES SOLD DURING THE PAST 3 MONTHS

*Furnish the following information as to all securities of the issuer sold during the past 3 months by the person for whose account the securities are to be sold.*

| Name and Address of Seller | Title of Securities Sold | Date of Sale | Amount of Securities Sold | Gross Proceeds |
|---|---|---|---|---|
| | | | | |

**REMARKS:**

**INSTRUCTIONS:**

See the definition of "person" in paragraph (a) of Rule 144. Information is to be given not only as to the person for whose account the securities are to be sold but also as to all other persons included in that definition. In addition, information shall be given as to sales by all persons whose sales are required by paragraph (e) of Rule 144 to be aggregated with sales for the account of the person filing this notice.

**ATTENTION:**

*The person for whose account the securities to which this notice relates are to be sold hereby represents by signing this notice that the does not know any material adverse information in regard to the current and prospective operations of the Issuer of the securities to be sold which has not been publicly disclosed. If such person has adopted a written trading plan or given trading instructions to satisfy Rule 10b5-1 under the Exchange Act, by signing the form and indicating the date that the plan was adopted or the instruction given, that person makes such representation as of the plan adoption or instruction date.*

_____
DATE OF NOTICE

_____
DATE OF PLAN ADOPTION OR GIVING OF INSTRUCTION, IF RELYING ON RULE 10b5-1

_____
(SIGNATURE)

*The notice shall be signed by the person for whose account the securities are to be sold. At least one copy of the notice shall be manually signed. Any copies not manually signed shall bear typed or printed signatures.*

**ATTENTION:   Intentional misstatements or omission of facts constitute Federal Criminal Violations (See 18 U.S.C. 1001)**

SEC 1147 (04-07)